JOHN WALSHE MURRAY (074823)
ROBERT A. FRANKLIN (091653)
JENNY L. FOUNTAIN (226241)
MURRAY & MURRAY
A Professional Corporation
19400 Stevens Creek Blvd., Suite 200
Cupertino, CA 95014-2548
Telephone: (650) 852-9000; (408) 907-9200
Facsimile: (650) 852-9244
Email: jwmurray@murraylaw.com
Email: rfranklin@murraylaw.com
Email: jlfountain@murraylaw.com

Attorneys for Debtor

# UNITED STATES BANKRUPTCY COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN JOSE DIVISION

| | |
|---|---|
| In re:<br><br>**PASADERA COUNTRY CLUB, LLC**<br>A California Limited Liability Company<br><br>Debtor.<br><br>100 Pasadera Drive<br>Monterey, CA 93940<br><br>Employer Tax I.D. No.: 77-0498396 | Case No. 09-50771-CN<br><br>Chapter 11<br><br>Date: July 9, 2010 (interim hearing)<br>Time: 11:00 a.m.<br>Place: United States Bankruptcy Court<br>280 S. First St., Room 3070<br>San Jose, CA 95113<br>Judge: Honorable Charles Novack |

**EMERGENCY MOTION FOR INTERIM AND FINAL ORDERS
APPROVING AGREEMENT TO PROVIDE SECURED POST-PETITION FINANCING, FOR
ADEQUATE PROTECTION SECURED BY LIEN ON PROPERTY OF THE ESTATE UNDER SECTION 364
AND FOR MODIFICATION OF AUTOMATIC STAY**

JLF/esg
R:\Pasadera\Plg\Mot DIP(2d).wpd
Case: 09-50771   Doc# 220   Filed: 06/28/10   Entered: 06/28/10 18:08:42   Page 1 of 13

1   EMERGENCY MOTION FOR INTERIM AND FINAL ORDERS
APPROVING AGREEMENT TO PROVIDE POST-PETITION FINANCING,
FOR ADEQUATE PROTECTION SECURED BY LIEN ON PROPERTY . . . .

**TO: THE HONORABLE CHARLES NOVACK, UNITED STATES BANKRUPTCY JUDGE; THE UNITED STATES TRUSTEE; SECURED CREDITORS; COUNSEL TO THE CREDITORS COMMITTEE; AND OTHER PARTIES IN INTEREST.**

Pasadera Country Club, LLC., the debtor and debtor in possession herein (the "Debtor"), hereby moves pursuant to Section 364 of the Bankruptcy Code[1] for interim and final orders allowing it to incur additional post-petition secured financing (the "Motion"). The Motion is made on the grounds that the Debtor requires supplemental post-petition financing in order to continue its business operations pending confirmation of a plan of reorganization and the close of a sale of the Debtor's assets. The Motion is based on the points and authorities set forth herein, the DECLARATION OF THOMAS S. DEREGT IN SUPPORT OF MOTION FOR ORDER APPROVING AGREEMENT TO PROVIDE POST-PETITION FINANCING, FOR ADEQUATE PROTECTION SECURED BY LIEN ON PROPERTY OF THE ESTATE UNDER SECTION 364 AND FOR MODIFICATION OF AUTOMATIC STAY and the INTRODUCTORY STATEMENT AND CERTIFICATION OF COMPLIANCE WITH GUIDELINES RE MOTION FOR ORDER APPROVING AGREEMENT TO PROVIDE POST-PETITION FINANCING, FOR ADEQUATE PROTECTION SECURED BY LIEN ON PROPERTY OF THE ESTATE UNDER SECTION 364 AND FOR MODIFICATION OF AUTOMATIC STAY (the "Introductory Statement") filed concurrently herewith, the pleadings and papers on file herein, and on such other oral or documentary evidence as may be submitted before the Court.

