JOHN WALSHE MURRAY (074823)
JENNY L. FOUNTAIN (226241)
LAURENT CHEN (191661)
MURRAY & MURRAY
A Professional Corporation
19400 Stevens Creek Blvd., Suite 200
Cupertino, CA 95014-2548
Telephone:  (650) 852-9000; (408) 907-9200
Facsimile:  (650) 852-9244
Email:  jwmurray@murraylaw.com
Email:  jlfountain@murraylaw.com
Email:  lchen@murraylaw.com

Attorneys for Debtor

# UNITED STATES BANKRUPTCY COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN JOSE DIVISION

| | |
|---|---|
| In re:<br><br>**PASADERA COUNTRY CLUB, LLC**<br>A California Limited Liability Company<br><br>Debtor.<br><br>100 Pasadera Drive<br>Monterey, CA 93940<br><br>Employer Tax I.D. No.: 77-0498396 | Case No. 09-50771-CN<br><br>Chapter 11<br><br>Date:   July 15, 2010<br>Time:   11:00 a.m.<br>Place:  United States Bankruptcy Court<br>        280 S. First St., Room 3070<br>        San Jose, CA  95113<br>Judge:  Honorable Charles Novack |

## DISCLOSURE STATEMENT FOR DEBTOR'S PLAN OF LIQUIDATION
### (DATED JUNE 30, 2010)

# TABLE OF CONTENTS

Page

ARTICLE I. EXECUTIVE SUMMARY OF TREATMENT OF CREDITORS AND INTEREST HOLDERS UNDER THE PLAN ........................................................................................................ 1

ARTICLE II. INTRODUCTION ................................................................................................... 3

ARTICLE III. DEFINITIONS ...................................................................................................... 4

ARTICLE IV. DISCLAIMER........................................................................................................ 5

ARTICLE V. OVERVIEW OF THE CHAPTER 11 PROCESS AND SUMMARY OF THE PLAN TREATMENT OF CLAIMS AND INTEREST ............................................................. 7
    5.1.    The Chapter 11 Process. .................................................................................. 7

ARTICLE VI. THE BANKRUPTCY FILING ............................................................................. 7

ARTICLE VII. HISTORY AND DESCRIPTION OF THE DEBTOR'S BUSINESS....................... 8
    7.1.    Events Leading to Debtor's Bankruptcy Case.................................................. 10
    7.2.    Modification of Member's Rights. .................................................................... 11

ARTICLE VIII. SIGNIFICANT EVENTS DURING THE BANKRUPTCY CASE ................... 11
    8.1.    DIP Line. .......................................................................................................... 11
    8.2.    Purchaser DIP Line. ......................................................................................... 11
    8.3.    Retention of Professionals................................................................................. 11
    8.4.    Committee and Committee's Professionals....................................................... 12
    8.5.    Appointment of Responsible Individual............................................................ 12
    8.6.    Allowance of Fees of Court-Appointed Professionals. ..................................... 12
    8.7.    Relief From Stay. ............................................................................................. 14
    8.8.    Real Property Lease.......................................................................................... 15
    8.9.    Plan Exclusivity................................................................................................ 15
    8.10.    Other Bankruptcy Administration Matters........................................................ 16
    8.11.    Marketing Efforts. ............................................................................................ 16
    8.12.    Prior Contemplated Purchase Transaction ....................................................... 16
    8.13.    The Purchase Transaction ................................................................................. 17

ARTICLE IX. ............................................................................................................................... 17

THE DEBTOR'S ASSETS AND LIABILITIES .......................................................................... 17
    9.1.    Balance Sheets; Financial Reporting................................................................ 17
    9.2.    Cash on Hand. .................................................................................................. 18
    9.3.    Assets. .............................................................................................................. 18
    9.4.    Liabilities.......................................................................................................... 18

ARTICLE X. THE PLAN OF LIQUIDATION ............................................................................ 18
    10.1.    Overview of the Plan......................................................................................... 18
    10.2.    Claims and Equity Interests and Treatment under the Plan............................... 20
    10.3.    Summary of Claims and Interests; Treatment. ................................................. 20

Case 09-50771 Doc# 226 Filed: 06/30/10 Entered: 06/30/10 16:36:52 Page 2 of 75

| | | | |
|---|---|---|---|
| | 10.3.1 | Administrative Expense Claims - Description. | 20 |
| 10.3.1.1 | | Administrative Expense Claims – Estimate. | 21 |
| 10.3.1.2 | | Administrative Expense Claims – Treatment. | 21 |
| 10.3.1.3 | | Administrative Expense Claims – Deadline for Requests for Payment. | 22 |
| 10.3.1.4 | | Deadline for Objections. | 22 |
| | 10.3.2 | United States Trustee Fees. | 22 |
| | 10.3.3 | Tax Claims. | 22 |
| | 10.3.4 | Class 1 (Monterey County Tax Assessor) – Unimpaired. | 23 |
| | 10.3.5 | Class 2 (Rabobank) – Impaired. | 24 |
| | 10.3.6 | Class 3 (Affiliate Lenders) – Impaired. | 24 |
| | 10.3.7 | Class 4 (Purchaser) – Unimpaired. | 25 |
| | 10.3.8 | Class 5 (Priority Claims) - Unimpaired. | 25 |
| | 10.3.9 | Class 6 (Trade Payable Unsecured Claims) - Impaired. | 25 |
| | 10.3.10 | Class 7 (Club Member Unsecured Claims) - Impaired. | 26 |
| | 10.3.11 | Alternative 1 Treatment of Class 6 and 7 Claims. | 26 |
| 10.3.11.1 | | Class 6 (Trade Payable Unsecured Claims). | 26 |
| 10.3.11.2 | | Class 7 (Club Member Unsecured Claims). | 26 |
| | 10.3.12 | Alternative 2 Treatment of Class 6 and 7 Claims. | 27 |
| | 10.3.13 | Class 8 (Insider Unsecured Claims) - Impaired. | 28 |
| | 10.3.14 | Class 9 (Interests) - Impaired. | 28 |
| 10.4. | | Implementation of the Plan of Liquidation. | 29 |
| | 10.4.1 | Purchase Price. | 29 |
| | 10.4.2 | Cash Investment. | 31 |
| | 10.4.3 | Post Closing Club Ownership and Management. | 31 |
| | 10.4.4 | Continuing Effect and Performance of Existing Orders. | 31 |
| 10.5. | | Operations Pending Effective Date and Close of Purchase Transaction. | 32 |
| 10.6. | | Cancellation of Legal Entities. | 32 |
| 10.7. | | Distributions. | 32 |
| | 10.7.1 | Distribution Account. | 32 |
| | 10.7.2 | Distribution Addresses. | 33 |
| | 10.7.3 | Withholding Taxes. | 33 |
| 10.8. | | Responsible Person. | 33 |
| 10.9. | | Limitation of Liability of Responsible Person. | 34 |
| 10.10. | | Disbursing Agent. | 35 |
| 10.11. | | De Minimis Distributions. | 35 |
| 10.12. | | Unclaimed Distributions. | 35 |
| 10.13. | | Tax Returns, Payments and Refunds. | 35 |
| 10.14. | | Further Orders. | 35 |
| 10.15. | | Post Confirmation Employment of Personnel. | 35 |
| 10.16. | | Post-Confirmation Compensation and Reimbursement of Professionals. | 36 |
| 10.17. | | Creditors' Committee. | 37 |
| 10.18. | | Post-Confirmation Notice. | 37 |
| 10.19. | | Revesting of Property of the Estate. | 37 |
| 10.20. | | Exemption From Certain Transfer Taxes. | 38 |
| 10.21. | | Post-Confirmation Reports, Fees, and Final Decree. | 38 |
| | 10.21.1 | United States Trustee Fees. | 38 |
| | 10.21.2 | Post-Confirmation Reports. | 38 |
| | 10.21.3 | Final Decree. | 38 |
| ARTICLE XI. EXECUTORY CONTRACTS AND UNEXPIRED LEASES | | | 38 |
| 11.1. | | Treatment of Executory Contracts and Unexpired Leases. | 38 |
| 11.2. | | Assumption of Executory Contracts and Unexpired Leases. | 39 |
| 11.3. | | Effect of Assumption of Executory Contracts and Unexpired Leases. | 39 |
| 11.4. | | Adding and Removing Executory Contracts and Unexpired Leases. | 39 |

Case 09-50771    Doc# 226    Filed: 06/30/10    Entered: 06/30/10 16:56:52    Page 3 of
75

| | 11.5. | Defaults. | 39 |
| | 11.6. | Rejection of Executory Contracts and Unexpired Leases. | 39 |
| | 11.7. | Rejection Claims. | 40 |

ARTICLE XII. PROOFS OF CLAIM; OBJECTIONS | 40
| | 12.1. | Time for Filing Proofs of Claim. | 40 |
| | 12.2. | Ownership and Transfers of Claims. | 40 |
| | 12.3. | Amendments to Claims. | 41 |
| | 12.4. | Claim Objections. | 41 |
| | 12.5. | Disallowance of Claims. | 41 |
| | 12.6. | Reserve Accounts. | 42 |
| | 12.7. | Distributions. | 42 |

ARTICLE XIII. DEFAULT | 42

ARTICLE XIV. PRESERVATION OF RETAINED CLAIMS AND AVOIDANCE ACTIONS | 43
| | 14.1. | All Retained Claims and Avoidance Actions and Rights are Preserved. | 43 |

ARTICLE XV. RETENTION OF JURISDICTION | 44

ARTICLE XVI. EFFECT OF CONFIRMATION | 45
| | 16.1. | Binding Effect of Plan. | 45 |
| | 16.2. | Exculpation. | 45 |
| | 16.3. | Full Satisfaction of Claims and Interests. | 45 |
| | 16.4. | Judgments Null and Void. | 46 |
| | 16.5. | Injunction. | 46 |
| | 16.6. | Preservation of Insurance. | 46 |

ARTICLE XVII. CONDITIONS PRECEDENT | 46
| | 17.1. | Conditions Precedent. | 46 |
| | 17.2. | Waiver of Conditions. | 47 |

ARTICLE XVIII. OTHER PLAN PROVISIONS | 47
| | 18.1. | Exemption from Stamp, Transfer and Other Taxes. | 47 |
| | 18.2. | Injunctions and Stays. | 47 |
| | 18.3. | Certain Judgments Null and Void. | 47 |
| | 18.4. | No Admissions. | 47 |
| | 18.5. | Revocation of the Plan. | 48 |
| | 18.6. | Successors and Assigns. | 48 |
| | 18.7. | Nonconsensual Confirmation. | 48 |
| | 18.8. | Destruction of Records. | 48 |
| | 18.9. | Saturday, Sunday and Legal Holiday. | 48 |
| | 18.10. | Plan Interpretation. | 48 |
| | 18.11. | Modification. | 49 |
| | 18.12. | Setoff/Recoupment. | 49 |
| | 18.13. | Notices. | 49 |
| | 18.14. | Reservation of Rights. | 50 |
| | 18.15. | Exhibits. | 50 |

ARTICLE XIX. RISK FACTORS | 50
| | 19.1. | Additional Claims Risks. | 50 |

Case 09-50071 Doc# 226 Filed: 06/30/10 Entered: (CONSOLIDATED 06/16/2010) Page 4 of
75

19.2.    Estimation of Claims and Distribution Risks. ................................................. 51

19.3.    Bankruptcy Risks. ................................................................................ 51

19.4.    Purchase Transaction .......................................................................... 51

ARTICLE XX. CERTAIN FEDERAL INCOME TAX CONSEQUENCES OF THE PLAN ...................... 52

20.1.    Introduction. ...................................................................................... 52

20.2.    IRS CIRCULAR 230 ........................................................................... 53

20.3.    Consequences to the Debtor. ............................................................. 54

20.4.    Consequences to Equity Interest Holders ......................................... 54

20.5.    Consequences to Creditors Generally ............................................... 55

20.6.    Wage Withholding. ............................................................................ 56

20.7.    Backup Withholding .......................................................................... 57

ARTICLE XXI. VOTING PROCEDURES ............................................................................ 57

21.1.    Definition of Impairment ................................................................... 58

ARTICLE XXII. CONFIRMATION PROCEDURES; OBJECTIONS TO CONFIRMATION ................... 61

22.1.    Confirmation Hearing ........................................................................ 61

22.2.    Requirements for Confirmation of the Plan. ...................................... 62

22.3.    Compliance with Confirmation Requirements .................................... 63

22.4.    Cramdown. ........................................................................................ 64

ARTICLE XXIII. BEST INTERESTS TEST ......................................................................... 65

23.1.    Liquidation Analysis. ........................................................................ 67

ARTICLE XXIV. FEASIBILITY ...................................................................................... 68

ARTICLE XXV. POST-CONFIRMATION MANAGEMENT ...................................................... 68

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Case 09-50771    Doc# 226    Filed: 06/30/10    Entered: 06/30/10 16:56:52    Page 5 of 75

| | |
|---|---|
| 1 | **TABLE OF EXHIBITS** |

2  EXHIBIT A          DEBTOR'S PROJECTED CASH FLOW

3  EXHIBIT B          DEBTOR'S MAY 2010 MONTHLY OPERATING REPORT

4  EXHIBIT C          SUMMARY OF MARKETING EFFORTS AND INTERESTED PARTIES

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

JWM/JLE
G:\JWM\Prairie Star Farm and Dairy\Plan and Disclosure Statement\Plan and
DS\Disclosure+Stmtv8.docx

DISCLOSURE STATEMENT FOR DEBTOR'S PLAN OF
(PLAN CONSOLIDATED 6.25.2010)

Case 09-50771    Doc# 226    Filed: 06/30/10    Entered: 06/30/10 15:56:32    Page 6 of
75

# ARTICLE I.

## EXECUTIVE SUMMARY OF TREATMENT OF
## CREDITORS AND INTEREST HOLDERS UNDER THE PLAN[1]

| CLASS | DESCRIPTION | TREATMENT |
|---|---|---|
| Class 1 | Allowed Secured Claims of the Monterey County Tax Assessor | The Monterey County Tax Assessor shall be paid in cash in full ($276,516.00) on the Effective Date. |
| Class 2 | Rabobank | Rabobank shall receive $1 Million in cash and a promissory note for $5.5 Million from the Purchaser on the Effective Date in full and final satisfaction of any and all Class 2 Claims, and in full and final satisfaction of any and all Claims, causes of actions, liens or other rights held by Rabobank against the Debtor, the Debtor's property or property of the Bankruptcy Estate, the Liquidating Debtor, Purchaser and/or the Guarantors. Rabobank shall provide an executed deed of reconveyance and such other documents and releases as may be necessary. |
| Class 3 | Affiliate Lenders | Creditors holding Allowed Class 3 Claims will receive nothing on account of their Class 3 Claims. |
| Class 4 | Purchaser DIP Lenders | Creditors holding Allowed Class 4 Claims will receive one hundred percent (100%) of their Allowed Class 4 Claims. |
| Class 5 | Priority Claims | Creditors holding Allowed Class 5 Wage Claims will be paid in cash in full on the Effective Date of the Plan. All Allowed Class 5 PTO Claims will be honored by the Purchaser in the ordinary course of business as of the Effective Date. |
| Class 6 | Trade Payable Unsecured Claims | Alternative 1: Creditors holding Allowed Class 6 Claims will be paid sixty percent (60%) of their Allowed Class 6 Claims on the Effective Date in full and complete satisfaction of their Class 6 Claims.

Alternative 2: The Allowed Claims of Club Members and Trade Vendors shall be combined into a single class (the "Combined Class") and receive (i) a pro rata distribution of $225,386.40, or (ii) the opportunity to enter into a Purchaser Membership Agreement.

Within 30 days of the Effective Date, the Debtor shall serve notice (the "Election Notice") on the members of the Combined Class of their right to elect one of the following treatments: |

---

[1] All capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the DEBTOR'S PLAN OF LIQUIDATION (DATED JUNE 30, 2010).

Case: 09-50771  Doc# 226  Filed: 06/30/10  Entered: 06/30/10 16:56:52  Page 7 of 75

(A)     Acceptance of a Purchaser Membership Agreement under the terms and conditions described in Section 5.4 above; or

(B)     Participation with other so electing claimants to receive a pro rata distribution of $225,386.40.

The Election Notice will be accompanied by an election form (the "Election Form") for each member of the Combined Class to indicate its choice. Election Forms shall be returned to the Debtor's counsel within ten (10) days of service of the Election Notice. Club Members who fail to timely submit an Election Form shall be deemed to have elected alternative (A) above. Trade Vendors who fail to timely submit an Election Form shall be deemed to have elected alternative (B) above.

| Class 7 | Club Member Unsecured Claims | Alternative 1:  Creditors holding Allowed Class 7 Claims will receive an opportunity, with no upfront initiation fee costs, to become members of Purchaser's Club pursuant to a Purchaser Membership Agreement in full and complete satisfaction of their Class 7 Claims, including any Rejection Claims. |
|---|---|---|

Alternative 2:  The Allowed Claims of Club Members and Trade Vendors shall be combined into a single class (the "Combined Class") and receive (i) a pro rata distribution of $225,386.40, or (ii) the opportunity to enter into a Purchaser Membership Agreement.

Within 30 days of the Effective Date, the Debtor shall serve notice (the "Election Notice") on the members of the Combined Class of their right to elect one of the following treatments:

(A)     Acceptance of a Purchaser Membership Agreement under the terms and conditions described in Section 5.4 above; or

(B)     Participation with other so electing claimants to receive a pro rata distribution of $225,386.40.

The Election Notice will be accompanied by an election form (the "Election Form") for each member of the Combined Class to indicate its choice. Election Forms shall be returned to the Debtor's counsel within ten (10) days of service of the Election Notice. Club Members who fail to timely submit an Election Form shall be deemed to have elected alternative (A) above. Trade Vendors who fail to timely submit an Election Form shall be deemed to have elected alternative (B) above.

| Class 8 | Insider Unsecured Claims | Creditors holding Allowed Class 8 Claims shall receive nothing on account of their Class 8 Claims. |
|---|---|---|

Case: 09-50774    Doc# 226    Filed: 06/30/10    Entered: 06/30/10 16:56:52    Page 8 of 75

| Class 9 | Interests | All Interests in the Debtor shall be extinguished on the Effective Date and Interest Holders holding Class 9 Interests shall receive nothing on account of their Class 9 Interests. |

## ARTICLE II.

## INTRODUCTION

Pasadera Country Club, LLC, (the "**Debtor**") hereby submits its DISCLOSURE STATEMENT FOR DEBTOR'S PLAN OF LIQUIDATION (DATED JUNE 30, 2010) (the "**Disclosure Statement**") in connection with the solicitation of acceptances of the DEBTOR'S PLAN OF LIQUIDATION (DATED JUNE 30, 2010), as defined in and as may be modified pursuant to Section 1.51 thereof (the "**Plan**"). The Plan is being transmitted to Creditors and Interest Holders of the Debtor with this Disclosure Statement.

Chapter 11 of the Bankruptcy Code sets forth the rules and procedures under which financially distressed entities may be reorganized or liquidated pursuant to a plan presented to Creditors, and equity security holders for consideration and approval. Confirmation (approval) of the Plan is the culmination of that process.

The Effective Date of the Plan will be a date designated by the Debtor and which will be the date on which the Purchase Transaction closes, but which date will be no less than 15 calendar days and no more than 60 calendar days following the Confirmation Date or, in the event that the Effective Date of the Plan is enjoined or stayed by a court of competent jurisdiction for any period of time, no later than 30 calendar days following expiration of such stay or injunction; *provided* that such date may be extended up to an additional 30 calendar days beyond the period set forth above by the Liquidating Debtor, in its sole discretion.

The Plan sets forth the Debtor's proposal for the liquidation of its assets and for the treatment all Allowed Claims against and Interests in the Debtor. Creditors and Interest Holders should thoroughly review both the Plan and the Disclosure Statement before deciding whether to accept or reject the Plan. The purpose of the Disclosure Statement is to provide adequate information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the Debtor and the condition of the Debtor's books and records, that would enable a hypothetical

JWM/JLF/cc
K:\Pasadera\Plan\20100577.JDS\Disclosure Statement re June DS.wpd
3
DISCLOSURE STATEMENT FOR DEBTOR'S PLAN OF LIQUIDATION (DATED JUNE 30, 2010)

Case: 09-50771    Doc# 226    Filed: 06/30/10    Entered: 06/30/10 16:56:52    Page 9 of 75

reasonable Creditor and/or investor typical of holders of Claims and Interests of the relevant class to make an informed judgment about the Plan.

