1   JOHN WALSHE MURRAY (074823)
    JENNY L. FOUNTAIN (226241)
2   LAURENT CHEN (191661)
    MURRAY & MURRAY
3   A Professional Corporation
    19400 Stevens Creek Blvd., Suite 200
4   Cupertino, CA 95014-2548
    Telephone:  (650) 852-9000; (408) 907-9200
5   Facsimile:  (650) 852-9244
    Email:  jwmurray@murraylaw.com
6   Email:  jlfountain@murraylaw.com
    Email:  lchen@murraylaw.com
7
    Attorneys for Debtor
8

9

10              **UNITED STATES BANKRUPTCY COURT**

11              **NORTHERN DISTRICT OF CALIFORNIA**

12                      **SAN JOSE DIVISION**

13  In re:                              )
                                        )
14                                      )   Case No. 09-50771-CN
       **PASADERA COUNTRY CLUB, LLC**   )
15     A California Limited Liability Company )   Chapter 11
                                        )
16              Debtor.                 )   Disclosure Statement Hearing
                                        )
17       100 Pasadera Drive             )   Date:      July 15, 2010
         Monterey, CA 93940             )   Time:      11:00 a.m.
18                                      )
       Employer Tax I.D. No.: 77-0498396 )   Hearing on Plan Confirmation
19                                      )
                                        )   Date:      August 12, 2010
20                                      )   Time:      2:00 p.m.
                                        )   Place:     United States Bankruptcy Court
21                                      )              280 S. First St., Room 3070
                                        )              San Jose, CA  95113
22  _____)   Judge:     Honorable Charles Novack

23

24

25                  **DEBTOR'S PLAN OF LIQUIDATION**
                       **(DATED JULY 20, 2010)**
26

27

28

Case: 09-50771   Doc# 249   Filed: 07/20/10   Entered: 07/20/10 12:47:42   Page 1 of
                                      48

# TABLE OF CONTENTS

Page

ARTICLE I. DEFINITIONS ................................................................2

ARTICLE II. DESIGNATION OF CLASSES OF CLAIMS AND INTERESTS............11

    2.1    Class 1 (County of Monterey)......................................................11
    2.2    Class 2 (Rabobank)..................................................................11
    2.3    Class 3 (Affiliate Lenders' Claims).............................................12
    2.4    Class 4 (Purchaser's DIP Claim)..................................................12
    2.5    Class 5 (Priority Claims)..........................................................12
    2.6    Class 6 (Trade Payable Unsecured Claims)....................................12
    2.7    Class 7 (Club Member Unsecured Claims)....................................13
    2.8    Class 8 (Insider Unsecured Claims).............................................13
    2.9    Class 9 (Interests)..................................................................13

ARTICLE III. TREATMENT OF CLAIMS NOT IMPAIRED UNDER THE PLAN....................13

    3.1    Class 1 (County of Monterey)......................................................13
    3.2    Class 4 (Purchaser DIP Line Claim)............................................14
    3.3    Class 5 (Section 507(a) Priority Claims). ....................................14

ARTICLE IV. TREATMENT OF UNCLASSIFIED CLAIMS..............................15

    4.1    Allowed Administrative Claims...................................................15
    4.2    Tax Claims Entitled to Priority under Section 507(a)(8). .................15

ARTICLE V. TREATMENT OF CLASSES OF CLAIMS AND INTERESTS THAT ARE
IMPAIRED UNDER THE PLAN..............................................................16

    5.1    Class 2 (Rabobank)..................................................................16
    5.2    Class 3 (Affiliate Lenders).......................................................17
    5.3    Class 6 (Trade Payable Unsecured Claims). .................................17
    5.4    Class 7 (Club Member Unsecured Claims). .................................17
    5.5    Class 8 (Insider Unsecured Claims).............................................20
    5.6    Class 9 (Interests)..................................................................20

ARTICLE VI. MEANS FOR IMPLEMENTATION OF THE PLAN..........................21

    6.1    Purchase Transaction. ..............................................................21
            6.1.1    Purchase Price.........................................................21
            6.1.2    Cash Investment.......................................................24
    6.2    Continuing Effect and Performance of Existing Orders. ...................24
    6.3    Operations Pending Effective Date and Close of Purchase Transaction. ...24
    6.4    Cancellation of Legal Entities....................................................25
    6.5    Prosecution of Retained Claims..................................................25
    6.6    Distributions.........................................................................25
            6.6.1    Distribution Account.................................................25
            6.6.2    Distribution Addresses..............................................25
            6.6.3    Withholding Taxes...................................................25

| | | |
|---|---|---:|
| 6.7 | Responsible Person. | 26 |
| 6.9 | Disbursing Agent. | 27 |
| 6.10 | De Minimis Distributions. | 27 |
| 6.11 | Unclaimed Distributions. | 28 |
| 6.12 | Tax Returns, Payments and Refunds. | 28 |
| 6.13 | Further Orders. | 28 |
| 6.14 | Post-Confirmation Employment of Personnel. | 28 |
| 6.15 | Post-Confirmation Compensation and Reimbursement of Professionals. | 28 |
| 6.16 | Creditors' Committee. | 29 |
| 6.17 | Post-Confirmation Notice. | 30 |
| 6.18 | Revesting of Property of the Estate. | 30 |
| 6.19 | Exemption From Certain Transfer Taxes. | 30 |
| 6.20 | Post-Confirmation Reports, Fees, and Final Decree. | 30 |
| | 6.20.1  U.S. Trustee Fees. | 30 |
| | 6.20.2  Post-Confirmation Reports. | 31 |
| | 6.20.3  Final Decree. | 31 |

**ARTICLE VII. EXECUTORY CONTRACTS AND UNEXPIRED LEASES** ............................... 31

| | | |
|---|---|---:|
| 7.1 | Treatment of Executory Contracts and Unexpired Leases. | 31 |
| 7.2 | Assumption of Executory Contracts and Unexpired Leases. | 31 |
| 7.3 | Effect of Assumption of Executory Contracts and Unexpired Leases. | 31 |
| 7.4 | Adding and Removing Executory Contracts and Unexpired Leases. | 32 |
| 7.5 | Defaults. | 32 |
| 7.6 | Rejection of Executory Contracts and Unexpired Leases. | 32 |
| 7.7 | Rejection Claims. | 32 |

**ARTICLE VIII. PROOFS OF CLAIM; OBJECTIONS** ...................................................... 33

| | | |
|---|---|---:|
| 8.1 | Time for Filing Proofs of Claim. | 33 |
| 8.2 | Ownership and Transfers of Claims. | 33 |
| 8.3 | Amendments to Claims. | 33 |
| 8.4 | Claim Objections. | 33 |
| 8.5 | Disallowance of Claims. | 33 |
| 8.6 | Reserve Accounts. | 34 |
| | 8.6.1    Disputed Reserve Account. | 34 |
| 8.7 | Distributions. | 35 |

**ARTICLE IX. DEFAULT** .................................................................................................... 35

**ARTICLE X. PRESERVATION OF RETAINED CLAIMS and Avoidance Actions** .................... 35

**ARTICLE XI. RETENTION OF JURISDICTION** ................................................................. 36

**ARTICLE XII. EFFECT OF ORDER OF CONFIRMATION** ................................................. 37

| | | |
|---|---|---:|
| 12.1 | Binding Effect of Plan. | 37 |
| 12.2 | Exculpation. | 38 |
| 12.3 | Full Satisfaction of Claims and Interests. | 38 |
| 12.4 | Judgments Null and Void. | 38 |
| 12.5 | Preservation of Insurance. | 38 |

ARTICLE XIII. Conditions Precedent ......................................................................39

    13.1   Conditions Precedent. ...........................................................................39
    13.2   Waiver of Conditions. ...........................................................................39

ARTICLE XIV. MISCELLANEOUS ......................................................................39

    14.1   Exemption from Stamp, Transfer and Other Taxes.....................................39
    14.2   Injunctions and Stays. ...........................................................................40
    14.3   Certain Judgments Null and Void. ..........................................................40
    14.4   No Admissions. ...................................................................................40
    14.5   Revocation of the Plan. .........................................................................40
    14.6   Successors and Assigns..........................................................................40
    14.7   Nonconsensual Confirmation. .................................................................41
    14.8   Destruction of Records. .........................................................................41
    14.9   Saturday, Sunday and Legal Holiday. .......................................................41
    14.10  Plan Interpretation. ..............................................................................41
    14.11  Modification. ......................................................................................41
    14.12  Setoff/Recoupment. ..............................................................................42
    14.13  Waiver. .............................................................................................42
    14.14  Notices. .............................................................................................42
    14.15  Reservation of Rights............................................................................42

TABLE OF EXHIBITS

**EXHIBIT A**        PURCHASE AND SALE AGREEMENT

**EXHIBIT B**        PURCHASER MEMBERSHIP AGREEMENT

**EXHIBIT C**        PURCHASER MEMBERSHIP PLAN

**EXHIBIT D**        LIST OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES TO BE ASSUMED PURSUANT TO PLAN

**EXHIBIT E**        LIST OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES TO BE REJECTED PURSUANT TO PLAN

# PRELIMINARY STATEMENT

Pasadera Country Club, LLC (the "**Debtor**") proposes this DEBTOR'S PLAN OF LIQUIDATION (DATED JULY 20, 2010), as may be modified pursuant to Section 1.51 below, (the "**Plan**") pursuant to the provisions of Chapter 11 of the Bankruptcy Code.

On February 6, 2009, the Debtor filed its Voluntary Petition under Chapter 11 of the Bankruptcy Code. Chapter 11 sets forth the rules and procedures under which financially distressed entities may be reorganized or liquidated pursuant to a plan presented to creditors and members for consideration and approval. Confirmation (approval) of the Plan is the culmination of that process.

This Plan sets forth the Debtor's proposal for the liquidation of the Debtor's assets and for the treatment of all Allowed Claims against the Debtor. With the Plan, Creditors and Interest Holders will receive the DISCLOSURE STATEMENT FOR DEBTOR'S PLAN OF LIQUIDATION (DATED JULY 20, 2010) (the "**Disclosure Statement**"). With the Plan and Disclosure Statement, Creditors will receive a Ballot for voting on the Plan. Class 1 Creditors, Class 4 Creditors and Class 5 Creditors are not impaired under the Plan and are therefore conclusively presumed to have accepted the Plan. Accordingly, acceptances with respect to Classes 1, 4 and 5 are not being solicited and no Ballots need be returned by Class 1, Class 4 or Class 5 Creditors. Neither Class 3 Creditors, Class 8 Creditors nor Class 9 Interest Holders will receive anything on account of their Claims and Interests and are therefore conclusively presumed to have rejected the Plan. Accordingly, acceptances with respect to Class 3, Class 8 and Class 9 are not being solicited and no Ballots need be returned by Class 3 Creditors, Class 8 Creditors or Class 9 Interest Holders. Acceptances of the Plan are therefore being solicited only from Classes 2, 6 and 7. Consequently, only holders of Class 2, 6 and 7 Claims need return their Ballots.

The Disclosure Statement includes a summary of the Debtor's history, a summary of significant events during the Chapter 11 case, a summary of the Debtor's assets and liabilities, a summary of what Creditors and Interest Holders will receive under the Plan, a discussion of certain alternatives to the Plan, and a summary of the procedures and voting requirements necessary for Confirmation of the Plan.

You should thoroughly review both the Plan and the Disclosure Statement before deciding

whether you will accept or reject the Plan.

