JOHN WALSHE MURRAY (074823)
JENNY L. FOUNTAIN (226241)
LAURENT CHEN (191661)
MURRAY & MURRAY
A Professional Corporation
19400 Stevens Creek Blvd., Suite 200
Cupertino, CA 95014-2548
Telephone: (650) 852-9000; (408) 907-9200
Facsimile: (650) 852-9244
Email: jwmurray@murraylaw.com
Email: jlfountain@murraylaw.com
Email: lchen@murraylaw.com

Attorneys for Debtor

# UNITED STATES BANKRUPTCY COURT

# NORTHERN DISTRICT OF CALIFORNIA

## SAN JOSE DIVISION

In re:

**PASADERA COUNTRY CLUB, LLC**
A California Limited Liability Company

Debtor.

100 Pasadera Drive
Monterey, CA 93940

Employer Tax I.D. No.: 77-0498396

)
)
)
)
)
)
)
)
)
)
)
)
)
)

Case No. 09-50771-CN

Chapter 11

**EXHIBIT "A"**

**PART 1 OF 2**

**TO**

**DEBTOR'S PLAN OF LIQUIDATION**
**(DATED JULY 20, 2010)**

# PURCHASE AND SALE AGREEMENT

BY AND BETWEEN

## PASADERA COUNTRY CLUB, LLC,
a California limited liability company,

as "Seller"

and

## PASADERA INTERNATIONAL LLC,
a California limited liability company,

as "Purchaser"

PROPERTY:

Approximately 188 Acres Located in the
County of Monterey, California

Commonly Known As:

## "PASADERA COUNTRY CLUB"

DATED June 23, 2010

636667.4

# TABLE OF CONTENTS

| | | Page |
|---|---|---|
| 1. | General Terms | 1 |
| | 1.1 Purchase and Sale | 1 |
| | 1.2 Assumed Liabilities | 3 |
| 2. | Escrow; Deposit; Purchase Price; and Closing | 3 |
| | 2.1 Establishment of Escrow | 3 |
| | 2.2 Purchase Price and Payoff Amount | 3 |
| | 2.3 Pre-Closing Operating Budget | 4 |
| | 2.4 Closing | 4 |
| 3. | Title and Survey | 4 |
| | 3.1 Title and Survey | 4 |
| 4. | Additional Covenants | 5 |
| | 4.1 Consents | 5 |
| | 4.2 Employee Matters | 5 |
| | 4.3 Liquor License | 5 |
| | 4.4 Access to Books and Records | 6 |
| | 4.5 Announcements | 6 |
| | 4.6 Indemnification | 6 |
| 5. | Conditions Precedent | 8 |
| | 5.1 Conditions Precedent to Purchaser's Obligations | 8 |
| | 5.2 Conditions Precedent to Seller's Obligations | 9 |
| 6. | Representations and Warranties | 10 |
| | 6.1 By Seller | 10 |
| | 6.2 By Purchaser | 12 |
| | 6.3 Mutual | 12 |
| 7. | Escrow and Closing Deliveries | 12 |
| | 7.1 Escrow Instructions | 12 |
| | 7.2 Seller's Deliveries | 12 |
| | 7.3 Purchaser's Deliveries | 13 |
| | 7.4 Insurance | 13 |
| | 7.5 Utility Service and Deposits | 13 |
| 8. | Costs and Prorations | 13 |

Case: 09-50771    Doc# 249-1    Filed: 07/20/10    Entered: 07/20/10 12:47:42    Page 3 of 46

|        |      |                                    |    |
|--------|------|------------------------------------|----|
|        | 8.1  | Purchaser's Costs..................|13  |
|        | 8.2  | Seller's Costs.....................|14  |
|        | 8.3  | Prorations.........................|14  |
| 9.     |      | Casualty or Condemnation...........|14  |
| 10.    |      | Default and Remedies...............|15  |
|        | 10.1 | Default............................|15  |
|        | 10.2 | Remedies Upon Purchaser Default....|16  |
|        | 10.3 | Remedies Upon Seller Default.......|16  |
| 11.    |      | Notices............................|16  |
| 12.    |      | Miscellaneous......................|17  |
|        | 12.1 | Entire Agreement...................|17  |
|        | 12.2 | Severability.......................|17  |
|        | 12.3 | Applicable Law.....................|17  |
|        | 12.4 | Assignability......................|17  |
|        | 12.5 | Successors Bound...................|18  |
|        | 12.6 | Captions...........................|18  |
|        | 12.7 | Attorneys' Fees....................|18  |
|        | 12.8 | No Partnership.....................|18  |
|        | 12.9 | Time of Essence....................|18  |
|        | 12.10| Counterparts.......................|18  |
|        | 12.11| Recordation........................|18  |
|        | 12.12| Survival of Obligations............|18  |
|        | 12.13| No Presumption.....................|18  |
|        | 12.14| Bankruptcy Court Approval..........|18  |

Case: 09-50771    Doc# 249-1    Filed: 07/20/10    Entered: 07/20/10 12:47:42    Page 4
of 46

## LIST OF EXHIBITS

| | |
|---|---|
| Exhibit A | Legal Description of the Land |
| Exhibit B | Tangible Personal Property |
| Exhibit C | Assumed Contracts |
| Exhibit D | Schedule of Additional Payoff Amounts; Operating Budget |
| Exhibit E | Outline of the Plan of Reorganization |
| Exhibit F | Due Diligence Materials |
| Exhibit G | Employment Agreements; Employee Benefit Plans; Claims |
| Exhibit H | Form of Grant Deed |
| Exhibit I | Form of Bill of Sale |
| Exhibit J | Form of General Assignment |
| Exhibit K | Form of Liquor Bill of Sale |
| Exhibit L | Form of FIRPTA Affidavit |
| Exhibit M | Term Sheet for Purchaser Financing |

Case: 09-50771    Doc# 249-1    Filed: 07/20/10    Entered: 07/20/10 12:47:42    Page 5 of 46

## PURCHASE AND SALE AGREEMENT

THIS PURCHASE AND SALE AGREEMENT (this "**Agreement**"), dated as of the 23rd day of June, 2010 (the "**Effective Date**"), is made by and between PASADERA COUNTRY CLUB, LLC, a California limited liability company ("**Seller**"), and PASADERA INTERNATIONAL LLC, a California limited liability company or its nominee ("**Purchaser**") (each referred to herein as a "**Party**" and collectively as the "**Parties**").

### RECITALS

A.      Seller is the owner of certain Land (as defined in Section 1.1.1 below) located at the intersection of Rte. 68 (the Monterey-Salinas Highway) and Pasadera Road in the County of Monterey, State of California. Seller operates a golf course on the Land commonly known as "Pasadera Country Club" (the "**Golf Course**").

B.      Seller filed a voluntary petition under chapter 11 of Title 11 of the United States Code (the "**Bankruptcy Code**") on February 6, 2009, thereby commencing *In re Pasadera Country Club, LLC*, United States Bankruptcy Court, Northern District of California (the "**Bankruptcy Court**"), Case No. 09-50771-MM (the "**Case**").

C.      Since filing the Case, Seller has been, and Seller remains, the debtor in possession pursuant to Bankruptcy Code sections 1101(1) and 1107.

D.      Purchaser desires to purchase from Seller, and Seller desires to sell to Purchaser, the Land, the Golf Course, and certain other Property (as defined below) on the terms and conditions more fully set forth herein.

### AGREEMENT

NOW, THEREFORE, in consideration of the foregoing, of the covenants, promises and undertakings set forth herein, and for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Seller and Purchaser agree as follows:

**1.      GENERAL TERMS**

*1.1      Purchase and Sale*. Subject to the terms and conditions more fully set forth below, including confirmation of a plan of reorganization in the Case as further provided hereinbelow, Seller hereby agrees to sell, and Purchaser hereby agrees to purchase and assume the following property (collectively, the "**Property**") free and clear of any other interest therein, including, without limitations, liens, claims and encumbrances, except as otherwise expressly provided in this Agreement, pursuant to Bankruptcy Code sections 105(a), 363(f), 363(m) and 365, among others:

1.1.1   *Land*. All that certain real property consisting of approximately 188 acres of land located in the County of Monterey, State of California, and more fully described on *Exhibit A* attached hereto (the "**Land**");

Case: 09-50771    Doc# 249-1    Filed: 07/20/10    Entered: 07/20/10 12:47:42    Page 6 of 46

1.1.2 *Improvements*. All structures, improvements, and fixtures, if any, situated on the Land as of the Closing Date (as defined below), including, without limitation, the golf course, all dining, clubhouse and proshop facilities and all other improvements related to the Golf Course (collectively, the "**Improvements**");

1.1.3 *Appurtenant Rights*. All mineral and water rights, easements, hereditaments, and appurtenances belonging to or inuring to the benefit of Seller and pertaining to the Land or the Improvements, if any (collectively, the "**Appurtenant Rights**");

1.1.4 *Permits*. All freely transferable consents, authorizations, variances, waivers, licenses, permits and approvals from any governmental agency, department, board, commission, bureau or other entity or instrumentality solely in respect of the Golf Course, the Land or the Improvements, if any (collectively, the "**Permits**");

1.1.5 *Tangible Personal Property and Inventories*. All (a) items of personal property located on and used in connection with the operation and maintenance of the Golf Course, the Land or the Improvements, such as machinery, vehicles, equipment, furniture, fixtures, computer equipment, spare parts and tools, and including, without limitation, the items listed on *Exhibit B* attached hereto, and (b) inventories of Seller as of the Closing Date, including, without limitation, apparel and sporting good equipment inventory maintained in the Golf Course pro-shop, food and beverage inventory, lawn seed, fertilizer, and similar supplies (collectively, the "**Tangible Personal Property**");

1.1.6 *Assumed Contracts*. All of the contracts, agreements, leases, and licenses listed on *Exhibit C* attached hereto (the "**Assumed Contracts**"), with Seller to pay or provide for all cures out of Seller's bankruptcy estate or the proceeds of this Agreement. Purchaser shall have until July 9, 2010 to identify contracts that it wishes to assume. Subject to Purchaser's obligation to provide adequate assurance of future performance, it shall be Seller's responsibility to provide for a timely determination of the need for any cures in connection with assumption by Seller of the Assumed Contracts and assignment thereof to Purchaser under Bankruptcy Code section 365;

1.1.7 *Cash*. All of Seller's cash and cash equivalents as of the Closing Date, including, without limitation, Seller's Operating Account (as hereinafter defined) relating to Golf Course operations;

1.1.8 *Accounts Receivable*. To the extent assignable, all accounts receivable, notes receivable, membership dues, and contingent rights relating thereto, all credits, prepaid expenses, deferred charges, advance payments, security deposits and deposits and other receivables associated with or arising out of the operation of the Golf Course or owned, used or held for use by Seller with respect to the operation of the Golf Course (including, without limitation, amounts owed to Seller from credit card, debit card, travel and entertainment card or traveler's check companies, and that are in such other forms which are considered to be cash equivalents under generally acceptable accounting principles) whether or not such receivables have been presented, invoiced, or billed to any such debtor, bank, financial institution or other person or company as of the Closing Date (the "**Accounts Receivable**");

Case: 09-50771    Doc# 249-1    Filed: 07/20/10    Entered: 07/20/10 12:47:42    Page 7 of 46

1.1.9  *Intellectual Property*.  All (a) trademarks, tradenames, rights and other intangible property, assumed or fictitious names, all logos or marks associated therewith, licenses and other contractual rights with respect to the foregoing, and such other property and intangible rights owned, used or held for use by Seller, including financial and marketing business data, pricing and cost information, business and marketing plans and member, customer and suppliers lists, together with the goodwill of the Golf Course in connection with which such trademarks, trade names, product names and service marks are used (in each case whether registered and without warranty as to ownership), and (b) telephone numbers, telecopier numbers, e-mail addresses, URLs or URIs, and websites, in each case with respect to the rights and property described in this Section 1.1.9 to the extent the same are used in connection with the Land, the Improvements, or the Golf Course) (collectively, the "**Intellectual Property**");

1.1.10  *Warranties*.  All freely transferable warranties and guaranties relating to the Improvements, Inventories, and the Personal Property (the "**Warranty Rights**");

1.1.11  *Software Rights*.  All freely transferable licensed copies of computer software used in connection with the operation of the Golf Course and any documentation or operating manuals thereof (the "**Software Rights**");

1.1.12  *Books and Records*.  All of Seller's books, records, ledgers, files, documents (including, to the extent available, originally executed copies of written contracts), member and supplier lists, forms, lists, plats, architectural plans, drawings and specifications (including engineering drawings, surveys, plans, specifications and other documents related to the Improvements), copies of documents evidencing Intellectual Property, advertising and promotional materials, quality control records and procedures, equipment maintenance records, manuals and warranty information, and all keys and combinations to any locks (the "**Books and Records**"); and

1.1.13  *Business Goodwill*.  All business goodwill associated with or deriving from the Golf Course and the ownership or operation thereof (the "**Business Goodwill**," and together with the Permits, the Assumed Contracts, the Accounts Receivable, the Intellectual Property, the Warranty Rights, the Software Rights, and the Books and Records, collectively, the "**Intangible Personal Property**," and together with the Tangible Personal Property, collectively, the "**Personal Property**").

1.1.14  *Liquor-Related Assets*.  The Liquor License and the Alcoholic Beverage Inventory (as such terms are hereinafter defined).

*1.2*     *Assumed Liabilities*.  From and after the Closing, Purchaser agrees to assume, discharge, perform, and pay when due all liabilities, obligations, and debts of Seller that accrue and are required to be discharged, performed, or paid after the Closing Date under the Assumed Contracts and the Permits (the "**Assumed Liabilities**").

## 2.     ESCROW; DEPOSIT; PURCHASE PRICE; AND CLOSING

*2.1*     *Establishment of Escrow*.  Concurrently herewith, the Parties shall establish an escrow (the "**Escrow**") with First American Title Insurance Company, 100 Spear Street, Suite 1600, San Francisco, CA 94105, Attention: Heather Kucala (the "**Title Company**").

Case: 09-50771    Doc# 249-1    Filed: 07/20/10    Entered: 07/20/10 12:47:42    Page 8 of 46

**2.2** *Purchase Price and Payoff Amount.* The purchase price for the Property (the "**Purchase Price**") shall be the sum of the Rabobank Payoff and the Additional Payoff Amount (as such terms are hereinafter defined). The "**Rabobank Payoff**" shall equal Six Million Five Hundred Thousand Dollars ($6,500,000). The "**Additional Payoff Amount**" shall be an amount sufficient to satisfy those certain claims and payables set forth in *Exhibit D-1* (the "**Schedule of Additional Payoff Amounts**"), subject to any reduction provided under Section 2.3 below and Section 8.3.1 below, to the extent confirmed under the Plan (as hereinafter defined) and actually owed as of the Closing, it being understood by the Parties that *Exhibit D-1* is an estimated budget prepared as of the Effective Date and describes an estimate of the items set forth therein, and that in no event shall the Additional Payoff Amount exceed the sum of One Million Seventy-Six Thousand Eight Hundred Fifty Dollars and 90/100 ($1,076,850.90). The Purchase Price shall be paid as follows:

    2.2.1 *Deposit.* Concurrently with the execution of this Agreement, or within five (5) business days thereafter, Purchaser shall deposit the sum of Five Hundred Thousand Dollars ($500,000.00) into the Escrow in immediately available U.S. funds (together with all interest accrued thereon, the "**Deposit**"). The Deposit shall be applied against the Purchase Price at Closing. The Deposit shall be fully refundable to Purchaser upon an unremedied breach by Seller of its obligation to convey the Property at the Closing in accordance with the terms and conditions of this Agreement or as otherwise provided under Sections 4.3, 5.1 and 9 of this Agreement.

    Without limiting the foregoing, Purchaser authorizes the release from the Escrow into a DIP Operating Account of the following portions of the Deposit upon (i) the Purchaser's approval of the Seller's operating budget (ii) the Purchaser's confirmation that there are no remaining funds available to the Seller from the Financing (as defined below) (iii) the entry by the Bankruptcy Court of an order, in form and substance satisfactory to Purchaser, authorizing the Seller to grant to Purchaser the liens set forth in Section 12.15 and the execution and delivery of all documents required pursuant to that Section and (iv) the satisfaction of the following conditions:

    A. $50,000 upon the entry by the Bankruptcy Court of an order, in form and substance satisfactory to Purchaser, approving the Seller's disclosure statement.

    B. $50,000 upon the entry by the Bankruptcy Court of an order, in form and substance satisfactory to Purchaser, approving the Seller's plan of reorganization.

    2.2.2 *Purchase Price Balance.* Purchaser shall deposit the balance of the Purchase Price into the Escrow in immediately available U.S. funds at Closing, subject to any adjustments provided under this Agreement.

**2.3** *Pre-Closing Operating Budget.* The pre-petition subordinated secured lenders and the debtor in possession lenders (collectively, the "**Minority Members**") have previously provided or committed to provide to Seller financing in the aggregate amount of One Million Nine Hundred Fifty Thousand Dollars ($1,950,000.00) (collectively, the "**Financing**"). Seller shall fully draw down on the available Financing to pay all operating costs and expenses substantially in accordance with the proposed "Operating Budget" attached hereto as *Exhibit D-2.*

636667.4636667.4636667.3           4

If, on the Closing Date, there exists a positive cash balance from operations or any available Financing, such amounts shall be applied first to pay any post-confirmation legal fees actually incurred by Seller in connection with its bankruptcy and not included in the Schedule of Additional Payoff Amounts and second to reduce, dollar-for-dollar, the Additional Payoff Amount owed by Purchaser under this Agreement.