In support of the Motion, the Debtor respectfully represents the following:

## I. JURISDICTION

1. The Court has jurisdiction over the matter pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

2. The statutory basis for the relief requested herein is Section 364.

---

[1] Unless otherwise noted, all statutory references are to Title 11 of the United States Code ("Code" or "Bankruptcy Code") as amended unless otherwise specified herein.

Case: 09-50771  Doc# 220  Filed: 06/28/10  Entered: 06/28/10 18:08:42  Page 2 of 13

EMERGENCY MOTION FOR INTERIM AND FINAL ORDERS APPROVING AGREEMENT TO PROVIDE POST-PETITION FINANCING, FOR ADEQUATE PROTECTION SECURED BY LIEN ON PROPERTY . . . .

## II. BANKRUPTCY RULE 4001 CONCISE STATEMENT

3. The Debtor owns and operates Pasadera Country Club on certain real property in Monterey County (the "Land"), the centerpiece of a 565 acre master-planned residential community containing approximately 249 residential units. The Club was developed in 1999 at a cost of approximately $41,000,000. Many homeowners in the Club community, while not required to be, are members of the Club. The Club features the only Jack Nicklaus Signature golf course on California's central coast, and represents the exclusive design effort by Mr. Nicklaus on the Monterey Peninsula, universally acclaimed as the golf capital of the world. The Club's golf amenities include an 18-hole private golf course, practice area, short game area and practice putting green. The Club offers golf instruction on both an individual and group basis designed to educate each golfer on the subtleties of the game.

4. This is the Debtor's second motion for secured post-petition financing. On March 20, 2009, this Court entered its ORDER APPROVING AGREEMENT TO PROVIDE POST-PETITION FINANCING, FOR ADEQUATE PROTECTION SECURED BY LIEN ON PROPERTY OF THE ESTATE UNDER SECTION 364 AND FOR MODIFICATION OF AUTOMATIC STAY (the "First Order"), pursuant to which the Court approved post-petition financing up to a maximum of $1,200,000.00 (the "Prior DIP Financing") provided by certain affiliates of the Debtor (collectively the "Prior DIP Lenders") and secured by a deed of trust on the Land (the "Prior DIP Lien").

5. Through this Motion, the Debtor: (i) proposes to borrow up to $100,000 from the proposed purchaser of the Debtor's assets, PASADERA INTERNATIONAL, LLC, a California limited liability company (the "Purchaser"), to provide additional working capital to the extent it is required to fund the Debtor's operations and Chapter 11 administrative expenses pending confirmation of the Debtor's plan of reorganization; and (ii) seeks to provide security for such financing by granting liens on certain assets of the Debtor pursuant to Section 364(c)(2) and (3). (The Prior DIP Lenders have consented to subordinate the Prior DIP Lien to the liens proposed in this Motion.)[2]

6. The Purchaser and the Debtor have entered into a PURCHASE AND SALE AGREEMENT

---
[2] The Debtor's affiliates hold a prepetition secured lien on the Debtor's property and have agreed to subordinate to the liens proposed in this Motion. However, the liens proposed in this Motion will be junior to all liens held by the Debtor's pre-petition secured lender Rabobank.

Case: 09-50771    Doc# 220    Filed: 06/28/10    Entered: 06/28/10 18:08:42    Page 3 of 13

JLF/esg
R:\Pasadera\Plldg\Mot DIP(2d).wpd    3    EMERGENCY MOTION FOR INTERIM AND FINAL ORDERS APPROVING AGREEMENT TO PROVIDE POST-PETITION FINANCING, FOR ADEQUATE PROTECTION SECURED BY LIEN ON PROPERTY . . . .