Before the Debtor's Disclosure Statement may be used in connection with an acceptance or rejection of the Plan, the Bankruptcy Court, after a noticed hearing, must have approved the Disclosure Statement as containing adequate information to enable Creditors, Interest Holders and parties in interest to make an informed judgment on whether or not to accept or reject the Debtor's Plan.

The Court's approval of the Disclosure Statement however does not constitute an endorsement of the Plan by the Bankruptcy Court.

Creditors and Interest Holders should read this Disclosure Statement and the Plan in their entirety prior to voting by way of the enclosed Ballot, which must be completed and returned.

No solicitation of votes may be made except pursuant to this Disclosure Statement and Section 1125 of the Bankruptcy Code. In voting on the Plan, Creditors and Interest Holders should not rely on any information relating to the Debtor, other than that contained in this Disclosure Statement, the Plan, and all exhibits hereto and thereto, and such other materials approved by the Bankruptcy Court.

The Plan's objective is to liquidate and maximize the value of the Debtor's assets for the benefit of Creditors and to satisfy, cancel, discharge or disallow all Claims against the Debtor. The Debtor believes that the liquidation contemplated by the Plan will yield a recovery to Creditors and Interest Holders at least as much as could be achieved through other restructuring alternatives or liquidation under chapter 7 of the Bankruptcy Code. The Plan divides Creditors and Interest Holders into classes based on their legal rights and interests and provides for the satisfaction, cancellation or disallowance of Claims and Interests from the Debtor's assets.

### ARTICLE III.

### DEFINITIONS

All definitions contained in Article I of the Plan are incorporated herein by reference. Other terms are defined herein for convenience only. If a term is not defined herein or in the Plan, but is defined in the Bankruptcy Code or Bankruptcy Rules, such term will have the meaning given to that

term in the Bankruptcy Code or Bankruptcy Rules unless the context of the Disclosure Statement clearly requires otherwise. References to a code section are references to the Bankruptcy Code, except as otherwise stated.

## ARTICLE IV.

## <u>DISCLAIMER</u>

THIS DISCLOSURE STATEMENT CONTAINS INFORMATION CONCERNING YOUR CLAIMS OR INTERESTS. PLEASE READ THIS DOCUMENT WITH CARE. FOR THE CONVENIENCE OF CREDITORS AND INTEREST HOLDERS, THIS DISCLOSURE STATEMENT SUMMARIZES THE TERMS OF THE PLAN, BUT THE PLAN ITSELF CONTROLS OVER THIS SUMMARY. IF ANY INCONSISTENCIES EXIST BETWEEN THE PLAN AND THIS DISCLOSURE STATEMENT, THE TERMS OF THE PLAN ARE CONTROLLING. NO REPRESENTATIONS CONCERNING THE DEBTOR, ITS FINANCIAL CONDITIONS OR ANY ASPECT OF THE PLAN ARE AUTHORIZED BY THE DEBTOR OTHER THAN AS SET FORTH IN THIS DISCLOSURE STATEMENT. ANY REPRESENTATIONS OR INDUCEMENTS MADE TO SECURE YOUR ACCEPTANCE WHICH IS OTHER THAN AS CONTAINED IN, OR INCLUDED WITH, THIS DISCLOSURE STATEMENT, SHOULD NOT BE RELIED UPON BY YOU IN ARRIVING AT YOUR DECISION.

THE FINANCIAL INFORMATION CONTAINED HEREIN, UNLESS OTHERWISE INDICATED, IS UNAUDITED. IN ADDITION, BECAUSE OF THE DEBTOR'S FINANCIAL DIFFICULTIES, THE INFORMATION CONTAINED HEREIN MAY BE INCOMPLETE OR INACCURATE. FOR THE FOREGOING REASONS, THE DEBTOR AND ITS RESPECTIVE PROFESSIONALS ARE UNABLE TO WARRANT THAT THE INFORMATION CONTAINED HEREIN IS WITHOUT ANY INACCURACY. HOWEVER, GREAT EFFORT HAS BEEN MADE TO ENSURE THAT ALL SUCH INFORMATION IS FAIRLY PRESENTED.

THE PROFESSIONALS REPRESENTING THE DEBTOR HAVE RELIED UPON INFORMATION PROVIDED BY THE DEBTOR IN CONNECTION WITH THE PREPARATION OF THIS DISCLOSURE STATEMENT AND HAVE NOT INDEPENDENTLY

WLA-Pacifica.Qualteq.0777.4 DS\Disclosure Stat.2d-(June DS)(Restated-June DS)(Restated more DS)(more Final-restatement)(June 2011)

DISCLOSURE STATEMENT FOR DEBTOR'S PLAN OF LIQUIDATION (DATED JUNE 30, 2011)

VERIFIED THE FACTUAL INFORMATION CONTAINED HEREIN.

THE CONTENTS OF THIS DISCLOSURE STATEMENT SHOULD NOT BE CONSTRUED AS LEGAL, BUSINESS OR TAX ADVICE. ANY INFORMATION HEREIN RELATED TO TAX ISSUES AND/OR CONSEQUENCES, LIABILITIES OR RIGHTS WAS AND IS NOT INTENDED TO BE USED, AND IT CANNOT BE USED, FOR THE PURPOSE OF AVOIDING ANY TAX PENALTIES THAT MAY BE IMPOSED ON ANY PERSON. THERE IS NO LIMITATION IMPOSED ON ANYONE READING THIS DISCLOSURE STATEMENT ON DISCLOSURE OF THE TAX TREATMENT OR TAX STRUCTURE OF ANY TRANSACTION. NOTHING IN THIS DISCLOSURE STATEMENT MAY BE USED OR REFERENCED IN PROMOTING, MARKETING OR RECOMMENDING A PARTNERSHIP OR OTHER ENTITY, INVESTMENT PLAN, OR ARRANGEMENT TO ANY PERSON. YOU SHOULD CONSULT WITH YOUR OWN LEGAL COUNSEL AND ACCOUNTANT AS TO LEGAL, TAX AND RELATED MATTERS CONCERNING YOUR CLAIM OR INTEREST.

ANY FINANCIAL PROJECTIONS CONTAINED IN THIS DISCLOSURE STATEMENT REPRESENT THE DEBTOR'S ESTIMATES OF FUTURE EVENTS BASED ON CERTAIN ASSUMPTIONS MORE FULLY DESCRIBED BELOW, SOME OR ALL OF WHICH MAY NOT BE REALIZED. THE FINANCIAL INFORMATION IS UNAUDITED. NONE OF THE FINANCIAL ANALYSES CONTAINED IN THIS DISCLOSURE STATEMENT IS CONSIDERED TO BE A "FORECAST" OR "PROJECTION" AS TECHNICALLY DEFINED BY THE AMERICAN INSITUTE OF CERTIFIED PUBLIC ACCOUNTANTS. THE USE OF THE WORDS "FORECAST," "PROJECT," OR "PROJECTION" WITHIN THIS DISCLOSURE STATEMNT RELATES TO THE BROAD EXPECTATIONS OF FUTURE EVENTS OR MARKET CONDITIONS AND QUANTIFICATIONS OF THE POTENTIAL RESULTS OF OPERATIONS UNDER THOSE CONDITIONS.

NEITHER THE SECURITIES AND EXCHANGE COMMISSION NOR ANY STATE REGULATORY AUTHORITY HAS APPROVED OR DISAPPROVED THIS DISCLOSURE STATEMENT, OR DETERMINED IF IT IS TRUTHFUL OR COMPLETE.

## ARTICLE V.

# OVERVIEW OF THE CHAPTER 11 PROCESS
## AND SUMMARY OF THE PLAN TREATMENT OF CLAIMS AND INTEREST

### 5.1. **The Chapter 11 Process.**

Chapter 11 of the Bankruptcy Code contains numerous provisions, the general effect of which is to provide Debtor with "breathing space" within which to propose a restructuring of their obligations to third parties. The filing of a chapter 11 bankruptcy petition creates a bankruptcy "estate" comprising all of the property interests of a debtor. Unless a trustee is appointed by the Bankruptcy Court for cause (no trustee has been appointed in this Case), a debtor remains in possession and control of all of its assets as a "debtor in possession." The debtor may continue to operate its business in the ordinary course on a day to day basis without Bankruptcy Court approval. Bankruptcy Court approval is only required for various enumerated transactions (such as certain financing transactions) and transactions out of the ordinary course of a debtor's business. The filing of the bankruptcy petition gives rise to what is known as the "automatic stay" which, generally, enjoins creditors from taking any action to collect or recover obligations owed by a debtor prior to the commencement of a chapter 11 case. The Bankruptcy Court can, however, grant relief from the automatic stay under certain specified conditions or for cause.

A chapter 11 debtor may propose a plan providing for the reorganization of the debtor or, as the Debtor's Plan contemplates, for the orderly liquidation and administration of the assets of the Bankruptcy Estate. A plan may either be consensual or non-consensual and provides, among other things, for the treatment of the claims of creditors and interests of equity holders.

### ARTICLE VI.

### THE BANKRUPTCY FILING

On February 6, 2009 (the "**Petition Date**"), the Debtor filed its Voluntary Petition under Chapter 11 of the Bankruptcy Code and is presently operating its business as a debtor in possession pursuant to the provisions of Bankruptcy Code Sections 1107 and 1108. This Disclosure Statement and the accompanying Plan constitute the Debtor's proposal for an orderly liquidation and Distribution of the Debtor's assets in accordance with the relevant provisions of the Bankruptcy Code.

JWM/JLF/cc
K:\Paso Robles\Lift Til\ard DS\Disclosure Statement June DS\Disclosure Stmt 06/30/10       7       DISCLOSURE STATEMENT FOR DEBTOR'S PLAN OF
                                                                                                  LIQUIDATION DATED JUNE 30, 2010

Case: 09-50771   Doc# 226   Filed: 06/30/10   Entered: 06/30/10 10:50:52   Page 13 of 75

## ARTICLE VII.

## HISTORY AND DESCRIPTION OF THE DEBTOR'S BUSINESS

The Debtor is a California limited liability company, the members of which are NCDG Golf, LLC, a Delaware limited liability company; deRegt Golf, LLC, a Delaware limited liability company; Bates Golf, LLC, a Delaware limited liability company; and Lee E. Newell. The sole member of NCDG Golf, LLC is New Cities Development Group, a California general partnership, the general partners of which are deRegt Development, Inc., a California corporation; Bates Properties, Inc., a California corporation; and New Cities Land Company, Inc., a California corporation. Thomas S. deRegt is the sole member of deRegt Golf, LLC and the president of deRegt Development, Inc. Frederick M. Bates is the sole member of Bates Golf, LLC and the president of Bates Properties, Inc. Lee E. Newell is the president of New Cities Land Company, Inc.

The Debtor owns and operates Pasadera Country Club (the "**Club**"), the centerpiece of a 565 acre master-planned residential community containing approximately 249 residential units. The Club was developed in 1999 at a cost of approximately $41,000,000. Many homeowners in the Club community, while not required to be, are members of the Club. The Club features the only Jack Nicklaus Signature golf course on California's central coast, and represents the exclusive design effort by Mr. Nicklaus on the Monterey Peninsula, universally acclaimed as the golf capital of the world. The Club's golf amenities include an 18-hole private golf course, practice area, short game area and practice putting green. The Club offers golf instruction on both an individual and group basis designed to educate each golfer on the subtleties of the game.

Additional Club facilities include an expansive 38,000 square-foot Spanish-style clubhouse as well as first-class dining, lounge and locker room areas, a fitness and wellness center with an adult lap pool and outdoor spa, and a state-of-the-art aquatic center and tennis complex with three distinct aquatic areas and five tennis courts.

Prior to the Petition Date and pursuant to a binding membership plan and the Club Member's individual Membership Agreements, the Club offered a variety of membership options to Persons desiring to become Club Members, including a "Golf Membership" providing full access to all Club facilities and amenities, a "Corporate Membership" for commercial enterprises, an "Associate

JWM/JLF/cc

S:\Pasadera\Plan\DS\Disclosure Stmt 226 (redline from June DS).doc

DISCLOSURE STATEMENT FOR DEBTOR'S PLAN OF LIQUIDATION DATED JUNE 30, 2010

Membership" aimed at younger members, a "Social Membership" providing access to the tennis and swim facilities, fitness center, dining, clubhouse and all social related events and activities, and a "National Membership" for those not living in the area. All Club Members' membership in the Club is unique and subject to the Club Member's individual Membership Agreement but is ultimately governed by the binding membership plan.

The Club has approximately 434 total Club Members broken down as follows: (a) 303 "Golf" Club Members; and (b) 131 "Social" Club Members. Of the 303 Golf Club Members, 176 are active dues paying Club Members and 127 have stopped paying dues. Of the 176 active dues paying "Golf" Club Members, 128 are Full and Corporate Golf Club Members, 18 are Associate Golf Club Members, 30 are National Golf Club Members. Of the 131 Social Club Members, 99 are active dues paying Club Members and 32 have stopped paying dues. Approximately 125 of the Club Members are also homeowners in the Club community. There remain available 259 Golf memberships (inclusive of 20 available National memberships) and 100 Social memberships. The current dues are $900.00 per month for full Golf Club Members and $350.00 per month for Social Club Members.

To maintain daily operations as a premier private country club, the Debtor became a party to a number of equipment leases, a real property lease for its driving range, and various independent contractor agreements.

In 2010, the Debtor's monthly expenses (exclusive of property taxes and the Case related professional fees) have ranged from $350,000 to $400,000, including approximately $185,000 for payroll related costs. The Debtor's senior secured lender is Rabobank with an outstanding claim of approximately $7,800,000[2] secured by a senior security interest in the Debtor's Real Property. The Debtor's obligation to Rabobank is guaranteed by the Guarantors.

Pre-petition, the Debtor also borrowed, on a junior secured basis, approximately $750,000 from the Affiliate Lenders. In total, since the Club's inception in 1999, the Affiliate Lenders have

---

[2] As discussed in more detail in Section 10.3.5, the Debtor has scheduled Rabobank's Claim as $7,790,000.00 whereas Rabobank has filed a Claim for $7,856,075.54.

advanced almost $42,000,000^3$ (including interest) to develop the Club and maintain operations.

### 7.1.    **Events Leading to Debtor's Bankruptcy Case.**

Despite the significant funding by the Affiliate Lenders and Rabobank, and stringent budgeting efforts of management, because of the terms of the Club's Membership Agreements and the current economic recession, among other reasons, the Club has not been able to operate on a cash break even basis or achieve profitability.    Pursuant to the binding membership plan and each individual Membership Agreement, Club Members initially paid an initiation fee to join the Club, which fees were deposited into the Debtor's general operating account and utilized to fund operating deficits and capital improvements for ongoing Club operations.    The Membership Agreements provide that the Club Members' individual initiation fees are refundable in twenty (20) years or thirty (30) years, depending on the category of membership, or upon a member's resignation from the Club pursuant to the protocol set forth in the individual Club Member's Membership Agreement.   In total, the Club Members' initiation fees total $24,882,750.

The Membership Agreements were originally conceived, drafted and based on an outdated and ultimately failed financial and business model of private golf courses, which assumed, during the height of the economic boom, that memberships in private golf clubs would continuously appreciate and memberships would be in constant demand.   That model has not only proven false by the current economic downtown but also has proven to be a significant reason for the financial demise of a myriad of private golf courses.   Over the past five years, there have been numerous bankruptcy filings for private golf clubs including but not limited to: Running Horse Golf and Country Club; Diablo Grande; Chardonnay Club; Del Mar Country Club; The Reserve at Litchfield Beach; The Federal Club; the Valley Country Club; Heatherwood Country Club; the Georgetown Club; the Meadows; and The Capstone Club.

In addition to the overwhelming obligation represented by the Club Member's initiation fees (Class 6 Claims), the Club has yet to sell all available memberships.   Without full membership

---

[3] The Affiliate Lenders also hold a Class 7 Insider Unsecured Claim of approximately $39,956,427.00, as discussed in more detail herein below.  In addition, the Affiliate Lenders committed to providing $1,200,000.00 in post petition Debtor in Possession financing, of which $1,168,000 has been funded to date, and in addition to the $750,000 Pre-Petition Secured Loan, as defined hereinafter, comprises the Affiliate Lenders Class 3 Claim.

Case: 09-50771    Doc# 226    Filed: 06/30/10    Entered: 06/30/10 10:50:52    Page 16 of 75

initiation fees and monthly dues, the Club continually operates at a loss and prior to the Petition Date was at risk of foreclosure by Rabobank.

### 7.2. **Modification of Member's Rights.**

The rights of Club Members are governed by a binding membership plan and each Club Member's Membership Agreement. Although the form of each has evolved over the years, all allow the Club, "in its sole and absolute discretion, to terminate or modify the Membership Plan . . . and to make any other changes in the terms and conditions of membership." In executing their Membership Agreements, each Club Member acknowledged receipt of the Membership Plan and agreed "to be bound by the terms and conditions thereof as the same may be amended from time to time by the Club."

The Debtor believes that without a significant modification of Club Members' rights as allowed by their Membership Agreements and the binding membership plan, (and the Insiders' waiver and release of their Class 7 Claims ($39,956,427)), the Purchaser (or any purchaser) would not enter into the Purchase and Sale Agreement, or similar agreement. Without a purchaser, Rabobank will eventually foreclose and the rights of all Club Members will be extinguished.

## ARTICLE VIII.

## SIGNIFICANT EVENTS DURING THE BANKRUPTCY CASE

### 8.1. **DIP Line.**

As discussed above, the Affiliate Lenders have committed to debtor in possession financing through the DIP Line in the sum of $1,200,000. To date, the Affiliate Lenders have funded $1,168,000.00 of the DIP Line.

### 8.2. **Purchaser DIP Line.**

As part of the Purchase Transaction, Purchaser has committed to a $100,000.00 Purchaser DIP Line, as defined and described in greater detail hereinafter and in the Plan.

### 8.3. **Retention of Professionals.**

The Debtor has retained the following to assist it in this case: (i) Murray & Murray, A Professional Corporation ("**Murray & Murray**"), as its general bankruptcy counsel; Armanasco Public Relations, Inc., ("**APR**") as it media relations provider and advisor; Farella Braun + Martel

Case: 09-50771   Doc# 226   Filed: 06/30/10   Entered: 06/30/10 10:50:52   Page 17 of 75

LLP ("**FB+M**") as its outside corporate counsel in connection with various corporate, securities, tax and employee benefits law matters, employment issues, and general liability insurance issues; FLG Partners, LLC ("**FLG**") as its professional financial advisor to assist with the preparation of financial statements and MORs and to provide financial advice as well as to assist with the Debtor's books and records; Hayashi & Wayland Accounting & Consulting, LLP ("**Hayashi**") as its tax accountant to provide bookkeeping, tax advice and to assist with the preparation and filing of the Debtor's state and federal taxes; Insight Land & Investments as its broker to negotiate the sale of the Club to Mr. Bill Walters of the Walters Group (which sale was not completed); Omni Management Group, LLC ("**Omni**") as noticing and claims agent and to provide such additional services as requested by the Court or the Debtor. Employment of all of the above identified professionals was approved pursuant to Court order.

### 8.4. **Committee and Committee's Professionals.**

On April 2, 2009, the Office of the United States Trustee ("**UST**") appointed the Creditors' Committee comprised of both Club Members and Trade Vendors, which was reconstituted by the UST on April 15, 2009. The Committee is represented by Wendel Rosen Black & Dean, LLP ("**WRBD**" or the "**Committee's Professional**").

### 8.5. **Appointment of Responsible Individual.**

Pursuant to Court order, Thomas S. deRegt has been appointed as the Debtor's Responsible Individual.

### 8.6. **Allowance of Fees of Court-Appointed Professionals.**

On February 16, 2009, the Court entered its ORDER APPOINTING OMNI MANAGEMENT GROUP, LLC AS NOTICING AND CLAIMS AGENT (28 U.S.C. § 156(C)), whereby it authorized the Debtor to pay Omni in the ordinary course of business. To date, the Debtor has paid Omni $33,036.12 for services rendered.