**CREDITORS AND INTEREST HOLDERS WISHING TO VOTE ON THE PLAN SHOULD COMPLETE THE BALLOT PROVIDED AND RETURN IT NO LATER THAN AUGUST 9, 2010 AT 5:00 P.M. PACIFIC DAYLIGHT TIME TO:**

**Murray & Murray**
**A Professional Corporation**
**Attn: Jenny Lynn Fountain**
**19400 Stevens Creek Boulevard**
**Suite 200**
**Cupertino, California 95014-2548**

**IF YOUR BALLOT IS NOT RETURNED BY AUGUST 9, 2010 AT 5:00 P.M. PACIFIC DAYLIGHT TIME, IT MAY NOT BE CONSIDERED. BALLOTS WHICH ARE RETURNED BUT NOT PROPERLY EXECUTED WILL NOT BE CONSIDERED. BALLOTS WHICH ARE EXECUTED BUT WHICH FAIL TO INDICATE EITHER ACCEPTANCE OR REJECTION OF THE PLAN WILL BE CONSIDERED AS ACCEPTING THE PLAN.**

If any class of Claims does not accept the Plan, the Debtor may elect to seek Confirmation of the Plan under Section 1129(b) of the Bankruptcy Code. Confirmation under Section 1129(b) can, in appropriate circumstances, take place notwithstanding the rejection of, or objection to, the Plan by Creditors and Interest Holders. If required, as permitted by the terms of the Plan, the Plan may be modified at or prior to the hearing on Confirmation to permit Bankruptcy Court approval under Section 1129(b). If the Plan is not confirmed, the Bankruptcy Court may order the Bankruptcy Case dismissed, or converted to a case under Chapter 7 of the Bankruptcy Code, or the Debtor or other parties in interest may propose a different plan.

## ARTICLE I.

## DEFINITIONS

As used in the Plan, the following terms will have the respective meanings specified below:

1.1    **"Administrative Claim"** means a Claim for any cost or expense of administration of a kind specified in Section 503(b) of the Bankruptcy Code, including any actual and necessary costs and expenses of preserving the Bankruptcy Estate incurred on or after the Petition Date and through

and including the Confirmation Date, any cure amounts that must be paid in connection with the assumption of any executory contract or unexpired lease of the Debtor under Section 365 of the Bankruptcy Code, fees due to the United States Trustee pursuant to 28 U.S.C. § 1930(a)(6), and compensation for legal or other services and reimbursement of expenses allowed by the Bankruptcy Court under Sections 330 and 331 of the Bankruptcy Code or otherwise.

1.2    "**Administrative Claims Bar Date**" means that date which is thirty (30) days following the date of the Notice of Confirmation.

1.3    "**Administrative Claim Objection Deadline**" means sixty (60) days after the Administrative Claims Bar Date or such later date as may be established by the Bankruptcy Court for cause.

1.4    "**Affiliate Lenders**" means collectively deRegt Development Inc., Bates Properties Inc., and New Cities Land Company, Inc. in connection with their $750,000 pre-petition secured loan to the Debtor and their $1,200,000 post-petition secured loan to the Debtor.

1.5    "**Allowed" or "Allowed Amount**" means the amount in which any Claim or Interest is allowed.  Unless otherwise expressly required by the Bankruptcy Code or the Plan, the Allowed Amount of any Claim does not include interest on such Claim from or after the Petition Date.

1.6    "**Allowed Administrative Claim**" means all or any portion of an Administrative Claim that has either been Allowed by a Final Order or to which there has been no objection within the time period established by the Plan or by an order of the Bankruptcy Court.

1.7    "**Allowed Claim**" means a Claim: (a) in respect to which a proof of Claim has been filed with the Bankruptcy Court by the applicable Claims Bar Date and to which no objection has been filed within the time fixed by the Plan or the Bankruptcy Court; (b) as to which no proof of Claim has been filed and which has been listed on Schedule D, E or F of the Debtor's Schedules and is not listed as disputed, contingent, unliquidated or unknown as to amount, and to which no objection has been filed within the time fixed by the Plan or the Bankruptcy Court; or (c) which is Allowed by a Final Order.  No Claim will be considered an Allowed Claim if: (1) an objection to the allowance thereof is interposed by a party in interest within the time fixed by the Plan or the Bankruptcy Court, and such objection has not been overruled by a Final Order; or (2) the Claim has

already been satisfied.

1.8 "**Allowed Unsecured Claim**" means any Allowed Claim that is not an Allowed Secured Claim, including the unsecured Claims of undersecured Creditors and Rejection Claims, but excluding Administrative Claims, Priority Claims and Tax Claims.

1.9 "**Avoidance Actions**" means causes of action of the Debtor under Chapter 5 of the Bankruptcy Code.

1.10 "**Ballot**" means the voting ballot Creditors and Interest Holders will receive for purposes of voting on the Plan.

1.11 "**Bankruptcy Case**" or "**Case**" means the bankruptcy case commenced by the Debtor's filing with the Bankruptcy Court of its Voluntary Petition under Chapter 11 of the Bankruptcy Code.

1.12 "**Bankruptcy Code**" means Title 11, United States Code, § 101, et seq. as in effect and applicable to the Case.

1.13 "**Bankruptcy Court**" means the United States Bankruptcy Court for the Northern District of California, San Jose Division, or such other court exercising jurisdiction over the Case.

1.14 "**Bankruptcy Estate**" or "**Estate**" means the estate created by the commencement of the Bankruptcy Case and comprised of the property described in Section 541 of the Bankruptcy Code.

1.15 "**Bankruptcy Rules**" means the Federal Rules of Bankruptcy Procedure promulgated under 28 U.S.C. § 2075, as amended, as applicable to the Bankruptcy Case.

1.16 "**Business Day**" means a day, Monday through Friday, excluding federal and legal holidays.

1.17 "**Claim**" means any: (a) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or (b) right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.

1.18 "**Claims Bar Date**" means: (a) with respect to Claims other than those held by governmental units, June 16, 2009; (b) with respect to Claims held by governmental units, August 5, 2009; (c) with respect to Rejection Claims, the Rejection Claims Bar Date; and (d) with respect to an Administrative Claim, other than as provided in Section 4.1 below for the Claims of professionals, the Administrative Claims Bar Date.

1.19 "**Claims Objection Date**" means the date ninety (90) days after the Effective Date; provided, however, that the Claims Objection Date may be extended by the Bankruptcy Court for cause upon the ex parte motion of the Liquidating Debtor.

1.20 "**Club Member**" means a person who is, or was prior to or as of the Effective Date, a member of the Pasadera Country Club pursuant to a binding membership plan and a Membership Agreement.

1.21 "**Club Member Unsecured Claim**" means an unsecured Claim held by a Club Member, or by a Club Member's successor by operation of law or consent of the Purchaser (other than any Trade Payable Unsecured Claim also held by a Club Member by virtue of a separate Claim as a Trade Vendor) and which is: (a) listed in the Debtor's Schedules (other than if listed as disputed, contingent or unliquidated); (b) filed on or before the Claims Bar Date or other applicable bar date established in the Case for the filing of a Claim; (c) a Rejection Claim; or (d) otherwise determined to be timely filed by order of the Bankruptcy Court.

1.22 "**Committee's Professionals**" means, collectively, Wendel Rosen Black & Dean LLP and/or its successors, if any; and such other professionals whose employment by the Creditors' Committee prior to Confirmation is approved by order of the Bankruptcy Court, if any; and following the Effective Date, any professionals engaged by the Creditors' Committee to represent or assist it in fulfilling its duties and obligations as the Creditors' Committee.

1.23 "**Confirmation**" means the entry by the Bankruptcy Court of the Order of Confirmation.

1.24 "**Confirmation Date**" means the date on which the Bankruptcy Court enters the Order of Confirmation.

1.25 "**Confirmation Hearing**" means the hearing held by the Bankruptcy Court on

Confirmation of the Plan as required by Section 1128(a) of the Bankruptcy Code.

1.26 "**Creditor**" means any entity holding a Claim against the Debtor.

1.27 "**Creditors' Committee**" or "**Committee**" means the Official Committee of Unsecured Creditors appointed by the Office of the United States Trustee on April 2, 2009 and reconstituted by the United States Trustee on April 15, 2009, consisting of Better Brand Food Products, Inc.; Rick Hartbrodt; Kenneth and Sally Holbrook; James E. Ticehurst; and the Holden-Finely Family Trust DTD 9/5/91, subject to change as set forth in Section 6.16.

1.28 "**Debtor**" means Pasadera Country Club, LLC, a California limited liability company.

1.29 "**Debtor's Professionals**" means, collectively, Murray & Murray, A Professional Corporation ("Murray & Murray"); FLG Partners, LLP; Farella Braun + Martel, LLP; and Hayashi & Wayland Accounting and Consulting, LLP; and/or their successors, if any; and such other professionals whose employment by the Debtor prior to the Confirmation Date is approved by order of the Bankruptcy Court, if any; and following the Effective Date, any professionals engaged by the Liquidating Debtor to represent or assist it in fulfilling its duties and obligations as the Liquidating Debtor under the Plan, including such accountant(s) as the Liquidating Debtor may select to complete the Liquidating Debtor's tax returns and other required filings with governmental authorities having jurisdiction over the Liquidating Debtor and such legal professionals as might be appropriate to assist in administering the Plan, the Bankruptcy Case and the Bankruptcy Estate.

1.30 "**Disbursing Agent**" means Thomas S. deRegt, provided that the Debtor, the Liquidating Debtor or Thomas S. deRegt may request the Bankruptcy Court to designate another Person to serve as Disbursing Agent.

1.31 "**Disclosure Statement**" means the DISCLOSURE STATEMENT FOR DEBTOR'S PLAN OF LIQUIDATION (DATED JULY 20, 2010), including any modification(s) thereof and/or amendment(s) thereto.

1.32 "**Disputed Claim**" means a Claim against the Debtor: (a) as to which a proof of Claim has not been filed and/or that has been listed in the Debtor's Schedules as disputed, contingent or unliquidated; (b) as to which an objection has been filed within the time fixed by the Bankruptcy Court and which objection has not been withdrawn or disposed of by a Final Order; or (c) by a

Person who is a defendant in an adversary proceeding (including without limitation an Avoidance Action) which has not been withdrawn or disposed of by a Final Order.

1.33    "**Disputed Claims Reserve Account**" means a segregated interest-bearing bank account maintained for the purpose of holding cash attributable to Disputed Claims and administered consistent with the provisions of Section 345 of the Bankruptcy Code.

1.34    "**Distribution**" means, as the context requires:  (a) the cash to be provided under the Plan to the holders of Allowed Claims; or (b) the payment, transfer, delivery or deposit of cash to Creditors pursuant to the Plan.

1.35    "**Distribution Date**" means any date on which a Distribution is made pursuant to the Plan.

1.36    "**Effective Date**" means the effective date of the Plan, which will be a date designated by the  Debtor and which will be the date on which the Purchase Transaction closes, but which date will be no less than 15 calendar days and no more than 60 calendar days following the Confirmation Date or, in the event that the Effective Date of the Plan is enjoined or stayed by a court of competent jurisdiction for any period of time, no later than 30 calendar days following expiration of such stay or injunction; *provided* that such date may be extended up to an additional 30 calendar days beyond the period set forth above by the Liquidating Debtor, in its sole discretion.

1.37    "**Final Order**" means an order entered on the docket by the Bankruptcy Court or the District Court, as applicable, which is no longer subject to appeal, certiorari or other proceedings for review or rehearing, and as to which no appeal, certiorari or other proceedings for review or rehearing are pending.

1.38    "**Guarantors**" means collectively NCD Construction, Inc.; NCDG Golf, LLC; deRegt Golf, LLC; Bates Golf, LLC; New Cities Development Group, a California general partnership; deRegt Development, Inc.; Bates Properties, Inc.; New Cities Land Company, Inc.; Thomas S. deRegt; Frederick M. Bates; and Lee E. Newell; whether or not they have effectively guarantied an obligation of the Debtor.  Identifying those individuals or entities as Guarantors is not an admission of the validity of any guaranty or claimed guaranty by any of them of any obligation of the Debtor.

Case: 09-50771    Doc# 249    Filed: 07/20/10    Entered: 07/20/10 12:47:42    Page 12 of 48

1.39 "**Insider**" means all Persons who constitute an insider of the Debtor pursuant to 11 U.S.C. § 101(31) or applicable law.