**2.4     Closing.** The closing of the transactions contemplated hereby (the "Closing") shall take place, and the delivery of all items to be made at the closing under the terms of this Agreement shall be made, on or before August 31, 2010 (the "Closing Date").

**3.     TITLE AND SURVEY**

**3.1     Title and Survey.**

3.1.1   *Title Report.* Purchaser shall be responsible for (a) obtaining from the Title Company a preliminary title report (the "Title Report") for title insurance on the Land and (b) arranging for a survey of the Land (a "Survey") as may be necessary for Purchaser to obtain its desired title insurance coverage. Seller shall have no obligation whatsoever to expend or agree to expend any funds, to undertake or agree to undertake any obligations or otherwise to cure or agree to cure any matters disclosed by the Title Report or any Survey.

3.1.2   *Removal of Liens.* Notwithstanding the foregoing, Seller agrees that, prior to the Closing, Seller shall remove all monetary liens on the Property (excluding any monetary liens that would constitute Permitted Encumbrances (as defined below)) and any other liens that do not constitute Permitted Encumbrances, and shall execute a commercially reasonable owner's affidavit and such other incidental documents to the extent required by Title Company.

3.1.3   *Condition of the Property at Closing.* Subject to the satisfaction of all other conditions precedent to Seller's obligations hereunder, Seller shall deliver title to the Property on the Closing Date subject only to the exceptions in the Title Report expressly approved by Purchaser in writing (collectively, the "Permitted Encumbrances").

**4.     ADDITIONAL COVENANTS**

**4.1     Consents.** Each Party hereto will use commercially reasonable efforts to cooperate with the other Party hereto to obtain all consents required from third parties whose consent or approval is required pursuant to any Assumed Contract or any of the Permits in order to consummate the transaction contemplated hereby; provided, however, it shall be the responsibility of Purchaser to obtain such consents, and doing so shall not be a condition precedent to Closing except as set forth in Section 5.1.

**4.2     Employee Matters.**

4.2.1   *Seller's Employment Covenants.* Seller shall:

(a)     terminate all of its employees on or before the Closing;

Case: 09-50771     Doc# 249-1     Filed: 07/20/10     Entered: 07/20/10 12:47:42     Page 10 of 46

(b)     deliver or make available to Purchaser on or before the Closing all employment-related records, including without limitation personnel files, payroll records, and benefit records; and

(c)     deliver or make available to Purchaser on or before June 30, 2010 (i) a true, correct and complete list of all such employees which shall identify, for each employee, such employee's status as a salaried or hourly employee, the position held by such employee, and whether such employee is a full or part time employee; (ii) a schedule of the range of salary/hourly wage rates by employment class; (iii) in the case of any employee having an individual employment contract with Seller, a true, correct and complete copy of such employment contract; and (iv) a summary of the benefits offered to employees.

4.2.2   *Purchaser's Employment Covenants.*  Purchaser shall:

(a)     determine, in its sole discretion, whether and which employees of Seller it shall hire on or after the Closing and on what terms; and

(b)     shall not assume and shall not be bound by any employees benefit plans or employment contract relating to any person ever employed by Seller on or before the Closing.

4.3   *Liquor License.*  Seller and Purchaser shall use diligent, good faith efforts to effect the transfer of any and all licenses and permits required by any applicable governmental authorities for the sale and consumption of alcoholic beverages (i) at the Golf Course or Property (ii) off-site and (iii) mobile (collectively, the "**Liquor License**") owned by Seller to Purchaser on the Closing Date. Purchaser agrees to pay all fees, charges, and related costs in connection with the transfer of the existing Liquor License. Within thirty (30) days following the Effective Date, Purchaser shall complete, execute and file with the applicable liquor licensing authority all necessary applications for transfer of the Liquor License.  In no event shall Seller be required to transfer to Purchaser the Liquor License or any opened and unopened alcoholic beverages and related inventory ("**Alcoholic Beverage Inventory**") which is located at or held for use on the Property unless and until Purchaser has obtained a valid and effective license or temporary permit entitling Purchaser to sell alcoholic beverages at the Property.  In the event Purchaser has diligently sought, and through no fault of its own, failed to obtain the right to operate under the Liquor License by the Closing Date, then, at Purchaser's request, Seller will provide a temporary "interim agreement" the ("**Liquor License Operating Agreement**") upon terms reasonably acceptable to Seller, to the extent permitted under applicable law, to allow continued service under the Seller's Liquor License, provided Purchaser provides Seller with reasonably adequate indemnification.  Purchaser may, without being released from any liability hereunder, designate an affiliate or other designee to accept the transfer of the existing Liquor License and Alcoholic Beverage Inventory.

4.4   *Access to Books and Records*.  Purchaser acknowledges that, in connection with Seller's bankruptcy proceedings, it may be necessary after Closing for Seller (or its representatives) to have access to the Books and Records with respect to the period prior to the Closing Date.  Accordingly, Purchaser hereby: (a) agrees to maintain the Books and Records with respect to the period prior to the Closing Date at the Property for a period of one (1) year after the Closing Date; and (b) grants Seller, its affiliates and their respective representatives

Case: 09-50771     Doc# 249-1     Filed: 07/20/10     Entered: 07/20/10 12:47:42     Page 11 of 46

access to such Books and Records after the Closing at reasonable times and upon reasonable prior notice for purposes related to Seller's bankruptcy proceedings.

**4.5** *Announcements.* Seller and Purchaser shall cooperate in the preparation, drafting and issuance of any press release, communications with Golf Course members or other publicity prior to Closing, provided any publically released materials are subject to the approval of both parties, each in their sole and absolute discretion. If the Closing fails to occur for any reason, neither Party shall issue any press release, publicity or other public announcement of the subject matter of this Agreement, or make any other disclosure concerning the subject matter of this Agreement, without the prior written consent of the other Party, which consent may be withheld in such other Party's sole and absolute discretion. The agreements of the Parties in this <u>Section 4.5</u> shall survive the Closing or any termination of this Agreement. Notwithstanding the foregoing, Seller shall have the right to make such disclosures as shall be legally required in connection with the Case.

**4.6** **Indemnification.**

**4.6.1** *By Purchaser.* Provided the Closing is consummated, Purchaser agrees to indemnify, defend and hold harmless Seller, its shareholders, officers, directors, employees, agents, advisors and affiliates (collectively, the "**Seller Indemnified Parties**") from and against any and all losses, claims, rights, demands, actions, obligations, liabilities, judgments, cause of action, damages, fines, penalties, costs and expenses (including, without limitation, attorneys' fees and costs) ("**Claims**") resulting from or arising out of: (a) the ownership of the Property and operation of the Golf Course from and after the Closing Date; (b) Claims under the Assumed Contracts arising from and after the Closing Date; (c) Claims under the Permits arising from and after the Closing Date; (d) subject to the prorations set forth in <u>Section 8.3 below</u>, all taxes in connection with, relating to or arising out of the ownership of the Property or the operation of the Golf Course attributable to taxable periods, or portions thereof, ending on or after the Proration Time; (e) Claims made by any Seller employees for wages or benefits accruing from and after the Closing Date; (f) any damage, death, or injury to any person or property caused by any act or omission of Purchaser or its directors, officers, employees (other than any employees employed by Seller at any time, as to any act or omission made prior to the Closing), agents or representatives in respect of the Property or the Golf Course occurring at any time; (g) any misrepresentation, breach of warranty or breach of any covenant or agreement made by Purchaser hereunder; and (h) any Claims relating to any liability assumed by Purchaser under this Agreement.

**4.6.2** *By Seller.* Provided the Closing is consummated, Seller agrees to indemnify, defend and hold harmless Purchaser, its shareholders, officers, directors, employees, agents, advisors and affiliates (collectively, the "**Purchaser Indemnified Parties**") from and against any and all Claims resulting from or arising out of: (a) the ownership of the Property and operation of the Golf Course prior to the Closing Date; (b) Claims under the Assumed Contracts that related to matters occurring prior to the Closing Date; (c) Claims under the Permits that related to matters occurring prior to the Closing Date; (d) all taxes in connection with, relating to or arising out of the ownership of the Property or the operation of the Golf Course attributable to taxable periods, or portions thereof, ending prior to the Proration Time; (e) any act or omission of Seller on or prior to the Closing or from any condition of the Property on or prior to the

Case: 09-50771    Doc# 249-1    Filed: 07/20/10    Entered: 07/20/10 12:47:42    Page 12 of 46

Closing (including, without limitation, the future effects of such acts, omissions, or conditions), relating in any manner to the employment by Seller of the person asserting the Claim or on whose behalf the Claim is asserted, whether based on tort, contract (express or implied), or any federal, state, or local law, statute, or regulation, including without limitation any claims arising under the Fair Labor Standards Act, the National Labor Relations Act, the Family and Medical Leave Act, the Employee Retirement Income Security Act of 1974, the Americans with Disabilities Act, Title VII of the Civil Rights Act of 1964, the Age Discrimination in Employment Act, the California Fair Employment and Housing Act, the Worker Adjustment and Retraining Notification Act, the California WARN Act, and the California Family Rights Act, as well as any claims asserting wrongful termination, breach of contract, breach of the covenant of good faith and fair dealing, negligent or intentional infliction of emotional distress, negligent or intentional misrepresentation, negligent or intentional interference with contract or prospective economic advantage, defamation, invasion of privacy, claims related to disability, and claims for workers compensation, wages, overtime, severance pay, bonuses, sick leave, vacation pay, life or health insurance, or any other fringe benefit; (f) any damage, death, or injury to any person or property caused by any act or omission of Seller or its directors, officers, employees, agents or representatives in respect of the Property or the Golf Course occurring at any time; (g) any misrepresentation, breach of warranty or breach of any covenant or agreement made by Seller hereunder; and (h) any Claims brought by third parties against Purchaser arising out of events or occurrences relating to the Property or the Golf Course occurring prior to the Closing Date.

      4.6.3   *Survival.*  This <u>Section 4.6</u> shall survive the Closing or earlier termination of this Agreement (except as limited herein).

## 5.   CONDITIONS PRECEDENT

      ***5.1   Conditions Precedent to Purchaser's Obligations.***  The obligation of Purchaser under this Agreement to consummate the Closing is subject to the satisfaction, on or prior to the Closing Date, of each of the conditions set forth in this <u>Section 5.1</u> (any one or more of which may be waived in writing in whole or in part by Purchaser in its sole and absolute discretion). In the event any of the conditions set forth in this <u>Section 5.1</u> are neither waived nor fulfilled, Purchaser may notify Seller in writing of such failure, and if such failure remains uncured within five (5) days after receipt of such written notice, Purchaser may terminate this Agreement by written notice to Seller, in which event the Title Company shall promptly return the Deposit (with interest accrued thereon) to Purchaser and, thereafter, the parties shall have no further rights or obligations hereunder except for those obligations which expressly survive the termination of this Agreement.

      5.1.1   *Representations, Warranties and Covenants.*  Each of the representations and warranties of Seller contained in this Agreement shall be true and correct in all material respects at and as of the Closing with the same effect as if such representations and warranties had been made at and as of the Closing.

      5.1.2   *Documents.*  Seller shall have delivered to Escrow the documents required under <u>Section 7.2</u> below.

Case: 09-50771    Doc# 249-1    Filed: 07/20/10    Entered: 07/20/10 12:47:42    Page 13 of 46

5.1.3 *Rabobank Payoff.* Rabobank, N.A. ("**Rabobank**") shall at Closing accept the Rabobank Payoff in full satisfaction of any and all of Rabobank's liens, claims or encumbrances against the Property (collectively, the "**Rabobank Liens**"), and, at Closing, Rabobank shall unconditionally release or reconvey the Rabobank Liens.

5.1.4 *Plan of Reorganization.* The Bankruptcy Court shall have confirmed a plan of reorganization proposed by Seller (the "**Plan**"), as described in *Exhibit E* attached hereto, approving this Agreement and providing for the sale of the Property and other associated transactions contemplated herein pursuant to, among others, sections 105(a), 363(f), 363(m), 365 and 1129 of the Bankruptcy Code, such Plan and the confirmation order to be in form and substance reasonably satisfactory to Purchaser, the order to be final and not subject to further appeal, which condition Purchaser may waive in its sole discretion. Unless otherwise approved by the Purchaser in writing, the Plan shall provide for the terms substantially in the form contained in *Exhibit E*.

5.1.5 *Title Policy.* The Title Company shall be irrevocably committed to issue an ALTA owner's title insurance policy (2006 Form) insuring Purchaser as the owner of fee title to the Property, providing coverage in the full amount of the Purchase Price, subject only to the Permitted Encumbrances, and containing such endorsements as Purchaser shall require in its sole and absolute discretion (the "**Title Policy**"). Furthermore, the Parties shall have satisfied all requirements imposed by the Title Company in connection with the issuance of the Title Policy, including, without limitation, any survey requirements and bankruptcy related requirements.

5.1.6 *Consents.* Seller shall have obtained all third party consents and approvals as required under the Assumed Contracts, the Permits or as otherwise required to consummate the Closing.

5.1.7 *Environmental Report.* Purchaser shall have obtained at its expense and approved a satisfactory Phase I Environmental Report for the Land.

5.1.8 *Liquor License.* The Liquor License shall have been transferred to Purchaser or a temporary permit shall have been issued to Purchaser or Seller and Purchaser shall have executed and delivered the Liquor License Operating Agreement in accordance with Section 4.3 above.

5.1.9 *No Injunctions.* No court or governmental authority of competent jurisdiction shall have enacted, issued, promulgated, enforced or entered any statute, rule, regulation, or judgment, decree, injunction or other order that is in effect on the Closing Date and prohibits the consummation of the Closing.

5.1.10 *No Other Agreements.* Seller shall not have executed or otherwise entered into any other agreement, whether or not approved by the Bankruptcy Court, for the sale or other transfer by Seller of any of the Property or any interest therein.

5.1.11 *Employment of Key Personnel.* Purchaser shall have made arrangements reasonably satisfactory to itself for employment by Purchaser of such personnel as Purchaser shall deem necessary (including, without limitation, securing written acceptances of employment

Case: 09-50771     Doc# 249-1     Filed: 07/20/10     Entered: 07/20/10 12:47:42     Page 14 of 46

from employees offered employment by Purchaser). Seller consents to Purchaser's contacting any such employees from the Effective Date for the purpose of making such arrangements.

5.1.12 *Consents and Approvals Required by Law.* Seller shall have obtained all statutory and regulatory consents and approvals which are required under any applicable Law in order to consummate the transactions contemplated hereby.

5.1.13 *Financing.* Purchaser shall have obtained from Rabobank financing in an amount no less than $5,500,000 on terms and conditions substantially similar to the terms set forth in the term sheet attached hereto as Exhibit M.

**5.2 Conditions Precedent to Seller's Obligations.** The obligation of Seller under this Agreement to consummate the Closing is subject to the satisfaction, on or prior to the Closing Date, of each of the conditions set forth in this Section 5.2 (any one or more of which may be waived in writing in whole or in part by Seller in its sole and absolute discretion).

5.2.1 *Representations, Warranties and Covenants.* Each of the representations and warranties of Purchaser contained in this Agreement shall be true and correct in all material respects at and as of the Closing with the same effect as if such representations and warranties had been made at and as of the Closing.

5.2.2 *Documents.* Purchaser shall have delivered to Escrow the documents required under Section 7.3 below.

5.2.3 *Plan of Reorganization.* The Bankruptcy Court shall have confirmed the Plan.

5.2.4 *No Injunctions.* No court or governmental authority of competent jurisdiction shall have enacted, issued, promulgated, enforced or entered any statute, rule, regulation, or judgment, decree, injunction or other order that is in effect on the Closing Date and prohibits the consummation of the Closing.

5.2.5 *Release of Rabobank Guaranties.* Rabobank, as of Closing, shall have fully released any and all of the guaranties related to the Rabobank Liens.

6. **REPRESENTATIONS AND WARRANTIES**

**6.1 By Seller.** Seller represents and warrants to Purchaser that:

(a) As of the date hereof, Seller is, and as of the Closing Date Seller shall be, a limited liability company duly organized, validly existing and in good standing under the laws of the State of California;

(b) Seller has the full power and authority, and has taken all necessary limited liability company action, to execute this Agreement and the other documents required to be executed by Seller hereunder, and to fulfill Seller's obligations herein;

Case: 09-50771    Doc# 249-1    Filed: 07/20/10    Entered: 07/20/10 12:47:42    Page 15 of 46

(c)     There is no litigation or condemnation pending or, to Seller's Knowledge, threatened in writing with respect to the Property; and

(d)     To Seller's Knowledge, except for the matters which constitute Permitted Encumbrances, and for the Assumed Contracts, no other contracts, leases, or other agreements will be binding on the owner of the Property subsequent to the Closing.

(e)     To Seller's Knowledge, the materials provided by or made available by Seller to Purchaser and identified on *Exhibit F* attached hereto (collectively, the "**Due Diligence Materials**") are true, complete and accurate in all material respects as of the Effective Date and no events have occurred, or information become available to Seller, after the Effective Date which would cause such Due Diligence Materials to be inaccurate as of the Closing Date, except as have actually been disclosed in writing to Purchaser.