(the "PSA"), a copy of which is attached as **Exhibit "A"** to the Introductory Statement and pursuant to which the Debtor has agreed, subject to, *inter alia,* the entry of an order confirming the Debtor's plan of reorganization (the "Plan"), to sell the assets (the "Sale"), described in the PSA (the "Property")[3] for an estimated aggregate purchase price of $7,576,850.90 (the "Purchase Price").[4] The PSA provides that the Purchaser deposit the sum of Five Hundred Thousand Dollars ($500,000.00) into an escrow (together with all interest accrued thereon, the "Deposit"). The Deposit shall be applied against the Purchase Price. Subject to the approval of the Debtor's disclosure statement (the "Disclosure Statement") and confirmation of the Plan, the Purchaser has agreed to release up to $100,000 from the Deposit (the "Advance Commitment") to the Debtor to provide additional working capital, conditioned upon the procedures and conditions set forth and summarized in ¶ 6(b) below.

7. Pursuant to Federal Rule of Bankruptcy Procedure ("Bankr. R.") 4001(c)(1)(b), material provisions of the proposed borrowing are set forth in the proposed order (the "Interim Order") attached as **Exhibit "B"** to the Introductory Statement and summarized as follows:

(a) **Maximum Advance.** The aggregate Advance Commitment shall be $100,000.00. PSA § 2.2.1; Interim Order ¶¶ F, G, 1, and 2.

(b) **Procedures and Conditions for Advances.** Upon: (i) the Purchaser's approval of the Debtor's Budget; (ii) the Purchaser's confirmation that the Debtor has exhausted all of the available Prior DIP Financing; (iii) the entry by this Court of an order, in form and substance satisfactory to Purchaser, authorizing the Debtor to grant to Purchaser the liens set forth in Section 12.15 of the PSA, and the execution and delivery of all documents required pursuant to that Section, the Purchaser shall release the sum of $50,000 from the Deposit to the Debtor upon approval of the Debtor's Disclosure Statement, and shall release an additional $50,000 from the Deposit upon confirmation of the Debtor's Plan. PSA § 2.2.1; Interim Order ¶ G.

(d) **Repayment of Amounts Advanced.** The Deposit, including all amounts released

---

[3] The "Property" includes, among other things, the Club, the Land, improvements, permits, tangible personal property and inventories and assumed contracts.

[4] The "Purchase Price" is defined in the PSA (at § 2.2 and Schedule D-1) as the following amounts: (a) $6,500,000 to pay the discounted claim of Rabobank ($1,000,000 in cash and a $5,500,000 promissory note), subject to Rabobank's acceptance in full satisfaction of its liens, claims, encumbrances, interests and guarantees; (b) additional funds not to exceed $1,076,850.90 to be applied as follows: (i) sufficient funds (est. $225,386) to pay trade creditors 60% of their allowed claims; (ii) sufficient funds to pay real estate taxes (est. $276,516) and other taxes due on the effective date of the Plan; and (iii) sufficient funds to pay certain identified chapter 11 expenses of administration, including, Murray & Murray - $325,000 (pre-confirmation); Farella, Braun + Martel - $138,000; Financial Leadership Group - $27,048; Hayashi & Wayland - $19,747.36; Wendell Rosen Black & Dean - $65,525.

JLF/esg
R:\Pasadera\Plg\Mot 1 DIP(2d).\Outlook 4 EMERGENCY MOTION FOR INTERIM AND FINAL ORDERS APPROVING AGREEMENT TO PROVIDE POST-PETITION FINANCING, FOR ADEQUATE PROTECTION SECURED BY LIEN ON PROPERTY . . . .

Case: 09-50771 Doc# 220 Filed: 06/28/10 Entered: 06/28/10 18:08:42 Page 4 of 13

under the Advance Commitment, plus accrued interest, will be credited against the Purchase Price at Closing. PSA § 2.2.1; Interim Order ¶ I.

(e) **Events of Default.** Events of Default include, but are not limited to, a material default by the Debtor of any of its obligations under the PSA. PSA § 10; Interim Order ¶ J.