On March 19, 2009, the Court entered its ORDER AUTHORIZING AND APPROVING EMPLOYMENT OF SPECIAL CORPORATE COUNSEL PURSUANT TO §327(E) (FARELLA BRAUN + MARTEL, LLP), whereby it authorized the Debtor to pay FB+M an advance retainer of $100,000.00 to be applied by FB+M on an interim basis to its fees and expenses incurred in this Case, subject to final

Court approval. To date, the Debtor has paid FB+M $60,259.03 of the advance retainer. FB+M has not yet sought approval of any of its fees.

Also on March 19, 2009, the Court entered its ORDER AUTHORIZING AND APPROVING EMPLOYMENT OF MEDIA RELATIONS PROVIDER (ARMANASCO PUBLIC RELATIONS, INC.), whereby it determined that APR is not a professional under the Bankruptcy Code and authorized the Debtor to pay APR a $5,000.00 advance retainer and in the ordinary course. To date, the Debtor has paid APR a total of $12,435.93 for services rendered (inclusive of the approved $5,000.00 advance retainer).

On July 10, 2009, the Court entered its ORDER RE FIRST APPLICATION FOR INTERIM COMPENSATION AND REIMBURSEMENT OF EXPENSES BY ATTORNEYS FOR DEBTOR whereby it allowed attorneys' fees for Murray & Murray in the sum of $288,220.50 and reimbursement of expenses in the sum of $7,564.58 for the period of February 7, 2009 through May 31, 2009. Murray & Murray applied is pre-petition advance retainer in the sum of $152,667.25 to the awarded fees and expenses, and the Debtor paid the balance.

On July 15, 2009, the Court entered its ORDER RE FIRST APPLICATION FOR INTERIM COMPENSATION BY FINANCIAL ADVISORS FOR DEBTOR, whereby it allowed fees for FLG in the sum of $25,000.00 for the period February 26, 2009 through June 12, 2009. FLG applied its previously allowed post-petition advance retainer in the sum of $10,000.00 to the awarded fees, and the Debtor paid the balance.

On September 2, 2009, the Court approved and allowed fees and expenses incurred by WRBD from April 1, 2009 through June 30, 2009, in the amounts of $34,808.50 and $745.68, respectively, pursuant to the ORDER APPROVING FIRST INTERIM APPLICATION FOR COMPENSATION AND REIMBURSEMENT OF EXPENSES BY COUNSEL FOR OFFICIAL COMMITTEE OF CREDITORS. WRBD applied its post-petition advance retainer in the sum of $25,000.00 to the awarded fees and expenses, and the Debtor paid the balance.

On December 4, 2009, the Court approved and allowed fees and expenses incurred by WRBD from July 1, 2009 through October 31, 2009, in the amounts of $28,557.50 and $191.71, respectively, pursuant to the ORDER APPROVING FIRST INTERIM APPLICATION FOR COMPENSATION AND REIMBURSEMENT OF EXPENSES BY COUNSEL FOR OFFICIAL COMMITTEE OF CREDITORS. Such

Case: 09-50771    Doc# 226    Filed: 06/30/10    Entered: 06/30/10 10:50:52    Page 19 of 75

awarded fees and expenses have not been paid.

On December 30, 2009, the Court entered its ORDER RE SECOND APPLICATION FOR INTERIM COMPENSATION AND REIMBURSEMENT OF EXPENSES BY FINANCIAL ADVISORS FOR DEBTOR, whereby it allowed fees for FLG in the sum of $21,925.00 for the period June 13, 2009 through November 12, 2009. Such awarded fees have not been paid.

Also on December 30, 2009, the Court entered its ORDER RE FIRST APPLICATION FOR INTERIM COMPENSATION BY TAX ACCOUNTANT FOR DEBTOR, whereby it allowed fees for Hayashi in the sum of $25,615.70 for the period February 27, 2009 through October 31, 2009. The Debtor has paid $7,500.00 of the awarded fees, leaving a balance of $18,115.70 unpaid.

On January 4, 2010, the Court entered its ORDER RE SECOND APPLICATION FOR INTERIM COMPENSATION AND REIMBURSEMENT OF EXPENSES BY ATTORNEYS FOR DEBTOR whereby it allowed attorneys' fees for Murray & Murray in the sum of $82,570.00 and reimbursement of expenses in the sum of $1,440.15 for the period of June 1, 2009 through November 15, 2009. Such awarded fees and expenses have not been paid.

On January 4, 2010, pursuant to its ORDER RE SECOND APPLICATION FOR INTERIM COMPENSATION AND REIMBURSEMENT OF EXPENSES BY ATTORNEYS FOR DEBTOR, the Court deferred fees of Murray & Murray totaling $13,412.00 until a later application. Such fees have not yet been awarded or paid.

Inclusive of the foregoing, certain of the Debtor's Professionals and the Committee's Professional, have accrued unpaid fees and expenses through March 31, 2010 and anticipate accruing additional fees and expenses through June 30, 2010, which fees and expenses collectively total approximately $570,639.87, after an agreed upon ten percent (10%) reduction and fee cap by certain of the Debtor's and Committee's Professionals as more fully described in section 6.1.1 of the Plan and section 10.4.1 below. All fees and expenses of the Debtor's Professionals and the Committee's Professional constitute Administrative Claims.

### 8.7. **Relief From Stay.**

On March 11, 2009, General Electric Capital Corporation filed a motion for relief from stay alleging, among other things, post-petition default, seeking adequate protection or relief to recover

JWM/JLF/cc
K:\Pacific Gold\57711\DS\Disclosure Statement (June DS conformed to June 30).doc
14
DISCLOSURE STATEMENT FOR DEBTOR'S PLAN OF LIQUIDATION (DATED JUNE 30, 2010)

Case: 09-50771   Doc# 226   Filed: 06/30/10   Entered: 06/30/10 10:50:52   Page 20 of 75

leased and/or financed equipment. The Debtor opposed the motion and after the hearing and negotiations, the parties executed and filed their STIPULATION RESOLVING MOTION FOR RELIEF FROM AUTOMATIC STAY [PERSONAL PROPERTY] which was approved by Court order entered on April 15, 2009.

### 8.8. **Real Property Lease.**

The Debtor requested an extension of time to assume or reject its unexpired nonresidential real property lease. Following a hearing on May 8, 2009 and negotiations with the lessor, on May 12, 2009, the parties executed and filed a STIPULATION ON MOTION TO EXTEND TIME TO ASSUME OR REJECT UNEXPIRED NONRESIDENTIAL REAL PROPERTY LEASE which was approved by order of the Court on May 13, 2009. The order extended to September 4, 2009 the time for the Debtor to assume or reject the lease. Upon further stipulation of the parties, on August 6, 2009, the Court entered its ORDER RE STIPULATION TO EXTEND TIME TO ASSUME OR REJECT UNEXPIRED NONRESIDENTIAL REAL PROPERTY LEASE further extending the time for the Debtor to assume or reject the lease to December 15, 2009. Upon further stipulation of the parties, on November 18, 2009, the Court entered its ORDER RE THIRD STIPULATION TO EXTEND TIME TO ASSUME OR REJECT UNEXPIRED NONRESIDENTIAL REAL PROPERTY LEASE further extending the time for the Debtor to assume or reject the lease to June 15, 2010. Upon further stipulation of the parties, on May 11, 2010, the Court entered its ORDER RE FOURTH STIPULATION TO EXTEND TIME TO ASSUME OR REJECT UNEXPIRED NONRESIDENTIAL REAL PROPERTY LEASE further extending the time for the Debtor to assume or reject the lease to December 31, 2010.

### 8.9. **Plan Exclusivity.**

The Debtor requested from the Court an order extending the exclusive period during which only the Debtor may file a plan and solicit acceptances thereof. The Debtor, the Committee and Rabobank thereafter entered into, and filed with the Court, the STIPULATION AMONG DEBTOR, CREDITORS' COMMITTEE AND RABOBANK FOR ENTRY OF ORDER EXTENDING THE EXCLUSIVE PERIODS DURING WHICH ONLY THE DEBTOR MAY FILE A PLAN AND SOLICIT ACCEPTANCES THEREOF ("Exclusivity Stipulation") to extend the exclusive periods to August 31, 2009 and October 30, 2009, respectively. On May 4, 2009, the Court approved the Exclusivity Stipulation and entered its order

JWM/JLF/cc

K:\Paso-Robles\Plan\TPF\TP#1 DS\Disclosure Statement (June DS Conference re 06/30/10 Entered 06/30/10 10:56:52)

DISCLOSURE STATEMENT FOR DEBTOR'S PLAN OF LIQUIDATION DATED JUNE 30, 2010

extending the exclusive periods to August 31, 2009 and October 30, 2009, respectively. On September 2, 2009, upon motion by the Debtor and agreement of Rabobank and the Committee, the Court entered its ORDER GRANTING DEBTOR'S MOTION FOR ORDER FURTHER EXTENDING THE EXCLUSIVE PERIODS DURING WHICH ONLY THE DEBTOR MAY FILE A PLAN AND SOLICIT ACCEPTANCES THEREOF whereby the exclusive periods were extended to October 31, 2009 and December 31, 2009, respectively. No further extensions were requested.

### 8.10. **Other Bankruptcy Administration Matters.**

The Schedules of Assets and Liabilities ("**Schedules**") and Statement of Financial Affairs were filed on November 4, 2008. The Debtor is current on its MOR reporting.

The Debtor has responded to information requests by the UST and has attended meetings as requested.

The Debtor submitted its Chapter 11 Status Conference Statement on April 2, 2009, and attended the Chapter 11 status conference before this Court on April 9, 2009.

### 8.11. **Marketing Efforts.**

Prior to and since the Petition Date, the Debtor has actively marketed the Club for sale. Various parties expressed interest, all of whom the Debtor aggressively pursued but who, with the exception of Purchaser, were either unwilling to enter into a letter of intent and/or were ultimately unable to provide funding to complete a purchase transaction.

Attached hereto as **Exhibit "C"** is a summary of the Debtor's marketing efforts and interested parties.

### 8.12. **Prior Contemplated Purchase Transaction**

On or about April 9, 2010, the Debtor entered into a purchase and sale agreement with a potential buyer whereby it agreed to sale substantially all of its assets in exchange for, among other things, funds sufficient to consummate a chapter 11 plan. The Debtor worked diligently towards a close and prepared and filed its DEBTOR'S PLAN OF LIQUIDATION DATED APRIL 9, 2010 (the "**April Plan**") and DISCLOSURE STATEMENT FOR DEBTOR'S PLAN OF LIQUIDATION DATED APRIL 9, 2010 ("**April Disclosure Statement**"). The Debtor sought and obtained an order shortening time for hearing on the April Disclosure Statement. No objections to the April Disclosure Statement were

JWM/JLF/cc
[La Paz Qualified DS (Disclosure Statement dated June DS) (three) (rev. July 2010)]

DISCLOSURE STATEMENT FOR DEBTOR'S PLAN OF LIQUIDATION DATED JUNE, 2010

Case: 09-50771   Doc# 226   Filed: 06/30/10   Entered: 06/30/10 10:50:52   Page 22 of 75

received; however through no fault of the Debtor's, the proposed buyer failed to fund the escrow as required by the purchase and sale agreement and the purchase transaction was never consummated. When the Debtor learned that the proposed buyer had not and would not fund escrow, it took the April Disclosure Statement hearing off calendar and began aggressively remarketing the Club for sale to additional potential purchasers.

8.13. **The Purchase Transaction**

On or about June 23, 2010, after 20 months of diligent marketing on the part of the Debtor's ownership, the Debtor entered the Purchase and Sale Agreement with the Purchaser, whereby it agreed to sell substantially all of its assets in exchange for, among other things, funds sufficient to consummate the Plan, as more fully described herein and in the Plan. The Purchase and Sale Agreement is attached as **Exhibit "A"** to the Plan.

## ARTICLE IX.

## THE DEBTOR'S ASSETS AND LIABILITIES

9.1. **Balance Sheets; Financial Reporting.**

Prior to the Petition Date, the Affiliate Lenders committed to funding a $1,200,000 Debtor in Possession Line of Credit (the "**DIP Line**"). Of that amount, $32,000 remains unfunded on the DIP Line. In addition, the Purchaser has committed to providing supplemental Debtor in Possession funding of $100,000.00, with $50,000.00 being released upon filing of the Disclosure Statement and $50,000.00 being released upon Plan Confirmation (the "**Purchaser DIP Line**"). Attached hereto as **Exhibit "A"** is the Debtor's annual projected cash flow budget showing, as of August 2010, projected cash on hand of $0.00 exclusive of the Purchaser DIP Line. As discussed in more detail hereinafter, the Purchase and Sale Agreement and the Plan contemplate that any and all funds necessary to consummate the Plan, in excess of the Debtor's cash on hand, the DIP Line and the Purchaser DIP, will be funded by the Purchaser. The Purchaser has provided satisfactory verification of funds to Debtor and Rabobank.

The Debtor has filed Monthly Operating Reports ("**MOR**") in this Case reporting all receipts and disbursements during the pendency of this Case. Attached hereto as **Exhibit "C"** is the most recently filed MOR (May 2010).

Case: 09-50711   Doc#: 226   Filed: 06/30/10   Entered: 06/30/10 10:50:52   Page 23 of 75

9.2.    **Cash on Hand.**

As of May 31, 2010, the Debtor's available cash totaled $66,386.00. These funds are held in an authorized debtor in possession bank account.

9.3.    **Assets.**

The Debtor owns and operates the Club, a private Golf club and centerpiece of a 565 acre master-planned residential community containing approximately 249 residential units. The Club was developed in 1999 at a cost of approximately $41,000,000. The Real Property was appraised as of January 1, 2002 at a value of $16,500,000. The Debtor believes that the property was appraised by Rabobank in January of 2008 at approximately $17,000,000. The Debtor also believes the property was appraised by Rabobank in approximately May 2010 for an "as is" value of $7,500,000.00.

9.4.    **Liabilities.**

The liabilities of and equity security interest in the Debtor are reflected in Article X below.

**ARTICLE X.**

**THE PLAN OF LIQUIDATION**

10.1.    **Overview of the Plan.**

The following is a brief overview of the material provisions of the Plan and is qualified in its entirety by reference to the full text of the Plan. Creditors, Interests Holders and other parties in interest are urged to review the Plan and Disclosure Statement in their entirety.

The key features of the Debtor's proposed Plan include the following:

- Pursuant to sections 101, 363, 365 and 1123(a)(5)(D) of the bankruptcy code, a sale of substantially all of the Debtor's assets, free and clear of all liens, to Purchaser, in exchange for cash sufficient to consummate the Plan, as more fully described in this Article hereinafter and in the Purchase and Sale Agreement, attached as **Exhibit "A"** to the Plan.

- The continuation of the Club as a private golf club under the ownership of Purchaser (the "**Purchaser's Club**" or the "**Purchaser Club**"). The Purchaser Club will be managed by the majority owners of Purchaser. It is contemplated that Purchaser will also enter

JWM/JLF/cc    18    DISCLOSURE STATEMENT FOR DEBTOR'S PLAN OF
La Paz Qualified DS\Disclosure Statement June DS\Disclosure Statement June 2010    LIQUIDATION DATED JUNE 2010

Case: 09-50771   Doc#: 226   Filed: 06/30/10   Entered: 06/30/10 10:56:52   Page 24 of 75

into Agreements with Mr. Gary Smith of the Slandringham Group, who has extensive experience in the Golf Industry, and Thomas S. deRegt of deRegt Golf, LLC who is the responsible party for the Debtor. It has been discussed that Mr. deRegt will receive some level of profit participation or fee income for his involvement in the transition and repositioning of the Club. However, no agreement has been finalized at this time.

- The execution of a new governing membership plan, which provides that all Persons that wish to join the Club post Confirmation must enter into a membership agreement and pursuant to the terms thereof must, among other thing, pay monthly dues and a nonrefundable initiation fee. The Purchaser Membership Agreement, in draft form, which is being offered to current Club Members (and under Alternative 2, Trade Vendors) **_ONLY_**, is attached as **Exhibit "B"** to the Plan. Purchaser Membership Agreement is a draft document only. The Purchaser Membership Agreement is subject to change at any time at the sole discretion of the Purchaser after further analysis of market conditions. The Purchaser Membership Plan, in draft form, which is being offered to current Club Members (and under Alternative 2, Trade Vendors) **_ONLY_**, is attached as **Exhibit "C"** to the Plan. The Purchaser Membership Plan is a draft document only. The Purchaser Membership Plan is subject to change at any time at the sole discretion of the Purchaser after further analysis of market conditions

- Rejection of the Membership Agreements on the Effective Date, without further action by the Debtor or Liquidating Debtor. All Club Members will receive the opportunity to enter into a Purchaser Membership Agreement, without paying an initiation fee. The opportunity for Club Members to enter into a Purchaser Membership Agreement will remain open for 60 days post Confirmation. During the 60 day opportunity period, Club Members who have not yet decided to join Purchaser's Club will be allowed to use the golf course at a reduced greens fee rate and to use the other club facilities on a cash or credit card basis. Those Club Members who choose to enter into a Purchaser Membership Agreement will be allowed to remain in the same membership category in which they currently belong and will have the privilege and right to use the Purchaser

Club facilities uninterrupted pursuant to the terms and conditions of the Purchaser Membership Plan and Purchaser Membership Agreement. Should such members subsequently resign from the Purchaser's Club, there will be no refund or reimbursement associated with the surrender of such membership. Those Club Members who choose not to enter into a Purchaser Membership Agreement will no longer be entitled to utilize the Purchaser Club facilities.

- Satisfaction or disallowance of Claims as more fully set forth herein below.
- Assumption and Assignment of certain executory contracts and unexpired leases as more fully described in Article XI herein.

### 10.2. Claims and Equity Interests and Treatment under the Plan.

The treatment under the Plan of Allowed Claims and Allowed Interests is in full and complete satisfaction of the legal, contractual, and equitable rights that each Person holding an Allowed Claim or an Allowed Interest may have in or against the Debtor or its property. This treatment supersedes and replaces any agreements or rights those entities have in or against the Debtor or its property. All Distributions under the Plan will be tendered to the Person holding the Allowed Claim or the Allowed Interest. **EXCEPT AS SPECIFICALLY SET FORTH IN THE PLAN, NO DISTRIBUTIONS WILL BE MADE AND NO RIGHTS WILL BE RETAINED ON ACCOUNT OF ANY CLAIM THAT IS NOT AN ALLOWED CLAIM OR ALLOWED INTEREST.**

### 10.3. Summary of Claims and Interests; Treatment.

The Claims against and Interests in the Debtor and their treatment under the Plan are summarized below:[4]

### 10.3.1 Administrative Expense Claims - Description.

Administrative Claims, generally, are Claims that arise during the pendency of the Chapter 11 case and, in business cases, are generally entitled to first priority in payment, pursuant to section 507(a)(2) of the Bankruptcy Code. These include Claims for: (a) costs or expenses of administration of a kind specified in Section 503(b) of the Bankruptcy Code, including any actual and necessary

---

[4] The general Claims Bar Date was June 16, 2009 and the Governmental Claims Bar Date was August 5, 2009.

Case: 09-50711  Doc# 220  Filed: 06/30/10  Entered: 06/30/10 10:50:52  Page 26 of 75

costs and expenses of preserving the Bankruptcy Estate incurred on or after the Petition Date and through and including Confirmation; (b) any cure amounts that must be paid in connection with the assumption of executory contracts or unexpired leases of the Debtor under Section 365 of the Bankruptcy Code; (c) fees due to the United States Trustee pursuant to 28 U.S.C. § 1930(a)(6); (d) allowed compensation and costs for professional services under Sections 330 and 331 of the Bankruptcy Code or otherwise; and (e) the value of any goods received by the Debtor within 20 days before the Petition Date in which the good have been sold to the Debtor in the ordinary course of business.

### 10.3.1.1    Administrative Expense Claims – Estimate.

The Debtor anticipates that the only Administrative Claims that will remain unpaid as of the Effective Date, if any, will be the fees and costs of professionals, which as of August 31, 2010 are estimated to be as follows:  Murray & Murray ($325,000); FB+M ($138,000); Hayashi ($17,772.62); FLG ($24,342.75); WRBD ($65,534.50) and Omni ($225.58 as of June 8, 2010).[5]  All professional fees incurred in the Case, with the exception of fees incurred by Omni and APR[6], are subject to the approval of the Bankruptcy Court on a duly noticed application for compensation.  In addition the professional fees identified in this paragraph, two trade creditors have filed claims alleging or attempting to allege 503(b) administrative priority as follows:  Ecolab $1,733.69; and Global Wine Imports: $600.00.   The Debtor also estimates that as of the Effective Date, there will be approximately $25,000 of allowable administrative expense claims arising out of and related to employees accrued post-petition personal time off.