1.40 "**Insider Unsecured Claim**" means an unsecured Claim held by an Insider which is: (a) listed in the Debtor's Schedules (other than if listed as disputed, contingent or unliquidated); (b) filed by the Claims Bar Date or other applicable bar date established in the Case for filing a Claim; or (c) otherwise determined to be timely by order of the Bankruptcy Court.

1.41 "**Interest**" means units or rights to units or any membership interest or other ownership interest held by any Person in the Debtor.

1.42 "**Interest Holders**" means, collectively, NCDG Golf, LLC, a Delaware limited liability company; deRegt Golf, LLC, a Delaware limited liability company; Bates Golf, LLC, a Delaware limited liability company; and Lee E. Newell.

1.43 "**Liquidating Debtor**" means the Debtor on and after the Effective Date.

1.44 "**Local Rules**" means the Local Rules of the United States District Court for the Northern District of California, as amended, as applicable to this Bankruptcy Case.

1.45 "**Membership Agreement**" means that certain agreement entered into by and between the Debtor and each individual Club Member wherein, among other things, the Club Member, in exchange for initiation fees or deposits and monthly dues, received the right and privilege to use the Pasadera County Club.

1.46 "**Notice of Confirmation**" means the Notice of Order Confirming Plan or similarly titled notice of like effect issued by the Clerk of the Bankruptcy Court following Confirmation.

1.47 "**Notice Parties**" means the Liquidating Debtor, the United States Trustee, the Responsible Person, and any Creditor or party in interest who, after the Confirmation Hearing, serves a notice on the Debtor or Liquidating Debtor and its counsel requesting to be added as a notice party; provided, however, that any Creditor whose Claim has been paid in full will no longer be a Notice Party.

1.48 "**Order of Confirmation**" means the order entered by the Bankruptcy Court approving and confirming the Plan in accordance with the provisions of Chapter 11 of the Bankruptcy Code.

1.49    "**Person**" will have the meaning ascribed to it in the Bankruptcy Code.

1.50    "**Petition Date**" means February 6, 2009, the date on which the Debtor filed its Voluntary Petition under Chapter 11 initiating the Bankruptcy Case and on which date relief was ordered in the Bankruptcy Case.

1.51    "**Plan**" means this DEBTOR'S PLAN OF LIQUIDATION (DATED JULY 20, 2010), including any modification(s) hereof and/or amendment(s) hereto that comply with Section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019.

1.52    "**Priority Claim**" means any Allowed Claim entitled to priority pursuant to Section 507(a) of the Bankruptcy Code, but not including an Administrative Claim or a Tax Claim.

1.53    "**Purchase and Sale Agreement**" means that certain Purchase and Sale Agreement dated as of June 23, 2010, including any amendments, addendums, attachments, exhibits, schedules, restatements, modifications and/or supplements thereto, entered into by and between the Debtor and the Purchaser, and which is attached hereto as **Exhibit "A."**

1.54    "**Purchaser**" means PASADERA INTERNATIONAL, LLC, a California limited liability company, including its assignee or assignees and/or successor.

1.55    **Purchaser Membership Agreement**" means that certain agreement which Club Members will be invited to execute in order to join Purchaser's club, and which is attached hereto in draft form as **Exhibit "B".** The attached draft Purchaser Membership Agreement is a draft document only. The Purchaser Membership Agreement is subject to change at any time at the sole discretion of the Purchaser after further analysis of market conditions.

1.55.1. "**Purchaser Membership Plan**" means that certain club governing document which will govern the Purchaser Membership Agreements and which is attached hereto in draft form as **Exhibit "C"**. The attached draft Purchaser Membership Plan is a draft document only. The Purchaser Membership Plan is subject to change at any time at the sole discretion of the Purchaser after further analysis of market conditions.

1.56    "**Purchase Transaction**" means that certain transaction whereby substantially all of the Debtor's assets will be sold to the Purchaser as contemplated in the Purchase and Sale Agreement and pursuant to the Plan.

JWM/JLF/cc
K:\Pasadera\Pldg\Plan and DS\Plan\July 20, 2010 Plan\Planv4.docx
DEBTOR'S PLAN OF LIQUIDATION
(DATED JULY 20, 2010)

1.57    "**Rabobank**" means Rabobank, N.A., and its successors and assigns.

1.58    "**Real Property**" means the real property which serves as collateral for the Secured Claim of Rabobank located in Monterey County.

1.59    "**Rejection Claim**" means an Allowed Unsecured Claim arising from the Debtor's rejection of an unexpired lease or executory contract pursuant to the Plan or pursuant to an order of the Bankruptcy Court, including without limitation, claims arising from the rejection of Membership Agreements.

1.60    "**Rejection Claims Bar Date**" means the earlier of: (a) thirty (30) days following the date of the Notice of Confirmation; or (b) thirty (30) days after the effective rejection date with respect to an executory contract or unexpired lease rejected before the Confirmation Date pursuant to a Final Order.

1.61    "**Responsible Person**" means Thomas S. deRegt or such other Person designated by an order of the Bankruptcy Court.

1.62    "**Retained Claims**" means any Claim owned or held by the Debtor against any Person as of the Effective Date, including without limitation, Avoidance Actions, and those Retained Claims referred to in Article X.

1.63    "**Schedules**" means the Debtor's schedules of assets and liabilities consisting of Schedules "**A**" through "**H**" filed with the Bankruptcy Court pursuant to Section 521(a)(1) of the Bankruptcy Code and Bankruptcy Rule 1007(b), as may be amended at any time prior to Distribution.

1.64    "**Secured Claim**" means a Claim secured by a lien, security interest, or other charge against or interest in property in which the Debtor has an interest or that is subject to setoff under Section 553 of the Bankruptcy Code, to the extent of the value (as specified in the Plan, or if no value is specified, as determined in accordance with Section 506(a) of the Bankruptcy Code) of the interest of a holder of such Claim in the Debtor's interest in such property or to the extent of the amount subject to such setoff, as the case may be.

1.65    "**Tax Claim**" means any Allowed Claim against the Debtor entitled to priority pursuant to Section 507(a)(8) of the Bankruptcy Code.

Case: 09-50771    Doc# 249    Filed: 07/20/10    Entered: 07/20/10 12:47:42    Page 15 of 48

1.66 **"Trade Payable Unsecured Claim"** means an unsecured Claim which is held by a Trade Vendor for a Claim(s) arising out of and as a direct result of the Trade Vendor furnishing goods or services to the Debtor prior to the Petition Date in the ordinary course of the Trade Vendor's and the Debtor's businesses, and which is: (a) listed in the Debtor's Schedules (other than if listed as disputed, contingent or unliquidated); (b) filed on or before the Claims Bar Date or other applicable bar date established in the Case for the filing of a Claim; or (c) otherwise determined to be timely filed by order of the Bankruptcy Court; but not including Rejection Claims.

1.67 **"Trade Vendor"** means any Creditor that prior to the Petition Date provided trade goods and/or services to the Debtor in the ordinary course of business of the Debtor and the respective Creditor, but excludes Club Member Unsecured Claims, and thus excludes Club Members, except to the extent that a Club Member, in addition to and apart from their status as a Club Member and holder of a Club Member Unsecured Claim, also qualifies separately as a Trade Vendor.

A capitalized term used in the Plan that is not herein defined but is defined in the Bankruptcy Code or the Bankruptcy Rules will have the meaning ascribed to such term in the Bankruptcy Code or the Bankruptcy Rules.

## ARTICLE II.

## DESIGNATION OF CLASSES OF CLAIMS AND INTERESTS

The Allowed Claims against and Interests in the Debtor are designated and classified below for purposes of the Plan.

Except to the extent that the Plan provides otherwise, a Claim or Interest that is properly includable in more than one class is classified in a particular class only to the extent that it qualifies within the description of that class, and is placed in a different class to the extent it qualifies within the description of such different class.

2.1 **Class 1 (County of Monterey).**

Class 1 consists of the Allowed Secured Claim(s) of the Country of Monterey.

2.2 **Class 2 (Rabobank).**

Class 2 consists of the Allowed Secured Claim(s) of Rabobank.

JWM/JLF/cc
K:\Pasadera\Pldg\Plan and DS\Plan\July 20, 2010 Plan\Planv4.docx

DEBTOR'S PLAN OF LIQUIDATION
(DATED JULY 20, 2010)

Case: 09-50771   Doc# 249   Filed: 07/20/10   Entered: 07/20/10 12:47:42   Page 16 of 48

2.3 **Class 3 (Affiliate Lenders' Claims)**.

Class 3 consists of the Allowed Secured Claim(s) of the Affiliate Lenders in connection with their $750,000 pre-petition secured loan to the Debtor and their $1,200,000 post-petition secured loan to the Debtor.

2.4 **Class 4 (Purchaser's DIP Claim)**

Class 4 consists of the Allowed Secured Claim(s) of the Purchaser. As part of the Purchase Transaction, the Purchaser has agreed to provide secured debtor in possession ("**DIP**") financing in the total amount of $100,000.00, in two tranches after the Debtor's affiliates' debtor in possession financing has been exhausted, upon the occurrence of certain events as more fully described in the Purchase and Sale Agreement. To secure the Purchaser DIP financing, the Debtor will grant the Purchaser a security interest and lien (subject only to non-subordinated pre-existing security interests held by third parties and/or liens currently existing on the collateral) in: (i) all of the Debtor's equipment, inventory, accounts and general intangibles, whether now owned or hereafter acquired; (ii) all of the Debtor's right, title and interest as lessee pursuant to that certain lease agreement dated January 12, 1999 between Parks Foundation of Monterey County, as lessor and Debtor as lessee relating to Assessor's Parcel No. 173-061-003-000; and (iii) the Land (collectively, the "Collateral"); *provided however,* that the Collateral shall not include the proceeds of Avoidance Actions. The Affiliate Lenders hold a prepetition secured lien on the Debtor's property and have agreed to subordinate to the Purchaser's liens. However, the Purchaser's liens are junior to all liens held by the Debtor's pre-petition secured lender Rabobank and the County of Monterey for real property taxes. The Purchaser's liens will be discharged upon the Effective Date pursuant to the treatment provided in section 3.2 herein.

2.5 **Class 5 (Priority Claims)**.

Class 5 consists of all Claims entitled to priority under Bankruptcy Code Section 507(a) other than unclassified Section 503(b) Administrative Claims and Section 507(a)(8) Tax Claims described herein.

2.6 **Class 6 (Trade Payable Unsecured Claims)**.

Class 6 consists of Allowed Trade Payable Unsecured Claims held by Trade Vendors not

included or provided for in any other class, and including, without limitation, all unsecured Claims of Trade Vendors for goods delivered or services provided to the Debtor prior to the Petition Date, but excluding Administrative Claims, Club Member Unsecured Claims, Priority Claims, Tax Claims and Rejection Claims.

### 2.7 **Class 7 (Club Member Unsecured Claims)**

Class 7 consists of Allowed Club Member Unsecured Claims held by Club Members not included or provided for in any other class, and including without limitation, all Rejection Claims held by Club Members and all unsecured Claims of Club Members for Club initiation fees or deposits paid to the Debtor prior to the Petition Date, but excluding Administrative Claims, Priority Claims, Tax Claims and Trade Payable Unsecured Claims.

### 2.8 **Class 8 (Insider Unsecured Claims)**.

Class 8 consists of all Allowed Insider Unsecured Claims not included or provided for in any other class, including, without limitation, all Rejection Claims of Insiders and all unsecured Claims of Insiders for loans, goods delivered or services provided to the Debtor prior to the Petition Date, but excluding Administrative Claims, Priority Claims, Affiliate Lenders' Claims and Tax Claims.

### 2.9 **Class 9 (Interests)**.

Class 9 consists of all Interests in the Debtor.

## ARTICLE III.

## TREATMENT OF CLAIMS NOT IMPAIRED UNDER THE PLAN

The below class of Claims are not impaired under the Plan and will receive the treatment described below:

### 3.1 **Class 1 (County of Monterey)**

Class 1 consists of the Allowed Secured Claim(s) of the County of Monterey secured by the Debtor's Real Property. The County of Monterey will be paid in cash, in full upon the later of: (a) the Effective Date; and (b) if such Claim is initially a Disputed Claim, when it becomes an Allowed Claim.