(f)     Except for defaults cured on or before the Effective Date, Seller has not received any written notice of default under the terms of any Assumed Contracts.

(g)     Seller has not received any written notice from any governmental authority of any violation of any laws, statutes, ordinances, rules or regulations affecting Seller or the Property (including, without limitation, any Environmental Laws). As used herein, the term "**Hazardous Materials**" means any and all materials, substances, chemicals, liquids, solids, or gases (whether naturally existing or man-made) ("**Materials**") (including, without limitation, Materials that are or may be flammable, explosive, radioactive, hazardous, toxic, or dangerous, or that contain or may contain asbestos, polychlorinated-biphenyls, petroleum products and by-products, crude oil, natural or synthetic gas, natural or synthetic gas-liquids, liquefied natural or synthetic gas) which are defined or listed as hazardous, dangerous, toxic, regulated, or prohibited (or words of similar import), or to which exposure is prohibited, limited or regulated by, or for which the generation, use, refinement, handling, treatment, removal, storage, production, manufacture, transportation or disposal is limited, prohibited, or regulated, in any case pursuant to or under any and all federal, state, or local laws, statutes, regulations, codes, rules, ordinances, orders, directives, or decrees (including, without limitation, the Comprehensive Environmental Response, Compensation, and Liability Act (42 U.S.C. Section 9601, *et seq.*), the Hazardous Materials Transportation Act (49 U.S.C. Section 1801, *et seq.*), the Federal Insecticide, Fungicide and Rodenticide Act (7 U.S.C. Section 136 *et seq.*), the Resource Conservation and Recovery Act (42 U.S.C. Section 6901, *et seq.*), any so-called "Superfund" or "Superlien" law, the Toxic Substance Control Act of 1976 (15 U.S.C. Section 2601 *et seq.*), the Clean Water Act (33 U.S.C. Section 1251 *et seq.*), and the Clean Air Act (42 U.S.C. Section 7901 *et seq.*), each as now existing and as hereafter amended, modified, or re-codified) (collectively, "**Environmental Laws**").

(h)     As of the date hereof and as of the Closing Date, (i) except as listed on *Exhibit G*, Seller has no written employment agreements; (ii) Seller has no bargaining relationship or collective bargaining agreement with any union representing Seller's employees; (iii) there are no threatened or ongoing organizing efforts by any union directed at Seller's employees; (iv) Seller has no obligation to pay severance to any employee terminated by Seller in connection with the transaction contemplated under this Agreement; (v) except as listed on *Exhibit G*, Seller has no employee benefit plans; (vi) except as listed on *Exhibit G*, no person has asserted or

Case: 09-50771     Doc# 249-1     Filed: 07/20/10     Entered: 07/20/10 12:47:42     Page 16 of 46

threatened to assert against Seller any employment-related claims, whether based on tort, contract (express or implied), or any federal, state, or local law, statute, or regulation, including without limitation any claims arising under the Fair Labor Standards Act, the National Labor Relations Act, the Family and Medical Leave Act, the Employee Retirement Income Security Act of 1974, the Americans with Disabilities Act, Title VII of the Civil Rights Act of 1964, the Age Discrimination in Employment Act, the California Fair Employment and Housing Act, the Worker Adjustment and Retraining Notification Act, the California WARN Act, and the California Family Rights Act, as well as any claims asserting wrongful termination, breach of contract, breach of the covenant of good faith and fair dealing, negligent or intentional infliction of emotional distress, negligent or intentional misrepresentation, negligent or intentional interference with contract or prospective economic advantage, defamation, invasion of privacy, claims related to disability, and claims for workers compensation, wages, overtime, severance pay, bonuses, sick leave, vacation pay, life or health insurance, or any other fringe benefit; and (vii) Seller is in full compliance with all applicable employment laws, including without limitation those listed in subpart (vi).

Whenever a representation or warranty is made in any provision of this Agreement on the basis of the "Seller's Knowledge," such representation or warranty is made solely on the basis of the actual knowledge of Thomas S. deRegt and Stephen W. Schroeder.

    *6.2*    **By Purchaser**.  Purchaser represents and warrants to Seller that:

        (a)    As of the date hereof, Purchaser is, and as of the Closing Date Purchaser shall be, a limited liability company duly organized, validly existing and in good standing under the laws of the State of California; and

        (b)    Purchaser has the full power and authority, and has taken all necessary action, to execute this Agreement and the other documents required to be executed by Purchaser hereunder, and to fulfill Purchaser's obligations herein.

    *6.3*    **Mutual**.  Purchaser shall be solely responsible for any fees and commissions owed to Purchaser's broker in connection with this transaction. Purchaser and Seller agree that there is (are) no other broker(s), finder(s), or intermediary(ies) with whom they have dealt in connection with this transaction and agree to indemnify each other against all claims for fees, commissions, or other compensation claimed to be due to any broker, finder, or intermediary with whom the indemnifying party may have dealt in connection with this transaction. Notwithstanding any other term of this Agreement, the provisions of this Section 6.3 shall survive the Closing or the termination of this Agreement.

## 7.    ESCROW AND CLOSING DELIVERIES

    *7.1*    **Escrow Instructions**.  Concurrently with the execution and delivery of this Agreement, the Parties shall deliver an executed counterpart of this Agreement to Title Company to serve as the instructions to the Title Company as the escrow holder for consummation of the transaction contemplated herein. Seller and Purchaser each agree to execute and deliver such additional and supplementary escrow instructions as may be appropriate to enable Title Company to comply with the terms of this Agreement; provided, however, in the event of any

Case: 09-50771    Doc# 249-1    Filed: 07/20/10    Entered: 07/20/10 12:47:42    Page 17 of 46

conflict between the provisions of this Agreement and any supplementary escrow instructions executed by one Party only, the terms of this Agreement shall prevail.

**7.2     Seller's Deliveries.**  Seller shall deliver to Escrow at the Closing the following original and photocopied documents (as applicable), each executed (as applicable) and, if required, acknowledged on behalf of Seller:

(a)     A grant deed to the Property, subject only to the Permitted Encumbrances, in the form attached hereto as *Exhibit H* (the "**Grant Deed**");

(b)     A bill of sale with respect to the Tangible Personal Property in the form attached hereto as *Exhibit I* (the "**Bill of Sale**");

(c)     A general assignment and assumption agreement with respect to the Intangible Personal Property in the form attached hereto as *Exhibit J* (the "**General Assignment**");

(d)     A Liquor Bill of Sale, substantially in the form of *Exhibit K* attached hereto (the "*Liquor Bill of Sale*");

(e)     An affidavit pursuant to the Foreign Investment and Real Property Tax Act in the form attached hereto as *Exhibit L* (a "**FIRPTA Affidavit**");

(f)     A California Form 593-C;

(g)     To the extent in the possession or control of Seller, originals of (i) the Assumed Contracts, (ii) any plans and specifications for the Improvements, and (iii) any warranties relating to any Personal Property.

(h)     Such evidence of Seller's authority to consummate the transactions contemplated hereby as Purchaser or the Title Company may reasonably request.

(i)     An order of the Bankruptcy Court, in form and substance reasonably satisfactory to Purchaser, final and not subject to further appeal, confirming the Plan and the transaction contemplated under this Agreement.

**7.3     Purchaser's Deliveries.**  Purchaser shall deliver to Escrow at the Closing the following original documents and other items, each executed (as applicable) and, if required, acknowledged on behalf of Purchaser:

(a)     Immediately available funds, in an amount equal to the sum of (i) the Purchase Price, plus (ii) the sums to be paid by Purchaser pursuant to Section 8 below, less (iii) the Deposit;

(b)     The General Assignment;

(c)     Any assumption agreements or other documentation reasonably required by Seller or any third parties in connection with the assumption by Purchaser of the Assumed Contracts;

Case: 09-50771     Doc# 249-1     Filed: 07/20/10     Entered: 07/20/10 12:47:42     Page 18 of 46

(d)     Such evidence of Purchaser's authority to consummate the transactions contemplated hereby as Seller or the Title Company may reasonably request.

**7.4     Insurance.** Seller shall terminate any policies of insurance it may have on the Property as of 12:00 noon on the Closing Date and Purchaser shall be responsible for obtaining its own insurance thereafter. Purchaser acknowledges that Seller has no obligation to maintain any insurance on the Property at any time.

**7.5     Utility Service and Deposits.** Seller shall be entitled to the return of any deposits posted by it with any utility company.

## 8.     COSTS AND PRORATIONS

**8.1     Purchaser's Costs.** Purchaser will pay the following costs of closing this transaction:

(a)     The fees and disbursements of its counsel, inspecting architect and engineer, if any;

(b)     All escrow fees;

(c)     The cost of any title insurance, including, without limitation, any premium charge(s) for endorsements and/or deletions of exception items;

(d)     All recording fees for the Grant Deed;

(e)     All title or escrow cancellation fees in the event the Escrow is canceled for any reason other than a default by Purchaser or Seller hereunder, and all of such cancellation fees in the event the Escrow is canceled as a result of a default by Purchaser hereunder;

(f)     All state, county and city documentary transfer taxes and personal property sales taxes;

(g)     The cost of any Survey obtained by Purchaser; and

(h)     Any other expense(s) incurred by Purchaser or its representatives in inspecting or evaluating the Property or closing this transaction.

**8.2     Seller's Costs.** Seller will pay the following costs of closing this transaction:

(a)     The fees and disbursements of Seller's counsel in connection with the preparation and negotiation of this Agreement, except to the extent shown in *Exhibit D*;

(b)     All title or escrow cancellation fees in the event the Escrow is canceled as a result of a default by Seller hereunder.

636667.4636667.4636667.3                    14

Case: 09-50771     Doc# 249-1     Filed: 07/20/10     Entered: 07/20/10 12:47:42     Page 19 of 46

### 8.3 *Prorations.*

      8.3.1 *Pre-Closing Income and Expenses.* All income and revenues arising from the Property prior to the Closing Date (the "**Pre-Closing Income**") shall be applied by Seller to pay the costs and expenses of the Property accruing prior to Closing (collectively, the "**Pre-Closing Expenses**"), and any excess Pre-Closing Income remaining after the payment of the Pre-Closing Expenses shall be applied to reduce, dollar-for-dollar, the Additional Payoff Amount owed by Purchaser under this Agreement. In no event shall Purchaser be responsible for the payment of any Pre-Closing Expenses, excepting only the costs and expenses described on *Exhibit D-1* hereto and the Rabobank Payoff. To the extent the Pre-Closing Expenses shall exceed the Pre-Closing Income, then the difference shall be paid from the funds released from Escrow as provided in Section 2.2.1 but only up to the amount provided in such Section. Nothing contained herein shall limit Seller's obligations under Section 4.6.2 above.

      8.3.2 *Post-Closing Income and Expenses.* All income and revenues arising from the Property, and all expenses attributable thereto, from and after 12:01 a.m. on the Closing Date shall accrue to the benefit of Purchaser.

## 9.   CASUALTY OR CONDEMNATION

      If after the Effective Date but before the Closing Date (a) any portion of the Property is damaged or destroyed as the result of any casualty, or (b) any taking or proceeding in eminent domain is instituted or threatened by any body having the power of eminent domain with respect to the Property or any portion thereof, Purchaser may, at its option, by notice to Seller given within ten (10) business days after Seller notifies Purchaser of such damage or eminent domain proceedings (provided that, if necessary, the date upon which the Closing will take place shall be extended to give Purchaser the full ten (10) business day period to make such election): (i) terminate this Agreement and receive an immediate refund of the Deposit, or (ii) proceed under this Agreement, in which event Seller shall, at the Closing, assign to Purchaser its entire right, title and interest in and to any insurance proceeds or condemnation award, and Purchaser shall thereafter have the sole right during the pendency of this Agreement to negotiate and otherwise deal with the condemning authority in respect of such matter. If, with respect to any casualty, Purchaser elects option (ii) above, Purchaser shall at Closing receive a credit against the Purchase Price in the amount of the sum of any anticipated uninsured loss and any deductible payable under any applicable insurance policy of Seller in connection with the applicable casualty.

## 10.   DEFAULT AND REMEDIES

     *10.1 Default.* Should Purchaser or Seller default on any of its material obligations hereunder, the non-defaulting Party (the "**Non-Defaulting Party**") shall promptly deliver written notice of such default to the defaulting Party (the "**Defaulting Party**"), and the Non-Defaulting shall have ten (10) days from the date of such notice to cure or remedy the alleged default; provided, however, that if such default is not reasonably susceptible to cure within ten (10) days, and provided that the Defaulting Party has commenced and is diligently pursuing such cure to completion, such Defaulting Party shall have such additional time, not to exceed thirty (30) days, as may be reasonably necessary to effect such cure (the "**Cure Period**"); provided, however,

Case: 09-50771   Doc# 249-1   Filed: 07/20/10   Entered: 07/20/10 12:47:42   Page 20 of 46

notwithstanding anything to the contrary contained in the foregoing, (a) the failure or refusal by a Party to perform on the Closing Date (except in respect of a Pending Default (as defined below) by the other Party) shall be deemed to be an immediate default without the necessity of notice and for which no cure period shall be available. For purposes of this Section 10.1, a "Pending Default" shall be a default for which (i) written notice was given by the Non-Defaulting Party, and (ii) the Cure Period for such default extends beyond the scheduled Closing Date.

10.2    REMEDIES UPON PURCHASER DEFAULT. IF PURCHASER SHALL HAVE DEFAULTED ON A MATERIAL OBLIGATION HEREUNDER AND SUCH DEFAULT SHALL CONTINUE BEYOND THE EXPIRATION OF THE CURE PERIOD, IF ANY, PROVIDED IN SECTION 10.1 HEREOF, SELLER SHALL BE ENTITLED, AS ITS SOLE AND EXCLUSIVE REMEDY, TO IMMEDIATELY TERMINATE THIS AGREEMENT AND RETAIN THE DEPOSIT AS AGREED AND LIQUIDATED DAMAGES. UPON SUCH TERMINATION, BOTH PARTIES SHALL BE RELIEVED OF AND RELEASED FROM ANY FURTHER LIABILITY HEREUNDER EXCEPT FOR THE SURVIVING OBLIGATIONS. SELLER AND PURCHASER AGREE THAT THE DEPOSIT IS A FAIR AND REASONABLE AMOUNT TO BE RETAINED BY SELLER AS AGREED AND LIQUIDATED DAMAGES IN LIGHT OF SELLER'S REMOVAL OF THE PROPERTY FROM THE MARKET AND THE COSTS INCURRED BY SELLER IN CONNECTION THEREWITH, AND SUCH PAYMENTS SHALL NOT CONSTITUTE A PENALTY OR A FORFEITURE.

INITIALS:    _____    _____
             Purchaser     Seller

10.3    REMEDIES UPON SELLER DEFAULT. IF SELLER SHALL HAVE DEFAULTED ON A MATERIAL OBLIGATION HEREUNDER AND SUCH DEFAULT SHALL CONTINUE BEYOND THE EXPIRATION OF THE CURE PERIOD, IF ANY, PROVIDED IN SECTION 10.1 HEREOF, PURCHASER SHALL ELECT AS ITS SOLE REMEDY HEREUNDER EITHER: (A) TO TERMINATE THE AGREEMENT AND RECEIVE A REFUND OF THE DEPOSIT PAID TO SELLER (INCLUDING ANY INTEREST), IN WHICH CASE SELLER SHALL REIMBURSE PURCHASER FOR ITS COSTS AND EXPENSES (INCLUDING, WITHOUT LIMITATION, ATTORNEYS' FEES) IN CONNECTION WITH THE TRANSACTION CONTEMPLATED HEREUNDER, SUCH REIMBURSEMENT OBLIGATION NOT TO EXCEED $500,000, AND THIS AGREEMENT SHALL TERMINATE, EXCEPT THAT THE SURVIVING OBLIGATIONS SHALL SURVIVE TERMINATION AND CONTINUE IN EFFECT; OR (B) TO SPECIFICALLY ENFORCE SELLER'S OBLIGATIONS HEREUNDER TO CONVEY THE PROPERTY.

INITIALS:    _____    _____
             Purchaser     Seller

Case: 09-50771    Doc# 249-1    Filed: 07/20/10    Entered: 07/20/10 12:47:42    Page 21 of 46

**10.2    REMEDIES UPON PURCHASER DEFAULT.** IF PURCHASER SHALL HAVE DEFAULTED ON A MATERIAL OBLIGATION HEREUNDER AND SUCH DEFAULT SHALL CONTINUE BEYOND THE EXPIRATION OF THE CURE PERIOD, IF ANY, PROVIDED IN SECTION 10.1 HEREOF, SELLER SHALL BE ENTITLED, AS ITS SOLE AND EXCLUSIVE REMEDY, TO IMMEDIATELY TERMINATE THIS AGREEMENT AND RETAIN THE DEPOSIT AS AGREED AND LIQUIDATED DAMAGES. UPON SUCH TERMINATION, BOTH PARTIES SHALL BE RELIEVED OF AND RELEASED FROM ANY FURTHER LIABILITY HEREUNDER EXCEPT FOR THE SURVIVING OBLIGATIONS. SELLER AND PURCHASER AGREE THAT THE DEPOSIT IS A FAIR AND REASONABLE AMOUNT TO BE RETAINED BY SELLER AS AGREED AND LIQUIDATED DAMAGES IN LIGHT OF SELLER'S REMOVAL OF THE PROPERTY FROM THE MARKET AND THE COSTS INCURRED BY SELLER IN CONNECTION THEREWITH, AND SUCH PAYMENTS SHALL NOT CONSTITUTE A PENALTY OR A FORFEITURE.