(f) **Liens.** The Purchaser will be granted a security interest and lien (subject only to non-subordinated pre-existing security interests held by third parties and/or liens currently existing on the collateral) in (i) all of the Debtor's equipment, inventory, accounts and general intangibles, whether now owned or hereafter acquired; (ii) all of the Debtor's right, title and interest as lessee pursuant to that certain lease agreement dated January 12, 1999 between Parks Foundation of Monterey County, as lessor and Debtor as lessee relating to Assessor's Parcel No. 173-061-003=000; and (iii) the Land (collectively, the "Collateral"); *provided however,* that the Collateral shall not include the proceeds of Avoidance Actions. PSA § 12.15; Interim Order ¶¶ 4 and 5.

8. The provisions described in Bankruptcy Rule 4001(c)(1)(B)(i)-(xi) are set forth at the following sections of the Interim Order or the PSA:

(a) **Grant of Priority or a Lien on Property of the Estate.** PSA § 12.15 Interim Order ¶ 4.

(b) **Indemnification of Any Entity.** PSA § 4.6.2.

(c) **Liens Not Granted on Claims Arising Under Chapter 5, Except for § 549.** Interim Order ¶ 5

(d) **Carve-outs for Professional Fees and Expenses.** Under the PSA, the costs of administration shall be paid with funds comprising the Purchase Price. PSA § 2.2 and Schedule D-1. The Prior DIP Lien provides for carve-outs.

### III. HISTORY AND RELEVANT FACTS

**A. Bankruptcy Petition.**

9. On February 6, 2009 (the "Petition Date"), the Debtor filed its Voluntary Petition under Chapter 11 of the Bankruptcy Code. The Debtor is presently operating its business as a debtor in possession pursuant to the provisions of 11 U.S.C. §§ 1107 and 1108.

10. An official committee of unsecured creditors has been formed and is represented by counsel.

**B. History and Events Leading to the Debtor's Bankruptcy Case.**

JLF/esg
R:\Pasadera\Plldg\Mot DIP(2d)(v10)(docx)

5 EMERGENCY MOTION FOR INTERIM AND FINAL ORDERS APPROVING AGREEMENT TO PROVIDE POST-PETITION FINANCING, FOR ADEQUATE PROTECTION SECURED BY LIEN ON PROPERTY . . . .

Case: 09-50771    Doc# 220    Filed: 06/28/10    Entered: 06/28/10 18:08:42    Page 5 of 13

11. The Club offers a variety of memberships including a "Golf Membership" providing full access to all Club facilities and amenities, a "Corporate Membership" for commercial enterprises, an "Associate Membership" aimed at younger members, a "Social Membership" providing access to the tennis and swim facilities, fitness center, dining, clubhouse and all social related events and activities, and a "National Membership" for those not living in the area. Membership fees are payable upon admission and refundable in twenty (20) years or thirty (30) years, depending on the category of membership, or upon a member's resignation from the Club pursuant to the protocol set forth in the Membership Plan. In addition, members pay monthly dues, the amount of which depends on the membership category.

12. The Club has approximately 275 active dues paying members in the "Golf" and "Social" membership categories. The rights of Club members are governed by a membership plan (the "<u>Membership Plan</u>") and each member's member agreement (the "<u>Membership Agreement(s)</u>"). Although the forms of the Membership Plan and Membership Agreements have evolved over the years, both allow the Club, "in its sole and absolute discretion, to terminate or modify the Membership Plan . . . and to make any other changes in the terms and conditions of membership." In executing their Membership Agreements, each member acknowledged receipt of the Membership Plan and agreed "to be bound by the terms and conditions thereof as the same may be amended from time to time by the Club."

13. The Club has yet to sell all available memberships. Without full membership initiation fees and monthly dues, the Club has not been able to operate on a cash break even basis, and has yet to achieve profitability. In total, since the Club's inception in 1999, affiliates of the Debtor have advanced almost $42,000,000 (including interest) to develop the Club and maintain operations.

14. In 2010, the Debtor's monthly expenses (exclusive of property taxes and the case related professional fees) have ranged from $350,000 to $400,000, including approximately $185,000 for payroll related costs. The Debtor's senior secured lender is Rabobank with an outstanding claim of approximately $7,800,000, plus interest, fees and costs, secured by a senior security interest in the Debtor's real property and certain personal property (the "<u>Rabobank Liens</u>").