### 10.3.1.2    Administrative Expense Claims – Treatment.

Other than Allowed Administrative Claims arising out of and related to employee accrued post-petition personal time off, except to the extent that the holder of a particular Administrative Claim has agreed to a different treatment of such Claim, each holder of an Allowed Administrative Claim will be paid in cash, in full, upon the later of: (a) the Effective Date; (b) if such Claim is initially a Disputed Claim, when it becomes an Allowed Administrative Claim; and (c) if such Claim

---

[5] Certain of the fees and costs of the Debtor's and Committee's Professionals identified herein include a 10% percent discount as more fully described in section 6.1.1 of the Plan and section 10.4.1 herein.
[6] Per Court order, Omni and APR may be paid in the ordinary course.

Case: 09-50771   Doc# 226   Filed: 06/30/10   Entered: 06/30/10 10:50:52   Page 27 of
75

is incurred after the Petition Date in the ordinary course of the Debtor's business, within such time as payment is due pursuant to the terms giving rise to such Claim or as otherwise authorized by the Bankruptcy Court. With respect to Allowed Administrative Claims arising out of and related to employee accrued post-petition personal time off, except to the extent that the holder of a particular Allowed Administrative Claim, if any, has agreed to a less favorable treatment of such Claim, the Purchaser will honor all Allowed Administrative Claims arising out and related to employee accrued personal time off in the ordinary course of business.

The foregoing is in full and final satisfaction of all Administrative Claims.

### 10.3.1.3    Administrative Expense Claims – Deadline for Requests for Payment.

Any request for allowance of an Administrative Claim pursuant to Section 503(a) of the Bankruptcy Code, other than by the Debtor's Professionals or the Committee's Professionals, must be filed on or before the Administrative Claims Bar Date. If the holder of an asserted Administrative Claim does not file and serve a request for payment of such Claim on or before that date, the holder will be forever barred from asserting such Claim or receiving any payment on account of such Claim.

### 10.3.1.4    Deadline for Objections.

Any objection to the allowance of an Administrative Claim (excluding Claims by the Debtor's Professionals or the Committee's Professionals for fees) must be filed by the Administrative Claim Objection Deadline. If no objection to the applicable Administrative Claim is filed on or before the Administrative Claims Bar Date, such Administrative Claim will be deemed Allowed as of that date.

### 10.3.2    United States Trustee Fees.

Quarterly fees owed to the United States Trustee will be paid by the Liquidating Debtor when due in accordance with applicable law and the Liquidating Debtor will continue to file reports to show the calculation of such fees for the Bankruptcy Estate until the Case is closed under Bankruptcy Code Section 350.

### 10.3.3    Tax Claims.

JWM/JLF/cc
K:\Paragon\5077-1 Amd DS\Disclosure Stmt 2nd Amd (redline re June DS).doc
DISCLOSURE STATEMENT FOR DEBTOR'S  PLAN OF LIQUIDATION DATED JUNE 30, 2010

Case: 09-50771   Doc# 226   Filed: 06/30/10   Entered: 06/30/10 10:50:52   Page 28 of 75

Certain Claims by governmental units, primarily tax claims, are entitled to priority over pre-petition Claims of general unsecured Creditors pursuant to Section 507(a)(8) of the Bankruptcy Code. As of the date of this Disclosure Statement, there are no scheduled priority Tax Claims, however, there are $1,602.65 in filed priority Tax Claims. The Debtor believes that of that amount only $766.00 will be Allowed.[7] Except to the extent that the holder of a particular Tax Claim has agreed to a different treatment of such Claim, each holder of an Allowed Tax Claim will be paid in cash, in full upon the later of: (a) the Effective Date; and (b) if such Claim is initially a Disputed Claim, when such Claim becomes an Allowed Claim; provided, however, that no such payment will be made unless and until the holders of Allowed Claims entitled to priority pursuant to Section 507(a)(2) through (a)(7) of the Bankruptcy Code are paid or otherwise receive the treatment accorded to them in the Plan; and, provided further, that any such Tax Claim will be paid no later than five (5) years from the Petition Date with interest as provided by applicable nonbankruptcy law.

All Claims are subject to verification and may be reduced after objections are resolved by the Bankruptcy Court.

### 10.3.4    Class 1 (Monterey County Tax Assessor) – Unimpaired.[8]

Class 1 consists of the Allowed Secured Claims of the Monterey County Tax Assessor for property taxes secured by the Debtor's Real Property.[9] The Monterey County Tax Assessor has filed an amended proof of Claim alleging a Secured Claim in the amount of $276,516.00. As of the Effective Date, the Debtor anticipates that there will be $276,516.00 in Allowed Class 1 Claims.

The Monterey County Tax Assessor will receive, on account of such Claim(s), a payment in cash in full on the Effective Date.

Class 1 is unimpaired and the holder of Class 1 Claim(s) is presumed to have accepted the

---

[7] The Franchise Tax Board has filed a claim in the amount of $836.60 alleging priority amount. The Debtor maintains that it paid the Franchise Tax Board tax in full on April 6, 2009 and no amount is owing.

[8] Regardless of any Creditor's recovery on account of an asserted Secured Claim during the pendency of this case, the Debtor will retain any and all rights to contest the validity and priority status of any asserted Secured Claim and any and all rights to seek to avoid and recover any asserted collateral (or the value of such collateral) that was transferred to the respective Creditor of the Secured Claim or liquidated by the Creditor of the Secured Claim on account of an asserted Claim.

[9] A Claim is a Secured Claim only to the extent of the value of the Creditor's interest in the Debtor's interest in the Collateral securing the Claim or the extent of the amount subject to recoupment or setoff, as applicable, as determined by the Bankruptcy Court under section 506(a), 553, and/or 1129(b)(2)(A) of the Bankruptcy Code, as applicable.

Plan. All Claims are subject to verification and may be reduced after objections are resolved by the Bankruptcy Court.

### 10.3.5 Class 2 (Rabobank) – Impaired.

Class 2 consists of the Allowed Secured Claim of Rabobank. The Debtor has scheduled Rabobank as a Class 2 Claim in the amount of $7,790,000.00. Rabobank has filed a proof of Claim alleging a Secured Claim in the amount of $7,856,075.54.

Class 2 is impaired. The Plan provides that on the Effective Date, Rabobank will be paid $1,000,000.00 in cash and will receive a promissory note for $5,500,000.00 from the Purchaser, in full and final satisfaction of any and all Class 2 Claims, and in full and final satisfaction of any and all Claims, causes of actions, liens or other rights held by Rabobank against the Debtor, the Debtor's property or property of the Bankruptcy Estate, the Liquidating Debtor, Purchaser and/or the Guarantors. Rabobank shall provide an executed deed of reconveyance and such other documents and releases as may be necessary to effectuate the provisions of this paragraph and the Plan provisions and paragraphs relating to Rabobank and Class 2 Claims.

All Claims are subject to verification and may be reduced after objections are resolved by the Bankruptcy Court

### 10.3.6 Class 3 (Affiliate Lenders) – Impaired.

Class 3 consists of the Allowed Secured Claim(s) of the Affiliate Lenders, including claims arising out of and in connection with: (1) the Pre-Petition Secured Loan, as defined hereinafter; and (2) the DIP Line.

Pre-petition, the Affiliate Lenders loaned the Debtor $750,000.00 on a secured basis, subordinate to Rabobank (the "Pre-Petition Secured Loan"). The Pre-Petition Secured Loan is secured by the Real Property. The Debtor scheduled the Affiliate Lenders as a Secured Claim on the Pre-Petition Secured Loan in the amount of $750,000.

Pre-petition, the Affiliate Lenders also committed to funding the $1,200,000.00 DIP Line to be used by the Debtor during the pendency of this Case. To date, $1,168,000.00 of the DIP Line has been funded and the remainder of the DIP Line will be funded pursuant to the Plan.

The total dollar amount of Class 3 Claims is $1,950,000.00

Case: 09-50711   Doc# 226   Filed: 06/30/10   Entered: 06/30/10 10:50:52   Page 30 of 75

Class 3 is impaired. The Affiliate Lenders, collectively, or their successors and assigns, will receive nothing on account of their Class 3 Claim(s). The foregoing is in full and final satisfaction of all Class 3 Claims.

### 10.3.7      <u>Class 4 (Purchaser) – Unimpaired</u>

Class 4 consists of the Allowed Secured Claim(s) of the Purchaser. As part of the Purchase Transaction, the Purchaser has agreed to provide debtor in possession financing in the total amount of $100,000.00, in two tranches after the Debtor's affiliates debtor in possession financing has been exhausted, upon the occurrence of certain events as more fully described in the Purchase and Sale Agreement, attached as **Exhibit "A"** to the Plan.

Class 4 is unimpaired. On the Effective Date, the amount advanced on the Purchaser DIP Line will be applied against the cash investment identified in section 6.1.2 of the Plan and section 10.4.2 hereof. The foregoing is in full and final satisfaction of all Class 4 Claims.

### 10.3.8      <u>Class 5 (Priority Claims) - Unimpaired</u>.

Class 5 consists of all Claims entitled to priority under Bankruptcy Code Section 507(a) other than unclassified Section 503(b) Administrative Claims and Section 507(a)(8) Tax Claims described above. The Debtor scheduled $55,887.92 in Class 5 Priority Claims (consisting of employee wage and benefit claims and customer deposits). There are $848,703.72 in filed Class 5 Claims. The Debtor estimates that on the Effective Date of the Plan, there will be $49,000 in Allowed Class 5 Claims, consisting entirely of pre-petition accrued personal time off.

With respect to Allowed Class 5 Claims, except to the extent that the holder of a particular Allowed Class 5 Claim, if any, has agreed to a less favorable treatment of such Claim, the Purchaser will honor all Allowed Class 5 Claims in the ordinary course of business. The foregoing is in full and final satisfaction of all Class 5 Claims.

Class 5 Claims are unimpaired and the holders of Class 5 Claims are presumed to have accepted the Plan. Claims are subject to verification and may be reduced after objections are resolved by the Bankruptcy Court

### 10.3.9      <u>Class 6 (Trade Payable Unsecured Claims) - Impaired</u>.

Class 6 consists of Allowed Trade Payable Unsecured Claims held by Trade Vendors not

included or provided for in any other class, and including without limitation, all unsecured Claims of Trade Vendors for goods delivered or services provided to the Debtor prior to the Petition Date, but excluding Administrative Claims, Club Member Unsecured Claims, Priority Claims, Tax Claims and Rejection Claims.

A preliminary review of the Debtor's books and records reveals that there are $375,644 in Class 6 Claims. This total is exclusive of Rejection Claims which may be asserted following Confirmation as a result of the Debtor's rejection of executory contracts and unexpired leases as contemplated by the Plan. All Claims are subject to verification and are likely to be reduced following resolution of Disputed Claims, including mitigation and offset as applicable.

### 10.3.10 <u>Class 7 (Club Member Unsecured Claims) - Impaired.</u>

Class 7 consists of Allowed Club Member Unsecured Claims held by Club Members not included or provided for in any other class, and including without limitation, all Rejection Claims held by Club Members and all unsecured Claims of Club Members for Club initiation fees or deposits paid to the Debtor prior to the Petition Date, but excluding Administrative Claims, Priority Claims, Tax Claims and Trade Payable Unsecured Claims.

A preliminary review of the Debtor's books and records indicates that there are $24,882,750 in Claims that may be included in Class 7. This total is inclusive of Rejection Claims which may be asserted following Confirmation as a result of the Debtor's rejection of executory contracts and unexpired leases as contemplated by the Plan. All Claims are subject to verification and are likely to be reduced following resolution of Disputed Claims, including mitigation and offset as applicable.

### 10.3.11 <u>Alternative 1 Treatment of Class 6 and 7 Claims</u>

#### 10.3.11.1 <u>Class 6 (Trade Payable Unsecured Claims).</u>

The holders of Class 6 Trade Payable Unsecured Claims will be paid sixty percent (60%) of their Class 6 Claims on the Effective Date. The foregoing is in full and final satisfaction of all Class 6 Claims. Class 6 is impaired. Claims are subject to verification and may be reduced after objections are resolved by the Bankruptcy Court.

#### 10.3.11.2 <u>Class 7 (Club Member Unsecured Claims).</u>

Upon the Effective Date, the Debtor will reject all Membership Agreements and the Holders of Class 7 Club Member Unsecured Claims will receive, in exchange for their pre-petition Class 7 Claims, the opportunity to enter into a Purchaser Membership Agreement whereby Holders of Class 7 Claims will have the right and privilege to utilize Purchaser's Club in accordance therewith and pursuant to the terms and conditions thereof without paying an initiation fee. The opportunity for Club Members to enter into the Purchaser Membership Agreement will remain open for 60 days after the date of the Notice of Confirmation, as reflected on the face of the Notice of Confirmation. During the 60 day opportunity period, Club Members who have not yet decided to join the Purchaser's Club will be allowed to use the golf course at a reduced greens fee rate and to use the other club facilities on a cash or credit card basis. Those Club Members who choose to enter into the Purchaser Membership Agreement will be allowed to remain in the same membership category in which they currently belong and will have the privilege and right to use the club facilities uninterrupted pursuant to the terms and conditions of the Purchaser Membership Plan and Purchaser Membership Agreement. Should such members subsequently resign from the Purchaser's Club, there will be no refund or reimbursement associated with the surrender of such membership. Those Club Members who choose not to enter into a Purchaser Membership Agreement will no longer be entitled to utilize the club facilities, and will receive nothing on account of their Claims. The foregoing is in full and final satisfaction of all Class 7 Claims, including Rejection Claims. Class 7 is impaired. Claims are subject to verification and may be reduced after objections are resolved by the Bankruptcy Court.

### 10.3.12 **Alternative 2 Treatment of Class 6 and 7 Claims**

Should the Court indicate its inclination not to confirm the Plan, including but not limited to, based on the treatment of Classes 6 and 7 as outlined in Alternative 1 above, the Debtor proposes the following alternative treatment of Classes 6 and 7:

The Allowed Claims of Club Members and Trade Vendors shall be combined into a single class (the "Combined Class") and receive (i) a pro rata distribution of $225,386.40, or (ii) the opportunity to enter into a Purchaser Membership Agreement under the terms and conditions described in Section 5.4 of the Plan and the this section herein.

JWM/JLF/cc
K:\Pacific Gold\PLEADINGS\DS\Disclosure Statement (June 2010).wpd
27
DISCLOSURE STATEMENT FOR DEBTOR'S PLAN OF LIQUIDATION DATED JUNE 30, 2010

Case: 09-50771   Doc# 226   Filed: 06/30/10   Entered: 06/30/10 10:56:52   Page 33 of 75

Within 30 days of the Effective Date, the Debtor shall serve notice (the "<u>Election Notice</u>") on the members of the Combined Class of their right to elect one of the following treatments:

(A)     Acceptance of a Purchaser Membership Agreement under the terms and conditions described in Section 10.3.10 of the Disclosure Statement and this section herein; or

(B)     Participation with other so electing claimants to receive a pro rata distribution of $225,386.40.

The Election Notice will be accompanied by an election form (the "Election Form") for each member of the Combined Class to indicate its choice.  Election Forms shall be returned to the Debtor's counsel within ten (10) days of service of the Election Notice.  Club Members who fail to timely submit an Election Form shall be deemed to have elected alternative (A) above.  Trade Vendors who fail to timely submit an Election Form shall be deemed to have elected alternative (B) above.

The Combined Class is impaired. Claims are subject to verification and may be reduced after objections are resolved by the Bankruptcy Court.

### 10.3.13     Class 8 (Insider Unsecured Claims) - Impaired.

Class 8 consists of all Allowed Insider Unsecured Claims not included or provided for in any other class, including, without limitation, all Rejection Claims of Insiders and all unsecured Claims of Insiders for loans, goods delivered or services provided to the Debtor prior to the Petition Date, but excluding Administrative Claims, Priority Claims, Affiliate Lender Claims and Tax Claims.  A preliminary review of the Debtor's books and records indicates that there are $39,956,427.00 in Class 8 Claims.

Class 8 is impaired.  Holders of Class 8 Claims will receive nothing on account of their Class 8 Claims and are presumed to have rejected the Plan.

### 10.3.14      Class 9 (Interests) - Impaired.

Class 9 consists of all Interests in the Debtor.  All Interests shall be extinguished on the Effective Date.

Class 9 is impaired.  Holders of Class 9 Interests will receive nothing on account of their Class 9 Interests and are presumed to have rejected the Plan.

10.4. **Implementation of the Plan of Liquidation.**

The Plan provides as follows:

**10.4.1** **Purchase Price**.

Pursuant to the Purchase and Sale Agreement, on the Effective Date, Purchaser will acquire substantially all of the Debtor's assets pursuant to 11 U.S.C. §§ 105(a), 363 and 1123(a)(5)(D), free and clear of all Claims, liens, interests and encumbrances of any and every kind.   Should there be any conflict or inconsistency between the terms of the Plan and the terms of the Purchase and Sale Agreement, the terms of the Purchase and Sale Agreement will govern. The purchase price for Purchaser's acquisition of the Debtor's assets, payable on the Effective Date, will include the following:

(a) $276,516.00 for payment to the Class 1 claimant, the County of Monterey;

(b) $1,000,000 for payment to the Class 2 claimant, Rabobank;

(c) Sufficient funds to pay Class 5 Wage Claims, if any;

(d) $225,384.40 (60% of $375,644) for payment to the Class 6 Trade Payable Unsecured Claims;

(e) Purchaser Membership Agreements for all Class 7 Club Members who elect to become members of Purchaser's Club; and

(f) $570,639.87 estimated for payment of the Debtor's Professionals and the Committee's Professionals, to be distributed as follows:

(1) Murray & Murray: $325,000.

(A) Murray & Murray has agreed to a 10% reduction in its fees and expenses incurred and unpaid through May 31, 2010 [$261,122.63 X 10% = $26,112.26] provided that the 10% reduction is in lieu of any reduction that might otherwise occur due to an objection to its fees and expenses by the Debtor or the Purchaser, or any of their direct or indirect affiliates, who, in consideration thereof, shall waive any and all objections to such fees and expenses. This agreement will be recited in Murray & Murray's application for compensation.

(B)     Murray & Murray has also agreed to cap its fees and expenses in the case at $325,000 subject to plan confirmation being uncontested and/or minimally contested.   More specifically, if confirmation is contested and Murray & Murray is required to conduct and/or engage in discovery, any fees incurred doing so will not be subject to the $325,000 cap.   In addition, if confirmation is contested and the confirmation hearing continues for more than 2 days, any fees and expenses incurred after the second day will not be subject to the cap.   Any fees and expenses incurred relative to an appeal of the confirmation order will also not be subject to the cap;

(ii)     Farella, Braun + Martel, LLP: $138,000.  Farella, Braun + Martel, LLP has agreed to cap its fees and expenses in the case at $138,000. This includes a 10% reduction of its fees and expenses incurred and unpaid through May 31, 2010, provided that the 10% reduction is in lieu of any reduction that might otherwise occur due to an objection to its fees and expenses by the Debtor or the Purchaser, or any of their direct or indirect affiliates, who, in consideration thereof, shall waive any and all objections to such fees and expenses. This agreement will be recited in Farella, Braun + Martel's application for compensation;

(iii)     FLG Partner, LLP: $24,342.75.  FLG has agreed to a 10% reduction in its total estimated fees of $27,048;

(iv)     Hayashi & Wayland Accounting and Consulting, LLP:  $17,772.62. Hayashi & Wayland has agreed to a 10% reduction of its total fees of $19,747.36;

(v)     Wendel Rosen Black & Dean, LLP: $65,524.50. Wendell Rosen Black & Dean, LLP shall agree to cap its fees and expenses in the case at $65,534.50. This includes a 10% reduction in its projected fees and expenses, provided that the 10% reduction is in lieu of any reduction that might otherwise occur due to an objection to its fees and expenses by the Debtor or

JWM/JLF/cc
K:\Pacific Gold\DS\Third Amended DS\Discovery Bar Date June DS\Conference Draft.DISCLOSURE STATEMENT DATED JUNE 30, 2010
DISCLOSURE STATEMENT FOR DEBTOR'S  PLAN OF LIQUIDATION DATED JUN 30, 2010

Case: 09-50771    Doc# 226    Filed: 06/30/10    Entered: 06/30/10 10:50:52    Page 36 of 75

the Purchaser, or any of their direct or indirect affiliates, who, in consideration thereof, shall waive any and all objections to such fees and expenses. This agreement will be recited in Wendel Rosen's application for compensation

Except for those expenses described in this section and those expenses described in the Plan, specifically those expenses described in section 6.1.1 of the Plan, the Purchaser will not be liable for any other post-Confirmation expenses of administration of the Bankruptcy Estate.