Upon the full payment of the Allowed Class 1 Claim, any and all liens or security interests of any nature whatsoever held by the Class 1 Creditor shall be deemed discharged.

A failure by the Debtor to make a payment to the County of Monterey pursuant to the terms of the Plan shall be an event of default. If the Debtor fails to cure such event of default as to tax payments within twenty one (21) days after service of written notice of default from the County of Monterey, then it may enforce the entire amount of its claim, plus all penalties and interest accrued under state law, against the Debtor in accordance with applicable state law remedies. The foregoing is in full and final satisfaction of the Class 1 Claim.

### 3.2 **Class 4 (Purchaser DIP Line Claim).**

Class 4 consists of the Allowed Secured Claim(s) of the Purchaser. On the Effective Date, the amount advanced on the Purchaser DIP financing will be applied against the cash investment described in section 6.1.2 herein. At the close of the Purchase Transaction, any and all liens or security interests of any nature whatsoever held by the Class 4 Creditor shall be deemed discharged. The foregoing is in full and final satisfaction of the Class 4 Claim.

### 3.3 **Class 5 (Section 507(a) Priority Claims)**.

Class 5 consists of all Claims entitled to priority under Bankruptcy Code Section 507(a) other than unclassified Section 503(b) Administrative Claims and Section 507(a)(8) Tax Claims described above. The Debtor scheduled $55,887.92 in Class 5 Priority Claims (consisting of employee wage and benefit claims and customer deposits). There are $848,703.72 in filed Class 5 Claims. The Debtor estimates that on the Effective Date of the Plan, there will be $49,000 in Allowed Class 5 Claims, consisting entirely of pre-petition accrued personal time off. With respect to Allowed Class 5 Claims, except to the extent that the holder of a particular Allowed Class 5 Claim, if any, has agreed to a less favorable treatment of such Claim, the Purchaser will honor all Allowed Class 5 Claims in the ordinary course of business. The foregoing is in full and final satisfaction of all Class 5 Claims.

Class 5 Claims are unimpaired and the holders of Class 5 Claims are presumed to have accepted the Plan. Claims are subject to verification and may be reduced after objections are resolved by the Bankruptcy Court.

///

///

# ARTICLE IV.

## TREATMENT OF UNCLASSIFIED CLAIMS

Unclassified Claims will be treated as follows:

### 4.1   **Allowed Administrative Claims**.

Other than Allowed Administrative Claims arising out of and related to employee accrued post-petition personal time off, except to the extent that the holder of a particular Administrative Claim has agreed to a different treatment of such Claim, each holder of an Allowed Administrative Claim will be paid in cash, in full, upon the later of: (a) the Effective Date; (b) if such Claim is initially a Disputed Claim, when it becomes an Allowed Administrative Claim; and (c) if such Claim is incurred after the Petition Date in the ordinary course of the Debtor's business, within such time as payment is due pursuant to the terms giving rise to such Claim or as otherwise authorized by the Bankruptcy Court.  With respect to Allowed Administrative Claims arising out of and related to employee accrued post-petition personal time off, except to the extent that the holder of a particular Allowed Administrative Claim, if any, has agreed to a less favorable treatment of such Claim, the Purchaser will honor all Allowed Administrative Claims arising out and related to employee accrued personal time off in the ordinary course of business.

Any request for allowance of an Administrative Claim pursuant to Section 503(a) of the Bankruptcy Code, other than by the Debtor's Professionals or the Committee's Professionals, must be filed on or before the Administrative Claims Bar Date.  If the holder of an asserted Administrative Claim does not file and serve a request for payment of such Claim on the Debtor on or before that date, the holder will be forever barred from asserting such Claim or receiving any payment on account of such Claim. Any objection to the allowance of an Administrative Claim (excluding any claim by the Debtor's Professionals or the Committee's Professionals) will be filed no later than the Administrative Claim Objection Deadline.  If no objection to the applicable Administrative Claim is filed on or before that date, such Administrative Claim will be deemed Allowed as of that date.  The foregoing is in full and final satisfaction of all Administrative Claims.

### 4.2   **Tax Claims Entitled to Priority under Section 507(a)(8)**.

Except to the extent that the holder of a particular Tax Claim has agreed to a different

Case: 09-50771    Doc# 249    Filed: 07/20/10    Entered: 07/20/10 12:47:42    Page 20 of 48

treatment of such Claim, each holder of an Allowed Tax Claim will be paid in cash, in full upon the later of: (a) the Effective Date; and (b) if such Claim is initially a Disputed Claim, when such Claim becomes an Allowed Tax Claim; provided, however, that no such payment will be made unless and until the holders of Allowed Claims entitled to priority pursuant to Section 507(a)(2) through (a)(7) of the Bankruptcy Code are paid or otherwise receive the treatment accorded to them in the Plan; and, provided further, that any such Tax Claim will be paid no later than five (5) years from the Petition Date with interest as provided by applicable nonbankruptcy law.

**ARTICLE V.**

**TREATMENT OF CLASSES OF**
**CLAIMS AND INTERESTS THAT ARE IMPAIRED UNDER THE PLAN**

5.1 **Class 2 (Rabobank)**.

Class 2 consists of the Allowed Secured Claim(s) of Rabobank secured by the Debtor's Real Property.   Rabobank will be paid $1,000,000.00 in cash (the "Cash Payment") and will receive a new secured promissory note in the original principal amount of $5,500,000.00 from the Purchaser (the "New Note") in connection with a new loan for which Purchaser has applied to Rabobank.  To secure the new promissory note, Rabobank will retain any and all of its current valid perfected liens in the Debtor's property and the Purchaser will grant Rabobank a first priority lien in any and all of the Debtor's real and personal property and other interests that the Purchaser will acquire pursuant to the Purchase Transaction, including real and personal property of the Debtor in which Rabobank currently does not have a valid perfected lien or other rights.

The foregoing is in full and final satisfaction of any and all Class 2 Claims, and in full and final satisfaction of any and all Claims, causes of actions, liens or other rights held by Rabobank against the Debtor, the Debtor's property or property of the Bankruptcy Estate, the Liquidating Debtor and/or the Guarantors.  In consideration for Rabobank accepting the Cash Payment and the New Note in full satisfaction of any and all Class 2 Claims, and in full and final satisfaction of any and all Claims, causes of action, liens or other rights held by Rabobank against the Debtor, the Debtor's property or property of the Bankruptcy Estate, the Liquidating Debtor and/or the Guarantors.  On the Effective Date, Debtor and the Guarantors shall execute and deliver a form of

JWM/JLF/cc
K:\Pasadera\Pldg\Plan and DS\Plan\July 20, 2010 Plan\Planv4.docx
DEBTOR'S PLAN OF LIQUIDATION
(DATED JULY 20, 2010)

general release of all claims, causes of action or other rights against Rabobank, waiving California Civil Code section 1542 in form and substance reasonably acceptable to Rabobank, and Rabobank shall deliver an executed deed of reconveyance and such other documents and releases as may be necessary to effectuate the Plan provisions and paragraphs relating to Rabobank and Class 2 Claims.

### 5.2 **Class 3 (Affiliate Lenders)**.

Class 3 consists of the Allowed Secured Claim(s) of the Affiliate Lenders. The Affiliate Lenders, will receive nothing on account of their Class 3 Claim(s). The foregoing is in full and final satisfaction of all Class 3 Claims.

### **Alternative 1 Treatment of Class 6 and 7 Claims**

### 5.3 **Class 6 (Trade Payable Unsecured Claims)**.

Class 6 consists of Allowed Trade Payable Unsecured Claims held by Trade Vendors not included or provided for in any other class, and including without limitation, all unsecured Claims of Trade Vendors for goods delivered or services provided to the Debtor prior to the Petition Date, but excluding Administrative Claims, Club Member Unsecured Claims, Priority Claims, Tax Claims and Rejection Claims.

The holders of Class 6 Trade Payable Unsecured Claims will be paid at least sixty percent (60%) of their Class 6 Claims on the Effective Date. The foregoing is in full and final satisfaction of all Class 6 Claims. Class 6 is impaired. Claims are subject to verification and may be reduced after objections are resolved by the Bankruptcy Court.

### 5.4 **Class 7 (Club Member Unsecured Claims)**.

Class 7 consists of Allowed Club Member Unsecured Claims held by Club Members not included or provided for in any other class, and including without limitation, all Rejection Claims held by Club Members and all unsecured Claims of Club Members for Club initiation fees or deposits paid to the Debtor prior to the Petition Date, but excluding Administrative Claims, Priority Claims, Tax Claims and Trade Payable Unsecured Claims.

Upon the Effective Date, the Debtor will reject all Membership Agreements and the Holders of Class 7 Club Member Unsecured Claims will receive, in exchange for their pre-petition Class 7 Claims, the opportunity to enter into a Purchaser Membership Agreement whereby Holders of Class

Case: 09-50771    Doc# 249    Filed: 07/20/10    Entered: 07/20/10 12:47:42    Page 22 of 48

7 Claims will have the right and privilege to utilize Purchaser's Club in accordance therewith and pursuant to the terms and conditions thereof without paying an initiation fee. The opportunity for Club Members to enter into the Purchaser Membership Agreement will remain open for 60 days after the Effective Date. During the 60 day opportunity period, Club Members who have not yet decided to join the Purchaser's Club will be allowed to use the golf course at a reduced greens fee rate and to use the other club facilities on a cash or credit card basis. Those Club Members who choose to enter into the Purchaser Membership Agreement will be allowed to remain in the same membership category in which they currently belong and will have the privilege and right to use the club facilities uninterrupted pursuant to the terms and conditions of the Purchaser Membership Plan and Purchaser Membership Agreement. Should such members subsequently resign from the Purchaser's Club, there will be no refund or reimbursement associated with the surrender of such membership. Upon the Effective Date, the Debtor will reject all Membership Agreements and the Holders of Class 7 Club Member Unsecured Claims will receive, in exchange for their pre-petition Class 7 Claims, the opportunity to enter into a Purchaser Membership Agreement whereby Holders of Class 7 Claims will have the right and privilege to utilize Purchaser's Club in accordance therewith and pursuant to the terms and conditions thereof without paying an initiation fee. The opportunity for Club Members to enter into the Purchaser Membership Agreement will remain open for 60 days after the Effective Date. During the 60 day opportunity period, Club Members who have not yet decided to join the Purchaser's Club will be allowed to use the golf course at a reduced greens fee rate and to use the other club facilities on a cash or credit card basis. Those Club Members who choose to enter into the Purchaser Membership Agreement will be allowed to remain in the same membership category in which they currently belong and will have the privilege and right to use the club facilities uninterrupted pursuant to the terms and conditions of the Purchaser Membership Plan and Purchaser Membership Agreement. Should such members subsequently resign from the Purchaser's Club, there will be no refund or reimbursement associated with the surrender of such membership. Those Club Members who choose not to enter into a Purchaser Membership Agreement will no longer be entitled to utilize the club facilities, and will receive nothing on account of their Claims.

The Debtor anticipates that, on the Effective Date, the dues for all membership categories will remain the same as Club Members are currently charged and paying: for full golf members the dues are $900.00 and the dues for social members are $350 a month. Dues are subject to change at any time at the discretion of the Purchaser and after further review and market analysis. The Purchaser intends to conduct a thorough analysis of the appropriate level for dues and initiation fees with the goal of repositioning the Club and creating a sustainable business model. The Debtor believes that, with the exception of holders of Allowed Class 7 Claims that enter into a Purchaser Membership Agreement pursuant to this section, the Purchaser will require all persons wishing to join the Purchaser's Club after the Effective Date to pay an initiation fee.

Those Club Members who choose not to enter into a Purchaser Membership Agreement will no longer be entitled to utilize the club facilities, and will receive nothing on account of their Claims.