INITIALS:    _Z J_ _____
                **Purchaser**    **Seller**

**10.3    REMEDIES UPON SELLER DEFAULT.** IF SELLER SHALL HAVE DEFAULTED ON A MATERIAL OBLIGATION HEREUNDER AND SUCH DEFAULT SHALL CONTINUE BEYOND THE EXPIRATION OF THE CURE PERIOD, IF ANY, PROVIDED IN SECTION 10.1 HEREOF, PURCHASER SHALL ELECT AS ITS SOLE REMEDY HEREUNDER EITHER: (A) TO TERMINATE THE AGREEMENT AND RECEIVE A REFUND OF THE DEPOSIT PAID TO SELLER (INCLUDING ANY INTEREST), IN WHICH CASE SELLER SHALL REIMBURSE PURCHASER FOR ITS COSTS AND EXPENSES (INCLUDING, WITHOUT LIMITATION, ATTORNEYS' FEES) IN CONNECTION WITH THE TRANSACTION CONTEMPLATED HEREUNDER, SUCH REIMBURSEMENT OBLIGATION NOT TO EXCEED $500,000, AND THIS AGREEMENT SHALL TERMINATE, EXCEPT THAT THE SURVIVING OBLIGATIONS SHALL SURVIVE TERMINATION AND CONTINUE IN EFFECT; OR (B) TO SPECIFICALLY ENFORCE SELLER'S OBLIGATIONS HEREUNDER TO CONVEY THE PROPERTY.

INITIALS:    _Z J_ _____
                **Purchaser**    **Seller**

## 11.    NOTICES

Any notice required or permitted to be given hereunder shall be deemed to be given when (i) hand delivered or (ii) one (1) business day after pickup by UPS, Federal Express, or similar overnight express service, or (iii) on the day of confirmation of receipt by telefacsimile (provided that a duplicate copy of the information sent by telefacsimile has also been sent by overnight delivery on the same day), in all cases addressed to the Parties at their respective addresses referenced below:

If to Seller:            Pasadera Country Club, LLC
                          100 Pasadera Drive
                          Monterey, CA 93940
                          Attention: Thomas S. deRegt
                          Telephone: (831) 655-5000
                          Telecopy: (831) 655-2448

636667.3                        16

Case: 09-50771    Doc# 249-1    Filed: 07/20/10    Entered: 07/20/10 12:47:42    Page 22 of 46

## 11. NOTICES

Any notice required or permitted to be given hereunder shall be deemed to be given when (i) hand delivered or (ii) one (1) business day after pickup by UPS, Federal Express, or similar overnight express service, or (iii) on the day of confirmation of receipt by telefacsimile (provided that a duplicate copy of the information sent by telefacsimile has also been sent by overnight delivery on the same day), in all cases addressed to the Parties at their respective addresses referenced below:

| | |
|---|---|
| If to Seller: | Pasadera Country Club, LLC<br>100 Pasadera Drive<br>Monterey, CA 93940<br>Attention: Thomas S. deRegt<br>Telephone: (831) 655-5000<br>Telecopy: (831) 655-2448 |
| With copy to: | Farella Braun + Martel LLP<br>235 Montgomery Street<br>San Francisco, CA 94104<br>Attention: Brian P. Donnelly, Esq.<br>Telephone: (415) 954-4465<br>Telecopy: (415) 954-4480 |
| If to Purchaser: | Pasadera International LLC<br>c/o Cooper, White & Cooper LLP<br>201 California Street, 17th Floor<br>San Francisco, CA 94111<br>Attention: Peter C. Califano, Esq.<br>Telephone: (415) 433-1900<br>Telecopy: (415) 433-5530 |
| With copy to: | Cooper, White & Cooper LLP<br>201 California Street, 17th Floor<br>San Francisco, CA 94111<br>Attention: Barry A. Dubin, Esq.<br>Telephone: (415) 433-1900<br>Telecopy: (415) 433-5530 |

or in each case to such other address as either Party may from time to time designate by giving notice in writing to the other Party. Telephone numbers are for informational purposes only. Effective notice will be deemed given only as provided above.

## 12. MISCELLANEOUS

*12.1  **Entire Agreement.*** This Agreement, together with the Exhibits attached hereto, all of which are incorporated by reference, is the entire agreement between the Parties with respect to the subject matter hereof, and no alteration, modification or interpretation hereof shall be binding unless in writing and signed by both Parties.

Case: 09-50771     Doc# 249-1     Filed: 07/20/10     Entered: 07/20/10 12:47:42     Page 23
of 46

**12.2    Severability.** If any provision of this Agreement or application to any Party or circumstances shall be determined by any court of competent jurisdiction to be invalid and unenforceable to any extent, the remainder of this Agreement or the application of such provision to such person or circumstances, other than those as to which it is so determined invalid or unenforceable, shall not be affected thereby, and each provision hereof shall be valid and shall be enforced to the fullest extent permitted by law.

**12.3    Applicable Law.** This Agreement shall be construed and enforced in accordance with the laws of the State of California. Notwithstanding the foregoing, the Bankruptcy Court shall have exclusive jurisdiction to resolve any disputes that may arise in connection with this Agreement.

**12.4    Assignability.** Purchaser shall not assign this Agreement without the prior written approval of Seller, which approval shall not be unreasonably withheld, conditioned or delayed. Any assignment of this Agreement by Purchaser without Seller's prior written consent is void and unenforceable. Notwithstanding the foregoing, Purchaser shall have the right, without the consent of Seller, to assign its rights, obligations and liabilities under this Agreement to any entity that controls, is controlled by, or is under common control with, Purchaser.

**12.5    Successors Bound.** Subject to Section 12.4, this Agreement shall be binding upon and inure to the benefit of Purchaser and Seller and their successors and permitted assigns.

**12.6    Captions.** The captions in this Agreement are inserted only as a matter of convenience and for reference and in no way define, limit or describe the scope of this Agreement or the scope or content of any of it provisions.

**12.7    Attorneys' Fees.** In the event of any litigation arising out of this Agreement, the prevailing Party shall be entitled to reasonable attorney's fees and costs. Any such attorneys' fees and other expenses incurred by either Party in enforcing a judgment in its favor under this Agreement shall be recoverable separately from and in addition to any other amount included in such judgment, and such attorneys' fees obligation is intended to be severable from the other provisions of this Agreement and to survive and not be merged into any such judgment.

**12.8    No Partnership.** Nothing contained in this Agreement shall be construed to create a partnership or joint venture between the Parties or their successors in interest.

**12.9    Time of Essence.** Time is of the essence in this Agreement.

**12.10    Counterparts.** This Agreement may be executed and delivered in any number of counterparts, each of which so executed and delivered shall be deemed to be an original and all of which shall constitute one and the same instrument.

**12.11    Recordation.** Purchaser and Seller agree not to record this Agreement or any memorandum hereof.

**12.12    Survival of Obligations.** Wherever this Agreement expressly provides that an obligation of Purchaser or Seller survives the Closing or termination of this Agreement, such obligation shall not be deemed to merge with, or be extinguished by, the Grant Deed recorded at

Case: 09-50771    Doc# 249-1    Filed: 07/20/10    Entered: 07/20/10 12:47:42    Page 24 of 46

closing, not extinguished or waived upon a termination, but shall continue until the full satisfaction thereof.

**12.13 No Presumption.** Purchaser and Seller have participated jointly in the negotiation and drafting of this Agreement. In the event any ambiguity or question of intent or interpretation arises, this Agreement shall be construed as if drafted jointly by Purchaser and Seller, and no presumption or burden of proof shall arise favoring or disfavoring any Party by virtue of the authorship of any of the provisions of this Agreement.

**12.14 Bankruptcy Court Approval.** This Agreement is subject to the approval of the Bankruptcy Court via an order confirming the Plan, provided, however, that Seller shall act in good faith to seek such an order in advance of any such approval.

**12.15 Security.** (a) In order to secure its obligations under this Agreement, Seller hereby grants to Purchaser a security interest and/or lien on the following assets of Seller (the **"Collateral"**), subject to any other third party security interests and/or liens currently existing on such Collateral:

      (1)    All of Seller's equipment, inventory, accounts and general intangibles, whether now owned or hereafter acquired;

      (2)    All of Seller's right, title and interest as lessee pursuant to that certain lease agreement dated January 12, 1999, including any renewal or extension, between Parks Foundation of Monterey County, as lessor and Seller, as lessee relating to Assessor's Parcel No. 173-061-003=000 (the **"Leasehold Interest"**);

      (3)    The Land:

(b)    Seller shall execute and deliver to Purchaser, all documents reasonably required by Purchaser to perfect its lien on the Collateral.

(c)    Seller shall obtain and deliver to Purchaser, a written subordination agreement, other than from Rabobank, in form and substance satisfactory to Purchaser duly executed by the holders of any pre-petition subordinated secured claims and the debtor in possession financing secured claim, in order to provide Purchaser with a first priority lien on the portion of the Collateral that is not subject to a security interest and/or lien in favor of Rabobank.

[SIGNATURES ON NEXT PAGE]

Case: 09-50771    Doc# 249-1    Filed: 07/20/10    Entered: 07/20/10 12:47:42    Page 25 of 46

IN WITNESS WHEREOF, Purchaser and Seller have executed this Agreement on the date set forth below, effective as of the date set forth above.

SELLER: PASADERA COUNTRY CLUB, LLC
a California Limited Liability Company

By: NCDG GOLF, LLC
a Delaware Limited Liability Company
its Managing Member

By: _DEREK GOLF, LLC_
By: _[signature]_
Name: _THOMAS S. DEREL0T_
Title: _PRES._

PURCHASER: PASADERA INTERNATIONAL LLC,
a California limited liability company

By: _____

Managing Member

636667.4

IN WITNESS WHEREOF, Purchaser and Seller have executed this Agreement on the date set forth below, effective as of the date set forth above.

SELLER: PASADERA COUNTRY CLUB, LLC
a California Limited Liability Company

By: NCDG GOLF, LLC
a Delaware Limited Liability Company
its Managing Member

By: _____
Name: _____
Title: _____

PURCHASER: PASADERA INTERNATIONAL LLC,
a California limited liability company

By: _____
Zhe Yi Jin
Managing Member

636667.3

An original, fully executed copy of this Agreement has been received by Title Company this ___ day of June, 2010, and by execution hereof the Title Company hereby covenants and agrees to be bound by the terms of this Agreement.

FIRST AMERICAN TITLE INSURANCE COMPANY

By: _____
Name: _____
Title: _____

636667.4

## LEGAL DESCRIPTION OF THE LAND

All that certain real property located in the County of Monterey, State of California more fully described as follows:

PARCEL I:

Parcels I, J, M, N and O as shown on the Map entitled "Tract No. 1307, Rancho Monterey", which map was filed for record on November 4th, 1998 in Volume 20 of Cities and Towns, at Page 7 in the Office of the County Recorder of Monterey County, California, and Certificate of Correction recorded April 21, 2000 in Official Records under Recorder's Series Number 2000025164.

PARCEL II:

Parcels K, L and P as said Lots are shown upon the map entitled, "Lot Line Adjustment Record of Survey - PLN 990335", filed December 23rd, 1999 in Volume 23 of Surveys, Page 29 in the office of the County Recorder of Monterey County, State of California.

PARCEL III:

Easements appurtenant to Parcel I above pursuant to Sections 9.3 entitled "Easements For Owners" and 9.5 "Support, Settlement and Encroachment", of the Declaration of Covenants, Conditions and Restrictions recorded on August 9, 1999 as Instrument No. 9960149 and re-recorded October 1, 1999 as Series No. 9973045, of the Official Records of said County.

PARCEL IV:

Easements acquired by Grantor as described in the Declaration of Establishment of Easements recorded on August 9, 1999 as Instrument No. 9960148 and re-recorded October 1, 1999 as Series No. 9973044 of the Official Records of said County (the "Easement Declaration"), for drainage through and across Drainage Improvements within the Drainage Easement Areas within those portions of Parcels G, I, J, K, L, M, N, O and P of said Tract No. 1307 described in the Supplementary Declaration referred to above that are contiguous to the real property conveyed hereby, as such easements are more particularly described in the Easement Declaration, as modified by said Supplementary Agreement.

EXCEPTING THEREFROM, easements and rights as reserved to PRM Holdings, LLC, a Delaware limited liability company, New Cities Land Company, Inc., a California Corporation, Bates Properties, Inc., a California Corporation and deRegt Development, Inc., a California Corporation, as tenants in common pursuant to the terms and conditions set forth in that certain Mirador Co-Tenancy Agreement, dated as of July 15, 1999 (the "Mirador Co-Tenancy") as Declarant and Owner in the Declaration and in the Easement Declaration recorded August 9, 1999 as Document No. 9960149 and re-recorded October 1, 1999 as Document No. 9973045 and recorded August 9, 1999 as Document No. 9960148 and re-recorded October 1, 1999 as Document No. 9973044, as modified by Supplementary Agreement recorded February 6, 1999 as Instrument No. 9989647 including without limitation, the reservation of oil, gas and mineral

Case: 09-50771    Doc# 249-1    Filed: 07/20/10    Entered: 07/20/10 12:47:42    Page 29 of 46

rights, easements for a community antenna television system, construction, display, maintenance, sale and exhibit purposes, drainage, and ingress and egress. As provided in the Declaration, the reservation for oil, gas and mineral rights did not reserve to the benefit of the Mirador Co-Tenancy any right to enter upon the surface of the property conveyed hereby in the exercise of such rights.

PARCEL V:

Lot G as Lot is shown and so designated upon the Map of Tract No. 1307, Rancho Monterey, in the County of Monterey, State of California, filed November 4, 1998 in Volume 20, Page 7 of Maps of Cities and Towns, in the Office of the County Recorder of said County, and as amended by Certificate of Correction recorded April 21, 2000, as Document No. 2000025164 Official Records of Monterey County.

PARCEL VI:

Commencing at a point on the Southwesterly boundary of that certain 564.705 acre parcel map filed December 7, 1983 in Volume 15 of Parcel Maps, at Page 190, Records of Monterey County, California, said point also being on that certain course "South 71° 01' 18" West, 120.00 feet", which bears along said course, South 71° 01' 18" West, 11.00 feet distant from the Northwesterly terminus thereof; thence leaving said boundary and course.

- A.  South 45° 53' West, 73.2 feet; thence
- B.  South 24° 43' East, 25.0 feet, thence
- C.  North 75° 15' East, 54.0 feet to the true point of beginning; thence

1. North 10° 00' East, 20.00 feet; thence
2. South 80° 00' East, 40.00 feet; thence
3. South 10° 00' West, 40.00 feet; thence
4. North 80° 00' West, 40.00 feet; thence
5. North 10° 00' East, 20.00 feet to the true point of beginning.