Case 09-50771 Doc# 220 Filed: 06/28/10 Entered: 06/28/10 18:08:42 Page 6 of 13

6 EMERGENCY MOTION FOR INTERIM AND FINAL ORDERS APPROVING AGREEMENT TO PROVIDE POST-PETITION FINANCING, FOR ADEQUATE PROTECTION SECURED BY LIEN ON PROPERTY . . . .

The real property was appraised as of January 1, 2002 at a value of $16,500,000. The Debtor is informed that the property was appraised by the Rabobank Bank in January of 2008 at $17,000,000. The Debtor's obligations to Rabobank are guaranteed by the affiliates of the Debtor..

15. Prior to the Petition Date, the Debtor also borrowed, on a junior secured basis, approximately $750,000 (the "<u>Pre-Petition Affiliated Secured Obligations</u>") from affiliates of the Debtor (the "<u>Pre-Petition Affiliated Secured Lenders</u>" and collectively with the Prior DIP Lenders, the "<u>Affiliated Lenders</u>"). The Pre-Petition Affiliated Secured Obligations were secured by a junior deed of trust on the Land and personal property of the Debtor (the "<u>Pre-Petition Affiliated Secured Lenders' Lien</u>," and together with the Prior DIP Lien, collectively the "<u>Affiliate Liens</u>").

16. The Debtor is also a party to a number of equipment leases, a real property lease for its driving range, and various independent contractor agreements.

17. The Debtor has actively marketed the Club for sale for almost two years, and has recently entered into the PSA pursuant to which the Debtor has agreed, subject to entry of an order confirming the Plan, to sell the Club for the Purchase Price. In addition to approving the Sale, the Debtor anticipates that the Plan will include the following provisions: (a) subject to Rabobank's acceptance, it will receive $1,000,000 in cash and a promissory note for $5,500,000 from the Purchaser on the effective date of the Plan in full satisfaction of its liens, claims and guarantees, and shall unconditionally release and reconvey the Rabobank liens; (b) holders of allowed claims of trade creditors will be paid 60% of their claims on the effective date of the Plan in full satisfaction of their claims; (c) subject to their acceptance, the Affiliated Lenders will receive nothing on account of the Pre-Petition Affiliated Secured Obligations and the Prior DIP Financing; (d) the Debtor will assume and assign certain executory contracts and unexpired leases to the Purchaser, and reject others; (e) all Club members will be offered at no cost a membership in the Purchaser's club in full satisfaction of their claims, including all claims arising from the rejection of their Membership Agreements, subject to the terms of a new membership plan and membership agreement. Should such members subsequently resign from the Purchaser's club, there will be no refund or reimbursement associated with the surrender of such membership. Club members who decline membership in the Purchaser's club will receive nothing on account of their claims; and (f) the

JLF/esg
R:\Pasadera\Plg\Mot DIP(2d).Wpd.docx

7 EMERGENCY MOTION FOR INTERIM AND FINAL ORDERS APPROVING AGREEMENT TO PROVIDE POST-PETITION FINANCING, FOR ADEQUATE PROTECTION SECURED BY LIEN ON PROPERTY . . . .

Case: 09-50771 Doc# 220 Filed: 06/28/10 Entered: 06/28/10 18:08:42 Page 7 of 13

Debtor' affiliates will receive nothing on account of their pre-petition unsecured claims of approximately $42,000,000.

18. The Debtor plans to continue its operations under the Budget approved by the Purchaser, a copy of which is attached as **Exhibit "D-2"** to the PSA and incorporated herein by reference.