A confirmation deposit consisting of sufficient cash to pay all of the cash items listed in this Section 6.1.1. shall be deposited by Purchaser into the Debtor's counsel's trust account at least seven (7) days prior to the Confirmation Hearing.

### 10.4.2 Cash Investment.

In addition to the purchase price, Purchaser shall arrange for the sum of $1,100,000 to be invested into Purchaser on or after the Effective Date, as necessary, to provide funds for capital improvements and working capital.

### 10.4.3 Post Closing Club Ownership and Management.

Upon the Closing of the Purchase Transaction, the Club shall be owned by Purchaser and managed by the majority owners of Purchaser. It is contemplated that Purchaser will also enter into Agreements with Mr. Gary Smith of the Slandringham Group, who has extensive experience in the Golf Industry, and Thomas S. deRegt of deRegt Golf, LLC who is the responsible party for the Debtor. It has been discussed that Mr. deRegt will receive some level of profit participation or fee income for his involvement in the transition and repositioning of the Club. However, no agreement has been finalized at this time.

### 10.4.4 Continuing Effect and Performance of Existing Orders.

The Bankruptcy Court has entered various orders during the pendency of these cases which will remain in effect notwithstanding confirmation of the Plan, and the Liquidating Debtor (and post-closing of the Purchase Transaction, the Purchaser,) will continue to carry out the matters provided for in such orders. Without limitation, these orders include: (a) the ORDER AUTHORIZING DEBTOR TO CONTINUE CERTAIN MEMBERS' BENEFITS AND AMENITIES PROGRAMS entered on February 12, 2009 whereby the Court authorized the Debtor to honor its obligations to holders of pre-petition gift

certificates, pre-paid massages, and pre-paid fitness/wellness packages, to the extent that each individual holds less than $2,425 of such claims, in the ordinary course of business; and (b) ORDER AUTHORIZING DEBTOR TO: (I) HONOR PREPETITION EMPLOYEE WAGES, GRATUITIES AND OBLIGATIONS; AND (II) FOR DEBTOR, BANKS AND OTHER FINANCIAL INSTITUTIONS TO COMPLY WITH PROCEDURES RELATING THERETO, entered on February 16, 2009, whereby, among other things, the Court authorized the Debtor to honor its obligations to employees arising out of accrued pre-petition personal time off up to the amount of $10,950.00, in the ordinary course of business.

### 10.5.     **Operations Pending Effective Date and Close of Purchase Transaction.**

Until the Effective Date, the Debtor will continue to operate its business subject to all applicable requirements of the Bankruptcy Code and the Bankruptcy Rules. On and after the Effective Date and until the Purchase Transaction closes, the Liquidating Debtor will continue to operate its business and may recruit new club members, obtain credit, incur debt, grant security interests and liens, and otherwise acquire and dispose of assets pursuant to applicable corporate law, but subject to the Plan and the Purchase and Sale Agreement. The Liquidating Debtor will be free of any restriction imposed by the Bankruptcy Court, the Bankruptcy Code and the Bankruptcy Rules, other than those obligations set forth in the Plan.

### 10.6.     **Cancellation of Legal Entities.**

Pursuant to the provisions of the California General Corporation Law, the Liquidating Debtor will be dissolved and its corporate existence terminated, without further corporate action, upon the entry of a Final Decree in the Bankruptcy Case pursuant to Bankruptcy Rule 3022. The Order of Confirmation will be deemed the appropriate authorization required under the California General Corporation Law, authorizing the Responsible Person and the Liquidating Debtor to file the requisite certificates of dissolution and certificates of cancellation with the California Secretary of State together with any other filings that may be necessary or appropriate to cancel and dissolve the Liquidating Debtor.

### 10.7.     **Distributions.**

#### 10.7.1     **Distribution Account**.

If the Disbursing Agent is a Person other than the Responsible Person, the Disbursing Agent

will hold any funds transmitted to it in a segregated trust account for the benefit of holders of Allowed Claims.

### 10.7.2        Distribution Addresses.

Unless a Creditor has provided the Debtor or the Liquidating Debtor and its counsel with written notice of a different address, Distributions will be mailed to Creditors at the address set forth in the proofs of Claim filed with the Bankruptcy Court. If no proof of Claim is filed with respect to a particular Claim, the Distribution will be mailed to the address set forth in the Schedules filed by the Debtor.

### 10.7.3        Withholding Taxes.

Pursuant to Section 346(h) of the Bankruptcy Code, the Disbursing Agent will be entitled to deduct any federal, state or local withholding taxes from any cash payments made with respect to Allowed Claims, as appropriate. The Disbursing Agent will be permitted to withhold a Distribution to any Creditor who has not provided information requested by the Disbursing Agent for the purpose of fulfilling its obligations hereunder. The Disbursing Agent will comply with all reporting obligations imposed on it by any governmental unit with respect to withholding and related taxes.

### 10.8.        Responsible Person.

On and after the Effective Date, Thomas S. deRegt shall serve as the Responsible Person and Disbursing Agent. The Responsible Person will be replaced in the event of a voluntary resignation, death, incapacity or at the request of a party in interest for "cause" upon order of the Bankruptcy Court. In the event of a voluntary resignation, the then-Responsible Person will select a replacement. In all other events, the Court will appoint a replacement. A voluntary resignation will not be effective until a successor has accepted in writing his or her appointment.

The Responsible Person will manage the Liquidating Debtor and will have all of the authority to act on behalf of the Liquidating Debtor as if the Responsible Person was the sole member, director and officer, in accordance with the Bankruptcy Code, the Bankruptcy Rules and Local Rules. Such management will include: (a) fulfilling the duties and obligations of the Debtor and the Liquidating Debtor under the Plan; and (b) fully administering the Bankruptcy Estate as required by the Plan, the Order of Confirmation, the Bankruptcy Code and the Bankruptcy Rules,

Case: 09-50771    Doc# 226    Filed: 06/30/10    Entered: 06/30/10 10:56:52    Page 39 of 75

which duties and obligations include, without limitation, the facilitation of Distributions pursuant to the Plan, reviewing Claims, objecting to Disputed Claims, supervising the preparation and filing of required tax returns of the Debtor and closing the Bankruptcy Case. The Liquidating Debtor will be substituted as successor to the Debtor and its Estate in all actions and proceedings pending or thereafter commenced in the Bankruptcy Court with respect to Disputed Claims. Without limiting the foregoing, the Responsible Person, acting on behalf of the Liquidating Debtor, will have all of the rights and powers of an estate representative appointed pursuant to Section 1123(b)(3) of the Bankruptcy Code to prosecute or otherwise assert the Retained Claims, if any, including Avoidance Actions, if any.

The Responsible Person may, in his discretion, employ such other persons as may be necessary to assist with implementing the Plan and as otherwise necessary in the Case.

The Responsible Person will have no obligation to pursue any affirmative claims on behalf of the Liquidating Debtor or its Estate and any such claims may be abandoned or waived at the sole discretion of the Responsible Person.

Upon the Effective Date, the Responsible Person will be authorized on behalf of the Debtor and Liquidating Debtor to execute all instruments, agreements and documents, and to take all actions by the Debtor or Liquidating Debtor necessary to effectuate the provisions of the Plan without further action by the Debtor's or Liquidating Debtor's members. Any such document, agreement or instrument executed and delivered by the Responsible Person will be conclusively deemed duly executed by the Debtor and/or Liquidating Debtor without the need for further corporate action or order of the Bankruptcy Court. After the Effective Date, the Responsible Person will be entitled to implement and administer the Plan without the need for further corporate action or order of the Bankruptcy Court.

10.9.    **Limitation of Liability of Responsible Person.**

Under the Plan, the Responsible Person will not be liable for any act or omission committed in his capacity as Responsible Person under the Plan while acting in good faith and in the exercise of reasonable business judgment, except to the extent determined to be the result of his own gross negligence, willful fraud or other willful misconduct. The foregoing limitation on liability will apply

JWM/JLF/cc
K:\Pasado Mañana\Plan III and DS\Disclosure Statement (Stated June DS).doc\First Amended DS    34    DISCLOSURE STATEMENT FOR DEBTOR'S PLAN OF
LIQUIDATION (DATED JUNE 30, 2010)

Case: 09-50771   Doc# 226   Filed: 06/30/10   Entered: 06/30/10 10:50:52   Page 40 of 75

equally to the agents, employees and professionals of the Liquidating Debtor acting on behalf of the Debtor, Liquidating Debtor and/or the Bankruptcy Estate.

10.10. **Disbursing Agent.**

Thomas S. deRegt will serve as Disbursing Agent unless otherwise ordered by the Court.

10.11. **De Minimis Distributions.**

Notwithstanding any other provision of the Plan, Distributions of less than $50.00 need not be made on account of any Allowed Claim; provided, however, that Distributions that would otherwise be made but for this provision will carry over to the next Distribution Date until the cumulative amount to which any holder of an Allowed Claim is entitled is more than $50.00, at which time the cumulative amount of such Distributions will be paid to such holder.

10.12. **Unclaimed Distributions.**

Any cash Distributions that remain unclaimed or unnegotiated for ninety (90) days following issuance of the check representing the Distribution or are returned for reasons other than the absence of a current or correct address (unless a current or correct address cannot be determined after reasonable inquiry) will become the property of the Purchaser.

10.13. **Tax Returns, Payments and Refunds.**

The Liquidating Debtor shall file or cause to be filed any and all delinquent and final tax returns and pay any and all taxes owed by the Debtor and the Liquidating Debtor on a timely basis (other than taxes provided for under the Plan). The Liquidating Debtor reserves all rights to amend prior tax returns of the Debtor and to pursue and collect all potential tax refunds, to claim losses and to take such other actions to the fullest extent allowed by law. Any such recoveries will be the property of the Purchaser.

10.14. **Further Orders.**

Upon motion by the Liquidating Debtor, the Bankruptcy Court may enter such other and further orders as may be necessary or appropriate to facilitate consummation of the Plan.

10.15. **Post Confirmation Employment of Personnel.**

The Responsible Person and any Disbursing Agent will be entitled to receive reasonable compensation. The Liquidating Debtor and any Disbursing Agent may employ or contract with

JWM/JLF/cc
K:\Pass\DS\Quill\DS[7574] DS\Disclosure Statement (June DS).ver.(three.free).ny DS.wpd
35
DISCLOSURE STATEMENT FOR DEBTOR'S PLAN OF LIQUIDATION DATED JUNE 30, 2010

Case: 09-50711   Doc# 226   Filed: 06/30/10   Entered: 06/30/10 10:56:52   Page 41 of 75

persons and other entities to perform, or advise and assist in the performance of, their respective obligations under the Plan. The Liquidating Debtor may continue to employ the Debtor's Professionals for the purposes for which they were employed before the Confirmation Date, and for such additional purposes as the Responsible Person may request, and the Liquidating Debtor may employ other professionals as necessary to perform its responsibilities under the Plan.

   10.16.   **Post-Confirmation Compensation and Reimbursement of Professionals.**

All professionals employed by the Liquidating Debtor and the Committee after the Confirmation Date will be entitled to payment of their reasonable post-Confirmation Date fees and reimbursement of expenses on a monthly basis, subject to the agreements described in section 6.1.1 of the Plan, section 10.4.1 herein and the following:

Each party requesting payment of such compensation shall serve a detailed statement of requested fees and expenses on the Notice Parties.

Any Notice Party or other party in interest may object to any portion of the requested fees and expenses. Any objection to the payment of fees or reimbursement of expenses must be in writing (and sufficiently detailed to allow the party whose fees or expenses are subject to the objection an opportunity to respond, and ultimately to allow the Bankruptcy Court to rule on such objection) and served on the Notice Parties and the party whose fees and expenses are subject to the objection. Such an objection must be served within fifteen (15) days after service of the detailed statement.

If there is no objection to a party's requested fees and expenses within such fifteen (15) day period, the Liquidating Debtor shall promptly pay the requested amount in full. If an objection to a portion of the fees or expenses requested is timely served, the Liquidating Debtor shall promptly pay the undisputed portion of such fees and expenses.

To the extent that an objection is timely served, the Responsible Person shall reserve monies in the Disputed Claims Reserve Account in the amount of the disputed fees and expenses pending resolution of said objection.

Any objection to a request for payment of fees and expenses will be resolved by either: (a) written agreement between the party requesting such fees and expenses and the objecting party; or

Case: 09-50771   Doc# 220   Filed: 06/30/10   Entered: 06/30/10 10:56:52   Page 42 of
75

(b) Final Order of the Bankruptcy Court. Resolution by the Bankruptcy Court must be requested by motion filed and served on the Notice Parties in accordance with the Bankruptcy Rules and the Local Rules on not less than twenty-one (21) days notice and such motion may be filed by either the requesting party or the objecting party. Any opposition to the motion must be filed and served no later than seven (7) days prior to the hearing.

Professionals shall not otherwise be required to file applications for Bankruptcy Court approval of post-Confirmation fees and expenses.

### 10.17. **Creditors' Committee.**

The Creditors' Committee shall continue to serve and function following the Confirmation Date, with all of the duties, obligations, defenses and immunities provided under all applicable provisions of the Bankruptcy Code relating to committees in cases under chapter 11 of the Bankruptcy Code, including all of the rights and powers set forth in Sections 1102 and 1103 of the Bankruptcy Code, until the final Distribution to Class 6 and 7 Creditors at which time the Creditors' Committee will be dissolved, and the Committee's Professionals discharged. If any member of the Committee resigns after the Effective Date, no new Person will be appointed thereto; provided, however, that the remaining members of the Committee may, in their discretion, appoint a Person to replace any member who has resigned.

### 10.18. **Post-Confirmation Notice.**

To the extent that any action taken in the Bankruptcy Case after the Effective Date requires notice under the Bankruptcy Code or the Bankruptcy Rules, a notice must be provided in accordance therewith, provided that notice will not be required to any Person whose Claim has been paid in full. The Liquidating Debtor and the Responsible Person may proceed via the "**scream or die**" notice procedures (failure to make a timely objection permits entry of an order without a hearing) as permitted by the Local Rules.

### 10.19. **Revesting of Property of the Estate.**

On the Effective Date and prior to the close of the Purchase Transaction, all property of the Debtor and the Bankruptcy Estate will vest in the Liquidating Debtor, free and clear of any and all liens, encumbrances, Claims and Interests of Creditors and Interest Holders subject to the provisions

of the Plan.  Revesting does not modify the nature of any contracts assumed by the Debtors and/or Liquidating Debtor.

### 10.20.　**Exemption From Certain Transfer Taxes.**

Following Confirmation, any sales or transfers will be, to the fullest extent permitted by law, entitled to the exemptions provided for under, and to the fullest extent permitted by, Section 1146(a) of the Bankruptcy Code.  The Debtor reserves all rights to request a determination of legal questions related to the tax effects of the Plan as appropriate under Section 1146(b) of the Bankruptcy Code.

### 10.21.　**Post-Confirmation Reports, Fees, and Final Decree.**

#### 10.21.1　**United States Trustee Fees**.

Not later than thirty (30) days after the end of each calendar quarter that ends after the Effective Date (including any fraction thereof), the Liquidating Debtor shall pay to the United States Trustee the quarterly fee for such quarter until the Case is converted, dismissed, or closed pursuant to a Final Decree, as required by 28 U.S.C. § 1930(a)(6).

#### 10.21.2　**Post-Confirmation Reports**.

Not later than thirty (30) days after the end of each calendar quarter which ends after the Effective Date, the Liquidating Debtor shall file and serve upon the United States Trustee a quarterly post-Confirmation status report in substantially the form provided by the United States Trustee. Further reports must be filed thirty (30) days after the end of every calendar quarter thereafter until the entry of a Final Decree, unless otherwise ordered by the Bankruptcy Court.

#### 10.21.3　**Final Decree**.

After the Bankruptcy Estate is fully administered, the Liquidating Debtor shall file an application for entry of a Final Decree, and shall serve the application on the Notice Parties.

### ARTICLE XI.
### EXECUTORY CONTRACTS AND UNEXPIRED LEASES

### 11.1.　**Treatment of Executory Contracts and Unexpired Leases.**

The Debtor reserves the right to move the Bankruptcy Court at any time for authority to assume, assume and assign, or reject, pursuant to Bankruptcy Code Section 365, any and all contracts that are executory and leases that are unexpired.

Case: 09-50711   Doc# 226   Filed: 06/30/10   Entered: 06/30/10 10:50:52   Page 44 of
75

## 11.2.     **Assumption of Executory Contracts and Unexpired Leases.**

Each contract and lease listed on **Exhibit "D"** to the Plan will be assumed by the Debtor on the Effective Date to the extent each such contract is executory and such lease is unexpired.[10]

## 11.3.     **Effect of Assumption of Executory Contracts and Unexpired Leases.**

All executory contracts and unexpired leases assumed prior to Confirmation or pursuant to the Plan and not otherwise rejected pursuant to the Plan will remain in full force and effect, be unimpaired by the Plan except as specifically modified by the Plan and the Order of Confirmation, and be binding on the parties thereto.

## 11.4.     **Adding and Removing Executory Contracts and Unexpired Leases.**

The provisions of this Article VII may be amended, with appropriate notice to those parties in interest directly affected, at any time prior to the conclusion of the Confirmation Hearing of the Plan, to add or remove executory contracts and unexpired leases to be assumed, assumed and assigned, or rejected pursuant to the Plan.

## 11.5.     **Defaults.**

Unless other treatment is agreed to between the parties to each assumed contract or lease, if there has been a default in an assumed executory contract or unexpired lease other than the kind specified in Section 365(b)(2) of the Bankruptcy Code, the Debtor shall, on or before the Effective Date: (a) cure, or provide adequate assurance that it will promptly cure, any such default; (b) compensate, or provide adequate assurance that it will promptly compensate, the other party to such contract or lease, for any actual pecuniary loss to such party resulting from such default; and (c) provide adequate assurance of future performance under such contract or lease.

## 11.6.     **Rejection of Executory Contracts and Unexpired Leases.**

Without admitting the validity of any other executory contracts and unexpired leases, all executory contracts and unexpired leases of the Debtor that are listed on **Exhibit "E"** to the Plan will be rejected by the Debtor as of the Effective Date. Confirmation of the Plan will be deemed to

---

[10] One or more of the contracts on **Exhibit "D"** to the Plan, identified with an **asterisk \*** and which is/are proposed to be assumed and assigned pursuant to the Plan was initially entered into by the respective lessor and the Debtor and Debtor's affiliate NCDG Golf, LLC and/or the Debtor's Principal Frederick Bates on the Debtor's behalf. Such contracts will be assigned by the Purchaser directly from, as applicable, NCDG Golf, LLC and/or Frederick Bates pursuant to agreement by NCDG Golf, LLC and/or Frederick Bates, respectively.

constitute Bankruptcy Court approval of such rejection.

### 11.7. Rejection Claims.

The holder of a Rejection Claim must file with the Bankruptcy Court, and serve on counsel for the Liquidating Debtor, a proof of Claim relative to such Rejection Claim on or before the Rejection Claims Bar Date or be forever barred from asserting any such Claim or receiving any payment or other Distribution on account of such Claim.