The foregoing is in full and final satisfaction of all Class 7 Claims, including Rejection Claims. Class 7 is impaired. Claims are subject to verification and may be reduced after objections are resolved by the Bankruptcy Court.

### **Alternative 2 Treatment of Class 6 and 7 Claims**

Should the Court indicate its inclination not to confirm the Plan, including but not limited to, based on the treatment of Classes 6 and 7 as outlined in Alternative 1 above, the Debtor proposes the following alternative treatment of Classes 6 and 7:

The Allowed Claims of Club Members and Trade Vendors shall be combined into a single class (the "Combined Class"). The Debtor's books and records indicate that there are approximately $25,258,394.00 in Combined Class Claims. Holders of Allowed Combined Class Claims will receive: (i) a pro rata distribution of $225,386.40; or (ii) the opportunity to enter into a Purchaser Membership Agreement under the terms and conditions described in Section 5.4 of the Plan and the this section herein.

Within 30 days of the Effective Date, the Debtor shall serve notice (the "Election Notice") on the members of the Combined Class of their right to elect one of the following treatments:

(A) Acceptance of a Purchaser Membership Agreement under the terms and conditions described in Section 10.3.10 of the Disclosure Statement and this section herein; or

(B)     Participation with other so electing claimants to receive a pro rata distribution of $225,386.40.

The Election Notice will be accompanied by an election form (the "Election Form") for each member of the Combined Class to indicate its choice. Election Forms shall be returned to the Debtor's counsel within ten (10) days of service of the Election Notice. Club Members who fail to timely submit an Election Form shall be deemed to have elected alternative (A) above. Trade Vendors who fail to timely submit an Election Form shall be deemed to have elected alternative (B) above.

Any distribution to holders of Allowed Combined Class Claims necessarily will depend and will vary widely based on a variety of factors including, but not limited to: (1) the treatment each individual holder elects; and (2) the total number and dollar amount of Allowed Combined Class Claims electing a pro rata distribution; and (3) the valuation of the opportunity to become a member of the Purchaser's Club under the terms and conditions described in Section 5.4 of the Plan. Members of the Combined Class should be aware that in the unlikely event that the Combined Class Claims are Allowed in the total amount of $25,258,394.00 and every holder of an Allowed Combined Class Claim elects to share in the pro rata distribution of $225,386.40, the projected dividend is expected to be less than 1 cent on the dollar ($0.00892).

The Combined Class is impaired. Claims are subject to verification and may be reduced after objections are resolved by the Bankruptcy Court.

   5.5   **Class 8 (Insider Unsecured Claims)**.

Holders of Class 8 Unsecured Claims will receive nothing on account of their pre-petition Class 8 Claims.

   5.6   **Class 9 (Interests)**.

Holders of Class 9 Interests will receive nothing on account of their pre-petition Class 9 Interests.

/ / /

/ / /

/ / /

Case: 09-50771    Doc# 249    Filed: 07/20/10    Entered: 07/20/10 12:47:42    Page 25 of 48

# ARTICLE VI.

## MEANS FOR IMPLEMENTATION OF THE PLAN

6.1     **Purchase Transaction**.

    6.1.1     **Purchase Price**.

Pursuant to the Purchase and Sale Agreement, on the Effective Date, Purchaser will acquire substantially all of the Debtor's assets pursuant to 11 U.S.C. §§ 105(a), 363, 365 and 1123(a)(5)(D) free and clear of all Claims, liens, interests and encumbrances of any and every kind.   Should there be any conflict or inconsistency between the terms of the Plan and the terms of the Purchase and Sale Agreement, the terms of the Plan will govern. The purchase price for Purchaser's acquisition of the Debtor's assets, payable on the Effective Date, will include the following:

        (a)      $2,333.69 for section 503(b)(9) administrative claims of Ecolab and Global Wine Imports, collectively;

        (b)      $766.00 for payment of unclassified Allowed priority tax claims;

        (c)      $276,516.00 in cash for payment to the Class 1 claimant, the County of Monterey;

        (d)      $1,000,000.00 in cash and a promissory note for $5,500,000.00 from Purchaser to the Class 2 claimant, Rabobank, subject to Rabobank's acceptance, in full satisfaction of all Class 2 Claims and Rabobank's liens, claims, encumbrances, against the Debtor, the Purchaser and the Guarantors;

        (e)      Sufficient funds to pay all Class 5 Priority Claims, if any, due on the Effective Date of the Plan;

        (f)      $225,384.40 for payment to the Class 6 Trade Payable Unsecured Claims under Alternative Treatment 1 of the Plan or to pay Class 6 Trade Payable Unsecured Claims and potentially electing Class 7 Club Member Claims under Alternative Treatment 2 of the Plan[1];

---

[1] In addition, any recovery arising out of or related to Avoidance Actions will be added to the funds identified in this section to pay, pursuant to sections 5.3 of the Plan, Class 6 Claimants under Alternative Treatment 1 or, pursuant

Case: 09-50771     Doc# 249     Filed: 07/20/10     Entered: 07/20/10 12:47:42     Page 26 of 48

(g) Purchaser Membership Agreements for all Class 7 Club Members who elect to become members of Purchaser's club; and

(h) $570,639.87 estimated for payment of the Debtor's Professionals and the Committee's Professionals, to be distributed as follows:

(1) Murray & Murray: $325,000:

(A) Murray & Murray has agreed to a 10% reduction in its fees and expenses incurred and unpaid through May 31, 2010 [$261,122.63 X 10% = $26,112.26] provided that the 10% reduction is in lieu of any reduction that might otherwise occur due to an objection to its fees and expenses by the Debtor or the Purchaser, or any of their direct or indirect affiliates, who, in consideration thereof, shall waive any and all objections to such fees and expenses. This agreement will be recited in Murray & Murray's application for compensation.

(B) Murray & Murray has also agreed to cap its fees and expenses in the case at $325,000 subject to plan confirmation being uncontested and/or minimally contested. More specifically, if confirmation is contested and Murray & Murray is required to conduct and/or engage in discovery, any fees incurred doing so will not be subject to the $325,000 cap. In addition, if confirmation is contested and the confirmation hearing continues for more than 2 days, any fees and expenses incurred after the second day will not be subject to the cap. Any fees and expenses incurred relative to an appeal of the confirmation order will also not be subject to the cap;

(ii) Farella, Braun + Martel, LLP: $138,000: Farella, Braun + Martel, LLP has agreed to cap its fees and expenses in the case at $138,000. This includes a 10% reduction of its fees and expenses incurred and unpaid through May 31, 2010, provided that the 10% reduction is in lieu of any reduction that might otherwise occur due to an objection to its fees and expenses by the

to section 5.4 of the Plan, Class 6 and Class 7 potential electing Claimants under Alternative Treatment 2, as applicable. The Debtor does not believe that there are any viable Avoidance Actions.

JWM/JLF/cc
K:\Pasadera\Pldg\Plan and DS\Plan\July 20, 2010 Plan\Planv4.docx

22

DEBTOR'S PLAN OF LIQUIDATION
(DATED JULY 20, 2010)

Case: 09-50771    Doc# 249    Filed: 07/20/10    Entered: 07/20/10 12:47:42    Page 27 of 48

Debtor or the Purchaser, or any of their direct or indirect affiliates, who, in consideration thereof, shall waive any and all objections to such fees and expenses. This agreement will be recited in Farella, Braun + Martel's application for compensation;

(iii) FLG Partner, LLP: $24,342.75. FLG has agreed to a 10% reduction in its total estimated fees of $27,048;

(iv) Hayashi & Wayland Accounting and Consulting, LLP: $17,772.62. Hayashi & Wayland has agreed to a 10% reduction of its total fees of $19,747.36 incurred and owing as of May 31, 2010;

(v) Wendel Rosen Black & Dean, LLP: $65,524.50. Wendell Rosen Black & Dean, LLP shall agree to cap its fees and expenses in the case through June 30, 2010 at $65,534.50. This will include a 10% reduction in its projected fees and expenses, provided that the 10% reduction is in lieu of any reduction that might otherwise occur due to an objection to its fees and expenses by the Debtor or the Purchaser, or any of their direct or indirect affiliates, who, in consideration thereof, shall waive any and all objections to such fees and expenses. This agreement will be recited in Wendel Rosen Black & Dean LLP's application for compensation. Fees and expenses incurred after June 30, 2010 shall remain subject to negotiation among Wendel Rosen Black & Dean LLP, the Debtor and the Purchaser.

To the extent that any of the Debtor's Professionals' or the Committee's Professional's fees and expenses are less than the caps described above, those amounts by which such professionals' fees and expenses are under the caps shall be available for those professionals whose fees and expenses exceed the cap.

Except for those expenses described in this section, the Purchaser will not be liable for any other post-Confirmation expenses of administration of the Bankruptcy Estate.

A confirmation deposit consisting of sufficient cash to pay all of the cash items listed in this Section 6.1.1. shall be deposited by Purchaser into the Purchaser's counsel's trust account at least seven (7) days prior to the Confirmation Hearing.

///

///

Case: 09-50771    Doc# 249    Filed: 07/20/10    Entered: 07/20/10 12:47:42    Page 28 of 48

### 6.1.2 **Cash Investment**.

In addition to the purchase price, Purchaser shall arrange for the sum of $1,100,000 to be invested into Purchaser on or after the Effective Date, as necessary, to provide funds for capital improvements and working capital.

### 6.2 **Continuing Effect and Performance of Existing Orders.**

The Bankruptcy Court has entered various orders during the pendency of these cases which will remain in effect notwithstanding confirmation of the Plan, and the Liquidating Debtor (and post-closing of the Purchase Transaction, the Purchaser,) will continue to carry out the matters provided for in such orders. Without limitation, these orders include: (a) the ORDER AUTHORIZING DEBTOR TO CONTINUE CERTAIN MEMBERS' BENEFITS AND AMENITIES PROGRAMS entered on February 12, 2009 whereby the Court authorized the Debtor to honor its obligations to holders of pre-petition gift certificates, pre-paid massages, and pre-paid fitness/wellness packages, to the extent that each individual holds less than $2,425 of such claims, in the ordinary course of business; and (b) ORDER AUTHORIZING DEBTOR TO: (I) HONOR PREPETITION EMPLOYEE WAGES, GRATUITIES AND OBLIGATIONS; AND (II) FOR DEBTOR, BANKS AND OTHER FINANCIAL INSTITUTIONS TO COMPLY WITH PROCEDURES RELATING THERETO, entered on February 16, 2009, whereby, among other things, the Court authorized the Debtor to honor its obligations to employees arising out of accrued pre-petition personal time off up to the amount of $10,950.00, in the ordinary course of business.

### 6.3 **Operations Pending Effective Date and Close of Purchase Transaction**.

Until the Effective Date, the Debtor will continue to operate its business subject to all applicable requirements of the Bankruptcy Code and the Bankruptcy Rules. On and after the Effective Date and until the Purchase Transaction closes, the Liquidating Debtor will continue to operate its business and may recruit new club members, obtain credit, incur debt, grant security interests and liens, and otherwise acquire and dispose of assets pursuant to applicable corporate law, but subject to the Plan and the Purchase and Sale Agreement. The Liquidating Debtor will be free of any restriction imposed by the Bankruptcy Court, the Bankruptcy Code and the Bankruptcy Rules, other than those obligations set forth in the Plan.

/ / /

Case: 09-50771    Doc# 249    Filed: 07/20/10    Entered: 07/20/10 12:47:42    Page 29 of 48

6.4 **Cancellation of Legal Entities.**

Pursuant to the provisions of the California General Corporation Law, the Liquidating Debtor will be dissolved and its corporate existence terminated, without further corporate action, upon the entry of a Final Decree in the Bankruptcy Case pursuant to Bankruptcy Rule 3022. The Order of Confirmation will be deemed the appropriate authorization required under the California General Corporation Law, authorizing the Responsible Person and the Liquidating Debtor to file the requisite certificates of dissolution and certificates of cancellation with the California Secretary of State together with any other filings that may be necessary or appropriate to cancel and dissolve the Liquidating Debtor.