APN's: 173-072-038, 173-072-040 through 042;
173-074-075, 173-074-076,
173-075-028 and 173-075-030

Case: 09-50771     Doc# 249-1     Filed: 07/20/10     Entered: 07/20/10 12:47:42     Page 30
of 46

EXHIBIT B

**TANGIBLE PERSONAL PROPERTY**

(See attached)

Case: 09-50771  Doc# 249-1  Filed: 07/20/10  Entered: 07/20/10 12:47:42  Page 31 of 46

**FORM 1065**

| NO. | DESCRIPTION | DATE ACQUIRED | DATE SOLD | COST/BASIS | BUS. PCT. | CUR 179 BONUS | SPECIAL DEPR ALLOW | PRIOR 179/BONUS/SP DEPR | PRIOR DECL BAL DEPR | SALVAG/BASIS REDUCT | DEPR BASIS | PRIOR DEPR | METHOD | LIFE | RATE | CURRENT DEPR |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | **AMORTIZATION** | | | | | | | | | | | | | | | |
| 65 | ORGANIZATION COST-LEGAL | 2/01/00 | | 176,834 | | | | | | | 176,834 | 176,836 | S/L | 5 | | 0 |
| | **TOTAL AMORTIZATION** | | | 176,834 | | 0 | 0 | 0 | 0 | 0 | 176,834 | 176,836 | | | | 0 |
| | **BUILDINGS** | | | | | | | | | | | | | | | |
| 9 | MAINTENANCE BLDG | 2/01/00 | | 627,822 | | | | | | | 627,822 | 142,888 | S/L MM | 39 | .02564 | 16,097 |
| 10 | MODULAR RESTROOMS | 1/01/01 | | 67,172 | | | | | | | 67,172 | 13,706 | S/L MM | 39 | .02564 | 1,722 |
| 11 | CLUBHOUSE BLDGS & RESTAUR | 5/01/01 | | 13,054,413 | | | | | | | 13,054,413 | 2,554,334 | S/L MM | 39 | .02564 | 334,972 |
| 16 | CLUBHOUSE BLDG IMPROVEMEN | 12/05/01 | | 42,071 | | | | | | | 42,071 | 7,598 | S/L MM | 39 | .02564 | 1,079 |
| 186 | YOGA PAVILION CONVERSION | 3/31/07 | | 90,746 | | | | | | | 90,746 | 4,169 | S/L MM | 39 | .02564 | 2,327 |
| | **TOTAL BUILDINGS** | | | 13,882,224 | | 0 | 0 | 0 | 0 | 0 | 13,882,224 | 2,722,695 | | | | 356,197 |
| | **FURNITURE AND FIXTURES** | | | | | | | | | | | | | | | |
| 22 | TENT FOR BANQUETS | 6/21/01 | | 26,007 | | | | | | | 26,007 | 26,007 | 200DB HY | 7 | | 0 |
| 23 | TENT FOR BANQUETS | 6/21/01 | | 7,693 | | | | | | | 7,693 | 7,693 | 200DB HY | 7 | | 0 |
| 28 | FURNITURE | 5/01/01 | | 5,363 | | | | | | | 5,363 | 5,363 | 200DB HY | 7 | | 0 |
| 29 | FURNITURE | 5/01/01 | | 7,350 | | | | | | | 7,350 | 7,350 | 200DB HY | 7 | | 0 |
| 30 | FURNITURE | 5/01/01 | | 15,282 | | | | | | | 15,282 | 15,282 | 200DB HY | 7 | | 0 |
| 31 | FURNITURE | 5/01/01 | | 500 | | | | | | | 500 | 500 | 200DB HY | 7 | | 0 |
| 32 | FURNITURE | 5/01/01 | | 8,332 | | | | | | | 8,332 | 8,332 | 200DB HY | 7 | | 0 |
| 33 | RANDOLPH & HEIN | 5/01/01 | | 5,147 | | | | | | | 5,147 | 5,147 | 200DB HY | 7 | | 0 |
| 34 | FURNITURE | 5/01/01 | | 765 | | | | | | | 765 | 765 | 200DB HY | 7 | | 0 |
| 35 | FURNITURE | 5/01/01 | | 3,219 | | | | | | | 3,219 | 3,219 | 200DB HY | 7 | | 0 |

| NO. | DESCRIPTION | DATE ACQUIRED | DATE SOLD | COST/ BASIS | BUS. PCT. | CUR 179 BONUS | SPECIAL DEPR ALLOW | PRIOR 179/ BONUS/ SP DEPR | PRIOR DEC BAL DEPR | SALVAG /BASIS REDUCT | DEPR BASIS | PRIOR DEPR | METHOD | LIFE | RATE | CURRENT DEPR |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 36 | FURNITURE & FIXTURES | 5/01/01 | | 2,835,273 | | | | | | | 2,835,273 | 2,835,273 | 200DB HY | 7 | | 0 |
| 43 | ARTWORK/DECOR | 7/20/01 | | 6,133 | | | | | | | 6,133 | 6,133 | 200DB HY | 7 | | 0 |
| 45 | FIREPLACE SCREENS | 10/08/01 | | 1,500 | | | | 450 | | | 1,050 | 1,050 | 200DB HY | 7 | | 0 |
| 56 | TEAK FURNITURE | 3/01/01 | | 37,271 | | | | | | | 37,271 | 37,271 | 200DB HY | 7 | | 0 |
| 66 | PORTABLE PUMP/HOUSE | 1/25/02 | | 5,862 | | | | 1,759 | | | 4,103 | 3,920 | 200DB HY | 7 | .04460 | 183 |
| 70 | GOLD LEAF | 4/16/02 | | 8,257 | | | | 2,480 | | | 5,787 | 5,829 | 200DB HY | 7 | .04460 | 258 |
| 71 | REMOTE CHILLER | 5/06/02 | | 651 | | | | 195 | | | 456 | 437 | 200DB HY | 7 | .04460 | 19 |
| 72 | AIR SUPPLY REGISTER | 5/28/02 | | 2,722 | | | | 817 | | | 1,905 | 1,820 | 200DB HY | 7 | .04460 | 85 |
| 73 | 6 EVERPURE H20 FILTERS | 1/13/02 | | 1,225 | | | | 368 | | | 857 | 819 | 200DB HY | 7 | .04460 | 38 |
| 74 | FIREPLACE TOOLS | 1/25/02 | | 315 | | | | 95 | | | 220 | 211 | 200DB HY | 7 | .04460 | 9 |
| 75 | VETRE DISHES | 3/11/02 | | 1,501 | | | | 450 | | | 1,051 | 1,051 | 200DB HY | 3 | | 0 |
| 76 | FURNITURE | 5/06/02 | | 271 | | | | 81 | | | 190 | 182 | 200DB HY | 7 | .04460 | 8 |
| 77 | DINING ROOM CHAIRS | 6/24/02 | | 20,549 | | | | 6,165 | | | 14,384 | 13,742 | 200DB HY | 7 | .04460 | 642 |
| 80 | CHAIR CUSHIONS | 4/05/02 | | 3,373 | | | | 1,012 | | | 2,361 | 2,256 | 200DB HY | 7 | .04460 | 105 |
| 81 | TENT - HARTMANN STUDIOS | 1/09/02 | | 5,588 | | | | 1,706 | | | 3,882 | 3,804 | 200DB HY | 7 | .04460 | 178 |
| 82 | CHRISTMAS TREE DECOR | 1/09/02 | | 197 | | | | 59 | | | 138 | 131 | 200DB HY | 7 | .04460 | 7 |
| 83 | USED BOOKS- GOODWILL | 1/09/02 | | 800 | | | | 240 | | | 560 | 535 | 200DB HY | 7 | .04460 | 25 |
| 84 | TWO BOOKCASES | 3/27/02 | | 225 | | | | 68 | | | 157 | 149 | 200DB HY | 7 | .04460 | 8 |
| 85 | 4 OFFICE CHAIRS-LOWENSTEI | 4/17/02 | | 1,689 | | | | 507 | | | 1,182 | 1,130 | 200DB HY | 7 | .04460 | 52 |
| 86 | CUSTOM CHAIR | 6/05/02 | | 961 | | | | 288 | | | 673 | 643 | 200DB HY | 7 | .04460 | 30 |
| 87 | CHAIR CUSHIONS GOLF & TEN | 6/06/02 | | 1,802 | | | | 541 | | | 1,261 | 1,205 | 200DB HY | 7 | .04460 | 56 |
| 88 | WATER FOUNTAIN | 6/26/02 | | 220 | | | | 66 | | | 154 | 148 | 200DB HY | 7 | .04460 | 6 |
| 89 | LOCKER ROOM MIRRORS | 6/27/02 | | 5,666 | | | | 1,700 | | | 3,966 | 3,789 | 200DB HY | 7 | .04460 | 177 |
| 90 | CANDLESTICKS-SHORT&TALL | 7/15/02 | | 631 | | | | 189 | | | 442 | 420 | 200DB HY | 7 | .04460 | 22 |
| 91 | COFFEE TABLE | 8/04/02 | | 198 | | | | 59 | | | 139 | 131 | 200DB HY | 7 | .04460 | 8 |
| 92 | DECOR ITEMS-ROD HUNTER | 8/09/02 | | 3,398 | | | | 1,019 | | | 2,379 | 2,272 | 200DB HY | 7 | .04460 | 107 |
| 93 | SOAP DISPENSER-BAY PLUMBI | 11/11/02 | | 400 | | | | 120 | | | 280 | 268 | 200DB HY | 7 | .04460 | 12 |

Case: 09-50771    Doc# 249-1    Filed: 07/20/10    Entered: 07/20/10 12:47:42    Page 33 of 46

| NO. | DESCRIPTION | DATE ACQUIRED | DATE SOLD | COST/BASIS | BUS. PCT. | CUR 179 EXPNS. | SPECIAL DEPR. ALLOW. | PRIOR 179/ BONUS/ SP. DEPR. | PRIOR DEC. BAL. DEPR. | SALVAG/ BASIS REDUCTN | DEPR. BASIS | PRIOR DEPR. | METHOD | LIFE | RATE | CURRENT DEPR. |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 96 | COUNTER-TAPAS | 9/04/02 | | 11,541 | | | | 3,462 | | | 8,079 | 7,718 | 200DB HY | 7 | .04460 | 361 |
| 97 | KITCHEN CABINETS | 5/01/01 | | 306,159 | | | | | | | 306,159 | 306,159 | 200DB HY | 7 | | 0 |
| 98 | LOCKERS | 5/01/01 | | 335,145 | | | | | | | 335,145 | 335,145 | 200DB HY | 7 | | 0 |
| 99 | CARPET | 5/01/01 | | 35,457 | | | | | | | 35,457 | 35,457 | 200DB HY | 7 | | 0 |
| 100 | FOOD SERVICE EQUIP | 5/01/01 | | 423,734 | | | | | | | 423,734 | 423,734 | 200DB HY | 7 | | 0 |
| 101 | METAL TOILET PARTITIONS | 5/01/01 | | 2,905 | | | | | | | 2,905 | 2,905 | 200DB HY | 7 | | 0 |
| 102 | GOLF BAG STORAGE SYSTEM | 5/01/01 | | 23,202 | | | | | | | 23,202 | 23,202 | 200DB HY | 7 | | 0 |
| 103 | TOILET ACCESSORIES | 5/01/01 | | 7,509 | | | | | | | 7,509 | 7,509 | 200DB HY | 7 | | 0 |
| 104 | MIRRORS | 5/01/01 | | 3,183 | | | | | | | 3,183 | 3,183 | 200DB HY | 7 | | 0 |
| 105 | SHOWER DOORS | 5/01/01 | | 61,010 | | | | | | | 61,010 | 61,010 | 200DB HY | 7 | | 0 |
| 106 | SECURITY/CLOSED CIRCT TV | 5/01/01 | | 19,268 | | | | | | | 19,268 | 19,268 | 200DB HY | 7 | | 0 |
| 107 | KITCHEN EQUIPMENT | 5/01/01 | | 1,540 | | | | | | | 1,540 | 1,540 | 200DB HY | 7 | | 0 |
| 111 | 50 ARTICHOKE DOORSTOPS | 6/03/03 | | 1,861 | | | | | | | 1,861 | 1,611 | 200DB HY | 7 | .08930 | 166 |
| 112 | 8 UMBRELLA COVERS | 6/03/03 | | 416 | | | | | | | 416 | 360 | 200DB HY | 7 | .08930 | 37 |
| 113 | 8 BRASS UMBRELLA BASES | 6/03/03 | | 2,660 | | | | | | | 2,660 | 2,303 | 200DB HY | 7 | .08930 | 238 |
| 114 | LITTER CONTAINERS | 9/09/03 | | 354 | | | | | | | 354 | 306 | 200DB HY | 7 | .08930 | 32 |
| 115 | 2 END TABLES | 9/25/03 | | 332 | | | | | | | 332 | 287 | 200DB HY | 7 | .08930 | 30 |
| 116 | UMBRELLA | 12/03/03 | | 600 | | | | | | | 600 | 521 | 200DB HY | 7 | .08930 | 54 |
| 117 | LITTER CONTAINER | 12/05/03 | | 165 | | | | | | | 165 | 144 | 200DB HY | 7 | .08930 | 15 |
| 122 | TOWEL RACK | 4/22/03 | | 229 | | | | | | | 229 | 198 | 200DB HY | 7 | .08930 | 20 |
| 123 | 2 BENCHES | 4/22/03 | | 558 | | | | | | | 558 | 482 | 200DB HY | 7 | .08930 | 51 |
| 124 | TV & DVD FOR CONF ROOM | 12/16/04 | | 233 | | | | | 117 | | 116 | 87 | 200DB MQ | 7 | .03730 | 10 |
| 125 | WATER HEATER GOLF MAIN | 12/21/04 | | 239 | | | | | 120 | | 119 | 89 | 200DB MQ | 7 | .03730 | 10 |
| 126 | COVER UP CANVAS | 10/20/04 | | 215 | | | | | 108 | | 107 | 80 | 200DB MQ | 7 | .03730 | 9 |
| 148 | DECK STOR A WAY | 6/15/04 | | 1,411 | | | | | 706 | | 705 | 558 | 200DB MQ | 7 | .08970 | 63 |
| 149 | 8 CHAIRS,2 TABLES CHILD | 3/25/04 | | 1,770 | | | | | 885 | | 885 | 720 | 200DB MQ | 7 | .08750 | 77 |
| 150 | 6-8' UMBRELLAS & COVER | 3/25/04 | | 6,188 | | | | | 3,094 | | 3,094 | 2,520 | 200DB MQ | 7 | .08750 | 271 |

| NO. | DESCRIPTION | DATE ACQUIRED | DATE SOLD | COST/BASIS | BUS PCT | CUR 179 BONUS | SPECIAL DEPR ALLOW | PRIOR 179/BONUS/SP DEPR | PRIOR DEC BAL DEPR | SALVAG/BASIS REDUCT | DEPR BASIS | PRIOR DEPR | METHOD | LIFE | RATE | CURRENT DEPR |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 162 | MIRRORS-LIVING RM & LOUNGE | 4/21/05 | | 1,485 | | | | | | | 1,485 | 1,014 | 200DB MQ | 7 | .08870 | 132 |
| 156 | UMBRELLA & BASE | 1/04/05 | | 681 | | | | | | | 681 | 457 | 200DB MQ | 7 | .08750 | 60 |
| 167 | 2 SQUARE END TABLES | 4/12/05 | | 247 | | | | | | | 247 | 168 | 200DB MQ | 7 | .08870 | 22 |
| 168 | UPHOLSTERY, OUTDOOR PATIO | 6/03/05 | | 2,187 | | | | | | | 2,187 | 1,489 | 200DB MQ | 7 | .08870 | 194 |
| 187 | 6 CHAISE LOUNGES & PADS | 5/24/06 | | 2,898 | | | | | | | 2,898 | 1,981 | 200DB HY | 7 | .12490 | 362 |
| 188 | TEAK FOLDING CHAIRS | 6/12/06 | | 1,802 | | | | | | | 1,802 | 1,013 | 200DB HY | 7 | .12490 | 225 |
| 190 | 120 CHIAVARI CHAIRS | 6/26/06 | | 12,339 | | | | | | | 12,339 | 6,943 | 200DB HY | 7 | .12490 | 1,541 |
| 191 | 30 X 30 DANCE FLOOR | 7/25/06 | | 15,045 | | | | | | | 15,045 | 8,465 | 200DB HY | 7 | .12490 | 1,879 |
| 192 | DRAPERY FABRIC | 8/04/06 | | 1,168 | | | | | | | 1,168 | 657 | 200DB HY | 7 | .12490 | 146 |
| 193 | 6 CONGOMANGO CHAIR COVERS | 8/23/06 | | 5,304 | | | | | | | 5,304 | 2,985 | 200DB HY | 7 | .12490 | 662 |
| 202 | LIGHTS FOR YOGA BLDG | 3/31/07 | | 2,612 | | | | | | | 2,612 | 1,013 | 200DB HY | 7 | .17490 | 457 |
| 203 | YOGA CENTER MIRRORS | 4/26/07 | | 2,729 | | | | | | | 2,723 | 1,058 | 200DB HY | 7 | .17490 | 477 |
| 210 | CHAIRS- COMMT. SEATING | 9/25/07 | | 1,105 | | | | | | | 1,105 | 429 | 200DB HY | 7 | .17490 | 193 |
| 212 | CARPET FOR TENT | 10/25/07 | | 4,336 | | | | | | | 4,336 | 1,681 | 200DB HY | 7 | .17490 | 758 |
| 213 | PLYWOOD TENT FLOORING | 10/25/07 | | 3,105 | | | | | | | 3,105 | 1,203 | 200DB HY | 7 | .17490 | 543 |
| 214 | DEPOSIT ON GRILL FURNITUR | 12/27/07 | | 10,660 | | | | | | | 10,660 | 2,611 | 200DB HY | 7 | .17490 | 1,864 |
| 231 | TEAK POOL STORAGE CONTAIN | 7/07/07 | | 400 | | | | | | | 400 | 155 | 200DB HY | 7 | .17490 | 70 |
| 232 | STORAGE CHEST DEPOSIT | 11/25/07 | | 438 | | | | | | | 438 | 112 | 200DB HY | 7 | .17490 | 80 |
| 235 | BALLARD & SONS FABRIC | 1/17/08 | | 6,902 | | | | 3,451 | | | 3,451 | 493 | 200DB HY | 7 | .24490 | 845 |
| 236 | 2 LCD TVS FOR MENS GRILL | 1/21/08 | | 2,500 | | | | 1,250 | | | 1,250 | 179 | 200DB HY | 7 | .24490 | 306 |
| 237 | RE-UPHOLSTER RUST CHAIRS | 2/10/08 | | 1,317 | | | | 639 | | | 639 | 94 | 200DB HY | 7 | .24490 | 161 |
| 238 | HDTVS MONT PEN FOUNDATION | 2/12/08 | | 2,939 | | | | 1,470 | | | 1,469 | 210 | 200DB HY | 7 | .24490 | 360 |
| 239 | 50% DEP.- GOLF SHOP FIXT | 2/20/08 | | 2,887 | | | | 1,444 | | | 1,443 | 206 | 200DB HY | 7 | .24490 | 353 |
| 244 | GOLF SHOP DISPLAY FURNITU | 5/25/08 | | 2,855 | | | | 1,428 | | | 1,427 | 204 | 200DB HY | 7 | .24490 | 349 |
| 245 | 8 CHAISE LOUNGES, 38 PADS | 6/25/08 | | 8,921 | | | | 4,461 | | | 4,460 | 637 | 200DB HY | 7 | .24490 | 1,092 |
| 246 | 20% DEP. WASHING MACHINE | 7/23/08 | | 1,173 | | | | 537 | | | 586 | 84 | 200DB HY | 7 | .24490 | 144 |
| 247 | FINAL ON GRILL CHAIRS | 7/07/08 | | 14,950 | | | | 7,475 | | | 7,475 | 1,068 | 200DB HY | 7 | .24490 | 1,831 |