**C.   Assets and Debt Structure.**

19. In addition to the Rabobank Liens and the Affiliate Liens, the Debtor's secured debts also include various liens or ownership interests on specific equipment of various equipment lessors or equipment financers. Priority claims total approximately $56,000 and consist primarily of employee benefit claims. The Debtor's unsecured debt is in the amount of approximately $65 million, consisting of approximately $375,000 in trade debt, approximately $40,000,000 owed to the Debtor's affiliates, and approximately $25,000,000 in contingent claims to Club members in the form of refundable membership initiation fees.

20. A search of the records of the California Secretary of State at or close to the Petition Date disclosed the following liens and security interests on the following pre-petition property under the search name Pasadera Country Club, LLC. All of the liens of record in the applicable jurisdiction of California are in specific equipment, except for that of Rabobank, as discussed above.

| NAME | DATE OF FILING | COLLATERAL COVERAGE |
|---|---|---|
| Rabobank | 2/11/05 | Certain fixtures, equipment, and material as identified in the Commercial Security Agreement |
| Textron Financial Corp. | 3/21/05 | Certain Equipment pursuant to Equipment Lease |
| Deere & Company | 7/23/04 | Terminated on 8/16/07. |
| General Electric Capital Corp. | 7/14/05 | Certain Equipment pursuant to Equipment Lease |
| Wells Fargo Financial Leasing, Inc. | 10/27/05 | Certain Equipment pursuant to Equipment Lease |
| Deer Credit, Inc. | 12/27/05 | Specific assets |

**IV.   NECESSITY FOR DIP FINANCING**

Case 09-50771    Doc# 220    Filed: 06/28/10    Entered: 06/28/10 18:08:42    Page 8 of 13

8   EMERGENCY MOTION FOR INTERIM AND FINAL ORDERS APPROVING AGREEMENT TO PROVIDE POST-PETITION FINANCING, FOR ADEQUATE PROTECTION SECURED BY LIEN ON PROPERTY . . . .

21.   The Debtor has ongoing events and provides various activities and amenities to its members on a daily basis.  The golf course and other grounds of the Club also require regular maintenance and upkeep.  Prior to the submission of this Motion, the Debtor has utilized the proceeds of the Prior DIP Financing to fund its operations.  However, the Debtor is rapidly approaching the maximum amount authorized under the Prior DIP Financing and will require additional funds to continue operations pending confirmation of the Plan.  Thus, in order to provide its members with services that are expected of the Debtor and maintain the going concern value of the Debtor, the Debtor requires an infusion of cash to pay its suppliers and employees and other operating expenses, as set forth in the Budget.

22.   The emergency interim relief requested is critical to the success of this case as the Debtor anticipates that it will exhaust the Prior DIP financing by or before August 2010 unless additional funding is available to fund necessary expenses.  The Advance Commitment is contingent upon approval of the Disclosure Statement and confirmation of the Plan.  The Debtor will seek an order shortening time so that the hearing for the Court to consider approval of the Disclosure Statement may be held on July 15, 2010.  It is critical for the Debtor to obtain approval of this Motion on an interim basis prior to or concurrently with the approval of the Disclosure Statement so that upon such approval the first tranche of the Advance Commitment may be released to pay necessary expenses for the months of July and August (the "<u>Interim Period</u>").  These expenses include payroll and payments and advance deposits to vendors for inventory and supplies.

23.   The Purchaser is willing to provide the Debtor with $50,000.00 of post-petition financing under the Advance Commitment only upon the following terms and conditions: (a) approval of the Debtor's Budget; (b) entry of an order approving this Motion; (c) confirmation that the Debtor has exhausted the Prior DIP Financing; (d) Court approval of the Disclosure Statement; (e) delivery of a Deed of Trust with Assignment of Rents (the "<u>Deed of Trust</u>") on the Land; and (f) the satisfaction of the conditions set forth in section 12.15 of the PSA.  Thereafter, the Purchaser is willing to extend an additional $50,000.00 of post-petition financing upon entry of an order confirming the Plan.