## ARTICLE XII.

## PROOFS OF CLAIM; OBJECTIONS

### 12.1. Time for Filing Proofs of Claim.

Proofs of Claim, when required, must be filed with the Bankruptcy Court no later than the applicable Claims Bar Date (which for most prepetition Claims was June 16, 2009 and for governmental units was August 5, 2009). However, Bankruptcy Rule 3003(b) provides that it is not necessary for a Creditor to file a proof of Claim if its Claim has been listed on the Debtor's Schedules filed with the Bankruptcy Court pursuant to Section 521(a)(1) of the Bankruptcy Code and Rule 1007(a)(3) of the Bankruptcy Rules, and is not listed as disputed, contingent, unliquidated or unknown as to amount. **Pursuant to Bankruptcy Rule 3003(c)(2), any creditor whose Claim is not scheduled by the Debtor or was scheduled as disputed, contingent, or unliquidated, and who fails to file a proof of Claim on or before the applicable Claims Bar Date or other applicable deadline may not be treated as a Creditor with respect to that Claim for purposes of voting on the Plan or receiving a distribution thereunder.**

### 12.2. Ownership and Transfers of Claims.

Distributions to Creditors under the Plan will be made to the Persons shown on the Debtor's or the Bankruptcy Court's records on the Effective Date. For purposes of any Distribution under the Plan, the Liquidating Debtor, the Disbursing Agent, the Responsible Person, and their professionals will have no obligation to recognize any transfer of Claims after the Effective Date.

ANY PARTY WHO ACQUIRES A CLAIM AGAINST THE LIQUIDATING DEBTOR AFTER THE EFFECTIVE DATE MUST ARRANGE WITH THE HOLDER ON THAT DATE TO RECEIVE DISTRIBUTIONS TO WHICH THE TRANSFEREE MAY BE ENTITLED. NEITHER THE LIQUIDATING DEBTOR NOR THE

DISBURSING AGENT WILL BE REQUIRED TO TRACK CHANGES IN OWNERSHIP OF CLAIMS AFTER THE EFFECTIVE DATE.

### 12.3. **Amendments to Claims.**

Except as provided by the Plan or as otherwise permitted by the Bankruptcy Court, the Bankruptcy Rules or applicable law, proofs of Claim: (a) may not be filed upon expiration of the applicable bar date; and (b) may not be amended after the expiration of the applicable bar date except for amendments to proofs of Claim to decrease the amount or priority thereof.

### 12.4. **Claim Objections.**

An objection to a Claim must be filed no later than the Claims' Objection Date which is ninety (90) days after the Effective Date; provided, however, that such date may be extended by the Bankruptcy Court for cause upon the ex parte motion of the Liquidating Debtor. The Liquidating Debtor will have the primary responsibility to review Claims filed against the Debtor, to file objections as appropriate and to resolve Disputed Claims.

### 12.5. **Disallowance of Claims.**

Pursuant to the Plan, all claims of any entity, party or person from whom property is sought by the Debtor, the Liquidating Debtor or the Responsible Person, under Sections 542, 543, 550 or 553, of the Bankruptcy Code, or with respect to whom the Debtor, the Liquidating Debtor or Responsible Person alleges is a transferee of a transfer that is avoidable under Section 522(f), 522(h), 544, 545, 547, 548, 549 or 724(a) of the Bankruptcy Code will be disallowed if: (a) the entity on the one hand and the Debtor, the Liquidating Debtor or the Responsible Person, on the other hand, agree or the Bankruptcy Court has determined by a Final Order that such entity or transferee is liable to turnover any property or monies under any of the aforementioned sections of the Bankruptcy Code; and (b) such entity or transferee has failed to turnover such property by the dates set forth in such agreement or Final Order.

The Plan contains the following important language with respect to the disallowance of claims:

EXCEPT AS OTHERWISE AGREED, ANY AND ALL PROOFS OF CLAIM FILED

Case: 09-50711   Doc#: 226   Filed: 06/30/10   Entered: 06/30/10 10:56:52   Page 47 of 75

AFTER THE APPLICABLE CLAIMS BAR DATE WILL BE DEEMED DISALLOWED AND EXPUNGED AS OF THE EFFECTIVE DATE WITHOUT ANY FURTHER NOTICE TO OR ACTION, OR APPROVAL OF THE BANKRUPTCY COURT, AND HOLDERS OF SUCH CLAIMS WILL NOT RECEIVE ANY DISTRIBUTIONS ON ACCOUNT OF SUCH CLAIMS, UNLESS SUCH LATE PROOF OF CLAIM IS DEEMED TIMELY FILED BY A FINAL ORDER OF THE BANKRUPTCY COURT ON OR BEFORE THE LATER OF (A) THE CONFIRMATION HEARING, OR (B) 45 DAYS AFTER THE APPLICABLE BAR DATE.

### 12.6. **Reserve Accounts.**

Subject to the next sentence, any cash that would be distributed to the holder of a Disputed Claim if it were an Allowed Claim on any Distribution Date hereunder will be set aside by the Disbursing Agent into the Disputed Claims Reserve Account. Not later than fifteen (15) days after the Disbursing Agent receives notice that a Disputed Claim has been Allowed in whole or in part, the Disbursing Agent shall Distribute the cash deposited into the Disputed Claims Reserve Account on account of such Disputed Claim. To the extent that cash payments made into the Disputed Claims Reserve Account on account of a Disputed Claim exceed the cash distributable with respect to the Allowed Amount of such Claim, such excess cash will become the property of the Purchaser.

### 12.7. **Distributions.**

Notwithstanding any provision of the Plan specifying a date or time for payments or Distributions of consideration hereunder, payments and Distributions in respect of any Claim that at such date or time is disputed, unliquidated or contingent, will not be made until a Final Order with respect to an objection, estimation or valuation of such Claim is entered by the Bankruptcy Court, whereupon appropriate Distributions will be made promptly in accordance with the preceding Section.

## ARTICLE XIII.

## DEFAULT

If the Liquidating Debtor defaults in the performance of any of its obligations under the Plan, and has not cured such default within a period of twenty-one (21) days after receipt of written notice of default from any party in interest affected by the alleged default, then such party in interest may

file a motion with the Bankruptcy Court seeking an order directing the Liquidating Debtor to perform such obligations. If the Liquidating Debtor defaults in the performance of any material obligation under the Plan, any party in interest, including the Office of the United States Trustee, may file a motion with the Bankruptcy Court seeking an order converting the Bankruptcy Case to a case under Chapter 7 of the Bankruptcy Code. If such motion is granted, the Plan will terminate, and all then remaining property of the Liquidating Debtor (not including property transferred to the Purchaser) will vest in the Chapter 7 estate. Such property will be administered by the Chapter 7 trustee as prescribed in Chapter 7 of the Bankruptcy Code. Any party in interest, including the Liquidating Debtor, may oppose any such motion.

## ARTICLE XIV.

## PRESERVATION OF RETAINED CLAIMS AND AVOIDANCE ACTIONS

### 14.1. **All Retained Claims and Avoidance Actions and Rights are Preserved.**

The Debtor continues to review transactions and records which process may result in additional claims against persons not yet identified herein, and may also result in other claims against persons identified herein in addition to those identified at this point in time. Nothing in the Plan will be deemed to constitute a waiver of the powers of the Debtor as a debtor in possession under the Bankruptcy Code or the Bankruptcy Rules, and the Debtor and the Liquidating Debtor, as applicable, will retain after Confirmation and after the Effective Date, all powers granted by the Bankruptcy Code and the Bankruptcy Rules to a trustee and debtor in possession, including without limitation, those relating to the recovery of property, avoidance of liens, and objection to, and/or subordination of, Claims. Confirmation of the Plan effects no settlement, compromise, waiver or release of any Retained Claim unless the Plan or Order of Confirmation specifically and unambiguously so provides. The failure of the Plan to refer to any particular Retained Claim is not and will not be construed as a settlement, compromise, waiver, or release of any such Retained Claim. All Retained Claims are hereby preserved and will continue to remain valid after the Effective Date. Except as provided in the Plan or the Order of Confirmation, the Debtor and the Liquidating Debtor reserve any and all Claims, Retained Claims, causes of action and rights against any and all third parties, whether such Claims, Retained Claims, causes of action or rights arose

Case: 09-50711   Doc#: 226   Filed: 06/30/10   Entered: 06/30/10 10:56:52   Page 49 of 75

before, on or after the Petition Date, the Confirmation Date, the Effective Date and/or the date Distributions are made. The entry of the Confirmation Order will not constitute *res judicata* or otherwise bar, estop or inhibit any actions by the Debtor or the Liquidating Debtor regarding any claims they hold as identified herein or otherwise.

Without limiting the generality of the foregoing, the Retained Claims include, but are not limited to, Avoidance Actions and all claims identified in the Debtor's Schedules and STATEMENT OF FINANCIAL AFFAIRS (as amended or supplemented), if any.

## ARTICLE XV.

## <u>RETENTION OF JURISDICTION</u>

The Bankruptcy Court will have and retain on and after the Confirmation Date and on and after the Effective Date exclusive jurisdiction of the Bankruptcy Case: (a) to enforce the provisions, purposes, and intent of the Plan; (b) to determine the allowance or disallowance of Claims; (c) to hear and determine proceedings initiated before or after the Confirmation Date and the Effective Date regarding the prosecution of the Retained Claims or any other rights, claims, causes of action or claims for relief held by the Liquidating Debtor against any party, including the recovery of property and subordination of Claims; (d) to fix and approve allowance of compensation and other Administrative Claims, including, if appropriate, payments to be made in connection with the Plan; (e) to adjudicate controversies arising from the terms of the Plan; (f) to hear and determine any proposed modifications of or amendments to the Plan to the extent permitted by Section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019; (g) to enforce or interpret the provisions of the Plan, the Order of Confirmation or any order entered by the Bankruptcy Court in the Bankruptcy Case; (h) to facilitate the consummation of the Plan; (i) to consider such other matters as may be set forth in the Plan or the Order of Confirmation; (j) to hear and determine any Claim of any Person of any nature whatsoever against the Debtor's Professionals or the Committee's Professionals arising in, under or related to the Case; (k) to hear any other matters pertaining to the Plan; and (l) to enter a Final Decree closing the Bankruptcy Case. If closed, the Bankruptcy Case may be reopened at any time to facilitate the provisions of Article XV of the Plan.

## ARTICLE XVI.

Case: 09-50711    Doc# 226    Filed: 06/30/10    Entered: 06/30/10 10:50:52    Page 50 of 75

## EFFECT OF CONFIRMATION

As of the Confirmation Date, the effect of the Order of Confirmation will be as provided in Section 1141 of the Bankruptcy Code, and as follows:

16.1. **Binding Effect of Plan.**

The provisions of the confirmed Plan will bind the Debtor, the Liquidating Debtor, any entity acquiring property under or otherwise accepting the benefits of the Plan, and every Creditor and Interest Holder, whether or not such Creditor or Interest Holder has filed a proof of Claim or Interest in the Bankruptcy Case, whether or not the Claim or Interest of such Creditor or Interest Holder is impaired under the Plan, and whether or not such Creditor or Interest Holder has accepted or rejected the Plan.

16.2. **Exculpation.**

In all respects, the Debtor and Liquidating Debtor are entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities under the Plan and in the context of the Chapter 11 Case. Excluding the obligations of the Debtor and the Liquidating Debtor under the Plan and their acts or omissions constituting negligence, gross negligence, bad faith, or willful misconduct, as finally determined by a Final Order of the Bankruptcy Court, neither the Debtor, the Liquidating Debtor nor any of their respective officers, directors, members, managers, employees, advisors, attorneys, or agents, have or will incur any liability to any holder of a Claim or Interest, any other party in interest, or any of their successors or assigns, for any act or omission in connection with, relating to, or arising out of, the Chapter 11 Case, the negotiation and prosecution of the Plan, the Confirmation of the Plan, the administration of the Plan, and/or the consummation of the Plan.

16.3. **Full Satisfaction of Claims and Interests.**

Except as otherwise provided in the Plan and the Order of Confirmation, the rights afforded in the Plan will constitute full and complete satisfaction and release of all Claims and Interests, including any interest accrued thereon from and after the Petition Date, against the Debtor, the Liquidating Debtor, the Bankruptcy Estate, or any assets or property of the Debtor, the Liquidating Debtor and the Bankruptcy Estate.

Case: 09-50711   Doc# 226   Filed: 06/30/10   Entered: 06/30/10 10:50:52   Page 51 of 75

16.4. **Judgments Null and Void.**

Any judgment obtained before or after the Confirmation Date in any court other than the Bankruptcy Court will be null and void as a determination of the liability of the Debtor or the Liquidating Debtor.

16.5. **Injunction.**

Under the Plan, as of the Confirmation Date, all entities that have held, currently hold or may hold a Claim or other debt or liability that is satisfied or any other right that is terminated under the Bankruptcy Code or the Plan are permanently enjoined from commencing or continuing any action, the employment of process, or other action, to collect, recover or offset any such Claim or debt as a personal liability of the Debtor or Liquidating Debtor to the fullest extent permitted by Bankruptcy Code section 524.

16.6. **Preservation of Insurance.**

Nothing in the Plan will diminish or impair the enforceability of any insurance policy that may cover Claims against the Debtor or any other Person.

## ARTICLE XVII.

## CONDITIONS PRECEDENT

17.1. **Conditions Precedent.**

The Plan provides that each of the following is a condition to the Effective Date:

(a) The Confirmation Order is entered and becomes a final order in a form and in substance reasonably satisfactory to the Debtor and to the Purchaser. The Confirmation Order will provide, among other things, that the Debtor or Liquidating Debtor, as appropriate, is authorized and directed to take all actions necessary or appropriate to consummate the Plan, including, without limitation, entering into, implementing and consummating the contracts, instruments, releases, leases, indentures, and other agreements or documents created in connection with or described in the Plan.

(b) All documents and agreements necessary to implement the Plan, will have: (a) all conditions precedent to such documents and agreements satisfied or

Case: 09-50771   Doc# 226   Filed: 06/30/10   Entered: 06/30/10 10:56:52   Page 52 of 75

waived pursuant to the terms of such documents or agreements; (b) been effected and executed; (c) been tendered for delivery; and (d) to the extent required, been filed with the applicable governmental unit(s) in accordance with applicable laws.

### 17.2. **Waiver of Conditions.**

The Plan provides that the conditions set forth above may be waived by the Debtor without notice, leave or order of the Bankruptcy Court, or any formal action other than proceeding to confirm or consummate the Plan.

## ARTICLE XVIII.

## OTHER PLAN PROVISIONS

### 18.1. **Exemption from Stamp, Transfer and Other Taxes.**

To the extent any sale contemplated by the Plan would be subject to a stamp, transfer or similar tax, the Debtor will be entitled to the exclusion of such sale from any stamp, transfer or similar tax to the fullest extent allowed by law.

### 18.2. **Injunctions and Stays.**

Unless otherwise provided, all injunctions or stays arising under or entered during the Case under Section 105 or Section 362 of the Bankruptcy Code, or otherwise, regarding property of the Bankruptcy Estate, and in existence on the Confirmation Date, will remain in full force and effect until the later of (a) the Effective Date, and (b) consummation of the Purchase Transaction.

### 18.3. **Certain Judgments Null and Void.**

Any judgment obtained against the Debtor after the Petition Date in any court other than in the Bankruptcy Court, and any judgment obtained prior to the Petition Date that was still subject to appeal on the Petition Date, will be null and void as a determination of the liability of the Debtor with respect to any debt

### 18.4. **No Admissions.**

Except as specifically provided in the Plan, nothing contained in the Plan may be deemed or construed in any way as an admission by the Debtor or its Bankruptcy Estate with respect to any fact or any matter set forth in the Plan, including the amount or allowability of any Claim, or the value of

Case: 09-50711   Doc# 226   Filed: 06/30/10   Entered: 06/30/10 16:56:52   Page 53 of 75

any property of the Bankruptcy Estate.

Notwithstanding anything to the contrary in the Plan, if the Plan is not confirmed or the Effective Date does not occur, the Plan will be null and void, and nothing contained in the Plan will: (a) be deemed to be an admission by the Debtor with respect to any matter discussed in the Plan, including liability on any Claim or the propriety of any Claim's classification; (b) constitute a waiver, acknowledgement, or release of any Claim, Interest, or any claims held by the Debtor; or (c) prejudice in any manner the rights of the Debtor or the Bankruptcy Estate in any further proceedings.

### 18.5.    **Revocation of the Plan.**

The Debtor reserves the right to withdraw the Plan before the Confirmation Date.

### 18.6.    **Successors and Assigns.**

The rights, benefits, and obligations of any entity referred to in the Plan will be binding on, and will inure to the benefit of any heir, executor, administrator, successor, or assign of that entity.

### 18.7.    **Nonconsensual Confirmation.**

In the event that classes entitled to vote fail to accept the Plan in accordance with Bankruptcy Code Section 1129(a)(8), the Debtor reserves the right to modify the Plan in accordance with Bankruptcy Code Section 1127(a).  In accordance with Section 1127 of the Bankruptcy Code, the Debtor reserves the right to alter, amend, modify, revoke or withdraw the Plan or any Plan exhibit or schedule including amending or modifying it to satisfy the requirements of the Bankruptcy Code.

### 18.8.    **Destruction of Records.**

The Liquidating Debtor may, but is not required to, seek one or more orders of the Bankruptcy Court seeking an order authorizing the abandonment and destruction of its books and records at such time as the recordkeeping time periods required by applicable law have expired.

### 18.9.    **Saturday, Sunday and Legal Holiday.**

If any payment or act under the Plan should be made or performed on a day that is not a Business Day, then the payment or act may be completed the next succeeding day that is a Business Day, in which event the payment or act will be deemed to have been completed on the required day.

### 18.10.    **Plan Interpretation.**

The headings contained in the Plan are for convenience of reference only and do not limit or

JWM/JLF/cc                                                                                            48          DISCLOSURE STATEMENT FOR DEBTOR'S  PLAN OF
S:\Pa...\Qual...\PLD\P11 DS\Disclosure Stat... June DS\...ference ed... DS...        LIQUIDATION  DATED  JUNE 30, 2010

Case: 09-50771    Doc# 226    Filed: 06/30/10    Entered: 06/30/10 10:50:52    Page 54 of
75

otherwise affect in any way the meaning or interpretation of the Plan. All references in the Plan to the singular will be construed to include references to the plural and vice versa. All references in the Plan to any one of the masculine, feminine or neuter genders will be deemed to include references to both other such genders. References to the Debtor will also include the Liquidating Debtor (or vice versa) as the context requires. All references in the Plan to a Section or an Article mean the appropriately numbered Section or Article of the Plan. Whenever the Plan uses the term "including," such reference is deemed to mean "including, but not limited to."

18.11. **Modification.**

The Debtor may propose amendments to or modifications of the Plan under Section 1127(a) of the Bankruptcy Code and Bankruptcy Rule 3019 at any time prior to the conclusion of the Confirmation Hearing of the Plan. After the Confirmation Date, the Debtor may modify the Plan in accordance with Section 1127(b) of the Bankruptcy Code and Bankruptcy Rule 3019.

18.12. **Setoff/Recoupment.**

Nothing contained in the Plan constitutes a waiver or release by the Debtor or Liquidating Debtor of any right of setoff or recoupment the Debtor may have against any Creditor.

18.13. **Notices.**

All notices required or permitted to be made in accordance with the Plan must be in writing and delivered personally or by first class mail, as follows:

If to the Liquidating Debtor:

Pasadera Country Club, LLC
Attn: Thomas S. deRegt
100 Pasadera Drive
Monterey, CA 93940

**With a copy to:**

John Walshe Murray
Murray & Murray
A Professional Corporation
19400 Stevens Creek Boulevard, Suite 200
Cupertino, CA 95014

and if to a holder of an Allowed Claim or Allowed Interest, at the address prescribed by Section 6.6.2 of the Plan. Notices will be deemed given when delivered or three days after deposit in the

JWM/JLF/cc                                                          49        DISCLOSURE STATEMENT FOR DEBTOR'S PLAN OF
I:\Pasadera\Pld\DS\DS Disclosure Stmt (June 29) re-filed re three parties.doc        LIQUIDATION DATED JUNE 29, 2010

Case: 09-50771    Doc# 226    Filed: 06/30/10    Entered: 06/30/10 10:56:52    Page 55 of
75

United States mail.  Any entity may change the address at which such entity is to receive notices under the Plan by sending written notice to the Liquidating Debtor and its counsel.