6.5 **Prosecution of Retained Claims**.

Except as otherwise provided in the Plan, the Responsible Person will collect and prosecute the Retained Claims, if any. The Responsible Person shall not compromise any Retained Claim without first obtaining an order of the Bankruptcy Court, after notice and a reasonable opportunity for a hearing, to the extent required under Bankruptcy Rule 9019.

6.6 **Distributions**.

6.6.1 **Distribution Account**.

If the Disbursing Agent is a Person other than the Responsible Person, the Disbursing Agent shall hold any funds transmitted to it in a segregated trust account for the benefit of holders of Allowed Claims.

6.6.2 **Distribution Addresses**.

Unless a Creditor has provided the Debtor or the Liquidating Debtor and its counsel with written notice of a different address, Distributions will be mailed to Creditors at the address set forth in the proofs of Claim filed with the Bankruptcy Court. If no proof of Claim is filed with respect to a particular Claim, the Distribution will be mailed to the address set forth in the Schedules filed by the Debtor.

6.6.3 **Withholding Taxes**.

Pursuant to Section 346(h) of the Bankruptcy Code, the Disbursing Agent will be entitled to deduct any federal, state or local withholding taxes from any cash payments made with respect to

Allowed Claims, as appropriate. The Disbursing Agent will be permitted to withhold a Distribution to any Creditor who has not provided information requested by the Disbursing Agent for the purpose of fulfilling its obligations hereunder. The Disbursing Agent shall comply with all reporting obligations imposed on it by any governmental unit with respect to withholding and related taxes.

### 6.7 **Responsible Person**.

On and after the Effective Date, Thomas S. deRegt shall serve as the Responsible Person and Disbursing Agent. The Responsible Person will be replaced in the event of a voluntary resignation, death, incapacity or at the request of a party in interest for "cause" upon order of the Bankruptcy Court. In the event of a voluntary resignation, the then-Responsible Person will select a replacement. In all other events, the Court will appoint a replacement. A voluntary resignation will not be effective until a successor has accepted in writing his or her appointment.

The Responsible Person will manage the Liquidating Debtor and will have all of the authority to act on behalf of the Liquidating Debtor as if the Responsible Person was the sole member, director and officer, in accordance with the Bankruptcy Code, the Bankruptcy Rules and Local Rules. Such management will include: (a) fulfilling the duties and obligations of the Debtor and the Liquidating Debtor under the Plan; and (b) fully administering the Bankruptcy Estate as required by the Plan, the Order of Confirmation, the Bankruptcy Code and the Bankruptcy Rules, which duties and obligations include, without limitation, the facilitation of Distributions pursuant to the Plan, reviewing Claims, objecting to Disputed Claims, supervising the preparation and filing of required tax returns of the Debtor and closing the Bankruptcy Case. The Liquidating Debtor will be substituted as successor to the Debtor and its Estate in all actions and proceedings pending or thereafter commenced in the Bankruptcy Court with respect to Disputed Claims. Without limiting the foregoing, the Responsible Person, acting on behalf of the Liquidating Debtor, will have all of the rights and powers of an estate representative appointed pursuant to Section 1123(b)(3) of the Bankruptcy Code to prosecute or otherwise assert the Retained Claims, if any, including Avoidance Actions, if any.

The Responsible Person may, in his discretion, employ such other persons as may be necessary to assist with implementing the Plan and as otherwise necessary in the Case.

Case: 09-50771   Doc# 249   Filed: 07/20/10   Entered: 07/20/10 12:47:42   Page 31 of 48

The Responsible Person will have no obligation to pursue any affirmative claims on behalf of the Liquidating Debtor or its Estate and any such claims may be abandoned or waived at the sole discretion of the Responsible Person.

Upon the Effective Date, the Responsible Person will be authorized on behalf of the Debtor and Liquidating Debtor to execute all instruments, agreements and documents, and to take all actions by the Debtor or Liquidating Debtor necessary to effectuate the provisions of the Plan without further action by the Debtor's or Liquidating Debtor's members. Any such document, agreement or instrument executed and delivered by the Responsible Person will be conclusively deemed duly executed by the Debtor and/or Liquidating Debtor without the need for further corporate action or order of the Bankruptcy Court. After the Effective Date, the Responsible Person will be entitled to implement and administer the Plan without the need for further corporate action or order of the Bankruptcy Court.

6.8 **Limitation of Liability of Responsible Person**.

Under the Plan, the Responsible Person will not be liable for any act or omission committed in his capacity as Responsible Person under the Plan while acting in good faith and in the exercise of reasonable business judgment, except to the extent determined to be the result of his own gross negligence, willful fraud or other willful misconduct. The foregoing limitation on liability will apply equally to the agents, employees and professionals of the Liquidating Debtor acting on behalf of the Debtor, Liquidating Debtor and/or the Bankruptcy Estate.

6.9 **Disbursing Agent**.

Thomas S. deRegt shall serve as Disbursing Agent unless otherwise ordered by the Court.

6.10 **De Minimis Distributions**.

Notwithstanding any other provision of the Plan, Distributions of less than $50.00 need not be made on account of any Allowed Claim; provided, however, that Distributions that would otherwise be made but for this provision will carry over to the next Distribution Date until the cumulative amount to which any holder of an Allowed Claim is entitled is more than $50.00, at which time the cumulative amount of such Distributions will be paid to such holder.

/ / /

Case: 09-50771    Doc# 249    Filed: 07/20/10    Entered: 07/20/10 12:47:42    Page 32 of 48

6.11   **Unclaimed Distributions**.

Any cash Distributions that remain unclaimed or unnegotiated for ninety (90) days following issuance of the check representing the Distribution or are returned for reasons other than the absence of a current or correct address (unless a current or correct address cannot be determined after reasonable inquiry) will become the property of the Purchaser.

6.12   **Tax Returns, Payments and Refunds**.

The Liquidating Debtor shall file or cause to be filed any and all delinquent and final tax returns and pay any and all taxes owed by the Debtor and the Liquidating Debtor on a timely basis (other than taxes provided for under the Plan).  The Liquidating Debtor reserves all rights to amend prior tax returns of the Debtor and to pursue and collect all potential tax refunds, to claim losses and to take such other actions to the fullest extent allowed by law.  Any such recoveries will be the property of the Purchaser.

6.13   **Further Orders**.

Upon motion by the Liquidating Debtor, the Bankruptcy Court may enter such other and further orders as may be necessary or appropriate to facilitate consummation of the Plan.

6.14   **Post-Confirmation Employment of Personnel**.

The Responsible Person and any Disbursing Agent will be entitled to receive reasonable compensation. The Liquidating Debtor and any Disbursing Agent may employ or contract with persons and other entities to perform, or advise and assist in the performance of, their respective obligations under the Plan.  The Liquidating Debtor may continue to employ the Debtor's Professionals for the purposes for which they were employed before the Confirmation Date, and for such additional purposes as the Responsible Person may request, and the Liquidating Debtor may employ other professionals as necessary to perform its responsibilities under the Plan.

6.15   **Post-Confirmation Compensation and Reimbursement of Professionals**.

All professionals employed by the Liquidating Debtor and the Committee after the Confirmation Date will be entitled to payment of their reasonable post-Confirmation Date fees and reimbursement of expenses on a monthly basis, subject to agreements described in section 6.1.1 herein and the following:

Each party requesting payment of such compensation shall serve a detailed statement of requested fees and expenses on the Notice Parties.

Any Notice Party or other party in interest may object to any portion of the requested fees and expenses. Any objection to the payment of fees or reimbursement of expenses must be in writing (and sufficiently detailed to allow the party whose fees or expenses are subject to the objection an opportunity to respond, and ultimately to allow the Bankruptcy Court to rule on such objection) and served on the Notice Parties and the party whose fees and expenses are subject to the objection. Such an objection must be served within fifteen (15) days after service of the detailed statement.

If there is no objection to a party's requested fees and expenses within such fifteen (15) day period, the Liquidating Debtor shall promptly pay the requested amount in full. If an objection to a portion of the fees or expenses requested is timely served, the Liquidating Debtor shall promptly pay the undisputed portion of such fees and expenses.

To the extent that an objection is timely served, the Responsible Person shall reserve monies in the Disputed Claims Reserve Account in the amount of the disputed fees and expenses pending resolution of said objection.

Any objection to a request for payment of fees and expenses will be resolved by either: (a) written agreement between the party requesting such fees and expenses and the objecting party; or (b) Final Order of the Bankruptcy Court. Resolution by the Bankruptcy Court must be requested by motion filed and served on the Notice Parties in accordance with the Bankruptcy Rules and the Local Rules on not less than twenty-one (21) days notice and such motion may be filed by either the requesting party or the objecting party. Any opposition to the motion must be filed and served no later than seven (7) days prior to the hearing.

Professionals will not otherwise be required to file applications for Bankruptcy Court approval of post-Confirmation fees and expenses.

6.16 **Creditors' Committee.**

The Creditors' Committee shall continue to serve and function following the Confirmation Date, with all of the duties, obligations, defenses and immunities provided under all applicable

JWM/JLF/cc
K:\Pasadera\Pldg\Plan and DS\Plan\July 20, 2010 Plan\Planv4.docx

29

DEBTOR'S PLAN OF LIQUIDATION
(DATED JULY 20, 2010)
Case: 09-50771    Doc# 249    Filed: 07/20/10    Entered: 07/20/10 12:47:42    Page 34 of
48

provisions of the Bankruptcy Code relating to committees in cases under chapter 11 of the Bankruptcy Code, including all of the rights and powers set forth in Sections 1102 and 1103 of the Bankruptcy Code, until the final Distribution to Class 6 and 7 Creditors at which time the Creditors' Committee will be dissolved, and the Committee's Professionals discharged. If any member of the Committee resigns after the Effective Date, no new Person will be appointed thereto; provided, however, that the remaining members of the Committee may, in their discretion, appoint a Person to replace any member who has resigned.

### 6.17 **Post-Confirmation Notice**.

To the extent that any action taken in the Bankruptcy Case after the Effective Date requires notice under the Bankruptcy Code or the Bankruptcy Rules, a notice must be provided in accordance therewith, provided that notice will not be required to any Person whose Claim has been paid in full. The Liquidating Debtor and the Responsible Person may proceed via the "**scream or die**" notice procedures (failure to make a timely objection permits entry of an order without a hearing) as permitted by the Local Rules.

### 6.18 **Revesting of Property of the Estate.**

On the Effective Date and prior to the close of the Purchase Transaction, all property of the Debtor and the Bankruptcy Estate will vest in the Liquidating Debtor, free and clear of any and all liens, encumbrances, Claims and Interests of Creditors and Interest Holders subject to the provisions of the Plan. Revesting does not modify the nature of any contracts assumed by the Debtors and/or Liquidating Debtor.

### 6.19 **Exemption From Certain Transfer Taxes.**

Following Confirmation, any sales or transfers will be, to the fullest extent permitted by law, entitled to the exemptions provided for under, and to the fullest extent permitted by, Section 1146(a) of the Bankruptcy Code. The Debtor reserves all rights to request a determination of legal questions related to the tax effects of the Plan as appropriate under Section 1146(b) of the Bankruptcy Code.

### 6.20 **Post-Confirmation Reports, Fees, and Final Decree**.

#### 6.20.1 U.S. Trustee Fees.

Not later than thirty (30) days after the end of each calendar quarter that ends after the

Effective Date (including any fraction thereof), the Liquidating Debtor shall pay to the United States Trustee the quarterly fee for such quarter until the Case is converted, dismissed, or closed pursuant to a Final Decree, as required by 28 U.S.C. § 1930(a)(6).

### 6.20.2 Post-Confirmation Reports.

Not later than thirty (30) days after the end of each calendar quarter which ends after the Effective Date, the Liquidating Debtor shall file and serve upon the United States Trustee a quarterly post-Confirmation status report in substantially the form provided by the United States Trustee. Further reports must be filed thirty (30) days after the end of every calendar quarter thereafter until the entry of a Final Decree, unless otherwise ordered by the Bankruptcy Court.