 06:08PM

### FEDERAL DEPRECIATION SCHEDULE

| NO. | DESCRIPTION | DATE ACQUIRED | DATE SOLD | COST/BASIS | BUS. PCT. | CUR 179 BONUS | SPECIAL DEPR. ALLOW | PRIOR 179/ BONUS/ SP DEPR | PRIOR DEC BAL DEPR | SALVAG/ BASIS REDUCE | DEPR BASIS | PRIOR DEPR | METHOD | LIFE | RATE | CURRENT DEPR |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 249 | WASHING MACHINE | 8/19/08 | | 5,000 | | 0 | 0 | 2,500 | | 0 | 2,500 | 357 | 200DB HY | 7 | .24490 | 612 |
| | TOTAL FURNITURE AND FIXTURE | | | 4,382,336 | | 0 | 0 | 53,651 | | 0 | 4,333,735 | 4,277,734 | | | | 19,197 |
| | **IMPROVEMENTS** | | | | | | | | | | | | | | | |
| 1 | IRRIGATION SYSTEM | 2/01/00 | | 1,733,490 | | | | | | | 1,733,490 | 1,105,028 | 150DB HY | 15 | .06900 | 105,816 |
| 2 | TOP SOIL | 2/01/00 | | 504,770 | | | | | | | 504,770 | 311,009 | 150DB HY | 15 | .06900 | 29,781 |
| 3 | GREENS DEVELOPMENT | 2/01/00 | | 407,703 | | | | | | | 407,703 | 251,201 | 150DB HY | 15 | .06900 | 24,054 |
| 4 | TEES | 2/01/00 | | 109,011 | | | | | | | 109,011 | 67,167 | 150DB HY | 15 | .06900 | 6,432 |
| 5 | CARTPATHS | 2/01/00 | | 586,838 | | | | | | | 586,838 | 361,571 | 150DB HY | 15 | .06900 | 34,623 |
| 6 | IRRIGATION SYSTEM | 1/24/01 | | 17,000 | | | | | | | 17,000 | 9,470 | 150DB HY | 15 | .06900 | 1,003 |
| 7 | LAND IMPROVEMENTS | 5/01/01 | | 3,555,659 | | | | | | | 3,555,659 | 1,986,200 | 150DB HY | 15 | .06900 | 210,374 |
| 8 | TEMP CART PAD & WALK | 6/30/01 | | 6,256 | | | | | | | 6,256 | 3,485 | 150DB HY | 15 | .06900 | 369 |
| 52 | GOLF COURSE & CLUB PROP'TY | 5/01/01 | | 9,422,924 | | | | | | | 9,422,924 | | 150DB HY | | | 0 |
| 67 | TAN TURFSTONE | 5/06/02 | | 1,674 | | | | 502 | | | 1,172 | 588 | 150DB HY | 15 | .06900 | 69 |
| 68 | TAN TURFSTONE | 8/13/02 | | 3,628 | | | | 1,088 | | | 2,540 | 1,285 | 150DB HY | 15 | .06900 | 150 |
| 69 | CARTPATH | 12/23/02 | | 859 | | | | 258 | | | 601 | 288 | 150DB HY | 15 | .06900 | 35 |
| 108 | TAN TURFSTONE | 1/03/03 | | 4,255 | | | | | | | 4,255 | 1,869 | 150DB HY | 15 | .06900 | 251 |
| 109 | TAN TURFSTONE | 4/22/03 | | 4,408 | | | | | | | 4,408 | 1,935 | 150DB HY | 15 | .06900 | 260 |
| 110 | BOOSTER PUMP & MOTOR | 8/20/03 | | 4,884 | | | | | | | 4,884 | 4,230 | 200DB HY | 7 | .08930 | 436 |
| 146 | WATER WELL | 10/01/04 | | 57,546 | | | | 28,773 | | | 28,773 | 7,515 | S/L MQ | 15 | .06670 | 1,919 |
| 147 | GATE FOR GOLF MAINT BLDG | 2/27/04 | | 1,285 | | | | 643 | | | 642 | 425 | 200DB MQ | 10 | .06760 | 43 |
| 156 | WELL PUMP | 4/05/05 | | 39,013 | | | | | | | 39,013 | 9,106 | S/L MQ | 15 | .06670 | 2,602 |
| 157 | OIL SEPARATION TANK | 6/30/05 | | 4,038 | | | | | | | 4,038 | 1,232 | 150DB MQ | 15 | .06830 | 276 |
| 158 | BUNKER REPLACEMENT | 10/15/05 | | 252,251 | | | | | | | 252,251 | 73,181 | 150DB MQ | 15 | .07200 | 18,162 |
| 159 | DRAINAGE REPLACEMENT | 11/30/05 | | 130,767 | | | | | | | 130,767 | 40,605 | 150DB MQ | 15 | .07200 | 9,415 |
| 183 | DRAINAGE SYSTEM | 1/01/06 | | 440,279 | | | | | | | 440,279 | 101,485 | 150DB HY | 15 | .07700 | 33,901 |

## FEDERAL DEPRECIATION SCHEDULE

| NO. | DESCRIPTION | DATE ACQUIRED | DATE SOLD | COST/BASIS | BUS. PCT | C/R 179 BONUS | SPECIAL DEPR ALLOW | PRIOR 179/BONUS/SP DEPR | PRIOR DEC.BAL DEPR | SALVAG/BASIS REDUCT | DEPR. BASIS | PRIOR DEPR | METHOD | LIFE | RATE | CURRENT DEPR |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 184 | WELL PUMP OVERHAUL | 8/15/06 | | 32,800 | | | | | | | 32,800 | 7,533 | 150DB HY | 15 | .07700 | 2,526 |
| 227 | RESTROOM FENCES | 5/01/07 | | 1,525 | | | | | | | 1,525 | 229 | S/L HY | 10 | .10000 | 153 |
| | TOTAL IMPROVEMENTS | | | 17,352,873 | | 0 | 0 | 31,264 | 0 | 0 | 17,361,609 | 4,353,047 | | | | 482,650 |
| | **MACHINERY AND EQUIPMENT** | | | | | | | | | | | | | | | |
| 12 | AO/TROL CONTROLLER | 8/17/01 | | 18,994 | | | | | | | 18,994 | 18,994 | 200DB HY | 7 | | 0 |
| 13 | WATER SOFTENER | 10/15/01 | | 12,475 | | | | 3,743 | | | 8,732 | 8,732 | 200DB HY | 7 | | 0 |
| 14 | WATER HEATER FOR LAUNDRY | 11/08/01 | | 2,606 | | | | 782 | | | 1,824 | 1,824 | 200DB HY | 7 | | 0 |
| 15 | COPPER LINE FOR WASHERS | 11/30/01 | | 3,068 | | | | 920 | | | 2,148 | 2,148 | 200DB HY | 7 | | 0 |
| 17 | CABLING FOR COMPUTER EQUI | 12/12/01 | | 22,008 | | | | 6,602 | | | 15,406 | 15,406 | 200DB HY | 7 | | 0 |
| 18 | LEADED GLASS IN BAR CABIN | 12/14/01 | | 7,951 | | | | 2,385 | | | 5,566 | 5,566 | 200DB HY | 5 | | 0 |
| 19 | RESTAURANT EQUIP | 12/16/01 | | 2,554 | | | | 766 | | | 1,788 | 1,788 | 200DB HY | 7 | | 0 |
| 20 | BUILDING FOR PUMP STATION | 12/23/01 | | 25,541 | | | | 7,662 | | | 17,879 | 17,879 | 200DB HY | 7 | | 0 |
| 21 | KITCHEN FLATWARE | 5/01/01 | | 3,751 | | | | | | | 3,751 | 3,751 | 200DB HY | 7 | | 0 |
| 24 | STAINLESS STEEL SHELVES | 7/26/01 | | 2,782 | | | | | | | 2,782 | 2,782 | 200DB HY | 7 | | 0 |
| 25 | DRAPES | 11/08/01 | | 777 | | | | 233 | | | 544 | 544 | 200DB HY | 7 | | 0 |
| 26 | DISHES | 12/23/01 | | 680 | | | | 204 | | | 476 | 476 | 200DB HY | 7 | | 0 |
| 27 | STEEL SHELVING, CABINETRY | 1/01/01 | | 6,341 | | | | | | | 6,341 | 6,341 | 200DB HY | 7 | | 0 |
| 37 | ALLION SHOE MACHINE | 6/01/01 | | 7,815 | | | | | | | 7,815 | 7,815 | 200DB HY | 7 | | 0 |
| 38 | RESTAURANT EQUIPMENT | 6/08/01 | | 4,930 | | | | | | | 4,930 | 4,930 | 200DB HY | 7 | | 0 |
| 40 | CLUBHOUSE PIANO | 6/19/01 | | 23,814 | | | | | | | 23,814 | 23,814 | 200DB HY | 7 | | 0 |
| 40 | DONLEE PUMPS | 7/01/01 | | 15,504 | | | | | | | 15,504 | 15,504 | 200DB HY | 7 | | 0 |
| 41 | RETRIEVER W/O DEBIT ENCRY | 7/01/01 | | 883 | | | | | | | 883 | 883 | 200DB HY | 7 | | 0 |
| 42 | RETRIEVER | 7/01/01 | | 883 | | | | | | | 883 | 883 | 200DB HY | 7 | | 0 |
| 44 | CRAM-A-LOT TRASH COMPACTO | 7/26/01 | | 10,736 | | | | | | | 10,736 | 10,736 | 200DB HY | 7 | | 0 |
| 46 | LAUNDRY EQUIPMENT | 10/18/01 | | 13,455 | | | | 4,037 | | | 9,418 | 9,418 | 200DB HY | 7 | | 0 |

06:09PM

| NO. | DESCRIPTION | DATE ACQUIRED | DATE SOLD | COST/ BASIS | BUS. PCT. | CUR 179 BONUS | SPECIAL DEPR ALLOW | PRIOR 179/ BONUS/ SP DEPR | PRIOR DEC BAL DEPR | SALVAG /BASIS REDUCTN | DEPR. BASIS | PRIOR DEPR | METHOD | LIFE | RATE | CURRENT DEPR |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 47 | WINTERLINK COMPUTER PHONE | 5/01/01 | | 49,742 | | | | | | | 49,742 | 49,743 | 200DB HY | 5 | | 0 |
| 48 | PORTABLE PHONES & CHARGER | 5/01/01 | | 8,140 | | | | | | | 8,140 | 8,140 | 200DB HY | 7 | | 0 |
| 49 | WIRING & INSTR. COMPUTERS | 5/01/01 | | 8,846 | | | | | | | 8,846 | 8,846 | 200DB HY | 7 | | 0 |
| 50 | CORSA PHONE SYSTEM | 5/01/01 | | 80,806 | | | | | | | 80,806 | 80,806 | 200DB HY | 5 | | 0 |
| 51 | BALL WASHER MACHINE | 5/01/01 | | 2,196 | | | | | | | 2,196 | 2,196 | 200DB HY | 7 | | 0 |
| 53 | GOLF COURSE EQUIPMENT | 2/01/00 | | 483,995 | | | | | | | 483,995 | 483,995 | 200DB HY | 7 | | 0 |
| 54 | WELDER | 1/01/01 | | 1,810 | | | | | | | 1,810 | 1,810 | 200DB HY | 7 | | 0 |
| 55 | EQUIPMENT | 1/24/01 | | 2,941 | | | | | | | 2,941 | 2,941 | 200DB HY | 7 | | 0 |
| 57 | MATERIAL HAULER | 5/01/01 | | 25,400 | | | | | | | 25,400 | 25,400 | 200DB HY | 7 | | 0 |
| 58 | EDGER, AERATOR, TRIMMER | 5/01/01 | | 5,418 | | | | | | | 5,418 | 5,418 | 200DB HY | 7 | | 0 |
| 59 | SOD CUTTER | 5/01/01 | | 3,778 | | | | | | | 3,778 | 3,778 | 200DB HY | 7 | | 0 |
| 60 | GREENSMASTER 1600 | 5/01/01 | | 5,514 | | | | | | | 5,514 | 5,514 | 200DB HY | 7 | | 0 |
| 61 | BROWN CULLEN RANGE EQUIP | 5/01/01 | | 8,100 | | | | | | | 8,100 | 8,100 | 200DB HY | 7 | | 0 |
| 62 | EASY PICK BENCHES | 5/01/01 | | 6,084 | | | | | | | 6,084 | 6,084 | 200DB HY | 7 | | 0 |
| 63 | SPRAYER BOOM, ELECTRICAL | 5/01/01 | | 7,408 | | | | | | | 7,408 | 7,408 | 200DB HY | 7 | | 0 |
| 64 | GOLF COURSE EQUIPMENT | 5/01/01 | | 14,488 | | | | | | | 14,488 | 14,488 | 200DB HY | 7 | | 0 |
| 78 | BREAD SLICER | 8/20/02 | | 306 | | | | 92 | | | 214 | 204 | 200DB HY | 7 | .04460 | 10 |
| 79 | CHILLER-FREEZER | 9/04/02 | | 4,342 | | | | 1,303 | | | 3,039 | 2,903 | 200DB HY | 7 | .04460 | 135 |
| 94 | JONAS SOFTWARE | 11/11/02 | | 3,495 | | | | 1,048 | | | 2,447 | 2,447 | 200DB HY | 3 | | 0 |
| 95 | JC GOLF VIDEO INSTRUCT | 8/14/02 | | 5,994 | | | | 1,799 | | | 4,195 | 4,009 | 200DB HY | 7 | .04460 | 188 |
| 118 | 9 SETS RENTAL CLUBS | 1/23/03 | | 8,933 | | | | | | | 8,933 | 7,762 | 200DB HY | 7 | .08330 | 800 |
| 119 | 400 GAL SPRAYTANK (FAIRWA | 1/17/03 | | 5,944 | | | | | | | 5,944 | 5,150 | 200DB HY | 7 | .08330 | 531 |
| 120 | 750 GAL MIX TANK | 1/17/03 | | 3,750 | | | | | | | 3,750 | 3,248 | 200DB HY | 7 | .08330 | 335 |
| 121 | 500 POWER SOUNDER | 3/25/03 | | 737 | | | | | | | 737 | 638 | 200DB HY | 7 | .08330 | 66 |
| 127 | ROLL & SPIKE GREENS ROLLER | 6/04/04 | | 8,024 | | | | 4,013 | | | 4,011 | 3,166 | 200DB HY | 7 | .08930 | 358 |
| 128 | PROVONOST TRAILR REAR DMP | 12/22/04 | | 7,078 | | | | 3,539 | | | 3,539 | 2,650 | 200DB M/Q | 7 | .08730 | 309 |
| 129 | TRENCHER | 1/08/04 | | 2,512 | | | | 1,256 | | | 1,256 | 1,022 | 200DB M/Q | 7 | .08750 | 110 |

Case: 09-50771   Doc# 249-1   Filed: 07/20/10   Entered: 07/20/10 12:47:42   Page 38 of 46