24.   The Debtor has been unable to obtain adequate unsecured credit allowable under

JLF/esg
R:\Pasadera\Plg\Mot DIP(2a).wpd.doc

9

EMERGENCY MOTION FOR INTERIM AND FINAL ORDERS
APPROVING AGREEMENT TO PROVIDE POST-PETITION FINANCING,
FOR ADEQUATE PROTECTION SECURED BY LIEN ON PROPERTY . . . .

Case 09-50771    Doc# 220    Filed: 06/28/10    Entered: 06/28/10 18:08:42    Page 9 of 13

section 503(b)(1) of the Bankruptcy Code or pursuant to sections 364(a) and 364(b) of the Bankruptcy Code. The Debtor is also unable to obtain additional secured credit allowable under section 364(c) of the Bankruptcy Code, except under the terms and conditions set forth herein. The Purchaser and the Debtor have negotiated the terms of the Advance Commitment and the PSA in good faith and believe that the terms are fair and reasonable.

25. The relief requested in this Motion is necessary, essential and appropriate for the continued operations of the Debtor's business and the management and preservation of the Debtor's assets, and will maximize the value of the Debtor's assets for the benefit of its creditors.

## V. THE PROPOSED BORROWING

### Amount, Interest Rate, Fees and Other Requirements

26. The Debtor proposes to deliver the Deed of Trust to the Purchaser to secure the Advance Commitment. Subject to the terms and conditions of the PSA, the Interim Order and a final order, the Purchaser has agreed to provide for post-petition financing in the maximum amount of $100,000 in the form of releases from the Deposit.

### The DIP Lien

27. The obligations of the Debtor under the PSA to repay the Advance Commitment shall be secured by the grant of security interests (the "Adequate Protection Lien") in the Collateral:

> Pursuant to Section 364(c)(2) of the Bankruptcy Code, a perfected first priority senior security interest in and lien upon the Collateral, whether existing on the Petition Date, or thereafter acquired, that as of the Petition Date is not subject to valid, perfected and non-avoidable liens, provided, however, that such security interest and lien shall be senior to the Affiliate Liens;

> Pursuant to § 364(c)(3) of the Bankruptcy Code, a junior security interest in and lien upon the Collateral, whether existing on the Petition Date, or thereafter acquired, that as of the Petition Date is not subject to valid, perfected and non-avoidable liens, provided, however, that such security interest and lien shall be senior to the Affiliate Liens.

> The Adequate Protection Lien shall not include any proceeds of Avoidance Actions.

### Events of Default

Case 09-50771    Doc# 220    Filed: 06/28/10    Entered: 06/28/10 18:08:43    Page 10 of 13

10  EMERGENCY MOTION FOR INTERIM AND FINAL ORDERS APPROVING AGREEMENT TO PROVIDE POST-PETITION FINANCING, FOR ADEQUATE PROTECTION SECURED BY LIEN ON PROPERTY . . . .

Events of Default include, but are not limited to, a material default by the Debtor of any of its obligations under the PSA.

### Remedies Upon An Event Of Default

28. Should the Debtor default on any of its material obligations under the PSA, the Purchaser shall promptly deliver written notice of such default to the Debtor and the Debtor shall have ten (10) days from the date of such notice to cure or remedy the alleged default; provided, however, that if such default is not reasonably susceptible to cure within ten (10) days, and provided that the Debtor has commenced and is diligently pursuing such cure to completion, the Debtor shall have such additional time, not to exceed thirty (30) days, as may be reasonably necessary to effect such cure (the "Cure Period"); provided, however, notwithstanding anything to the contrary contained herein, a the failure or refusal by the Debtor to perform on the closing date of the Sale (except in respect of a Pending Default (as defined below) by the Purchaser) shall be deemed to be an immediate default without the necessity of notice and for which no cure period shall be available. A "Pending Default" shall be a default for which: (i) written notice was given by the Non-Defaulting Party; and (ii) the Cure Period for such default extends beyond the scheduled closing date of the Sale.