18.14.    **Reservation of Rights.**

Neither the filing of the Plan nor any statement or provision contained in the Plan or in the Disclosure Statement, nor the taking by any party in interest of any action with respect to the Plan, will: (a) be or be deemed to be an admission against interest; and (b) until the Effective Date, be or be deemed to be a waiver of any rights any party in interest may have: (i) against any other party in interest; or (ii) in any of the assets of any other party in interest, and, until the Effective Date, all such rights are specifically reserved.  In the event that the Plan is not confirmed or fails to become effective, neither the Plan nor the Disclosure Statement nor any statement contained in the Plan or in the Disclosure Statement may be used or relied upon in any manner in any suit, action, proceeding or controversy within or without this Bankruptcy Case involving the Debtor.

18.15.    **Exhibits.**

All exhibits attached to the Plan are incorporated into the Plan by reference.  All exhibits attached to the Disclosure Statement hereby are incorporated into the Disclosure Statement by reference.

**ARTICLE XIX.**

**RISK FACTORS**

Holders of impaired Claims entitled to vote on the Plan should read and consider carefully the factors set forth below, as well as other information set forth in this Disclosure Statement and the documents delivered together herewith and/or incorporated by reference herein prior to voting to accept or reject the Plan.

19.1.    **Additional Claims Risks.**

The Administrative Claims Bar Date and the Rejection Claims Bar Date will occur after Confirmation and the Allowed amount of such Claims will increase the overall liabilities of the Liquidating Debtor and therefore the cash available for holders of Claims.  Additionally, if the Liquidating Debtor is unsuccessful in its objections to Disputed and contingent Claims that have been filed against the Debtor, the total liabilities will be greater than expected, and there may be less

JWM/JLF/cc
El Paso Qualified DS/Third DS/Disclosure Bar Date June DS/Conference Red-line DS
DISCLOSURE STATEMENT FOR DEBTOR'S  PLAN OF
LIQUIDATION DATED JUNE 30, 2010

cash available for Distribution to holders of Claims.

19.2.    **Estimation of Claims and Distribution Risks.**

While the Debtor has endeavored to project what it believes are likely to be the Distributions, if any, to be made to parties holding Allowed Claims, there can be no certainty that the Debtor's projections will be accurate, and that Creditors will receive the Distributions described in the Plan. The Debtor's projections will necessarily be affected by, among other things: (1) recoveries by the Debtor on the Retained Claims; (2) the closing of the Purchase Transaction; (3) the outcome of objections to Claims; and (4) the cost and expenses of such actions.

19.3.    **Bankruptcy Risks.**

Section 1122 of the Bankruptcy Code provides that a plan may place a claim or an interest in a particular class only if such claim or interest is substantially similar to the other claims or interest of such class.  The Debtor believes that the classification of Claims and Interests under the Plan complies with the requirements set forth in the Bankruptcy Code.  However, there can be no assurance that the Bankruptcy Court would reach the same conclusion.

If the Debtor receives votes in number and amount sufficient to enable the Bankruptcy Court to confirm the Plan, the Debtor intends to seek, as promptly as practicable thereafter, to confirm the Plan.  In the event the Debtor does not receive sufficient votes, the Debtor may seek to accomplish an alternative chapter 11 plan.  There can be no assurance however that the terms of any such alternative chapter 11 plan would be similar or as favorable to the holders of Allowed Claims as those proposed in the current proposed Plan.

Even if all classes of Claims and Interests that are entitled to vote to accept the Plan, the Plan might not be confirmed by the Bankruptcy Court.  Section 1129 of the Bankruptcy Code sets forth the requirements for Confirmation.  The Debtor believes that the Plan satisfies all of the requirements for Confirmation of a plan under Section 1129 however there can be no assurance that the Bankruptcy Court would reach the same conclusion.

19.4.    **Purchase Transaction**

The Plan implementation and success depends upon the Purchase Transaction being approved by the Court and closing.  If, for whatever reason, the Purchase Transaction is not

JWM/JLF/cc
In re Paragon Qualified DS/Debtors-Plan (June DS) (re-entered June 2010)
51
DISCLOSURE STATEMENT FOR DEBTOR'S  PLAN OF LIQUIDATION DATED JUNE 28, 2010

Case: 09-50711   Doc# 226   Filed: 06/30/10   Entered: 06/30/10 10:50:52   Page 57 of 75

approved and/or does not close, and the Debtor is unsuccessful in locating a replacement purchaser willing and able to enter into and close a substantially similar transaction, the Debtor anticipates that the DIP Line will be exhausted, the Debtor will not have funds for operating expenses or employee payroll and will be forced to close its doors and Rabobank will foreclose. The Debtor has aggressively marketed the Club for over 20 months, and it is anticipated that if the Purchase Transaction does not close, the Debtor will not be able to locate a satisfactory replacement purchaser before the DIP Line is exhausted and that as a result Rabobank will foreclose. If Rabobank forecloses, it is anticipated that Creditors will receive, if anything, significantly less than as proposed by the Plan

## ARTICLE XX.

## CERTAIN FEDERAL INCOME TAX CONSEQUENCES OF THE PLAN

20.1. **Introduction.**

THE FOLLOWING IS A SUMMARY OF CERTAIN UNITED STATES FEDERAL INCOME TAX CONSEQUENCES OF CONSUMATION OF THE PLAN THAT MAY BE MATERIAL TO CREDITORS AND INTEREST HOLDERS (EACH A "HOLDER" AS REFERRED TO IN THIS ARTICLE) AND THE DEBTOR. THIS DISCUSSION IS INCLUDED FOR GENERAL INFORMATION PURPOSES ONLY AND IS NOT INTENDED TO BE, AND IS NOT, LEGAL OR TAX ADVICE TO ANY PARTICULAR HOLDER. THIS SUMMARY IS BASED ON THE CURRENT PROVISIONS OF THE INTERNAL REVENUE CODE OF 1986, AS AMENDED (THE "IRC"), THE INCOME TAX REGULATIONS (THE "REGULATIONS") AND OTHER LEGAL AUTHORITIES, ALL OF WHICH ARE SUBJECT TO CHANGE OR DIFFERING INTERPRETATIONS, POSSIBLY WITH RETROACTIVE EFFECT. NO RULINGS FROM THE INTERNAL REVENUE SERVICE (THE "IRS") OR OPINIONS OF COUNSEL HAVE BEEN OR WILL BE REQUESTED CONCERNING THE MATTERS DISCUSSED BELOW. THE TAX CONSEQUENCES SET FORTH IN THE FOLLOWING DISCUSSION ARE NOT BINDING ON THE IRS OR THE COURTS, AND NO ASSURANCE CAN BE GIVEN THAT CONTRARY POSITIONS WILL NOT BE SUCCESSFULLY ASSERTED BY THE IRS OR ADOPTED BY A COURT.

JWM/JLF/cc
K:\Paso Qual\PLD\Plan DS\Disclosure Statement (June DS)\Disclosure Statement (June DS).doc
52
DISCLOSURE STATEMENT FOR DEBTOR'S PLAN OF LIQUIDATION DATED JUNE 30, 2010

Case: 09-50711    Doc# 226    Filed: 06/30/10    Entered: 06/30/10 10:50:52    Page 58 of 75

THIS DISCUSSION DOES NOT APPLY TO HOLDERS THAT ARE NOT "U.S. PERSONS" (AS SUCH PHRASE IS DEFINED IN THE IRC) AND DOES NOT PURPORT TO ADDRESS ALL ASPECTS OF UNITED STATES FEDERAL INCOME TAXATION THAT MAY BE RELEVANT TO THE DEBTOR OR TO SUCH HOLDERS IN LIGHT OF THEIR INDIVIDUAL CIRCUMSTANCES.

THE FOLLOWING DISCUSSION DOES NOT APPLY TO CERTAIN HOLDERS WHO, DUE TO THEIR PARTICULAR CIRCUMSTANCES, MAY BE SUBJECT TO SPECIAL RULES. THOSE HOLDERS INCLUDE HOLDERS WHO ARE DEALERS IN SECURITIES, FINANCIAL INSTITUTIONS, INSURANCE COMPANIES, TAX-EXEMPT ORGANIZATIONS, GOVERNMENTAL AGENCIES, BANKS, PASS-THROUGH ENTITIES, TRADERS IN SECURITIES, SMALL BUSIENSS INVESTEMENT COMPANIES, REGULATED INVESTMENT COMPANIES AND FOREIGN PERSONS.

ACCORDINGLY, THE FOLLOWING SUMMARY OF CERTAIN UNITED STATES FEDERAL INCOME TAX CONSEQUENCES IS FOR INFORMATIONAL PURPOSES ONLY AND IS NOT A SUBSTITUTE FOR CAREFUL TAX PLANNING AND ADVICE BASED UPON THE INDIVIDUAL CIRCUMSTANTCES PERTAINING TO A HOLDER OF AN ALLOWED CLAIM.

20.2.    **IRS CIRCULAR 230.**

TO ENSURE COMPLIANCE WITH TREASURY DEPARTMENT CIRCULAR 230, HOLDERS ARE HEREBY NOTIFIED THAT: (A) ANY DISCUSSION OF FEDERAL TAX ISSUES IN THIS DISCLOSURE STATEMENT IS NOT INTENDED OR WRITTEN TO BE RELIED UPON, AND CANNOT BE RELIED UPON BY HOLDERS FOR THE PURPOSE OF AVOIDING PENALTIES THAT MAY BE IMPOSED ON HOLDERS UNDER THE INTERNAL REVENUE CODE; (B) SUCH DISCUSSION IS INCLUDED HEREIN BY DEBTOR IN CONNECTION WITH THE PROMOTION OR MARKETING (WITHIN THE MEANING OF CIRCULAR 230) BY DEBTOR OF THE TRANSACTIONS OR MATTERS ADDRESSED HEREIN; AND (C) HOLDERS SHOULD SEEK ADVICE BASED ON THEIR PARTICULAR CIRCUMSTANCES FROM AN INDEPENDENT TAX ADVISOR.

EACH HOLDER SHOULD CONSULT THE HOLDER'S OWN TAX ADVISOR TO DETERMINE THE HOLDER'S PARTICULAR UNITED STATES FEDERAL INCOME TAX CONSEQUENCES AND OTHER TAX CONSEQUENCES TO THE HOLDER OF THE PLAN, INCLUDING ANY STATE, LOCAL AND FOREIGN TAX LAWS AND THE EFFECT OF ANY CHANGES IN SUCH LAWS.

20.3. **Consequences to the Debtor.**

In general, the Code provides that a debtor in a bankruptcy case is not taxable on cancellation of debt ("COD") income, but must release certain of its tax attributes (such as its net operating loss ("NOL") carryforwards and its tax basis in its assets) by the amount of COD income. COD income results when the amount of debt discharged exceeds the consideration given in exchange therefore, and is equal to such excess amount. Notwithstanding the absence of a bankruptcy discharge, it is likely that a cancellation of debt will be deemed to have occurred on the Effective Date. Any reduction in tax attributes does not occur, however until the end of the taxable year or, in the case of asset basis reduction, the first day of the taxable year following the taxable year in which the COD is incurred.

As a limited liability company with one or two different members that has not elected to be taxed as a corporation, the Debtor is regarded to be a separate entity from each of its members for United States federal income tax purposes. Accordingly, any ordinary income/loss and capital gain/loss realized by the Debtor will be considered, for United States federal income tax purposes to be realized by the Holders of the membership units in the Debtor.

20.4. **Consequences to Equity Interest Holders.**

A Holder of all of the units of a limited liability company such as the Debtor that has not filed an election to be taxed as a corporation for federal income tax purposes is considered to realize the ordinary income/loss and capital gain/loss realized by the limited liability company in accordance with the Holder's method of accounting for federal income tax purposes. Such ordinary income/loss and capital gain/loss will be realized and reportable by the Holder regardless of whether any distribution is received by the Holder. Thus, the Holder (or its owners) may be required to recognize income for United States federal income tax purposes as a result of a sale of assets of the

Case: 09-50771    Doc#: 226    Filed: 06/30/10    Entered: 06/30/10 10:56:52    Page 60 of
75

Debtor even if no cash or other property is distributed by the Debtor to the Unit Holder. The ordinary income/loss and capital gain/loss may be taxable to the Holder, or taxable directly to the owners of the Holder, depending upon whether the Holder is a taxable entity (such as a corporation), a pass through entity (such as a partnership or entity taxable as a partnership) or an entity disregarded from its owner for United States federal income tax purposes.

Section 165(g) of the IRC permits a "worthless security deduction" for any security that is a capital asset that becomes worthless within the taxable year. The rules governing the timing and amount of worthless security deductions place considerable emphasis on the facts and circumstances of the Holder, the issuer, and the instrument with respect to which the deduction is claimed. <u>Holders are therefore urged to consult their own tax advisors with respect to their ability to take such deductions.</u>

### 20.5. <u>Consequences to Creditors Generally</u>

Generally, any amount received by a Creditor in satisfaction of an Allowed Claim, to the extent such amount constitutes "gross income" within the meaning of Section 61 of the Code, will be taxable to the Creditor in accordance with the Creditor's method of accounting, if not previously included in the Creditor's gross income. This would include, for example, payments of interest, rent or compensation for services. If a Creditor previously reported as taxable income, their respective Allowed Claim then the unpaid portion of the previously reported taxable income would be deductible as a business bad debt. A Creditor may be subject to regular income tax withholding or backup withholding, as described below, with respect to such payments. Creditors should consult with their own tax advisors as to the character and timing of recognition of any gain, loss or deduction they are planning to include in their tax return.

Any amount received by a Creditor in satisfaction of accrued interest on a Claim will be taxable to the Creditor as interest income, if not previously included in the Creditor's gross income. A Creditor may be subject to backup withholding, as described below, with respect to such interest payments.

Each Creditor who receives cash in partial or complete satisfaction of the Creditor's Claim will recognize gain or loss equal to the difference between the amount of cash received and the

Creditor's tax basis in the Creditor's Claim. Gain may be recognized, for example, by a Creditor who acquired a Claim at a discount or who previously reported a bad debt deduction or worthless security loss with respect to all or a portion of the Claim. GENERALLY, ANY GAIN RECOGNIZED WILL BE CONSIDERED CAPTIAL GAIN if the Claim is held as a capital asset, and GENERALLY will be ordinary income if the Claim is not held as a capital asset. Capital gain will generally be long-term capital gain if the Claim has been held for more than 12 months. Creditors should consult with their own tax advisors as to the character and timing of recognition of ANY gain, loss or deduction THEY ARE PLANNING TO INCLUDE IN THEIR TAX RETURN.

Any loss will GENERALLY be a capital loss if the Claim is a capital asset and if the payment is deemed a "retirement" of the Claim within the meaning of Section 1271 of the IRC. A Creditor who receives no payment with respect to a Claim (and a Creditor who receives a payment which is not a "retirement" and incurs a loss) should generally be able to claim a bad debt deduction to the extent of the Creditor's tax basis in the Claim (or, in the case of a Creditor receiving a payment, the excess of the tax basis in the Claim over the payment received). A Creditor who holds a Claim as a non-business bad debt and who is not a corporate Creditor will generally only be able to claim a short-term capital loss with respect to such Claim. A Creditor who holds a Claim which is a "security" as defined in Section 165(g) of the IRC will generally only be able to claim a capital loss rather than a bad debt deduction. Limitations apply to the ability to deduct capital losses. Creditors should consult with their own tax advisors as to the character and timing of recognition of ANY gain, loss or deduction THEY ARE PLANNING TO INCLUDE IN THEIR TAX RETURN.

Because a loss is allowed only for the tax year in which it is sustained, a Creditor that claims a loss or deduction in the wrong tax year risks losing the benefit of such loss or deduction in its entirety. Creditors should consult with their own tax advisors as to the character and timing of recognition of ANY gain, loss or deduction THEY ARE PLANNING TO INCLUDE IN THEIR TAX RETURN.

20.6.    **Wage Withholding.**

If any Allowed Claim under the Plan constitutes "wages" for U.S. federal income tax purposes, the U.S. federal income tax rules applicable to wage withholding will apply to the payment

of the Allowed Claim.

20.7. **Backup Withholding.**

United States federal income tax laws require that, to avoid backup withholding with respect to "reportable payments" (in an amount equal to 28%), a Creditor or Holder must: (a) provide the Debtor with its correct taxpayer identification number ("**TIN**") on IRS Form W-9 and certify as to their eligibility for exemption from backup withholding; or (b) establish a basis for exemption from backup withholding on an appropriate IRS Form W-8 (including a Form W-8BEN, W-8ECI, W-8EXP and W-8IMY) or IRS Form W-9, as applicable. Exempt Creditors and Holders (including, among others, all corporations and certain foreign individuals) are not subject to backup withholding and reporting requirements. If withholding is made and results in an overpayment of taxes, a refund may be obtained.

THE FEDERAL TAX CONSEQUENCES OF THE PLAN ARE COMPLEX. THE FOREGOING SUMMARY DOES NOT DISCUSS ALL ASPECTS OF FEDERAL INCOME TAXATION THAT MAY BE RELEVANT TO A PARTICULAR HOLDER IN LIGHT OF SUCH HOLDER'S CIRCUMSTANCES AND INCOME TAX SITUATION. ALL HOLDERS OF CLAIMS AND INTERESTS SHOULD CONSULT WITH THEIR TAX ADVISORS AS TO THE PARTICULAR TAX CONSEQUENCES TO THEM OF THE TRANSACTIONS CONTEMPLATED BY THE PLAN, INCLUDING THE APPLICABILITY AND EFFECT OF ANY STATE, LOCAL OR FOREIGN TAX LAWS, AND OF ANY CHANGE IN APPLICABLE TAX LAWS.

**ARTICLE XXI.**

**VOTING PROCEDURES**

With the Plan and Disclosure Statement, Creditors entitled to vote on the Plan will receive a Ballot and instructions for voting on the Plan. You should read the Ballot carefully and follow the instructions contained therein. Please use only the Ballot sent to you with this Disclosure Statement and the Plan.

To simplify the voting procedure, Ballots have been sent only to all known holders of Claims and Interests, including Disputed Claims to which objections may be filed. Ballots have not been

sent to Class 1, Class 3, Class 4, Class 5 and Class 8 Creditors and Class 9 Interest Holders for the reasons set forth hereinafter.  Only holders of Claims or Interests allowed under Section 502 of the Bankruptcy Code, or temporarily allowed for voting purposes under Bankruptcy Rule 3018, whose Claims or Interest are in those classes of Claims or Interests that are "impaired" (as defined in Section 1124 of the Bankruptcy Code) under the Plan are entitled to vote to accept or reject the Plan.

### 21.1. **Definition of Impairment.**

Under Section 1124 of the Bankruptcy Code, a class of claims or equity interests is impaired under a Plan of Liquidation unless, with respect to each claim or equity interest of such class, the plan:

(1)  leaves unaltered the legal, equitable, and contractual rights of the holder of such claim or interest; or

(2)  notwithstanding any contractual provision or applicable law that entitles the holder of a claim or interest to demand or receive accelerated payment of its claim or interest after the occurrence of a default:

(A)   cures any such default that occurred before or after the commencement of the case under this title, other than a default of a kind specified in section 365(b)(2) of this title or of a kind that section 365(b)(2) expressly does not require to be cured;

(B)  reinstates the maturity of such claim or interest as such maturity existed before such default;

(C)  compensates the holder of such claim or interest for any damages incurred as a result of any reasonable reliance by such holder on such contractual provision or applicable law;

(D)  if such claim or such interest arises from any failure to perform a nonmonetary obligation, other than a default arising from failure to operate a nonresidential real property lease subject to section 365(b)(1)(A), compensates the holder of such claim or such interest (other than the debtor or an insider) for any actual pecuniary loss incurred by such holder as a result of such failure; and

(E)  does not otherwise alter the legal, equitable, or contractual rights to which such claim or interest entitles the holder of such claim or interest.

A Claim to which an objection has been filed is not an Allowed Claim unless and until the Bankruptcy Court rules on the objection.  The Bankruptcy Court may temporarily allow a Disputed Claim to which an objection has been filed for purposes of voting on the Plan.  Therefore, although

JWM/JLF/cc
El Paso Qualified DS (Disclosure Statement) (June DS) (Centerre DS)
58
DISCLOSURE STATEMENT FOR DEBTOR'S  PLAN OF LIQUIDATION DATED JUNE 30, 2010

Case: 09-50771   Doc# 226   Filed: 06/30/10   Entered: 06/30/10 10:50:52   Page 64 of 75

holders of Disputed Claims to which an objection has been filed will receive Ballots, these votes will not be counted unless the Bankruptcy Court temporarily allows such Claims for purposes of voting on the Plan.