### 6.20.3 Final Decree.

After the Bankruptcy Estate is fully administered, the Liquidating Debtor shall file an application for entry of a Final Decree, and shall serve the application on the Notice Parties.

## ARTICLE VII.

## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

**7.1    Treatment of Executory Contracts and Unexpired Leases.**

The Debtor reserves the right to move the Bankruptcy Court at any time for authority to assume, assume and assign, or reject, pursuant to Bankruptcy Code Section 365, any and all contracts that are executory and leases that are unexpired.

**7.2    Assumption of Executory Contracts and Unexpired Leases.**

Each contract and lease listed on **Exhibit "D"** to the Plan will be assumed by the Debtor and assigned to the Purchaser on the Effective Date to the extent each such contract is executory and each such lease is unexpired.[2]

**7.3    Effect of Assumption of Executory Contracts and Unexpired Leases.**

All executory contracts and unexpired leases assumed prior to Confirmation or pursuant to

---

[2] One or more of the contracts on **Exhibit "D"** to the Plan, identified with an **asterisk \*** and which is/are proposed to be assumed and assigned pursuant to the Plan was initially entered into by the respective lessor and the Debtor and Debtor's affiliate NCDG Golf, LLC and/or the Debtor's Principal Frederick Bates on the Debtor's behalf. Such contracts will be assigned by the Purchaser directly from, as applicable, NCDG Golf, LLC and/or Frederick Bates pursuant to agreement by NCDG Golf, LLC and/or Frederick Bates, respectively.

Case: 09-50771    Doc# 249    Filed: 07/20/10    Entered: 07/20/10 12:47:42    Page 36 of 48

the Plan and not otherwise rejected pursuant to the Plan will remain in full force and effect, be unimpaired by the Plan except as specifically modified by the Plan and the Order of Confirmation, and be binding on the parties thereto.

### 7.4 **Adding and Removing Executory Contracts and Unexpired Leases**.

The provisions of this Article VII may be amended, with appropriate notice to those parties in interest directly affected, at any time prior to the conclusion of the hearing on Confirmation of the Plan, to add or remove executory contracts and unexpired leases to be assumed, assumed and assigned, or rejected pursuant to the Plan.

### 7.5 **Defaults**.

Unless other treatment is agreed to between the parties to each assumed contract or lease, if there has been a default in an assumed executory contract or unexpired lease other than the kind specified in Section 365(b)(2) of the Bankruptcy Code, the Debtor shall, on or before the Effective Date: (a) cure, or provide adequate assurance that it will promptly cure, any such default; (b) compensate, or provide adequate assurance that it will promptly compensate, the other party to such contract or lease, for any actual pecuniary loss to such party resulting from such default; and (c) provide adequate assurance of future performance under such contract or lease.

### 7.6 **Rejection of Executory Contracts and Unexpired Leases**.

Without admitting the validity of any other executory contracts and unexpired leases, all executory contracts and unexpired leases of the Debtor that are listed on **Exhibit "E"** to the Plan are hereby rejected by the Debtor as of the Effective Date.  Confirmation of the Plan will be deemed to constitute Bankruptcy Court approval of such rejection.

### 7.7 **Rejection Claims**.

The holder of a Rejection Claim must file with the Bankruptcy Court, and serve on counsel for the Liquidating Debtor, a proof of Claim relative to such Rejection Claim on or before the Rejection Claims Bar Date or be forever barred from asserting any such Claim or receiving any payment or other Distribution on account of such Claim.

/ / /

/ / /

JWM/JLF/cc
K:\Pasadera\Pldg\Plan and DS\Plan\July 20, 2010 Plan\Planv4.docx
DEBTOR'S PLAN OF LIQUIDATION
(DATED JULY 20, 2010)

# ARTICLE VIII.

## PROOFS OF CLAIM; OBJECTIONS

**8.1** **Time for Filing Proofs of Claim**.

Proofs of Claim, when required, must be filed with the Bankruptcy Court no later than the applicable Claims Bar Date (which for most prepetition Claims was June 16, 2009 and for governmental units was August 5, 2009).

**8.2** **Ownership and Transfers of Claims.**

Distributions to Creditors under the Plan will be made to the Persons shown on the Debtor's or the Bankruptcy Court's records on the Effective Date. For purposes of any Distribution under the Plan, the Liquidating Debtor, the Disbursing Agent, the Responsible Person, and their professionals will have no obligation to recognize any transfer of Claims after the Effective Date.

> ANY PARTY WHO ACQUIRES A CLAIM AGAINST THE LIQUIDATING DEBTOR AFTER THE EFFECTIVE DATE MUST ARRANGE WITH THE HOLDER ON THAT DATE TO RECEIVE DISTRIBUTIONS TO WHICH THE TRANSFEREE MAY BE ENTITLED. NEITHER THE LIQUIDATING DEBTOR NOR THE DISBURSING AGENT WILL BE REQUIRED TO TRACK CHANGES IN OWNERSHIP OF CLAIMS AFTER THE EFFECTIVE DATE.

**8.3** **Amendments to Claims**.

Except as provided by the Plan or as otherwise permitted by the Bankruptcy Court, the Bankruptcy Rules or applicable law, proofs of Claim: (a) may not be filed upon expiration of the applicable bar date; and (b) may not be amended after the expiration of the applicable bar date except for amendments to proofs of Claim to decrease the amount or priority thereof.

**8.4** **Claim Objections**.

An objection to a Claim must be filed no later than the Claims Objection Date. The Liquidating Debtor shall have the primary responsibility to review Claims filed against the Debtor, to file objections as appropriate and to resolve Disputed Claims.

**8.5** **Disallowance of Claims**.

All claims of any entity, party or Person from whom property is sought by the Debtor, the Liquidating Debtor or the Responsible Person, under Sections 542, 543, 550 or 553, of the

Bankruptcy Code, or with respect to whom the Debtor, the Liquidating Debtor or Responsible Person alleges is a transferee of a transfer that is avoidable under Section 522(f), 522(h), 544, 545, 547, 548, 549 or 724(a) of the Bankruptcy Code will be disallowed if: (a) the entity on the one hand and the Debtor, the Liquidating Debtor or the Responsible Person, on the other hand, agree or the Bankruptcy Court has determined by a Final Order that such entity or transferee is liable to turnover any property or monies under any of the aforementioned sections of the Bankruptcy Code, and (b) such entity or transferee has failed to turnover such property by the dates set forth in such agreement or Final Order.

**EXCEPT AS OTHERWISE AGREED, ANY AND ALL PROOFS OF CLAIM FILED AFTER THE APPLICABLE CLAIMS BAR DATE WILL BE DEEMED DISALLOWED AND EXPUNGED AS OF THE EFFECTIVE DATE WITHOUT ANY FURTHER NOTICE TO OR ACTION, OR APPROVAL OF THE BANKRUPTCY COURT, AND HOLDERS OF SUCH CLAIMS WILL NOT RECEIVE ANY DISTRIBUTIONS ON ACCOUNT OF SUCH CLAIMS, UNLESS SUCH LATE PROOF OF CLAIM IS DEEMED TIMELY FILED BY A FINAL ORDER OF THE BANKRUPTCY COURT ON OR BEFORE THE LATER OF (A) THE CONFIRMATION HEARING, OR (B) 45 DAYS AFTER THE APPLICABLE BAR DATE.**

8.6    **Reserve Accounts**.

      8.6.1    <u>Disputed Reserve Account</u>.

Subject to the next sentence, any cash that would be distributed to the holder of a Disputed Claim if it were an Allowed Claim on any Distribution Date hereunder will be set aside by the Disbursing Agent into the Disputed Claims Reserve Account. Not later than fifteen (15) days after the Disbursing Agent receives notice that a Disputed Claim has been Allowed in whole or in part, the Disbursing Agent shall Distribute the cash deposited into the Disputed Claims Reserve Account on account of such Disputed Claim. To the extent that cash payments made into the Disputed Claims Reserve Account on account of a Disputed Claim exceed the cash distributable with respect to the Allowed Amount of such Claim, such excess cash will become the property of the

Purchaser.

8.7 **Distributions**.

Notwithstanding any provision of the Plan specifying a date or time for payments or Distributions of consideration hereunder, payments and Distributions in respect of any Claim that at such date or time is disputed, unliquidated or contingent, will not be made until a Final Order with respect to an objection, estimation or valuation of such Claim is entered by the Bankruptcy Court, whereupon appropriate Distributions will be made promptly in accordance with the preceding section.

## ARTICLE IX.

## DEFAULT

If the Liquidating Debtor defaults in the performance of any of its obligations under the Plan, and has not cured such default within a period of twenty-one (21) days after receipt of written notice of default from any party in interest affected by the alleged default, then such party in interest may file a motion with the Bankruptcy Court seeking an order directing the Liquidating Debtor to perform such obligations. If the Liquidating Debtor defaults in the performance of any material obligation under the Plan, any party in interest, including the Office of the United States Trustee, may file a motion with the Bankruptcy Court seeking an order converting the Bankruptcy Case to a case under Chapter 7 of the Bankruptcy Code. If such motion is granted, the Plan will terminate, and all then remaining property of the Liquidating Debtor (not including property transferred to the Purchaser) will vest in the Chapter 7 estate. Such property will be administered by the Chapter 7 trustee as prescribed in Chapter 7 of the Bankruptcy Code. Any party in interest, including the Liquidating Debtor, may oppose any such motion.

## ARTICLE X.

## PRESERVATION OF RETAINED CLAIMS AND AVOIDANCE ACTIONS

The Debtor continues to review transactions and records which process may result in additional claims against persons not yet identified herein, and may also result in other claims against persons identified herein in addition to those identified at this point in time. Nothing in the Plan will be deemed to constitute a waiver of the powers of the Debtor as a debtor in possession

Case: 09-50771    Doc# 249    Filed: 07/20/10    Entered: 07/20/10 12:47:42    Page 40 of 48

under the Bankruptcy Code or the Bankruptcy Rules, and the Debtor and the Liquidating Debtor, as applicable, will retain after Confirmation and after the Effective Date, all powers granted by the Bankruptcy Code and the Bankruptcy Rules to a trustee and debtor in possession, including without limitation, those relating to the recovery of property, avoidance of liens, and objection to, and/or subordination of, Claims. Confirmation of the Plan effects no settlement, compromise, waiver or release of any Retained Claim unless the Plan or Order of Confirmation specifically and unambiguously so provides. The failure of the Plan to refer to any particular Retained Claim is not and will not be construed as a settlement, compromise, waiver, or release of any such Retained Claim. All Retained Claims are hereby preserved and will continue to remain valid after the Effective Date. Except as provided in the Plan or the Order of Confirmation, the Debtor and the Liquidating Debtor reserve any and all Claims, Retained Claims, causes of action and rights against any and all third parties, whether such Claims, Retained Claims, causes of action or rights arose before, on or after the Petition Date, the Confirmation Date, the Effective Date and/or the date Distributions are made. The entry of the Confirmation Order will not constitute *res judicata* or otherwise bar, estop or inhibit any actions by the Debtor or the Liquidating Debtor regarding any claims they hold as identified herein or otherwise.

Without limiting the generality of the foregoing, the Retained Claims include, but are not limited to, Avoidance Actions and all claims identified in the Debtor's Schedules and STATEMENT OF FINANCIAL AFFAIRS (as amended or supplemented), if any. Any recovery arising out of or related to an Avoidance Action will be property of the Debtor and will be added to the funds identified in section 6.1.1(c) of the Plan to pay, pursuant to sections 5.3 of the Plan, Class 6 Claimants under Alternative Treatment 1 or, pursuant to section 5.4 of the Plan, Class 6 and Class 7 potential electing Claimants under Alternative Treatment 2, as applicable. The Debtor does not believe that there are any viable Avoidance Actions.