**FEDERAL DEPRECIATION SCHEDULE**

| NO. | DESCRIPTION | DATE ACQUIRED | DATE SOLD | COST/ BASIS | BUS. PCT. | CUR 179 BONUS | SPECIAL DEPR ALLOW | PRIOR 179/ BONUS/ SP DEPR | PRIOR DEC BAL DEPR | SALVAG BASIS REDUCT | DEPR BASIS | PRIOR DEPR | METHOD | LIFE | RATE | CURRENT DEPR |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 130 | UTILITY TRAILER | 4/05/04 | | 767 | | | | 384 | | | 383 | 302 | 200DB MQ | 7 | .08670 | 34 |
| 131 | HOT H2O PRESSURE WASHER | 4/12/04 | | 2,123 | | | | 1,062 | | | 1,061 | 837 | 200DB MQ | 7 | .08670 | 94 |
| 132 | TURFCAT ROTARY DECK | 4/12/04 | | 3,880 | | | | 1,331 | | | 1,923 | 1,523 | 200DB MQ | 7 | .08670 | 171 |
| 133 | POWER RAKE | 4/16/04 | | 500 | | | | 250 | | | 250 | 198 | 200DB MQ | 7 | .08670 | 22 |
| 134 | 515 GAL SPRAYER | 6/01/04 | | 5,416 | | | | 2,708 | | | 2,708 | 2,137 | 200DB MQ | 7 | .08670 | 240 |
| 135 | 2 SANDING BRUSHES | 6/04/04 | | 1,700 | | | | 850 | | | 850 | 670 | 200DB MQ | 7 | .08670 | 75 |
| 136 | TOPDRESSER | 6/15/04 | | 5,914 | | | | 2,957 | | | 2,957 | 2,334 | 200DB MQ | 7 | .08670 | 262 |
| 137 | JOHN DEERE TRACTOR | 6/25/04 | | 23,594 | | | | 11,798 | | | 11,796 | 9,310 | 200DB MQ | 7 | .08670 | 1,046 |
| 138 | PROV/DNIST TRAILER-REED EQ | 9/14/04 | | 6,006 | | | | 3,003 | | | 3,003 | 2,365 | 200DB MQ | 7 | .08850 | 266 |
| 139 | DITCHWITCH TRENCHER | 11/02/04 | | 18,679 | | | | 9,340 | | | 9,339 | 6,250 | 200DB MQ | 7 | .07790 | 728 |
| 140 | 50 HP BOOSTER PUMP | 2/27/04 | | 1,092 | | | | 546 | | | 546 | 423 | 200DB MQ | 7 | .08750 | 48 |
| 141 | 60 HP BOOSTR PMP OLD WELL | 9/30/04 | | 5,070 | | | | 2,535 | | | 2,535 | 1,979 | 200DB MQ | 7 | .08850 | 224 |
| 142 | STEAM CLEANER FOR GROUNDS | 3/23/04 | | 3,500 | | | | 1,750 | | | 1,750 | 1,425 | 200DB MQ | 7 | .08750 | 153 |
| 143 | 2 CARTS FOR TABLES,CHAIRS | 4/26/04 | | 15,444 | | | | 7,722 | | | 7,722 | 6,093 | 200DB MQ | 7 | .08670 | 685 |
| 144 | 2 PICTURE KING SCREENS | 6/29/04 | | 524 | | | | 262 | | | 262 | 206 | 200DB MQ | 7 | .08670 | 23 |
| 145 | BOILER-BLDG 1 | 10/19/04 | | 6,000 | | | | 3,000 | | | 3,000 | 2,347 | 200DB MQ | 7 | .07790 | 262 |
| 151 | KITCHEN PAGERS | 4/12/04 | | 1,552 | | | | 776 | | | 776 | 613 | 200DB MQ | 7 | .08670 | 69 |
| 152 | GARBAGE DISPOSAL | 10/20/04 | | 1,796 | | | | 898 | | | 898 | 672 | 200DB MQ | 7 | .07790 | 78 |
| 153 | CD PLAYER | 2/10/04 | | 349 | | | | 175 | | | 174 | 142 | 200DB MQ | 7 | .08750 | 15 |
| 154 | MONITOR-RECEPTIONIST | 4/20/04 | | 364 | | | | 182 | | | 182 | 153 | 200DB MQ | 5 | .04260 | 8 |
| 155 | HP SERVER HRDWRE,SOFTWARE | 11/19/04 | | 10,237 | | | | 5,119 | | | 5,118 | 9,906 | 200DB MQ | 5 | .09580 | 490 |
| 160 | LAP POOL HEATER | 4/15/05 | | 8,191 | | | | | | | 8,191 | 5,590 | 200DB MQ | 7 | .08670 | 727 |
| 161 | FAMILY POOL HEATER | 4/15/05 | | 4,292 | | | | | | | 4,292 | 2,930 | 200DB MQ | 7 | .08670 | 381 |
| 163 | AIR CONDITIONING PUMP | 6/20/05 | | 7,095 | | | | | | | 7,095 | 4,848 | 200DB MQ | 7 | .08730 | 629 |
| 164 | RESTAURANT EQUIPMENT | 5/06/05 | | 851 | | | | | | | 851 | 581 | 200DB MQ | 7 | .08670 | 75 |
| 165 | ROBO COUPE | 7/04/05 | | 537 | | | | | | | 537 | 372 | 200DB MQ | 7 | .08300 | 50 |
| 169 | SERVER COMPONENTS | 3/07/05 | | 1,342 | | | | | | | 1,342 | 1,103 | 200DB MQ | 5 | .11010 | 148 |

2/08/10

| NO. | DESCRIPTION | DATE ACQUIRED | DATE SOLD | COST/ BASIS | BUS. PCT. | CUR 179 BONUS | SPECIAL DEPR. ALLOW | PRIOR 179/ BONUS/ SP. DEPR | PRIOR DEC BAL DEPR | SALVAG /BASIS RDCTN | DEPR. BASIS | PRIOR DEPR. | METHOD | LIFE | RATE | CURRENT DEPR. |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 170 | KRONOS TIMECLOCKS & WIRIN | 4/21/05 | | 5,097 | | | | | | | 5,097 | 4,210 | 200DB MQ | 5 | .11370 | 580 |
| 171 | 18 HP COMPAQ DESKTOPS | 4/30/05 | | 14,925 | | | | | | | 14,925 | 12,324 | 200DB MQ | 5 | .11370 | 1,697 |
| 172 | CISCO ROUTERS | 4/30/05 | | 3,570 | | | | | | | 3,570 | 2,948 | 200DB MQ | 5 | .11370 | 406 |
| 173 | HP LASERJET 2420 | 4/30/05 | | 882 | | | | | | | 882 | 736 | 200DB MQ | 5 | .11370 | 101 |
| 174 | 10 FLAT SCREEN MONITORS | 5/17/05 | | 5,471 | | | | | | | 5,471 | 4,517 | 200DB MQ | 5 | .11370 | 622 |
| 175 | POS TOUCHSCREEN MONITORS | 5/17/05 | | 10,905 | | | | | | | 10,905 | 9,006 | 200DB MQ | 5 | .11370 | 1,240 |
| 176 | BED LIFT FOR UTILITY CART | 7/12/05 | | 3,448 | | | | | | | 3,448 | 2,389 | 200DB MQ | 7 | .09380 | 321 |
| 177 | RANGE MATE BALL WASHER | 8/15/05 | | 1,204 | | | | | | | 1,204 | 835 | 200DB MQ | 7 | .09300 | 112 |
| 178 | MOWER 3WD KIT W/FRAME | 9/16/05 | | 2,988 | | | | | | | 2,988 | 2,070 | 200DB MQ | 7 | .09300 | 278 |
| 179 | TENNIS AREA DRAIN | 6/24/05 | | 3,744 | | | | | | | 3,744 | 2,554 | 200DB MQ | 7 | .08870 | 332 |
| 180 | TENNIS NET | 8/16/05 | | 171 | | | | | | | 171 | 120 | 200DB MQ | 7 | .09300 | 16 |
| 181 | LAP POOL COVER | 4/21/05 | | 2,711 | | | | | | | 2,711 | 1,850 | 200DB MQ | 7 | .08870 | 240 |
| 182 | 2 STEP MACHINES | 11/09/05 | | 10,294 | | | | | | | 10,294 | 7,239 | 200DB MQ | 7 | .10040 | 1,034 |
| 185 | 2 POOL HEATERS | 4/13/06 | | 2,250 | | | | | | | 2,250 | 1,266 | 200DB MQ | 7 | .11830 | 281 |
| 189 | TOASTER | 6/21/06 | | 996 | | | | | | | 996 | 550 | 200DB HY | 7 | .12490 | 124 |
| 194 | SOFTWARE COVERS | 10/31/06 | | 24,867 | | | | | | | 24,867 | 20,722 | S/L HY | 3 | .16670 | 4,145 |
| 195 | KRONOS SOFTWARE & LICENSE | 10/31/06 | | 3,483 | | | | | | | 3,483 | 2,902 | S/L HY | 3 | .16670 | 581 |
| 196 | SONICWALL WIRELESS ROUTER | 11/20/06 | | 1,877 | | | | | | | 1,877 | 1,786 | 200DB HY | 5 | .11830 | 91 |
| 197 | APC SMART UPS | 11/20/06 | | 1,893 | | | | | | | 1,893 | 1,347 | 200DB HY | 5 | .11830 | 218 |
| 198 | HP FILE SERVER HARDWARE | 11/20/06 | | 3,345 | | | | | | | 3,345 | 2,381 | 200DB HY | 5 | .11830 | 395 |
| 199 | SAVIN ONLINE COPIER/PRINT | 12/15/06 | | 970 | | | | | | | 970 | 690 | 200DB HY | 5 | .11830 | 112 |
| 200 | BIG TEX UTILITY TRAILER | 7/15/06 | | 882 | | | | | | | 882 | 501 | 200DB HY | 7 | .12490 | 111 |
| 201 | SALTWATER SYSTEM FOR POOL | 3/13/07 | | 950 | | | | | | | 950 | 369 | 200DB HY | 7 | .17490 | 166 |
| 204 | POOL PHONE CABLES | 6/27/07 | | 936 | | | | | | | 936 | 383 | 200DB HY | 7 | .17490 | 164 |
| 205 | WATER HEATERS | 7/03/07 | | 3,138 | | | | | | | 3,138 | 1,224 | 200DB HY | 7 | .17490 | 552 |
| 206 | LAP POOL COVER | 10/18/07 | | 10,150 | | | | | | | 10,150 | 3,595 | 200DB HY | 7 | .17490 | 1,775 |
| 207 | DOUBLE STACK OVEN | 2/13/07 | | 9,449 | | | | | | | 9,449 | 3,654 | 200DB HY | 7 | .17490 | 1,653 |

| NO. | DESCRIPTION | DATE ACQUIRED | DATE SOLD | COST/BASIS | BUS. PCT | CUR 179 BONUS | SPECIAL DEPR. ALLOW | PRIOR 179/BONUS/SP DEPR | PRIOR DEC. BAL. DEPR | SALVAG/BASIS REDUCT | DEPR. BASIS | PRIOR DEPR | METHOD | LIFE | RATE | CURRENT DEPR |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 208 | KITCHEN STEAMER | 2/27/07 | | 5,735 | | | | | | | 5,735 | 2,224 | 200DB HY | 7 | .17490 | 1,003 |
| 209 | STORAGE POD | 2/13/07 | | 3,760 | | | | | | | 3,760 | 1,458 | 200DB HY | 7 | .17490 | 658 |
| 211 | CLOTHES DRIER | 10/19/07 | | 2,663 | | | | | | | 2,663 | 1,032 | 200DB HY | 7 | .17490 | 465 |
| 215 | SANYO LCD TV - MENS GRILL | 12/29/07 | | 3,135 | | | | | | | 3,135 | 1,216 | 200DB HY | 7 | .17490 | 548 |
| 216 | COMPUTER SYSTEM CONVERSIO | 1/11/07 | | 1,445 | | | | | | | 1,445 | 751 | 200DB HY | 5 | .19200 | 277 |
| 217 | PRINTER- GOLF SHOP | 1/25/07 | | 403 | | | | | | | 403 | 210 | 200DB HY | 5 | .19200 | 77 |
| 218 | COMPUTER SYSTEM UPGRADE | 1/29/07 | | 2,400 | | | | | | | 2,400 | 1,248 | 200DB HY | 5 | .19200 | 461 |
| 219 | ELECTRONIC CAMERA EQUIP | 2/06/07 | | 8,248 | | | | | | | 8,248 | 4,289 | 200DB HY | 5 | .19200 | 1,584 |
| 220 | SONICWALL CONTINUE BACKUP | 2/13/07 | | 2,803 | | | | | | | 2,803 | 1,458 | 200DB HY | 5 | .19200 | 538 |
| 221 | COMPUTER SYSTEM UPGRADE | 2/23/07 | | 934 | | | | | | | 934 | 486 | 200DB HY | 5 | .19200 | 179 |
| 222 | COMPUTER SYSTEM UPGRADE | 3/13/07 | | 1,176 | | | | | | | 1,176 | 611 | 200DB HY | 5 | .19200 | 226 |
| 223 | SAVIN COMPIER BUYOUT | 4/05/07 | | 910 | | | | | | | 910 | 353 | 200DB HY | 7 | .17490 | 159 |
| 224 | 2 PHONELINES FOR POOL | 4/26/07 | | 300 | | | | | | | 300 | 116 | 200DB HY | 7 | .17490 | 52 |
| 226 | COURSE CALL BOX | 1/17/07 | | 583 | | | | | | | 583 | 226 | 200DB HY | 7 | .17490 | 102 |
| 228 | GRUND COURSE MARKERS | 2/27/07 | | 4,380 | | | | | | | 4,380 | 1,691 | 200DB HY | 7 | .17490 | 763 |
| 229 | JACOBSEN 5-GANG MOWER | 9/25/07 | | 2,500 | | | | | | | 2,500 | 969 | 200DB HY | 7 | .17490 | 437 |
| 230 | 2 PILATES MACHINES | 4/06/07 | | 2,193 | | | | | | | 2,193 | 850 | 200DB HY | 7 | .17490 | 384 |
| 233 | REED EQ. - TRU TURF | 1/29/08 | | 12,634 | | | | 6,317 | | | 6,317 | 903 | 200DB HY | 7 | .17490 | 1,547 |
| 234 | COMPUTER FOR PATRICK | 1/25/08 | | 536 | | | | 268 | | | 268 | 54 | 200DB HY | 5 | .32000 | 85 |
| 241 | HEATER - FAMILY POOL | 3/25/08 | | 2,490 | | | | 1,245 | | | 1,245 | 178 | 200DB HY | 7 | .24490 | 305 |
| 248 | 2 IRONMAN TV TREADMILLS | 7/07/08 | | 4,719 | | | | 2,360 | | | 2,359 | 337 | 200DB HY | 7 | .24490 | 578 |
| 250 | ELLIPTICAL MACHINE PLATFO | 7/01/09 | | 2,053 | | | 1,027 | | | | 1,026 | | 200DB HY | 7 | .14290 | 147 |
| | TOTAL MACHINERY AND EQUIPME | | | 1,284,720 | | 0 | 1,027 | 106,822 | 0 | 0 | 1,176,871 | 1,080,344 | | | | 37,756 |
| | MISCELLANEOUS | | | | | | | | | | | | | | | |

| NO. | DESCRIPTION | DATE ACQUIRED | DATE SOLD | COST/ BASIS | BUS. PCT | CUR 179 BONUS | SPECIAL DEPR. ALLOW | PRIOR 179/ BONUS/ SP. DEPR | PRIOR DEC. BAL. DEPR. | SALVAG /BASIS REDUCT. | DEPR. BASIS | PRIOR DEPR. | METHOD | LIFE | RATE | CURRENT DEPR. |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 225 | HOOKED ON GOLF WEBSITE | 5/14/07 | | 4,590 | | | | | | | 4,590 | 3,570 | 200DB HY | 3 | .16810 | 680 |
| 240 | HOOKED ON GOLF WEBSITE | 3/08/08 | | 1,116 | | | | 558 | | | 558 | 186 | 200DB HY | 3 | .44450 | 248 |
| 242 | HOOKED ON GOLF WEBSITE | 3/31/08 | | 2,232 | | | | 1,116 | | | 1,116 | 372 | 200DB HY | 3 | .44450 | 496 |
| 243 | HOOKED ON GOLF WEBSITE | 4/25/08 | | 2,232 | | | | 1,116 | | | 1,116 | 372 | 200DB HY | 3 | .44450 | 495 |
| | TOTAL MISCELLANEOUS | | | 10,170 | | 0 | 0 | 2,790 | 0 | 0 | 7,380 | 4,500 | | | | 1,920 |
| | TOTAL DEPRECIATION | | | 36,972,373 | | 0 | 1,027 | 194,527 | 0 | 0 | 36,776,819 | 12,438,320 | | | | 897,720 |
| | GRAND TOTAL AMORTIZATION | | | 176,834 | | 0 | 0 | 0 | 0 | 0 | 176,834 | 176,836 | | | | 0 |
| | GRAND TOTAL DEPRECIATION | | | 36,972,373 | | 0 | 1,027 | 194,527 | 0 | 0 | 36,776,819 | 12,438,320 | | | | 897,720 |