29. If the Debtor defaults on a material obligation hereunder and such default shall continue beyond the expiration of the Cure Period, if any, provided in the PSA, Purchaser shall elect as its sole remedy hereunder to terminate the PSA and receive a refund of the Deposit (including the Advance Commitment) paid to the Debtor (including interest).

### Interim Approval Should Be Granted

30. Bankr. R 4001(c) provides that a final hearing on a motion to approve post-petition secured financing may not be commenced earlier than 14 days after the service of such motion. Upon request, however, the Court is empowered to conduct a preliminary hearing on the motion and authorize post-petition secured financing to the extent necessary to avoid immediate and irreparable harm to the estate pending a final hearing.

31. The Debtor has agreed with the Purchaser on the terms for the Advance Commitment. The Budget has identified those expenses which are required to be paid during the Interim Period in

JLF/esg
O:\Pasadera\Pldg\Mot - DIP (2d)\6ord.ex

Case 09-50771    Doc# 220    Filed: 06/28/10    Entered: 06/28/10 18:08:42    Page 11 of 13

11    EMERGENCY MOTION FOR INTERIM AND FINAL ORDERS
    (I) APPROVING AGREEMENT TO PROVIDE POST-PETITION FINANCING,
    FOR ADEQUATE PROTECTION SECURED BY LIEN ON PROPERTY . . . .

order to avoid immediate and irreparable harm to the Debtor. The Debtor believes that failure to pay these expenses before a final hearing will cause immediate and irreparable harm to the estate, making it impossible for the Debtor to continue to operate its business, and will undermine the Debtor's chances of a successful reorganization.

## VI. MODIFICATION OF AUTOMATIC STAY

32. The relief requested arguably contemplates a modification of the automatic stay (to the extent applicable) to permit the Debtor to (i) grant the security interests and liens described above with respect to the Purchaser and to perform such acts as may be necessary to assure the perfection and priority of such security interests and liens; and (ii) implement the terms of the proposed orders. To the extent the automatic stay is applicable, the Debtor requests that it be modified to allow the Debtor to perform under the Interim and Final Orders.

WHEREFORE, the Debtor respectfully requests that this Court::

1. Conduct a preliminary hearing on this motion at the earliest possible date;
2. Following said preliminary hearing, make and enter its order or orders;
    a. Finding that notice of the preliminary hearing was adequate under the circumstances of this case;
    b. Authorizing the Debtor to obtain post-petition secured financing pursuant to the PSA on an interim basis pending a final hearing on this Motion; and
    c. Authorizing the Debtor to take such acts and executes such documents as are necessary to carry out said order;
3. Fix the date and time for a final hearing to on the Motion and at such hearing enter its final order authorizing the Debtor's secured post-petition financing pursuant to the terms described herein; and

/ / /

/ / /

/ / /

/ / /

4. For such other and further relief as the Court deems just and proper.

JLF/esg
C:\Pasadera\Pldg\Mot - DIP(2).wpd.docx

Case 09-50771    Doc# 220    Filed: 06/28/10    Entered: 06/28/10 18:08:42    Page 12 of 13

12    EMERGENCY MOTION FOR INTERIM AND FINAL ORDERS APPROVING AGREEMENT TO PROVIDE POST-PETITION FINANCING, FOR ADEQUATE PROTECTION SECURED BY LIEN ON PROPERTY . . . .

Dated: June 28, 2010

**MURRAY & MURRAY**
A Professional Corporation

By: */s/ Jenny L. Fountain*
    Jenny Lynn Fountain
    Attorneys for Debtor

JLF/esg
K:\Pasadera\Pldg\Mot - DIP (2d)\Ord.doc

Case: 09-50771   Doc# 220   Filed: 06/28/10   Entered: 06/28/10 18:08:42   Page 13 of 13

13   EMERGENCY MOTION FOR INTERIM AND FINAL ORDERS
APPROVING AGREEMENT TO PROVIDE POST-PETITION FINANCING,
FOR ADEQUATE PROTECTION SECURED BY LIEN ON PROPERTY . . . .