Classes of Claims that are not impaired are conclusively presumed to have voted to accept the Plan pursuant to section 1126(f) of the Bankruptcy Code and, therefore, are not entitled to vote on the Plan. Class 1, Class 4 and Class 5 Creditors are not impaired under the Plan and are therefore conclusively presumed to have accepted the Plan. Accordingly, acceptances with respect to Class 1, Class 4 and Class 5 are not being solicited and no Ballots need be returned by Class 1, Class 4 or Class 5 Creditors.

Classes of Claims or Interests that receive nothing under the Plan are presumed to have voted to reject the Plan and, therefore, are not entitled to vote on the Plan. Neither Class 3 Creditors, nor Class 8 Creditors nor Class 9 Interest Holders will receive anything on account of their Claims and Interests and are therefore conclusively presumed to have rejected the Plan. Accordingly, acceptances with respect to Class 3, Class 8 and Class 9 are not being solicited and no Ballots need be returned by Class 3 Creditor, Class 8 Creditors or Class 9 Interest Holders.

Acceptances of the Plan are therefore being solicited only from Classes 2, 6 and 7. Consequently, only holders of Class 2, 6, and 7 Claims need return their Ballots.

The Bankruptcy Court will hold a hearing on the Confirmation of the Plan commencing on the date and at the time and place set forth in the Order Approving Disclosure Statement. The hearing may be adjourned from time to time without notice except as given in open court.

If a party in interest is a member of more than one class, it will receive a Ballot for each class. IF YOU ARE A MEMBER OF MORE THAN ONE CLASS, YOU MUST FILL OUT AND RETURN ALL BALLOTS SENT TO YOU FOR YOUR VOTE TO COUNT IN EACH CLASS. CREDITORS WISHING TO VOTE ON THE PLAN SHOULD COMPLETE THE BALLOT PROVIDED AND RETURN IT NO LATER THAN _____ TO:

**Murray & Murray**
**A Professional Corporation**
**Attn: Jenny Lynn Fountain**
**19400 Stevens Creek Boulevard, Suite 200**
**Cupertino, California 95014-2548**

Case: 09-50771   Doc# 226   Filed: 06/30/10   Entered: 06/30/10 10:56:52   Page 65 of 75

Facsimile: (650) 852-9244
Email: jlfountain@murraylaw.com

IF YOUR BALLOT IS NOT RETURNED BY _____, (the "<u>VOTING DEADLINE</u>") IT MAY NOT BE CONSIDERED. BALLOTS WHICH ARE RETURNED BUT NOT PROPERLY EXECUTED WILL NOT BE CONSIDERED. BALLOTS WHICH ARE EXECUTED BUT WHICH FAIL TO INDICATE EITHER ACCEPTANCE OR REJECTION OF THE PLAN WILL BE CONSIDERED AS ACCEPTING THE PLAN.

As the holder of a Claim against the Debtor, your acceptance of the Plan is important. The Bankruptcy Code defines acceptance of a plan by a class of Creditors as acceptance by the holders of two-thirds (2/3) in dollar amount and more than one-half (1/2) in number of the claims of that class which actually cast ballots for acceptance or rejection of the Plan, i.e., acceptance takes place only if two-thirds (2/3) in amount and a majority in number of the Creditors voting cast their ballots in favor of acceptance.

If any class of Claims does not accept the Plan, the Debtor may elect to seek Confirmation of the Plan under Section 1129(b) of the Bankruptcy Code. Confirmation under Section 1129(b) can, in appropriate circumstances, take place notwithstanding the rejection of, or objection to, the plan by the holders of claims and interests. If required, the Plan may be modified at or prior to the Confirmation Hearing to permit Bankruptcy Court approval under Section 1129(b). If the Plan is not confirmed, the Bankruptcy Court may order the Bankruptcy Case dismissed, or converted to a case under Chapter 7 of the Bankruptcy Code, or the Debtor or other parties in interest may propose a different plan.

After carefully reviewing the Plan and Disclosure Statement, indicate your vote on the enclosed Ballot and return it in the envelope provided to the address stated above. Accordingly, you are urged to return your signed and completed Ballot promptly. Ballots not received by the Voting Deadline and unsigned Ballots will not be counted. Any executed Ballots that are timely received, but which do not indicate either an acceptance or rejection of the Plan, will be deemed to constitute an acceptance of the plan.

If you are a Holder of a Claim or Interest in Classes 2, 6 or 7 and: (a) did not receive a Ballot;

JWM/JLF/cc
Pasadena/Qualificances/Disclosure Statements/June DS/etc. (more than above)    60    DISCLOSURE STATEMENT FOR DEBTOR'S PLAN OF LIQUIDATION, DATED JUNE 30, 2010

Case: 09-50711    Doc# 226    Filed: 06/30/10    Entered: 06/30/10 10:50:52    Page 66 of 75

(b) received a damaged or illegible Ballot; or (c) lost your Ballot, or if you are a party in interest and have any questions concerning the Disclosure Statement, any of the Exhibits hereto, the Plan, or the voting procedures in respect thereof, please contact Murray & Murray, A Professional Corporation, Attn: Jenny Lynn Fountain, 19400 Stevens Creek Blvd, Suite 200 Cupertino, California 95014; Telephone (650) 852-9000; Facsimile (650) 852-9244; email jlfountain@murraylaw.com.

THE DEBTOR, AS PROPONENT OF THE PLAN, RECOMMENDS THAT THE HOLDERS OF CLAIMS AND INTERESTS IN CLASSES 2, 6 and 7 VOTE TO ACCEPT THE PLAN.

A summary of the treatment of the various classes of Claims and Interests is set forth above.

## ARTICLE XXII.

## CONFIRMATION PROCEDURES; OBJECTIONS TO CONFIRMATION

Under the Bankruptcy Code, the following steps must be taken to confirm the Plan:

22.1.    **Confirmation Hearing.**

Section 1128(a) of the Bankruptcy Code requires the Bankruptcy Court, after notice, to hold a hearing on Confirmation of the Plan (the "**Confirmation Hearing**"). The Confirmation Hearing may be postponed from time to time by the Bankruptcy Court without further notice except for an announcement made at the Confirmation Hearing or any postponement thereof. Section 1128(b) provides that any party in interest may object to Confirmation of the Plan. Any objection to Confirmation must be made in writing and filed with the Bankruptcy Court and served on the following parties, together with a certificate of service:

Jenny Lynn Fountain
Murray & Murray
A Professional Corporation
19400 Stevens Creek Boulevard, Ste. 200
Cupertino, CA 95014-2548
Fax: (650) 852-9244

United States Trustee
Nanette Dumas
280 South First Street, Room 268
San Jose, California 95113-0002
Fax No. (408) 535-5532

Objections to Confirmation of the Plan are governed by Bankruptcy Rule 9014.

Case: 09-50711    Doc# 226    Filed: 06/30/10    Entered: 06/30/10 10:50:52    Page 67 of 75

22.2. **Requirements for Confirmation of the Plan.**

At the Confirmation Hearing, the Bankruptcy Court must confirm the Plan if it determines that all of the requirements of Section 1129 of the Bankruptcy Code have been satisfied. The applicable requirements are as follows:

(a) The Plan complies with the applicable provisions of the Bankruptcy Code;

(b) The Debtor have complied with the applicable provisions of the Bankruptcy Code;

(c) The Plan has been proposed in good faith and not by any means forbidden by law;

(d) Any payment made or to be made by the Debtor, or by a person issuing securities or acquiring property under the Plan, for services or for costs and expenses in or in connection with the Case, or in connection with the Plan and incident to the Case, has been approved by, or is subject to the approval of, the Court as reasonable;

(e) The Debtor have disclosed the identity and affiliations of any individual proposed to serve, after Confirmation of the Plan, as a director, officer, or voting trustee of the Debtor, an affiliate of the Debtor participating in a joint plan with the Debtor, or a successor to the Debtor under the Plan; and the appointment to, or continuance in, such office of such individual, is consistent with the interests of holders of Claims and Interests and with public policy; and the Debtor have disclosed the identity of any insider that will be employed or retained by the Reorganized Debtor, and the nature of any compensation for such insider;

(f) With respect to each class of impaired Claims or Interests, each holder of a Claim or Interest of such class either (a) has accepted the Plan, or (b) will receive or retain under the Plan on account of such Claim or Interest property of a value, as of the Effective Date of the Plan, that is not less than the amount

Case: 09-50771 Doc# 226 Filed: 06/30/10 Entered: 06/30/10 10:50:52 Page 68 of 75

that such holder would so receive or retain if the Debtor were liquidated on such date under chapter 7 of the Bankruptcy Code;

(g)   Subject to the "cramdown" provisions of the Bankruptcy Code discussed in Section 12.4 below, each class of Claims or Interest has accepted the Plan;

(h)   Except to the extent that the holder of a particular Claim has agreed to a different treatment of such Claim, the Plan provides that incurred, Allowed Administrative Claims will be paid in full on the Effective Date of the Plan and that Allowed Tax Claims will be paid in full over a period not longer than five (5) years from the Petition Date;

(i)   If a class of Claims is impaired under the Plan, at least one class of impaired Claims has accepted the Plan, determined without including any acceptance of the Plan by any insider holding a Claim of such class;

(j)   Confirmation of the Plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the Debtor or any successor to the Debtor under the Plan, unless such liquidation or reorganization is proposed in the Plan;

(k)   All fees payable under section 1930 of title 28, as determined by the Court at the Confirmation Hearing of the Plan, have been paid or the Plan provides for the payment of all such fees on the Effective Date of the Plan; and

(l)   All transfers of property of the Plan are to be made in accordance with any applicable provisions of nonbankruptcy law that govern the transfer of property by a corporation or trust that is not a moneyed, business, or commercial corporation or trust.

22.3.   **Compliance with Confirmation Requirements.**

The Debtor believes that all of the foregoing requirements have been or will be met prior to the Confirmation Hearing. Specifically, the Debtor believes: (1) the Plan is in the best interests of Creditors, in that holders of all Allowed Claims will receive payments under the Plan having a present value as of the Effective Date of the Plan in amounts not less than the amounts likely to be

Case: 09-50771   Doc# 226   Filed: 06/30/10   Entered: 06/30/10 10:50:52   Page 69 of 75

received if the Debtor was liquidated in a case under Chapter 7 of the Bankruptcy Code; (2) the Plan will be accepted by sufficient votes in each impaired class or may be confirmed under the cramdown standards of Section 1129(b) even if sufficient votes are not received; and (3) the Plan is feasible in that the Debtor will have sufficient cash available at all times to fund the Plan pursuant to the Purchase and Sale Agreement and the sale of the Debtor's assets.

22.4.    **Cramdown.**

In the event that any impaired class of Claims does not accept the Plan, the Bankruptcy Court may still confirm the Plan at the request of the Debtor if, as to each impaired class which has not accepted the Plan, the Plan "does not discriminate unfairly" and is "fair and equitable."  A plan "does not discriminate unfairly" against a class if the plan allocates value to that class in a manner consistent with the treatment afforded to other classes with similar legal claims against the Debtor. "Fair and equitable" has different meanings for the holders of secured and unsecured claims, and for the holders of interests.

With respect to a secured claim, "fair and equitable" means either: (a) the impaired secured creditor retains its liens to the extent of its allowed claim and receives deferred cash payments at least equal to the allowed amount of its claim with a present value as of the effective date of the plan at least equal to the value of such creditor's interest in the property securing its liens; (b) property subject to the lien of the impaired secured creditor is sold free and clear of that lien, with that lien attaching to the proceeds of the sale, and such lien proceeds are treated in accordance with clauses (a) or (c) hereof; or (c) the impaired secured creditor realizes the "indubitable equivalent" of its claim under the plan.

With respect to an unsecured claim, "fair and equitable" means either: (a) each impaired unsecured creditor receives or retains property of a value equal to the amount of its allowed claim; or (b) the holders of claims and interests that are junior to the claims of the dissenting class will not receive any property under the plan.

With respect to a class of interests, "fair and equitable" means either: (a) the plan provides that each holder of an interest of such class receive or retain on account of such interest property of a value, as of the effective date of the plan, equal to the greatest of the allowed amount of any fixed

JWM/JLF/cc
K:\Pacific Gold\7741-1 DS\Disclosure Statement June DS\Redline June DS redline.doc    64    DISCLOSURE STATEMENT FOR DEBTOR'S  PLAN OF LIQUIDATION DATED JUNE 30, 2010

Case: 09-50771    Doc# 226    Filed: 06/30/10    Entered: 06/30/10 10:50:52    Page 70 of
75

liquidation preference to which such holder is entitled, any fixed redemption price to which such holder is entitled, or the value of such interest; or (b) the holder of any interest that is junior to the interests of such class will not receive or retain any property under the plan on account of such junior interest.

In the event that one or more classes of impaired Claims or Interests rejects the Plan, the Bankruptcy Court will determine at the Confirmation Hearing whether the Plan is fair and equitable and does not discriminate unfairly against any rejecting impaired class of Claims or Interests.

## ARTICLE XXIII.

## BEST INTERESTS TEST

The Bankruptcy Court must independently determine that the Plan is in the best interest of all classes of Creditors and Interests. The "best interest" test requires that the Plan provide to each dissenting member of each impaired class a recovery that has a present value at least equal to the present value of the distribution which each such Creditor or Interest Holder would receive if the Debtor were liquidated under Chapter 7 of the Bankruptcy Code.

In performing this analysis, the Bankruptcy Court must determine the amount that would be generated from a Chapter 7 liquidation of the Debtor's assets after deducting the cost of liquidation. The cost of liquidation would include the Trustee's commissions, the Trustee's expenses, fees for counsel and other professionals retained by the Trustee and Administrative Claims. In addition to liquidating the Debtor's assets, the Trustee must also decide whether to litigate certain claims and possibly other litigation matters. Generally, no distribution is made in a chapter 7 case until all assets of the Bankruptcy Estates and all claims have been liquidated, a process that often can take many months and sometimes years. This delay could further impair the value of any distribution made to holders of Claims under a chapter 7 liquidation. As detailed below, in these Cases, due to the complexity of the Purchase Transaction and the delay and expense required by a trustee in a chapter 7 liquidation is estimated to be substantial.

In this case, the Debtor's assets will yield sufficient market value only if the Debtor is able to sell the Club as a going concern. The Debtor has aggressively marketed the Club for over 20 months while maintaining operations on a very limited budget. A chapter 7 trustee would not have ability to

the continue to operate the Club in the ordinary course and market it until a satisfactory purchaser emerged to purchase the Club as a going concern and would conduct a fire sale of the Debtor's individual assets or would abandon the assets to Rabobank which would then foreclose. Both a fire sale and foreclosure would realize significantly reduced values for the Debtor's assets.

In addition, the Debtor and its professionals have spent time investigating potential reserved claims and legal rights, the validity of claims filed and scheduled, the value of the assets and their saleability. The Debtor's management has expertise in the private golf course arena and is intimately familiar with the Debtor's business. A trustee would necessarily need to expend significant sums in gaining the expertise and understanding the Debtor and its professionals have already obtained. The cost already incurred in gaining such knowledge would necessarily need to be incurred again if a trustee were to be put in place.

In addition, if this case were converted to Chapter 7, the Affiliate Lenders would not continue to fund the DIP Line, nor would Purchaser fund the Purchaser DIP Line or go forward with the Purchase Transaction, thus resulting in significantly lower creditor recoveries.

On the other hand, barring unforeseen Claims, Confirmation of the Plan will enable the Liquidating Debtor to timely distribute proceeds from Purchase Transaction which the Debtor believes will result in the highest and best recovery for Creditors. By proceeding to liquidate the Debtor's assets and distribute the Liquidating Debtor's cash proceeds in accordance with the Plan, the Debtor believes that the liquidation proceeds can be distributed sooner and at a lesser expense. The Purchase Transaction and the Debtor's operations are multifaceted and complex. They require attention to matters by management familiar with the Debtor in order to maximize the value of the Estate and return to Creditors. Examples of such matters include:

- Plan and Membership Agreements;
- Familiarity with the intricacies and subtleties of the private golf course business and clientele demands is key to the success of any membership plan and agreement;
- Key knowledge of the golf and country club industries and marketing strategies; and
- Private golf courses thrive only when the experience for members is intimate, and as such, personal knowledge of the current Club Members and their desires and dislikes

JWM/JLF/cc
Las Posas Qualified Partners, L.P. DS/Disclosure Statement dated June DS/Disclosure Statement dated June 2010

is key to the success of any club;

Therefore, only through management knowledgeable with the Debtor's operations and Club Members, will the Debtor be able to proficiently wind down its affairs, maximize value of its assets and successfully transition its Cub Members to Purchaser's Club.

The net proceeds of the Liquidating Debtor's assets will be distributed in accordance with the priority scheme set forth in the Bankruptcy Code. The Debtor, therefore, believes that the liquidation under the Plan will achieve at least the same results (or better) as would occur in the conversion of the Case to Chapter 7. The result can be achieved without the duplication of administrative costs that would result from the appointment of a Chapter 7 Trustee and the employment of additional professional persons, and the delay attendant with the administration of the assets in Chapter 7.

Those Creditors who are impaired under the Plan, therefore, are receiving, at a minimum, the equivalent of what they would receive if liquidation was completed in a Chapter 7 case. The Debtor believes that the Creditors will fare much better should reorganization be achieved in Chapter 11 under the Plan.

23.1. **Liquidation Analysis.**

The Debtor estimates that the ultimate Distribution to Creditors in Classes 1, 4 and Class 5 will be 100%, the ultimate Distribution to Class 6 Creditors will be 60%, and the ultimate Distribution to Creditors in Class 2 and 7 will be, respectively, $6.5 Million and a new membership opportunity whereas under a Chapter 7 case, Creditors and Interest Holders in Classes 3, 5, 6, 7, 8 and 9 would receive nothing on account of their Claims for the primary reason that the Club would not be sold as a going concern and a fire sale and/or foreclosure would not generate sufficient revenue to satisfy the Allowed Secured Claims of Classes 1 and 2 (Class 4 would not exist as the Purchaser would not fund the Purchaser DIP Line). Because of the abundance of unknown variables and contingencies which remain in this Case (including, for example, the closing and Court approval of the Purchase Transaction, as discussed herein), which are largely dependent on factors not within the Debtor's control, this estimate represents only the Debtor's good faith approximation based on current information. It also is founded on numerous assumptions including, among other things, the

Case: 09-50711   Doc#: 226   Filed: 06/30/10   Entered: 06/30/10 10:56:52   Page 73 of 75

closing and Court approval of the Purchase Transaction.

These are estimates only, and the actual numbers underlying the above assumptions may be higher or lower and could be considerably higher or lower, and therefore, the ultimate Distribution could fall significantly outside of the estimated range. The Debtor has not concluded its review of Claims and anticipates that many objections to Disputed Claims may be filed, the outcomes of which may affect the amounts available for Distribution. Moreover, as discussed above and set forth in this Article XXIII, there are numerous other contingencies that will ultimately affect the outcome of this Case.

## ARTICLE XXIV.

## FEASIBILITY

The Bankruptcy Court must find that Confirmation of the Plan is not likely to be followed by the liquidation or the need for further financial reorganization of the Debtor unless such liquidation is contemplated by the Plan. The Plan contemplates the final liquidation of the Debtor's assets and distribution to Creditors and Interest Holders. The Plan proceeds will be sufficient to complete the process.

## ARTICLE XXV.

## POST-CONFIRMATION MANAGEMENT

The Liquidating Debtor will be managed by the Responsible Person. Thomas S. deRegt will be nominated as Responsible Person of the Liquidating Debtor.

DATED: JUNE 30, 2010      **PASADERA COUNTRY CLUB, LLC**
A CALIFORNIA LIMITED LIABILITY COMPANY

BY:   */s/ Thomas S. DeRegt*
       BY: THOMAS S. DEREGT
       RESPONSIBLE INDIVIDUAL

Case: 09-50771  Doc#: 226  Filed: 06/30/10  Entered: 06/30/10 10:50:52  Page 74 of 75

1

**MURRAY & MURRAY**
A Professional Corporation

2

3

By:     */s/ John Walshe Murray*

4
        John Walshe Murray
        Attorneys for Debtor

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Case: 09-50771    Doc# 226    Filed: 06/30/10    Entered: 06/30/10 10:56:52    Page 75 of
75