## ARTICLE XI.

## RETENTION OF JURISDICTION

The Bankruptcy Court will have and retain on and after the Confirmation Date and on and after the Effective Date exclusive jurisdiction of the Bankruptcy Case: (a) to enforce the provisions,

Case: 09-50771    Doc# 249    Filed: 07/20/10    Entered: 07/20/10 12:47:42    Page 41 of 48

purposes, and intent of the Plan; (b) to determine the allowance or disallowance of Claims; (c) to hear and determine proceedings initiated before or after the Confirmation Date and the Effective Date regarding the prosecution of the Retained Claims or any other rights, claims, causes of action or claims for relief held by the Liquidating Debtor against any party, including the recovery of property and subordination of Claims; (d) to fix and approve allowance of compensation and other Administrative Claims, including, if appropriate, payments to be made in connection with the Plan; (e) to adjudicate controversies arising from the terms of the Plan; (f) to hear and determine any proposed modifications of or amendments to the Plan to the extent permitted by Section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019; (g) to enforce or interpret the provisions of the Plan, the Order of Confirmation or any order entered by the Bankruptcy Court in the Bankruptcy Case; (h) to facilitate the consummation of the Plan; (i) to consider such other matters as may be set forth in the Plan or the Order of Confirmation; (j) to hear and determine any Claim of any Person of any nature whatsoever against the Debtor's Professionals or the Committee's Professionals arising in, under or related to the Case; (k) to hear any other matters pertaining to the Plan; and (l) to enter a Final Decree closing the Bankruptcy Case. If closed, the Bankruptcy Case may be reopened at any time to facilitate the provisions of this Article XI of the Plan.

**ARTICLE XII.**

**EFFECT OF ORDER OF CONFIRMATION**

As of the Confirmation Date, the effect of the Order of Confirmation will be as provided in Section 1141 of the Bankruptcy Code, and as follows:

12.1 **Binding Effect of Plan**.

The provisions of the confirmed Plan will bind the Debtor, the Liquidating Debtor, any entity acquiring property under or otherwise accepting the benefits of the Plan, and every Creditor and Interest Holder, whether or not such Creditor or Interest Holder has filed a proof of Claim or Interest in the Bankruptcy Case, whether or not the Claim or Interest of such Creditor or Interest Holder is impaired under the Plan, and whether or not such Creditor or Interest Holder has accepted or rejected the Plan.

/ / /

Case: 09-50771    Doc# 249    Filed: 07/20/10    Entered: 07/20/10 12:47:42    Page 42 of 48

12.2 **Exculpation**.

In all respects, the Debtor and Liquidating Debtor are entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities under the Plan and in the context of the Chapter 11 Case. Excluding the obligations of the Debtor and the Liquidating Debtor under the Plan and their acts or omissions constituting negligence, gross negligence, bad faith, or willful misconduct, as finally determined by a Final Order of the Bankruptcy Court, neither the Debtor, the Liquidating Debtor nor any of their respective officers, directors, members, managers, employees, advisors, attorneys, or agents, have or will incur any liability to any holder of a Claim or Interest, any other party in interest, or any of their successors or assigns, for any act or omission in connection with, relating to, or arising out of, the Chapter 11 Case, the negotiation and prosecution of the Plan, the Confirmation of the Plan, the administration of the Plan, and/or the consummation of the Plan.

12.3 **Full Satisfaction of Claims and Interests**.

Except as otherwise provided in the Plan and the Order of Confirmation, the rights afforded in the Plan will constitute full and complete satisfaction and release of all Claims and Interests, including any interest accrued thereon from and after the Petition Date, against the Debtor, the Liquidating Debtor, the Bankruptcy Estate, or any assets or property of the Debtor, the Liquidating Debtor and the Bankruptcy Estate.

12.4 **Judgments Null and Void.**

Any judgment obtained before or after the Confirmation Date in any court other than the Bankruptcy Court will be null and void as a determination of the liability of the Debtor or the Liquidating Debtor.

12.5 **Preservation of Insurance.**

Nothing n the Plan will diminish or impair the enforceability of any insurance policy that may cover Claims against the Debtor or any other Person.

/ / /

/ / /

/ / /

# ARTICLE XIII.

## CONDITIONS PRECEDENT

### 13.1 **Conditions Precedent.**

Each of the following is a condition to the Effective Date:

(a)     The Confirmation Order is entered and becomes a final order in a form and in substance reasonably satisfactory to the Debtor and the Purchaser.  The Confirmation Order will provide, among other things, that the Debtor or Liquidating Debtor, as appropriate, is authorized and directed to take all actions necessary or appropriate to  consummate the Plan, including, without limitation, entering into, implementing and consummating the contracts, instruments, releases, leases, indentures, and other agreements or documents created in connection with or described in the Plan.

(b)     All documents and agreements necessary to implement the Plan will have (a) all conditions precedent to such documents and agreements satisfied or waived pursuant to the terms of such documents or  agreements; (b) been effected and executed; (c) been tendered for delivery; and (d) to the extent required, been filed with the applicable governmental unit(s) in accordance with applicable laws.

### 13.2 **Waiver of Conditions.**

The conditions set forth above may be waived by the Debtor without notice, leave or order of the Bankruptcy Court, or any formal action other than proceeding to confirm or consummate the Plan.

# ARTICLE XIV.

## MISCELLANEOUS

### 14.1 **Exemption from Stamp, Transfer and Other Taxes**.

To the extent any sale contemplated by the Plan would be subject to a stamp, transfer or

Case: 09-50771     Doc# 249     Filed: 07/20/10     Entered: 07/20/10 12:47:42     Page 44 of 48

similar tax, the Debtor will be entitled to the exclusion of such sale from any stamp, transfer or similar tax to the fullest extent allowed by law.

### 14.2 **Injunctions and Stays**.

Unless otherwise provided, all injunctions or stays arising under or entered during the Case under Section 105 or Section 362 of the Bankruptcy Code, or otherwise, regarding property of the Bankruptcy Estate, and in existence on the Confirmation Date, will remain in full force and effect until the later of (a) the Effective Date, and (b) consummation of the Purchase Transaction..

### 14.3 **Certain Judgments Null and Void**.

Any judgment obtained against the Debtor after the Petition Date in any court other than in the Bankruptcy Court, and any judgment obtained prior to the Petition Date that was still subject to appeal on the Petition Date, will be null and void as a determination of the liability of the Debtor with respect to any debt.

### 14.4 **No Admissions**.

Except as specifically provided in the Plan, nothing contained in the Plan may be deemed or construed in any way as an admission by the Debtor or its Bankruptcy Estate with respect to any fact or any matter set forth in the Plan, including the amount or allowability of any Claim, or the value of any property of the Bankruptcy Estate.

Notwithstanding anything to the contrary in the Plan, if the Plan is not confirmed or the Effective Date does not occur, the Plan will be null and void, and nothing contained in the Plan will: (a) be deemed to be an admission by the Debtor with respect to any matter discussed in the Plan, including liability on any Claim or the propriety of any Claim's classification; (b) constitute a waiver, acknowledgement, or release of any Claim, Interest, or any claims held by the Debtor; or (c) prejudice in any manner the rights of the Debtor or the Bankruptcy Estate in any further proceedings.

### 14.5 **Revocation of the Plan**.

The Debtor reserves the right to withdraw the Plan before the Confirmation Date.

### 14.6 **Successors and Assigns**.

The rights, benefits, and obligations of any entity referred to in the Plan will be binding on, and will inure to the benefit of any heir, executor, administrator, successor, or assign of that entity.

14.7　**Nonconsensual Confirmation**.

In the event that Classes entitled to vote fail to accept the Plan in accordance with Bankruptcy Code Section 1129(a)(8), the Debtor reserves the right to modify the Plan in accordance with Bankruptcy Code Section 1127(a). In accordance with Section 1127 of the Bankruptcy Code, the Debtor reserves the right to alter, amend, modify, revoke or withdraw the Plan or any Plan exhibit or schedule including amending or modifying it to satisfy the requirements of the Bankruptcy Code.

14.8　**Destruction of Records**.

The Liquidating Debtor may, but is not required to, seek one or more orders of the Bankruptcy Court seeking an order authorizing the abandonment and destruction of its books and records at such time as the recordkeeping time periods required by applicable law have expired.

14.9　**Saturday, Sunday and Legal Holiday.**

If any payment or act under the Plan should be made or performed on a day that is not a Business Day, then the payment or act may be completed the next succeeding day that is a Business Day, in which event the payment or act will be deemed to have been completed on the required day.

14.10　**Plan Interpretation.**

The headings contained in the Plan are for convenience of reference only and do not limit or otherwise affect in any way the meaning or interpretation of the Plan. All references in the Plan to the singular will be construed to include references to the plural and vice versa. All references in the Plan to any one of the masculine, feminine or neuter genders will be deemed to include references to both other such genders. References to the Debtor will also include the Liquidating Debtor (or vice versa) as the context requires. All references in the Plan to a Section or an Article mean the appropriately numbered Section or Article of the Plan. Whenever the Plan uses the term "including," such reference is deemed to mean "including, but not limited to."

14.11　**Modification**.

The Debtor may propose amendments to or modifications of the Plan under Section 1127(a) of the Bankruptcy Code and Bankruptcy Rule 3019 at any time prior to the conclusion of the hearing on Confirmation of the Plan. After the Confirmation Date, the Debtor may modify the Plan in

accordance with Section 1127(b) of the Bankruptcy Code and Bankruptcy Rule 3019.

14.12 **Setoff/Recoupment**.

Nothing contained in this Plan constitutes a waiver or release by the Debtor or Liquidating Debtor of any right of setoff or recoupment the Debtor may have against any Creditor.

14.13 **Waiver**.

After the Confirmation Date, except as otherwise specifically set forth in the Plan, any term of the Plan may be waived only by the party or parties entitled to the benefit of the term to be waived.

14.14 **Notices**.

All notices required or permitted to be made in accordance with the Plan must be in writing and delivered personally or by first class mail, as follows:

**If to the Liquidating Debtor:**

Pasadera Country Club, LLC
Attn: Thomas S. deRegt
100 Pasadera Drive
Monterey, CA 93940

**With a copy to:**

John Walshe Murray
Murray & Murray
A Professional Corporation
19400 Stevens Creek Boulevard, Suite 200
Cupertino, CA 95014

and if to a holder of an Allowed Claim or Allowed Interest, at the address prescribed by Section 6.6.2. Notices will be deemed given when delivered or three days after deposit in the United States mail. Any entity may change the address at which such entity is to receive notices under the Plan by sending written notice to the Liquidating Debtor and its counsel.

14.15 **Reservation of Rights.**

Neither the filing of the Plan nor any statement or provision contained in the Plan or in the Disclosure Statement, nor the taking by any party in interest of any action with respect to the Plan, will: (a) be or be deemed to be an admission against interest; and (b) until the Effective Date, be or be deemed to be a waiver of any rights any party in interest may have: (i) against any other party in

Case: 09-50771    Doc# 249    Filed: 07/20/10    Entered: 07/20/10 12:47:42    Page 47 of 48

interest; or (ii) in any of the assets of any other party in interest, and, until the Effective Date, all such rights are specifically reserved. In the event that the Plan is not confirmed or fails to become effective, neither the Plan nor the Disclosure Statement nor any statement contained in the Plan or in the Disclosure Statement may be used or relied upon in any manner in any suit, action, proceeding or controversy within or without this Bankruptcy Case involving the Debtor.

14.16 **Exhibits.**

All exhibits attached to the Plan are hereby incorporated into the Plan by this reference.

DATED: JULY 20, 2010

PASADERA COUNTRY CLUB, LLC
A CALIFORNIA LIMITED LIABILITY COMPANY

BY: _/s/ Thomas S. DeRegt_____
THOMAS S. DEREGT, RESPONSIBLE INDIVIDUAL

**MURRAY & MURRAY**
A Professional Corporation

By: _/s/ John Walshe Murray_____
John Walshe Murray
Attorneys for Debtor

Case: 09-50771    Doc# 249    Filed: 07/20/10    Entered: 07/20/10 12:47:42    Page 48 of 48