## Pasadena Equipment Leases

| | | Description | Monthly | Commencement | Term | Cost | Buyout at Term | Lease # | Jonas G/L |
|---|---|---|---|---|---|---|---|---|---|
| John Deere Exp 12/2010 | P.O. Box 4450, Carol Stream, Il 60197-4450 LEASE JDeere pays tax, PCC reimburses | 4720 Compact Tractor | 836.52 | 12/7/2005 | 60 Months to 12/7/10 | 50,900 | 2,781.00 | 001-0065586-000 | 64830-30 |
| WFFL Exp 11/2010 | Wells Fargo Financial Leasing P O Box 14546, Des Moines, IA 50306 | TyCrop TD460 Top Dresser | 366.83/Mo | 11/30/2005 | 60 Months | | $1.00 | 019-0000323- | 65130-30 |
| WFFL Exp 7/2010 | Wells Fargo Financial Leasing P O Box 14546, Des Moines, IA 50306 | Lastec 3682 Articulated Rough Mower | 500.74/Mo | 9/30/2005 | 58 Months | 23,595.00 | $1.00 | 019-0000323-001 | 64830-30 |
| GECO Exp 5/2010 | GE Capital Corporation- P O Box 802585, Chicago, IL 60680-2585 | Toro Pro Sweep 8 Toro Workman | 182.81 | 5/5/2005 | 60 Months | 9,186.64 | $1.00 | 4278440-002 | |
| | GE Capital Corporation- P O Box 802585, Chicago, IL 60680-2585 | 2110 | 1276.35 | 5/5/2005 | 60 Months | 64,138.31 | $1.00 | 4278440-002 | |
| | GE Capital Corporation- P O Box 802585, Chicago, IL 60680-2585 | Toro Reelmaster | 715.46 | 5/5/2005 | 60 Months | 35,952.31 | $1.00 | 4278440-002 | |
| | GE Capital Corporation- P O Box 802585, Chicago, IL 60680-2585 | Toro Workman 3200 | 331.25 | 5/5/2005 | 60 Months | 16,645.51 | $1.00 | 4278440-002 | |
| | GE Capital Corporation- P O Box 802585, Chicago, IL 60680-2585 | Toro RM3100D w/Sidewinder | 464.04 | 5/5/2005 | 60 Months | 23,318.65 | $1.00 | 4278440-002 | |
| | GE Capital Corporation- P O Box 802585, Chicago, IL 60680-2585 | Toro GR3150 | 411.17 | 5/5/2005 | 60 Months | 20,661.86 | $1.00 | 4278440-002 | |
| | GE Capital Corporation- P O Box 802585, Chicago, IL 60680-2585 | ProCore Aerator | 376.45 | 5/5/2005 | 60 Months | 18,917.16 | $1.00 | 4278440-002 | |
| | GE Capital Corporation- P O Box 802585, Chicago, IL 60680-2585 | 6 Kawa 6.5 HP Mowers | 104.08 | 5/5/2005 | 60 Months | 5,227.78 | $1.00 | 4278440-002 | |
| | PPT paid by GECC, reimb by PCC | | 3861.56 | | | 180,930.64 +13117.47 tax | | 4278440-002 | 64830-30 |
| U S Express Leasing, Inc Exp 2/2011 | U S Express Leasing, Inc- 300 Lanidex Plaza, Parsippany, NJ 07054 | Ricoh Aficio MP4000 SPF Copier | 284.09 +20.60 Sls Tx | 4/18/2008 | 36 Months | 10330.55 FMV +748.96 Tax | | 40446396 | 65180-80 65190-90 |
| GECO Exp 9/2010 | GE Capital Corporation- P O Box 802585, Chicago, IL 60680-2585 PPT paid by GECC, reimb by PCC | Toro Workman 3200 Turf II 2 Toro GR3150 | 2685.81 + 190.37 Tax 2876.18 Total | 7/2/2008 Beg 7/2/08 | 36 Months | 20,571.00 FMV 8,723.00 FMV 76,764.00 FMV | | 8326225-003 | 64830-30 |
| Textron Exp 9/30/2012 | Textron Financial Corp, P O Box 81004, Woburn, MA 01813 | 70 EZ-Go RXV E Carts | 4811.8 6022.8 | 10/15/2006 10/15/2006 | 15 Months thru 12/2009 33 Months 1/2010 -9/2012 | | | 1027561 | |
| Textron Exp 11/2011 | Textron Business Services, Dept. AT 40219 Atlanta, GA 31192-0219 | 1 2008 EZ-GO 4X4 Utility Range Picker | 238.43 | 11/1/2007 | 48 Months | 10813.00 FMV | | | 64820-20 |
| GECC Exp 3/2013 | GE Capital Corporation- P O Box 802585, Chicago, IL 60680-2585 PPT paid by GECC, reimb by PCC | Model 54 Procore 648 w/Attachments S/N 280000819 | 887.98 | 4/18/2008 | 60 Months | 43743.06 | $1.00 | Master Lease 8326225 | |
| GECC Exp 2/2011 | GE Capital Corporation- P O Box 802585, Chicago, IL 60680-2585 PPT paid by GECC, reimb by PCC | ProCore Aerator SN250000202 | 453.75 +269 one time | 2/19/2006 1S buyout | 60Months | 20438.54 +1491.79 tax | $1.00 | 4278440-003 | 64830-30 |
| GECC | GE Capital Corporation- P O Box 802585, Chicago, IL 60680-2585 | Workman 4300 Diesel & Attachments | 480.19 | 7/20/2007 | 48 Months | 23615.06 FMV | | 8326225-001 | |
| Exp 7/2011 | | 2 Greensmaster GR3150's (triplex mowers) w/cutters | 1,160.40 | 7/20/2007 | 48 Months | 58050.92 FMV | | 8326225-001 | |
| | PPT paid by GECC, reimb by PCC | Sandpro 5040 (bunker rake) | 461.93 | 7/20/2007 | 48 Months | 22712.27 FMV | | 8326225-001 | |
| | | Reelmaster 2000D mower, 2WD w/Attachments | 462.70 | 7/20/2007 | 48 Months | 22750.36 FMV | | 8326225-001 | |
| | | RM3100D Sidewinder (triplex mower) w/Attach | 547.96 | 7/20/2007 | 48 Months | 26948.22 FMV | | 8326225-001 | |
| | | | 3133.17 | | | 154085.83 | | | 64830-30 |

Case: 09-50771     Doc# 249-1     Filed: 07/20/10     Entered: 07/20/10 12:47:42     Page 43 of 46

# Pasadera Country Club
## Golf Course Maintenance
### Equipment Inventory

January 27th, 2009

To: Steve Schroeder, General Manager

From: David Falliaux, Golf Course Superintendent

## Greens Mowers and Approach Mowers

| | | |
|---|---|---|
| 3150 #1 | Greens Mower | Leased |
| 3150 #2 | Greens Mower | Leased |
| 3150 #3 | Approach Mower | Lease to Own |
| 3150 #4 | Approach Mower | Leased |
| 3150 #5 | Greens Mower | Leased |

## Tee Mowers

9 Toro 1000 walk mowers
All Owned

## Fairway Mowers

| | |
|---|---|
| 5400 #1 | Own |
| 5400 #2 | Own |
| 5400 #3 | Own |

## Rough Mowers

| | | |
|---|---|---|
| 3100 #1 Sidewinder | Leased |
| 3100 #2 Sidewinder | Lease to Own |
| Lastec 3682 | Lease to Own |

## Misc. Mowers

| | |
|---|---|
| 2000D #1 | Leased |
| 2600D #2 | Lease to Own |
| 2600D #3 | Own |
| 6 Proline Rotary | Own |

## Aerification Units

| | |
|---|---|
| Toro 648 | Own |
| Toro 660 | Own |
| Toro 880 | Own |
| Toro 880 | Own |
| Ryan #1 | Own |
| SR 54 | Own |

## Utility Vehicles

| | |
|---|---|
| 8 Toro 2110's | Lease to Own |
| Club Car Turf II | Leased |
| Workman 4300D #6 | Leased |
| Workman 3200 #4 & 5 | Leased |
| Workman 3200 #1-3 | Own |

## Other Equip.

| | |
|---|---|
| Ty-Crop 460 | Lease to Own |
| Toro pro sweep | Lease to Own |
| Sand Pro | Lease |
| Multi-Pro Sprayer | Own |

## Tractors

| | |
|---|---|
| John Deere 4720 | Lease to Own |
| Deere 4710 | Own |
| Deere 5210 | Own |
| Deere 4500 | Own |

Case: 09-50771    Doc# 249-1    Filed: 07/20/10    Entered: 07/20/10 12:47:42    Page 44
of 46

Pasadena Equipment Leases

| | | Description | Monthly | Commencement | Term | Cost | Buyout at Term | Lease # | Jonas GL |
|---|---|---|---|---|---|---|---|---|---|
| John Deere Exp 12/2010 | P.O Box 4450, Carol Stream, Il 60197-4450 LEASE JDeere pays tax, PCC reimburses | 4720 Compact Tractor | 638.52 | 12/7/2005 | 60 Months to 12/7/10 | 30,900 | 2,781.00 | 001-0065568-000 | 64630-30 |
| WFFL Exp 11/2010 | Wells Fargo Financial Leasing P O Box 14565, Des Moines, IA 50306 | TyCrop TD460 Top Dresser | 338.93/Mo | 11/30/2005 | 60 Months | | $1.00 | 010-0000323- | 65160-30 |
| WFFL Exp 7/2010 | Wells Fargo Financial Leasing P O Box 14565, Des Moines, IA 50306 | Lastec 3682 Articulated Rough Mower | 500.74/Mo | 6/30/2005 | 55 Months | 23,595.00 | $1.00 | 010-0000323-001 | 64650-30 |
| GECC Exp 6/2010 | GE Capital Corporation- P O Box 802585, Chicago, IL 60680-2585 | Toro Pro Sweep | 102.91 | 6/6/2005 | 60 Months | 9,169.54 | $1.00 | 4276440-002 | |
| | GE Capital Corporation- P O Box 802585, Chicago, IL 60680-2585 | 8 Toro Workman 2110 | 1276.35 | 6/6/2005 | 60 Months | 64,138.91 | $1.00 | 4276440-002 | |
| | GE Capital Corporation- P O Box 802585, Chicago, IL 60680-2585 | Toro Reelmaster | 716.45 | 6/6/2005 | 60 Months | 35,852.31 | $1.00 | 4276440-002 | |
| | GE Capital Corporation- P O Box 802585, Chicago, IL 60680-2585 | Toro Workman 3200 w/Sidewinder | 331.28 | 6/6/2005 | 60 Months | 16,645.61 | $1.00 | 4276440-002 | |
| | GE Capital Corporation- P O Box 802585, Chicago, IL 60680-2585 | Toro RM3100D Mower | 464.04 | 6/6/2005 | 60 Months | 23,316.66 | $1.00 | 4276440-002 | |
| | GE Capital Corporation- P O Box 802585, Chicago, IL 60680-2585 | Toro GR3150 | 411.17 | 6/6/2005 | 60 Months | 20,651.86 | $1.00 | 4276440-002 | |
| | GE Capital Corporation- P O Box 802585, Chicago, IL 60680-2585 | ProCore Aerator | 376.46 | 6/6/2005 | 60 Months | 18,917.16 | $1.00 | 4276440-002 | |
| | GE Capital Corporation- P O Box 802585, Chicago, IL 60680-2585 | 8 Kawa 6.5 HP Mowers | 104.00 | 6/6/2005 | 60 Months | 5,227.76 | $1.00 | 4276440-002 | |
| | PPT paid by GECC, reimb by PCC | | 3561.66 | | | 200,630.04 +13117.47 tax | | | 64630-30 |
| U S Express Leasing, Inc Exp 3/2011 | U S Express Leasing, Inc-300 Lanidex Plaza, Parsippany, NJ 07054 | Ricoh Aficio MP4000 SPF Copier | 264.09 +20.60 Sls Tx | 4/16/2008 | 36 Months | 10330.65 FMV +748.86 Tax | | 40149303 | 65150-30 65100-30 |
| GECC 8/2010 | GE Capital Corporation- P O Box 802585, Chicago, IL 60680-2585 PPT paid by GECC, reimb by PCC | Toro Workman 3200 Turf II 2 Toro GR3150 | 2825.54 + Appl'b Taxes | 7/21/2008 Beg 7/208 | 36 Months | 20,571.00 FMV 9,723.00 FMV 79,765.00 FMV | | 6326226-003 | 84650-30 |
| Textron Exp 10/2008 | Textron Financial Corp, P O Box 61004, Woburn, MA 01813 | 70 DZ-Go Carts | 5359.05 | 11/15/2005 | 37 Months | 168314 FMV | | 01-001-0196667-01-00008 | |
| Textr | Textron Financial Corp, P O Box 61004, Woburn, MA 01813 | 2 EZ Go Workhorse 800-Gas | 0 | 6/15/2003 | 37 Months | 3154 FMV | | 01-001-0196667-01-00006 | |
| Textron Exp 9/30/2012 | Textron Financial Corp, P O Box 61004, Woburn, MA 01813 | 70 EZ-Go RXV E Carts | 4911.9 6022.8 | 10/16/2008 10/16/2008 | 15 Months thru 12/2009 36 Months 1/2010-9/2012 | | | 1027681 | |
| Textron Exp 11/2011 | Textron Business Services, Dept, MI 40219 Atlanta, GA 31192-0219 | 1 2006 EZ-GO 4X4 Utility Range Picker | 238.43 | 11/1/2007 | 48 Months | 10813.00 FMV | | | 64650-30 |
| GECC Exp 3/2013 | GE Capital Corporation- P O Box 802585, Chicago, IL 60680-2585 PPT paid by GECC, reimb by PCC | Model 64 Procore 648 w/Allachmente S/N 280000319 | 887.98 | 4/18/2008 | 60 Months | 43749.00 | $1.00 | Master Lease 6326226 | |
| GECC Exp 2/2011 | GE Capital Corporation- P O Box 802585, Chicago, IL 60680-2585 PPT paid by GECC, reimb by PCC | ProCore Aerator SN2660000202 | 455.75 +280 one tim | 2/19/2006 | 60Months 1$ buyout | 20436.54 +1491.79 tax | $1.00 | 4276440-003 | 64650-30 |
| GECC | GE Capital Corporation- P O Box 802585, Chicago, IL 60680-2585 | Workman 4300 Diesel & Attachments | 480.19 | 7/28/2007 | 48 Months | 23615.00 FMV | | 6326226-001 | |
| Exp 7/2011 | PPT paid by GECC, reimb by PCC | 2 Greensmaster GR3150's (triplex mowers) w/cutters | 1,180.40 | 7/28/2007 | 48 Months | 58050.92 FMV | | 6326226-001 | |
| | | Sandpro 5040 (bunker rake) | 461.63 | 7/28/2007 | 48 Months | 22712.27 FMV | | 6326226-001 | |
| | | Reelmaster 2000D mower, 2WD w/Attachments RM3100D | 462.79 | 7/28/2007 | 48 Months | 22769.36 FMV | | 6326226-001 | |
| | | Sidewinder (triplex mower) w/Attach | 547.96 3193.17 | 7/28/2007 | 48 Months | 26948.22 FMV 154065.85 | | 6326226-001 | 64650-30 |

EXPIRED-NEW LEASE BELOW

H:\Special Reports\Equipment LEASE List                    Page 1

9/26/2008

Case: 09-50771    Doc# 249-1    Filed: 07/20/10    Entered: 07/20/10 12:47:42    Page 45 of 46

| Pasadera Equipment Leases to be Accepted | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| | | Description | Monthly | Commencement | Term | Cost | Buyout at Term | Lease # | Jonas G/L |
| John Deere Exp 12/2010 | P.O. Box 4450, Carol Stream, Il 60197-4450 LEASE JDeere pays tax, PCC reimburses | 4720 Compact Tractor | 638.52 | 12/7/2005 | 60 Months to 12/7/10 | 30,900 | 2,781.00 | 001-0066686-000 | 64630-30 |
| WFFL Exp 11/2010 | Wells Fargo Financial Leasing P O Box 14546, Des Moines, IA 50306 | TyCrop TD460 Top Dresser | 389.93/Mo | 11/30/2005 | 60 Months | | $1.00 | 019-0000323- | 66130-30 |
| WFFL Exp 7/2010 | Wells Fargo Financial Leasing P O Box 14546, Des Moines, IA 50306 | Lastec 3882 Articulated Rough Mower | 500.74/Mo | 9/30/2005 | 58 Months | 23,595.00 | $1.00 | 019-0000323-001 | 64630-30 |
| GECC Exp 5/2010 | GE Capital Corporation- P O Box 802685, Chicago, IL 60680-2685 | Toro Pro Sweep 8 Toro Workman | 182.61 | 5/5/2005 | 60 Months | 9,166.54 | $1.00 | 4278440-002 | |
| | GE Capital Corporation- P O Box 802685, Chicago, IL 60680-2685 | 2110 | 1276.35 | 5/5/2005 | 60 Months | 64,138.31 | $1.00 | 4278440-002 | |
| | GE Capital Corporation- P O Box 802685, Chicago, IL 60680-2685 | Toro Reelmaster | 715.45 | 5/5/2005 | 60 Months | 35,952.51 | $1.00 | 4278440-002 | |
| | GE Capital Corporation- P O Box 802685, Chicago, IL 60680-2685 | Toro Workman 3200 | 331.25 | 5/5/2005 | 60 Months | 16,645.51 | $1.00 | 4278440-002 | |
| | GE Capital Corporation- P O Box 802685, Chicago, IL 60680-2685 | Toro RM3100D w/Sidewinder | 464.04 | 5/5/2005 | 60 Months | 23,318.65 | $1.00 | 4278440-002 | |
| | GE Capital Corporation- P O Box 802685, Chicago, IL 60680-2685 | Toro GR3150 | 411.17 | 5/5/2005 | 60 Months | 20,661.86 | $1.00 | 4278440-002 | |
| | GE Capital Corporation- P O Box 802685, Chicago, IL 60680-2685 | ProCore Aerator 8 Kawa 6.5 HP | 376.45 | 5/5/2005 | 60 Months | 18,917.15 | $1.00 | 4278440-002 | |
| | GE Capital Corporation- P O Box 802685, Chicago, IL 60680-2685 | Mowers | 104.06 | 5/5/2005 | 60 Months | 5,227.78 | $1.00 | 4278440-002 | |
| | PPT paid by PCC | | 3861.88 | | | 180,030.84 +13117.47 tax | | 4278440-002 | 64630-30 |
| U S Express Leasing, Inc Exp 3/2011 | U S Express Leasing, Inc- 500 Lan/dex Plaza, Parsippany, NJ 07054 | Ricoh Aficio MP4000 SPF Copier | 284.09 +20.60 Sta Tx | 4/18/2008 | 36 Months | 10330.55 +749.96 Tax | FMV | 40446385 | 66180-30 66190-00 |
| GECC Exp 3/2013 | GE Capital Corporation- P O Box 802685, Chicago, IL 60680-2685 | Model 54 Procore 648 w/Attachments S/N 280000819 | 887.96 | 4/18/2008 | 60 Months | 43743.06 | $1.00 | Master Lease 8326225 | |
| | PPT paid by GECC, reimb by PCC | | | | | | | | |
| GECC Exp 2/2011 | GE Capital Corporation- P O Box 802685, Chicago, IL 60680-2685 | ProCore Aerator SN260000202 | 453.75 +250 one tim | 2/19/2008 | 60 Months 1$ buyout | 20438.54 +1481.79 tax | $1.00 | 4278440-003 | 64630-30 |
| | PPT paid by GECC, reimb by PCC | | | | | | | | |

4/6/2010          H:\Special Reports\Equipment LEASE List 123109          Page 1